Ian C. Ballon (SBN 141819)
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, California  94303
Telephone:  650.289.7881
Facsimile:  650.462.7881
Email:    ballon@gtlaw.com

Jie (Lisa) Li (SBN 260474)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California  94105
Telephone:  415.655.1300
Email:    lil@gtlaw.com

Amy L. Kramer (*Pro Hac Vice* to be filed)
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado  80202
Telephone:  303.572.6500
Email:    Amy.Kramer@gtlaw.com

Attorneys for Plaintiff
Invisible Narratives LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INVISIBLE NARRATIVES LLC, | CASE NO. 5:25-cv-01644-NW |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE** |
| v. | |
| NEXT LEVEL APPS TECHNOLOGY – FZCO, | |
| Defendant. | |
| | Hearing Date: |
| | Time:          9:00 a.m. |
| | Courtroom:    3 – 5th Floor |
| | Complaint Filed:     February 14, 2025 |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

I.    The SKIBIDI TOILET Cultural Phenomenon .......................................... 2
II.   The SKIBIDI TOILET Copyrights and Trademarks ............................... 4
III.  Next Level's Unlawful Activities ............................................................. 5
IV.   Defendant's False Notification and Threats to Disable the Entire Boom Channel ........... 8
V.    Next Level's Principals Have Also Attempted to Extort Other Copyright Owners Using the Same Fraudulent Scheme ......................................... 11

ARGUMENT .................................................................................................................. 12

I.    The Court Has Personal Jurisdiction Over Next Level ........................... 12
II.   The Court Should Grant Invisible Narratives' *Ex Parte* Application for a Temporary Restraining Order Against Next Level's Attempting to Disable Access to Skibidi Toilet Material on the Boom Channel ........... 12

      A.    Invisible Narratives Is Likely to Succeed on the Merits of Its False Notification Claim ................................................................... 13
      B.    Invisible Narratives Has Suffered and Will Suffer Immediate Irreparable Harm in the Absence of a Temporary Restraining Order ......................... 14
      C.    The Balance of Hardships Tips Decidedly in Invisible Narratives' Favor ........... 16
      D.    The Public Interest Favors a Temporary Restraining Order ............................. 16
      E.    Proceeding on a Noticed Motion Would Be Futile, and a Limited *Ex Parte* Temporary Restraining Order Is Therefore Necessary ......................... 17

III.  The Court Should Grant Invisible Narratives' Application for an Order to Show Cause for a Preliminary Injunction Against Next Level's (i) Attempting to Disable Access to Skibidi Toilet Material on the Boom Channel, and (ii) Infringement of the Skibidi Toilet Trademarks ................................................. 18

      A.    Invisible Narratives Is Likely to Succeed on the Merits of Its Claims for Trademark Infringement and Unfair Competition ................................. 19

            1.    Invisible Narratives Owns a Valid, Protectable Trademark in SKIBIDI TOILET ......................................... 19
            2.    Next Level's Use of the Skibidi Toilet Trademarks Is Likely to Cause Confusion ........................................... 20

      B.    Invisible Narratives Has Suffered and Will Suffer Immediate Irreparable Harm in the Absence of a Preliminary Injunction. ....................... 22
      C.    The Balance of Hardships and the Public Interest Factors Favor an Injunction. ....................................... 22

IV.   The Court Should Not Require Invisible Narratives to Post a Bond. ............................... 23

V.   The Court Should Permit Invisible Narratives to Serve Next Level by Email. ................. 23

VI.   CONCLUSION ................................................................................................................ 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*adidas Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) ................................................................. 13

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................... 13

*Am. Int'l Grp., Inc. v. Am. Int'l Bank*,
  926 F.2d 829 (9th Cir. 1991) ................................................................. 22

*Amaretto Ranch Breedables v. Ozimals, Inc.*,
  2010 WL 5387774 (N.D. Cal. Dec. 21, 2010) ....................................... 15, 16, 18

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 314 (9th Cir. 1979) ................................................................. 20, 21

*Amoco Prod. Co. v. Village of Gambell, Alaska*,
  480 U.S. 531 (1987) ............................................................................... 16

*Automattic Inc. v. Steiner*,
  82 F. Supp. 3d 1011 (N.D. Cal. 2015) ................................................... 13

*Biomax Health Prods. LLC v. Perfectx USA*,
  2023 WL 4477210 (N.D. Cal. July 11, 2023) ........................................ 23

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................... 23

*City & Cty. of San Francisco v. City of Oakland*,
  2024 WL 4775737 (N.D. Cal. Nov. 12, 2024) ....................................... 22

*Connecticut Gen. Life Ins. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ................................................................. 23

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  300 F. Supp. 3d 1073 (S.D. Cal. 2017) .................................................. 19

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir.1998) ................................................................ 20, 21

*Ducky Ltd. v. Iviliia Millionic IT Sp z o.o.*,
  Case No. 3:24-cv-02268-PHK (N.D. Cal.) .......................................... 11

*Facebook, Inc. v. BrandTotal Ltd.*,
  499 F. Supp. 3d 720 (N.D. Cal. 2020) ................................................... 12, 18

*Fitness Int'l, LLC v. Alspaugh*,
  2022 WL 17886049 (C.D. Cal. Oct. 16, 2022) ...................................... 22, 23

*Granny Goose Foods Inc. v. Teamsters*,
  415 U.S. 423 (1974) ............................................................................... 18

*Grupo Gigante SA de CV v. Dallo & Co.*,
  391 F.3d 1088 (9th Cir. 2004) ............................................................... 19

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

*Independent. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*,
    572 F.3d 644 (9th Cir. 2009) ................................................................. 16

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
    304 F.3d 936 (9th Cir. 2002) ................................................................. 20

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ............................................................... 23

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ............................................................... 20

*Online Pol'y Grp. v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........................................... 13, 16

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*,
    757 F.2d 1058 (9th Cir. 1985) ............................................................... 12

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) ............................................................... 17

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ............................................................... 24

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
    102 F.3d 12 (1st Cir. 1996) .................................................................... 15

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
    907 F. Supp. 2d 1086 (N.D. Cal. 2012) ................................................ 17

*Sarieddine v. Vaptio, Inc.*,
    2020 WL 8024863 (C.D. Cal. Dec. 2, 2020) ......................................... 24

*In re Scholastic Inc.*,
    23 U.S.P.Q.2d 1774 (T.T.A.B. 1992) .................................................... 19

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
    96 F.3d 1217 (9th Cir. 1996) ................................................................. 19

*So. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) ................................................................. 19

*Teaching Co. v. Unapix Entm't, Inc.*,
    87 F. Supp. 2d 567 (E.D. Va. 2000) ...................................................... 19

*Trader Joe's Co. v. Desertcart Trading FZE*,
    2023 WL 3959376 (N.D. Cal. June 12, 2023) ....................................... 24

*Triad Sys. Corp. v. Se. Exp. Co.*,
    64 F.3d 1330 (9th Cir. 1995) ................................................................. 23

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) .............................................................................. 19

*UV RML NL Assets, LLC v. Coulter Ventures, LLC*,
    2021 U.S. Dist. LEXIS 233260 (C.D. Cal. Oct. 22, 2021) .................... 21

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
    515 F. Supp. 3d 1061 (N.D. Cal. 2021) ................................................ 22

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

*Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*,
   2024 WL 189013 (N.D. Cal. Jan. 17, 2024) ................................................. 12

*Vital Pharms. v. Ph.D. Mtkg., Inc.*,
   2021 WL 6881866 (C.D. Cal. Mar. 12, 2021) ............................................... 22

*Williams v. Lobel Fin. Corp.*,
   673 F. Supp. 3d 1101 (C.D. Cal. 2023) ......................................................... 15

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
   2019 WL 7810815 (N.D. Cal. May 2, 2019) ................................................. 19

*Winter v. Natural Resources Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................... 13

**Statutes**

15 U.S.C. § 1116(a) ........................................................................................... 22

17 U.S.C. § 102(a) ............................................................................................... 4

17 U.S.C. § 106 .................................................................................................... 7

17 U.S.C. § 408(b) ............................................................................................... 6

17 U.S.C. § 512 ............................................................................................ *passim*

Cal. Bus. & Prof. Code § 17200 ....................................................................... 19

**Other Authorities**

37 C.F.R. § 202.20 ............................................................................................... 7

Fed. R. Civ. P. 4(f)(3) ........................................................................................ 23

Fed. R. Civ. P. 4(h)(2) ................................................................................. 23, 24

Fed. R. Civ. P. 11 ............................................................................................... 16

Fed. R. Civ. P. 65(b)(1)(A) ............................................................................... 18

Fed. R. Civ. P. 65(c) .......................................................................................... 23

2 J. Thomas McCarthy, *McCarthy on Trademarks* § 18:15 (5th ed.) ................ 20

Lydia Pallas Loren, *Deterring Abuse of the Copyright Takedown Regime by Taking Misrepresentation Claims Seriously*, 46 Wake Forest L. Rev. 745 (2011) ............................................. 14

U.S. Copyright Office, *Compendium of Copyright Office Practices* (3d ed. 2021) ....................................... 7

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

**INTRODUCTION**

Plaintiff Invisible Narratives, LLC ("Invisible Narratives") seeks a Temporary Restraining Order ("TRO") to stop offshore scammers from taking a successful start-up business offline, by submitting three or more fraudulent takedown requests to YouTube to have Plaintiff's YouTube channel taken down—even though the material at issue is unquestionably owned by Plaintiff. The owners of Defendant Next Level Apps Technology – FZCO ("Next Level") have apparently used this scheme before to try to extort ransom payments from copyright and trademark owners, as there is a case alleging similar facts currently pending in this District before Magistrate Judge Peter Kang. *See Ducky Ltd. v. Iviliia Millionic IT Sp z o.o.* Case No. 3:24-cv-02268-PHK (N.D. Cal.).

Based on the evidence detailed below and in the declarations filed herewith, Invisible Narratives applies to this Court for a TRO requiring that Next Level and its principals immediately cease and desist from taking any actions to remove or disable access to any material hosted on the YouTube channel *DaFuq!?Boom!*, available at https://www.youtube.com/dafuqboom ("the Boom Channel"), including by submitting Notifications of Claimed Infringement ("DMCA Takedown Notices") to YouTube under the Digital Millennium Copyright Act ("DMCA") claiming that any material hosted on the Boom Channel infringes any copyrights to Skibidi Toilet works or the characters therein, or taking action based on such Notifications, at least until Invisible Narratives' concurrent motion for preliminary injunction has been heard and decided. YouTube has already warned Invisible Narratives that the Boom Channel may be disabled due to its "multiple strikes" policy, and Next Level has indicated that it will continue to submit additional false Notifications to YouTube with the aim of disabling the channel—unless Invisible Narratives pays it a hefty ransom. There is simply no time to provide Next Level—a defendant located in Dubai—with notice of this action or the instant application for injunctive relief; without a TRO, it is likely that Next Level will proceed with its threats and cause immediate, irreparable injury to Invisible Narratives within days, before any reasonable deadline for Next Level to respond to Invisible Narratives' motion on notice.

Invisible Narratives also applies for an order to show cause why a preliminary injunction should not issue, enjoining and restraining Next Level from engaging in the foregoing activities, as well as from otherwise infringing Invisible Narratives' trademark rights in the SKIBIDI TOILET brand and web series. While less emergent than the harms from disabling the Boom Channel, Invisible Narratives will suffer other forms of

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

irreparable harm absent a preliminary injunction. Next Level will continue to infringe Invisible Narratives' trademarks and copyrights, deceive consumers into believing that Next Level's infringing goods and services are associated with or approved by Invisible Narratives, and cause Invisible Narratives further irreparable harm. Accordingly, Invisible Narratives' Application should be promptly granted.

## FACTUAL BACKGROUND

### I.   The SKIBIDI TOILET Cultural Phenomenon

Alexey Gerasimov, also known as DaFuq!?Boom!, or simply Boom ("Boom"), created the Skibidi Toilet animated series, which has been posted to the Boom Channel. Declaration of Alexey Gerasimov ("Boom Decl.") ¶¶ 3-4. Combining elements of science fiction, action, and dark humor, the Skibidi Toilet series chronicles the chaotic adventures of an alliance of humanoids in a post-apocalyptic universe. *Id.* ¶ 6. A powerful army of alien creatures known as "Skibidi Toilets" have invaded the planet, wiping out almost the entire human race. *Id.* The only thing standing in the way of world domination is the "Alliance," a coalition of fighting humanoid robots with devices including TV's, cameras, and speakers for heads. *Id.*

Boom developed the concept for the Skibidi Toilet series over several years. *Id.* ¶ 7. In 2021, Boom had a surreal nightmare of a city overrun by toilets – people riding in toilets, toilets appearing on television, and people with human heads and toilet bodies. *Id.* This dream provided the inspiration behind the style, narrative, and characters in the Skibidi Toilet series. *Id.* Boom posted a video on the Boom Channel on November 5, 2021, which features the sudden and horrifically funny merge of humans with various objects (the "Toiletman Video"). *Id.* ¶ 7, Ex. 1.

Boom continued to have recurring nightmares about monstrous human/toilet-like creatures and began working on another video in the fall of 2022 based on the same concept. *Id.* ¶ 8.  The video took over a month to finalize, and Boom posted the next video exploring toilets and nightmares on the Boom Channel on December 2, 2022 (the "Toilet Nightmare Video").  *Id.* ¶ 8, Ex. 2.

Less than two weeks later, using the computer program Source Filmmaker, Boom created the first Skibidi Toilet episode ("Episode 1") on February 6, 2023 based on the Toiletman Video and Toilet Nightmare Video and his other recurring nightmares on the subject. *Id.* ¶ 9. Episode 1 is from the point of view of a camera drone that flies in a hotel room after reports of strange "toilet activity." *Id.* The purpose of Episode 1 was to establish character and the series' distinctive shtick and quirkiness, only to add progression in the following

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

short episodes. *Id.* Episode 1 is intended to be weird, slightly shocking, and uncanny for a new audience (most notably by a head popping out of a toilet), where nothing is explained, and people have to use their own imagination to determine what happened. *Id.*

Boom posted Episode 1 on Boom's Channel on February 7, 2023. *Id.* ¶ 10. Episode 1 now has over 224 million views and features the character "Skibidi Toilet" which has become the iconic face of the Skibidi Toilet series. *Id.* ¶ 10, Ex. 3.



Boom used a similar creative process to create early episodes of Skibidi Toilet, while adding more characters and twists to the narrative and creating progression. *Id.* ¶ 11. After approximately the first 20 episodes, Boom's process became much more layered, complex, and less linear. *Id.*

Boom **did not copy Skibidi Toilet from anyone.** *Id.* ¶ 12. The plot, theme, dialogue, mood, setting, pace, sequence, characters, and relationships between the characters were created by Boom independently without reference to or reproducing these creative elements from anyone else, let alone Next Level and its principals. *Id.*

Over time, the Skibidi Toilet universe expanded to encompass a number of plot developments and scenarios involving the "war" between Skibidi Toilets and the Alliance. Boom developed the warring species, or factions, and then, individual protagonists and antagonist characters within each faction, with increasing detail as the series continued. In his Declaration, Boom describes, in detail, the factions, species, and characters he created ("Skibidi Toilet Characters")—from "Cameraman" and "Camerawoman" to "Dark Speakerman" and "Titan Speakerman" to Skibidi Toilets, Astro Toilets (including "Juggernaut Astro Toilet" and "G-toilet"),

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

and Mutant Toilets (including "Chief Scientist Toilet" and "Swat Mutant")—their defining traits, and the episodes in which they were first depicted. *See id.* ¶¶ 13-40, Exs. 4-24. Again, **none of these characters were copied from anyone else.** *Id.* ¶ 12.

To date, Boom has created 77 episodes of Skibidi Toilet over 25 seasons. *Id.* ¶ 41. Boom posted the latest episode on the Boom Channel on January 11, 2025. *Id.* At the time Boom posted Episode 1 to YouTube, the Boom Channel had approximately 1 million subscribers. *Id.* ¶ 5. The channel has since grown to currently over 45 million subscribers. *Id.* ¶ 3.

On October 12, 2023, Boom assigned to Invisible Narratives all rights to the Skibidi Toilet series and concept, including all Skibidi Toilet video and other content, either existing at that time or later created. *Id.* ¶ 42; Declaration of Adam Goodman ("Goodman Decl.") ¶ 4. This includes but is not limited to all copyright and trademark rights and associated goodwill, as well as the exclusive right to operate and use the Boom Channel and a portion of the advertising revenue from the Boom Channel. *Id.* After the assignment, Boom has continued to create all Skibidi Toilet episodes, which are assigned immediately upon creation to Invisible Narratives. Boom Decl. ¶ 43; Goodman Decl. ¶ 5.

## II.    The SKIBIDI TOILET Copyrights and Trademarks

Skibidi Toilet comprises a number of works, including audiovisual works and pictorial or graphic works, subject to copyright protection (the "Skibidi Toilet Copyrighted Works"). In particular, the Skibidi Toilet episodes, and images of scenes and characters therefrom, are original works of authorship with considerable creative expression. *See* 17 U.S.C. § 102(a). Invisible Narratives owns all right, title, and interest in and to the copyrights in the Skibidi Toilet Copyrighted Works. Boom Decl. ¶¶ 42-43; Goodman Decl. ¶¶ 4-5. A number of Skibidi Toilet Copyrighted Works, including for images of several Skibidi Toilet Characters, have been registered with the United States Copyright Office (the "Registered Skibidi Toilet Copyrights"). Goodman Decl. ¶ 6, Ex. 1.

In addition, Invisible Narratives also owns and uses the valuable SKIBIDI TOILET trademark to uniquely identify all Skibidi Toilet content posted on the Boom Channel (the "Skibidi Toilet Trademark"). *Id.* ¶ 7. Every single Skibidi Toilet episode displays the Skibidi Toilet Trademark such that SKIBIDI TOILET is associated in the mind of the public with the Boom Channel. *Id.*

Invisible Narratives has built and promoted significant goodwill with regard to the Skibidi Toilet Trademark and has established an excellent reputation in the field of multimedia entertainment. *Id.* ¶ 8. Skibidi Toilet has become a global sensation since the release of the first episode two years ago on the Boom Channel, which has experienced exponential growth. *Id.*

In addition to becoming one of YouTube's fastest growing channels, Skibidi Toilet is one of the biggest trends on the platform. *Id.* ¶ 9. The Skibidi Toilet series of videos has also been the subject of numerous unsolicited articles, features, social media/blog posts, and other media entries from third parties, which refer to Invisible Narratives' content under the Skibidi Toilet Trademarks. *Id.* ¶¶ 9-12, Exs. 3-5. Invisible Narratives has developed a trusted relationship with its fanbase, who flood social media with excitement analyzing every single episode of Skibidi Toilet and anxiously anticipating the next episode. Its fans know that the Boom Channel is the sole source of authentic Skibidi Toilet episodes. *Id.* ¶ 13.

## III.    Next Level's Unlawful Activities

Next Level has committed multiple acts of copyright and trademark infringement in an attempt to disrupt, steal, and claim as its own the Skibidi Toilet franchise.

First, Next Level has created a mobile gaming application ("app") available on Apple's App Store and the Google Play Store, marketed under the name Skibidi Toilet (the "Infringing App"). Declaration of Marc Trachtenberg ("Trachtenberg Decl."), Exs. 1-2. As advertised, the Infringing App contains unauthorized reproductions of, or derivative works based on, images, characters, audiovisual material, and other copyrightable elements of the Skibidi Toilet Copyrighted Works ("Infringing Material"). *Id.*

Next Level also appears to have recently acquired the domain name skibiditoilet.com (the "Infringing Domain Name") and has since used it to host a website for marketing the Infringing App (the "Infringing Site"). *See id.* Exs. 3-5. As of approximately December 2023, the skibiditoilet.com domain displayed a "parked" webpage indicating that it was for sale. *Id.*, Ex. 6. The seller wrote that the domain "is poised to become the epicenter of the viral 'Skibidi Toilet' web series by Alexey Gerasimov." *Id.* The seller noted that the term "Skibidi Toilet" was searched for between 1 million to 10 million times a month, and that the Boom Channel had reached "32.5 Million Subscribers and Counting." *Id.* The seller made its pitch: "SkibidiToilet.com is ***strategically positioned*** as the go-to destination for anything related to the hilarious war between toilets and tech-savvy characters. ***This is your opportunity to own a piece of the Skibidi Toilet legacy***

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

*and leverage its popularity*." *Id.* (emphasis added). Next Level appears to have attempted to gain that leverage; when Next Level posted the Infringing Site in 2024, it falsely stated on the Infringing Site that Skibidi Toilet was created by Sergey Osadchy, Next Level's principal, in 2020. *Id.*, Ex. 4. These statements are demonstrably false, and Next Level has not even attempted to corroborate them.

Like the Infringing App itself, the Infringing Site contains unauthorized Infringing Material. *Id.*, Ex. 3. Next Level has similarly used Infringing Material on Next Level's social media accounts on at least X (@skibidisurvival), Instagram (@skibidi_toilet_survival), Facebook (Skibidi Toilet), and TikTok (@skibiditoiletsurvival) (the "Infringing Social Media Accounts"). *Id.* Exs. 7-10. Next Level uses Infringing Material in the Infringing App itself and in advertising the Infringing App on the App Store and Google Play, on the Infringing Site, and on the Infringing Social Media Accounts, in violation of Invisible Narratives' rights in the Skibidi Toilet Copyrighted Works and Skibidi Toilet Trademark. Significantly, the "profile picture" Next Level uses for each of the Infringing Social Media Accounts is an illicit reproduction of the iconic Skibidi Toilet main character from Episode 1.

Next Level has even taken its fraudulent scheme to the United States Copyright Office ("Copyright Office") and the United States Patent and Trademark Office ("PTO"), to make it appear that these agencies have "blessed" Next Level's false claims to hold intellectual property rights in Skibidi Toilet content. In particular, Next Level brazenly obtained certificates of registration ("Fraudulently-Obtained Copyright Registrations") from the Copyright Office for 17 images deposited with the Copyright Office, based on Invisible Narratives' copyrighted characters depicted and delineated in Skibidi Toilet (the "Fraudulent Deposits"). *Id.*, Exs. 11-12. In its applications, Next Level knowingly provided false information to the Copyright Office, stating that "Serhii Osadchyi" is the author of, and Next Level is the "claimant" (i.e., owner) of, the Fraudulent Deposits. *Id.* In fact, these characters first appeared in episodes of Skibidi Toilet created by Boom and now owned by Invisible Narratives. Boom Decl. ¶ 47, Ex. 26. Next Level also obtained Fraudulently-Obtained Copyright Registrations for three images that are not based on characters appearing in the Skibidi Toilet series, but which Next Level has represented as being characters from the Skibidi Toilet series (the "Non-Skibidi Toilet Deposits"). Boom Decl. ¶ 48, Ex. 27; Trachtenberg Decl., Exs. 13-14.

In applying for registration of the Fraudulent Deposits, Next Level was required to transmit (i.e., reproduce) the Fraudulent Deposits to the Copyright Office to serve as the required deposit copies. 17 U.S.C.

§ 408(b); 37 C.F.R. § 202.20; Compendium of Copyright Office Practices §§ 204.1(A), 204.3(A), 1508.1 (3d ed. 2021). Next Level's activities pertaining to registering the Fraudulent Deposits constitute infringements of Invisible Narratives' exclusive rights to reproduce and prepare derivative works based on Invisible Narratives' copyrights in Skibidi Toilet, including the characters therein as well as fraud on the Copyright Office. 17 U.S.C. § 106.

Similarly, Next Level applied for trademark registrations with the United States Patent and Trademark Office and other foreign trademark offices ("Fraudulent Trademark Applications"). Trachtenberg Decl., Ex. 15. The trademarks sought to be registered using the Fraudulent Trademark Applications incorporate the phrase "Skibidi Toilet" and, in many cases, depict an image of a character that is an authorized reproduction of, or derivative work based on, a Skibidi Toilet Character owned by Invisible Narratives. *Id.*; Boom Decl. ¶ 49, Ex. 28. In fact, when the PTO refused to register Next Level's application Serial No. 79387724 in view of one of Invisible Narratives' SKIBIDI TOILET trademarks, Next Level argued that its applied-for mark differed from Invisible Narratives' mark because Next Level's mark contained the *stolen image* of the main character from Episode 1, also owned by Invisible Narratives:



*See* Trachtenberg Decl., Ex. 26.

Invisible Narratives has attempted to use tools outside of litigation to stop Next Level's unlawful infringement. For example, the DMCA incorporates a safe harbor limiting copyright infringement liability for various classes of "service providers," including those who store allegedly infringing material on their systems "at the direction of a user." 17 U.S.C. § 512(c)(1). To avail itself of this limitation, a service provider must, upon receipt of a DMCA Takedown Notice compliant with the DMCA, "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." *Id.*

§ 512(c)(1)(C). In accordance with the DMCA, Invisible Narratives sent DMCA Takedown Notices to Google and Apple under the DMCA, truthfully stating that the Infringing App infringed Invisible Narratives' Skibidi Toilet Copyrighted Works (and Skibidi Toilet Trademark). Trachtenberg Decl., Ex. 16-17.

Rather than cease its infringing conduct, Next Level provided Google and Apple with "counter-notifications" under Section 512(g) of the DMCA ("Counter-Notifications"), which permit service providers to restore access to material that had previously been disabled, without incurring copyright liability. *See* 17 U.S.C. § 512(g)(2)(B)-(C). In its Counter-Notifications, Next Level falsely claimed that Next Level owned the relevant Skibidi Toilet trademarks and copyrights. Trachtenberg Decl., Ex. 18-20. To support its false and deceptive copyright ownership allegations, Next Level cited its Fraudulently-Obtained Copyright Registrations. *Id.* Ex. 19-20. While Google and Apple appear to have disabled access to the Infringing App, they may reinstate the Infringing App in their storefronts based on Next Level's false Counter-Notifications. 17 U.S.C. § 512(g)(2)(B)-(C).

## IV. Defendant's False Notification and Threats to Disable the Entire Boom Channel

More recently, Next Level has escalated its fraudulent scheme, necessitating the immediate filing of this action. In particular, on or before January 24, 2025, Next Level submitted a DMCA Takedown Notice to YouTube under the DMCA (the "False Notification"). Boom Decl. ¶ 44, Ex. 25. The False Notification alleged that Next Level owns "20 (twenty) characters, registered with the U.S. Copyright Office"—in other words, the Fraudulently-Obtained Copyright Registrations. *Id.* The False Notification also alleged that a video entitled "skibidi toilet – season 25 (all episodes)" ("Skibidi Toilet Season 25"), hosted on the Boom Channel, used those characters "without [Next Level's] permission." *Id.*

Under the DMCA, a valid DMCA Takedown Notice requesting removal of allegedly infringing material must contain, among other things, a "physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed," a "statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," and a "statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(c)(3)(A)(i), (v), (vi). Thus, Next Level's False Notification must have had all of these elements, as well.

Of course, none of these statements are true; Boom (not Next Level) created, and Invisible Narratives owns, the Skibidi Toilet web series and the characters therein. *See* Section I, *supra*; Boom Decl. ¶¶ 13-40. Nevertheless, on or about January 24, 2025, YouTube emailed Boom, indicating that Next Level had submitted its False Notification. Boom Decl., Ex. 25. As a result of the False Notification and in reliance on the false statements described above, YouTube removed the video entitled "Skibidi Toilet Season 25" from the Boom Channel, and has prevented YouTube users from viewing the video. *Id.* Despite Invisible Narratives' submitting multiple Counter-Notifications, to date, YouTube has yet to reinstate access to Skibidi Toilet Season 25. Trachtenberg Decl., Exs. 21-22; Boom Decl. ¶¶ 51-52, Exs. 30-31. After Skibidi Toilet Season 25 was removed, fans expressed widespread frustration and concern, including in comments on social media. Goodman Decl. ¶ 16, Ex. 6. One fan wrote: "Might as well leave the Skibidi Fandom & Unsucribe to daboom's channel.  It's been an honor to be apart Of the Skibidi Fandom hope all of you will heal from the FZCO [Next Level] situation trust me I have a huge hate against FZCO." *Id.* The harm to Invisible Narratives was particularly egregious because there was widespread excitement and anticipation over release of a new episode on the Boom Channel. *Id.* ¶ 17.

The January 24 email from YouTube also stated that the Boom Channel "received a copyright strike," and that it "now ha[s] 1 copyright strike." Boom Decl., Ex. 25. YouTube also indicated that "[i]f you get multiple copyright strikes, we'll have to terminate your channel"—despite the first copyright strike being based on an illegitimate False Notification. *Id.*

On or about January 27, 2025, Boom received an email from an email address purporting to belong to Next Level, with the subject line: "Next Level Apps Technology – FZCO negotiations proposal." *Id.* ¶ 50, Ex. 29. The January 27 email states that Next Level is the "current owner" of certain Skibidi Toilet related trademarks in the EU and China, as well as "characters from this universe, as evidenced by documents issued by the U.S. Copyright Office" (in other words, the  Fraudulently-Obtained Copyright Registrations). *Id.* Next Level's January 27 email also states that the Boom Channel "infringes the aforementioned trademarks as well as our company's copyrights," and that "[w]e have performed a precautionary removal of the video infringing our IP rights"—i.e., by submitting the False Notification. *Id.* Next Level's January 27 email then states: "**In view of the above, we suggest that you enter into a dialog with us and resolve all contentious issues**

**through negotiations, which will save time and budget. We expect your response by January 31, 2025, and then we will use all legal tools to protect our brand**." *Id.*

Further, on or about February 5, 2025, Invisible Narratives received a nearly identical email from an email address purporting to belong to Next Level, with the subject line: "Skibidi Toilet copyright violation." Goodman Decl. ¶ 21, Ex. 7. The February 5 email again states that Next Level is the "current owner" of certain Skibidi Toilet related trademarks in the EU and China, as well as "characters from this universe, as evidenced by documents issued by the U.S. Copyright Office" (in other words, the Fraudulently-Obtained Copyright Registrations). *Id.* Next Level's February 5 email also states that the Boom Channel "infringes the aforementioned trademarks as well as our company's copyrights," and that "[w]e have performed a precautionary removal of the video infringing our IP rights"—i.e., by submitting the False Notification. *Id.* Next Level's February 5 email then states: "**In view of the above, we suggest that you enter into a dialog with us and resolve all contentious issues through negotiations, which will save time and budget. We expect your response by February 6, 2025. Also, be informed that we are going to take down another video this week as a final warning before channel termination**." *Id.*

Based at least on the circumstances surrounding Next Level's use of the Infringing Site and its mafia-like threats contained in its communications to Boom and Invisible Narratives and "suggest[ions]" about "dialog" (*see* Boom Decl. Ex. 29; Goodman Del. Ex. 7), Next Level's false statements in the False Notification are not just inaccurate, but fraudulent. Next Level's statement that it owns the copyrights in the Fraudulent Deposits is not just false (*see* Section I, *supra*), but *knowingly* false. Next Level cannot possibly have had a "good faith belief" that Boom's use of the characters in Skibidi Toilet Season 25 was "not authorized by the copyright owner, its agent, or the law." And while Next Level made a *sworn* statement that it "is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed," that statement apparently amounts to perjury. Next Level knows that it is not the owner of any exclusive right in the Fraudulent Deposits or any other copyright associated with Skibidi Toilet, and knows that it is not authorized to act on behalf of Invisible Narratives, the true owner of such copyrights.

Next Level knows that it does not have a legitimate claim to any copyrights or other intellectual property rights in Skibidi Toilet or its characters. But Next Level continuously and willfully spreads its false message that it created and owns Skibidi Toilet copyrights, and is using its knowledge of YouTube's DMCA

Takedown Notice policy, including its "multiple strikes" policy, to hold legitimate Skibidi Toilet content hostage—unless Next Level is paid a hefty ransom.

## V.    Next Level's Principals Have Also Attempted to Extort Other Copyright Owners Using the Same Fraudulent Scheme

Invisible Narratives isn't the first victim of Next Level and its principals, Serhii Osadchyi, Vladislav Ciapchis, Eduard Ciapchis, and Stanislav Chuprykov—who are also principals of Iviliia Millionic IT Sp z o.o., a Polish private limited liability company ("Iviliia"). Trachtenberg Decl. ¶ 24. Last year, Ducky Ltd. ("Ducky"), a software development company in Cyprus, filed a Complaint for Declaratory Relief against Iviliia. *See Ducky Ltd. v. Iviliia Millionic IT Sp z o.o.* Case No. 3:24-cv-02268-PHK (N.D. Cal.); Trachtenberg Decl., Ex. 23. Ducky is the developer and owner of a mobile gaming application called Melon Sandbox. Trachtenberg Decl., Ex. 23 at ¶ 1. As the Complaint alleges, Iviliia, through its principals, "fraudulently registered copyrights with the United States Copyright Office covering certain artworks in the [Melon Sandbox] Game," and "used these fraudulently obtained copyright registrations to extort settlement payments and licensing fees from third parties." *Id.*, Ex. 23 at ¶¶ 3-4.  Iviliia even "became so brazen as to request the removal of the Game from the Apple App Store and the Google Play Store," and "also sought to fraudulently obtain a trademark registration with the United States Patent and Trademark Office." *Id.*, Ex. 23 at ¶¶ 5-6. Iviliia failed to respond or otherwise appear in the action, and Ducky recently moved for a default judgment. *Id.*, Ex. 24. In support of its motion, Ducky cited (among other things) two emails **directly from Serhii Osadchyi**—the false "creator" of Skibidi Toilet—claiming that Iviliia owned Melon Sandbox and attempting to extract a license agreement from a third-party app developer. *Id.*, Ex. 25 at 14-17 of 117. Ducky also cited an email exchange with an app developer who created an app called "Skibidi Mods for Melon Sandbox" and **believed that he had obtained licenses from Iviliia with respect to Melon Sandbox, and Next Level with respect to Skibidi Toilet.** *Id.*, Ex. 25 at 44-46 of 117. As Ducky's counsel observed, **the innocent app developer "ha[d] been cheated" by both Iviliia and Next Level**, who, unbeknownst to either Ducky or the developer, are run by nearly identical individuals, and who are not the true owners of Melon Sandbox or Skibidii Toilet. *Id.*, Ex. 25 at 43 of 117. That the principals of Iviliia have perpetuated an identical, fraudulent scheme against Invisible Narratives demonstrates that Next Level, through those same individuals, is acting willfully, and will continue to

cause irreparable injury to the reputation and goodwill of Invisible Narratives and the Skibidi Toilet brand and web series—unless enjoined by this Court.

<strong><u>ARGUMENT</u></strong>

## I.    The Court Has Personal Jurisdiction Over Next Level

"A district court lacks authority to grant a preliminary injunction [or TRO] when it lacks personal jurisdiction over defendants." *Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*, 2024 WL 189013, at *1 (N.D. Cal. Jan. 17, 2024) (citing *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1066 (9th Cir. 1985)). But personal jurisdiction is easily satisfied here, because Next Level consented to the jurisdiction of this Court when submitting its Counter-Notification to at least Google in response to Invisible Narratives' DMCA Takedown Notices regarding the Infringing App.

The DMCA requires a Counter-Notification to include "[t]he subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." 17 U.S.C. § 512(g)(3)(D). Next Level provided such a statement in at least its Counter-Notification to Google (and it may have done so in its Counter-Notification to Apple). Trachtenberg Decl., Exs. 18-20. Google is headquartered in the Northern District of California. Accordingly, the Court has personal jurisdiction over Next Level and may issue a TRO and preliminary injunction against it. *See Viral DRM*, 2024 WL 189013, at *2 ("These counter notices are sufficient to meet Plaintiff's threshold burden to establish the Court's personal jurisdiction").

## II.    The Court Should Grant Invisible Narratives' *Ex Parte* Application for a Temporary Restraining Order Against Next Level's Attempting to Disable Access to Skibidi Toilet Material on the Boom Channel

Invisible Narratives seeks a temporary restraining order and preliminary injunction prohibiting Next Level from taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices to YouTube claiming that any such material hosted on infringes any copyrights to Skibidi Toilet works or the characters therein. The legal standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Facebook, Inc. v.*

*BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). Specifically, to obtain a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) its case is "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [plaintiff's] favor," and (4) "an injunction is in the public interest." *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018). The Ninth Circuit evaluates these factors on a "sliding scale," such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the "sliding scale" approach, "'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### A.  Invisible Narratives Is Likely to Succeed on the Merits of Its False Notification Claim under 17 U.S.C. § 512(f)(1)

The DMCA provides a cause of action against a person "who knowingly materially misrepresents" in a Notification "that material or activity is infringing." 17 U.S.C. § 512(f)(1). To prevail on a Section 512(f) claim, a plaintiff must establish (i) that a defendant "knowingly and materially misrepresented" that copyright infringement has occurred, (ii) that an online service provider "relied" on such misrepresentations, and (iii) that the plaintiff has been "injured" as a result. *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) (citing *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004)). Invisible Narratives is likely to establish Next Level's liability.

First, Invisible Narratives has shown that Boom, and not Next Level, created the characters in Skibidi Toilet, and Invisible Narratives owns the copyrights in those characters. Boom Decl. ¶¶ 5-43; Goodman Decl. ¶¶ 4-5. Next Level's statements to the contrary in the False Notification—i.e., that Next Level created and owned the Skibidi Toilet characters, that it had a "good faith belief" that Skibidi Toilet's use of those characters was "not authorized," and that it was "is authorized to act on behalf of" the copyright owner in those characters, Boom Decl. Ex. 25—are misrepresentations. (In fact, the three characters depicted in the Non-Skibidi Toilet Deposits appear nowhere in Skibidi Toilet Season 25 or any Skibidi Toilet episode. Boom Decl. ¶ 48, Ex. 27.) Second, because Next Level did not create those characters, it is impossible for its statements to the contrary

to be anything but "knowing." Indeed, Next Level's post-False Notification communications with both Boom and Invisible Narratives belie any claim of good faith or innocent intent: Next Level has essentially invited Invisible Narratives to negotiate the terms of a ransom payment in exchange for Next Level ceasing to submit its DMCA Takedown Notices. Boom Decl. ¶ 50, Ex. 29; Goodman Decl. ¶ 21, Ex. 7.

Third, YouTube disabled access to Skibidi Toilet Season 25 as a result of the False Notification. Boom Decl. Ex. 25; Goodman Decl. ¶ 15. Thus, Next Level's misrepresentations in the False Notification were "material" and were statements on which YouTube relied. Finally, Invisible Narratives has been injured in that, following the False Notification and resulting YouTube takedown, its legitimately published video has been inaccessible to the world, prohibiting Invisible Narratives from speaking to Skibidi Toilet Fans in the manner that they crave. Goodman Decl. ¶ 18. Invisible Narratives has also lost revenue stemming from advertising placement connected with the Skibidi Toilet Season 25 video. Goodman Decl. ¶ 20. And YouTube has assessed the Boom Channel a "copyright strike," and has warned that "multiple strikes" will result in disabling the entire account. Boom Decl. Ex. 25; Goodman Decl. ¶ 19.

## B. Invisible Narratives Has Suffered and Will Suffer Immediate Irreparable Harm in the Absence of a Temporary Restraining Order

Most immediately, Next Level's False Notification and threats to submit additional false DMCA Takedown Notices to YouTube jeopardizes the viability of the entire Boom Channel. The DMCA's limitations on liability for service providers only apply if the service provider "has adopted and reasonably implemented … a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). For practical purposes, this means that if an account is subject to multiple DMCA Takedown Notices under the DMCA— even though those DMCA Takedown Notices are merely allegations of infringement, and not findings or proof of infringement—the account is at risk of being terminated. *See* Lydia Pallas Loren, Deterring Abuse of the Copyright Takedown Regime by Taking Misrepresentation Claims Seriously, 46 Wake Forest L. Rev. 745, 779 (2011) ("[M]ere assertions of infringement can result in the termination of the accounts because the user is branded a 'repeat infringer' despite a lack of any court determination concerning infringement. It is appropriate to use the misrepresentation claim as a mechanism for obtaining a court's assistance in stopping abuse of the takedown regime."). YouTube, for instance, assigned a "strike" to the Boom Channel based on

Next Level's False Notification alone, without an adjudication or even investigation of the allegations made in the DMCA Takedown Notices, and warned that "multiple strikes" (i.e., multiple DMCA Takedown Notices) would result in termination of the account. Boom Decl. Ex. 25; Goodman Decl. ¶ 19.

Of course, if Next Level's fraudulent takedown scheme is permitted to succeed, Invisible Narratives would lose revenue from the placement of advertisements before and during performance of Skibidi Toilet videos, if YouTube acts to either disable access to individual videos or the entire Boom Channel. Goodman Decl. ¶ 20. Those revenues are theoretically compensable (although the likelihood of any recovery from an overseas entity such as Next Level is infinitesimally small).

However, the closure of the Boom Channel is likely to cause other irreparable harms that ***cannot be remedied by money damages***. The Boom Channel is the only source of authentic Skibidi Toilet content. *Id.* Without the Boom Channel, the 45 million current subscribers to the Boom Channel and countless other consumers would never know where to find authentic episodes of Skibidi Toilet which sparked the global craze. *Id.* As exemplified by many social media comments, this would cause Invisible Narratives to suffer an immense hit to the goodwill underlying its Skibidi Toilet brand. *Id.* Invisible Narratives would likewise be unable to control its reputation, and the high-quality content that Skibidi Toilet consumers have come to expect and love. *Id.* Invisible Narratives would also lose the ability to effectively speak to Skibidi Toilet fans everywhere, by publishing content in the manner and place of its choosing—which, as the true copyright owner of Skibidi Toilet, it should be able to do. *Id.* Because these substantial injuries are "not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Williams v. Lobel Fin. Corp.*, 673 F. Supp. 3d 1101, 1108 (C.D. Cal. 2023) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996)).

Commentators on the DMCA have extolled preliminary relief for Section 512(f) violations as "an important procedural tool to prevent the irreparable harm that can result from repeated takedown notices." Loren, 46 Wake Forest L. Rev. at 779. Other courts in this district have acknowledged that disabling access to content using false DMCA Takedown Notices results in irreparable harm such as that described above, and have granted temporary restraining orders on this basis. *See Amaretto Ranch Breedables v. Ozimals, Inc.*, 2010 WL 5387774, at *2 (N.D. Cal. Dec. 21, 2010). This Court should do the same.

### C.    The Balance of Hardships Tips Decidedly in Invisible Narratives' Favor

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987). If Invisible Narratives' requested TRO is granted, Invisible Narratives will be able to continue enjoying its rightful ability to stream Skibidi Toilet videos and obtain revenue from the same without interference from Next Level. The burden on Next Level, on the other hand, is not great; it will merely need to refrain from submitting DMCA Takedown Notices regarding Skibidi Toilet videos with unsubstantiated claims of copyright authorship and ownership. If Next Level seriously faced any burden from the presence of allegedly infringing videos on the Boom Channel, it could have sued or even sent its DMCA Takedown Notice long ago. And if Next Level *still* seriously believes that Boom's legitimate Skibidi Toilet videos infringe any valid copyrights it may have, it is free to litigate its claims for copyright infringement in federal court (assuming, of course, it has a factual and legal basis to do so under Fed. R. Civ. P. 11—which it does not). *Cf. Diebold*, 337 F. Supp. 2d at 1204-05 ("The fact that Diebold never actually brought suit against any alleged infringer suggests strongly that Diebold sought to use the DMCA's safe harbor provisions … as a sword to suppress publication … rather than as a shield to protect its intellectual property.").

If the TRO is denied, however, Next Level will likely carry out its threats to submit additional false DMCA Takedown Notices to YouTube, who in turn will likely terminate the Boom Channel and disable access to all legitimately created Skibidi Toilet episodes (along with other non-Skibidi Toilet related videos on the channel) for users worldwide. As described above, those harms—including both irreparable and compensable ones—are immense.

### D.    The Public Interest Favors a Temporary Restraining Order

"The public interest portion of the preliminary injunction test asks, 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Amaretto Ranch Breedables*, 2010 WL 5387774, at *3 (quoting *Independent. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 659 (9th Cir. 2009)). Here, there is no identifiable public interest that will be negatively affected by granting Invisible Narratives preliminary relief. In fact, the public has an interest in being able to view legitimately produced Skibidi Toilet content, which would be adversely affected if a TRO does not issue and Next Level

is able to disable access to Skibidi Toilet videos or the Boom Channel itself. Thus, the public interest would be served by granting the TRO.

### E.    Proceeding on a Noticed Motion Would Be Futile, and a Limited *Ex Parte* Temporary Restraining Order Is Therefore Necessary

While there are "'very few' circumstances justifying the issuance of an *ex parte* TRO," *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)), Invisible Narratives respectfully submits that such circumstances are present here. Next Level has already submitted one False Notification to YouTube. Boom Decl. Ex. 25; Goodman Decl. ¶ 15. YouTube has taken action to remove access to one video, assessed the Boom Channel a "copyright strike," and warned Invisible Narratives that the channel may be disabled due to its "multiple strikes" policy. Boom Decl. Ex. 25; Goodman Decl. ¶ 19. Undoubtedly aware of that policy, Next Level communicated to Invisible Narratives on February 5, demanding a response by February 6 (only a day later), and indicating that Next Level will continue to submit additional false DMCA Takedown Notices to YouTube with the aim of disabling the channel—unless Invisible Narratives pays it a hefty ransom. Goodman Decl. ¶ 21, Ex. 7. Thus, Next Level has shown its ability and willingness to lie about its alleged copyright authorship and ownership, and to *quickly* move to submit false DMCA Takedown Notices with the simple push of a button.

In the meantime, Next Level is a defendant located in Dubai, United Arab Emirates ("UAE"). Trachtenberg Decl., Exs. 11, 13, 19. To the extent that service of documents overseas must be accomplished through international agreements, such as the Hague Convention, effecting such service can take as long as several months. But the UAE is not a party to the Hague Convention, complicating service issues even further. Even if the Court were to permit service on Next Level by email (as sought by Invisible Narratives herein), there is simply no time to provide Next Level with notice of this action or the instant application for injunctive relief in the first instance. Without a TRO, it is likely that Next Level will proceed with its threats and cause immediate, irreparable injury within days, before any reasonable deadline for Next Level to respond to Invisible Narratives' motion. *See Rovio*, 907 F. Supp. 2d at 1094 (TRO permissible when "a known party cannot be located in time for a hearing" or where providing advance "notice to the defendant would render fruitless the further prosecution" of the claim).

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

Invisible Narratives has thus established that "immediate and irreparable injury, loss, or damage will result to [Invisible Narratives] before [Next Level] can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Moreover, as Invisible Narratives' counsel has detailed, it is contemporaneously emailing copies of all pleadings and papers in this action to the email address from which it has received correspondence from Next Level regarding its previous shakedown attempts. Trachtenberg Decl. ¶ 23.

As the Supreme Court has stated, temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974). That is all that Invisible Narratives seeks to accomplish here. Invisible Narratives thus requests that its TRO be granted, so that the "status quo" (i.e., availability of the Boom Channel and its content) can be preserved until a formal hearing and decision on Invisible Narratives' motion for a preliminary injunction. *See Amaretto Ranch Breedables*, 2010 WL 5387774, at *2 n.3 (granting TRO and recognizing that "Defendant will have a complete opportunity to challenge [the court's merits] determinations at the preliminary injunction hearing.").

**III.    The Court Should Grant Invisible Narratives' Application for an Order to Show Cause for a Preliminary Injunction Against Next Level's (i) Attempting to Disable Access to Skibidi Toilet Material on the Boom Channel, and (ii) Infringement of the Skibidi Toilet Trademarks**

Invisible Narratives seeks a preliminary injunction prohibiting Next Level from taking any actions to remove or disable access to any material hosted on the Boom Channel. As the legal standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction, *Facebook*, 499 F. Supp. 3d at 732, the Court should enter a preliminarily injunction prohibiting Next Level from taking those actions, for the same reason it should grant Invisible Narratives' Application for a TRO. Invisible Narratives is likely to succeed on its False Notification Claim under § 512(f); irreparable harm will befall Invisible Narratives in the absence of an injunction; and both the balance of hardships and the public interest favor an injunction. *See* Section II.A-D, *supra*.

Invisible Narratives *also* seeks a preliminary injunction prohibiting Next Level from otherwise infringing the Skibidi Toilet Trademark. As shown below, an injunction is warranted on this ground as well.

### A. Invisible Narratives Is Likely to Succeed on the Merits of Its Claims for Trademark Infringement and Unfair Competition

To prevail on a claim for infringement of an unregistered trademark, a plaintiff must show that "(1) it has a valid, protectable trademark, and (2) the defendant's use of the mark is likely to cause confusion." *So. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). A plaintiff's claims for unfair competition, state and common law trademark infringement, and unfair competition under Cal. Bus. & Prof. Code § 17200 are subject to the identical standard. *See Williams-Sonoma, Inc. v. Amazon.com, Inc.*, 2019 WL 7810815, at *2 n.2 (N.D. Cal. May 2, 2019).

### 1. Invisible Narratives Owns a Valid, Protectable Trademark in SKIBIDI TOILET

A mark is protectable if it "(1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). As the title of a series of videos produced and delivered on the Boom Channel, SKIBIDI TOILET is eligible for trademark protection without a showing of secondary meaning. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1084 n.9 (S.D. Cal. 2017) ("In contrast to the title of a single [work], the title of a series may be registered as a mark.") (citing *In re Scholastic Inc.*, 23 U.S.P.Q.2d 1774 (T.T.A.B. 1992)); *Teaching Co. v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 577 (E.D. Va. 2000) ("Series titles can function as trademarks…. Several courts have treated non-descriptive series titles as suggestive and not requiring proof of secondary meaning."). In any event, the undeniable popularity of Skibidi Toilet would provide more than adequate evidence of secondary meaning, even if it were required. Goodman Decl. ¶¶ 7-13, Exs. 2-5.

Finally, there is no dispute that Invisible Narratives owns the SKIBIDI TOILET mark. "[T]he standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Moreover, under the "territoriality principle," "priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world." *Grupo Gigante SA de CV v. Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir. 2004).

Boom (Alexey Gerasimov) first used the SKIBIDI TOILET mark in connection with the streaming of the Skibidi Toilet web series beginning February 7, 2023 (Episode 1) on the Boom Channel, accessible throughout the United States and elsewhere. Boom Decl. ¶¶ 5, 10. Sergey Osadchy (Next Level's co-founder) purports to have "decided to create a new project titled 'Skibidi Toilet'" in "early 2020." Trachtenberg Decl., Ex. 7. Setting aside the implausibility of those statements being true, there is **no** evidence—from Mr. Osadchy's say-so or otherwise—that Next Level or its founders **used SKIBIDI TOILET in commerce** in the United States before Boom's first use. Thus, Boom's use of SKIBIDI TOILET in connection with his streaming video series establishes priority of use, and thus ownership, of SKIBIDI TOILET. And Boom assigned his rights in the SKIBIDI TOILET trademark (along with the goodwill in the Skibidi Toilet web series) to Invisible Narratives. Boom Decl. ¶¶ 42-43; Goodman Decl. ¶¶ 4-5. Thus, Invisible Narratives stepped "into the shoes" of Boom, and "succeeds to [his] rights and priorities," including priority of use to the SKIBIDI TOILET mark. 2 J. Thomas McCarthy, McCarthy on Trademarks § 18:15 (5th ed.)).

### 2.    Next Level's Use of the Skibidi Toilet Trademarks Is Likely to Cause Confusion

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998). The likelihood of confusion is typically assessed using a set of eight factors set out in *AMF, Inc. v. Sleekcraft Boats*: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d 314, 348-49 (9th Cir. 1979). In the context of trademark infringement on the Internet, "(1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel" have been traditionally seen as important *Sleekcraft* factors. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). While no longer the "controlling troika" in every Internet case, *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011), these three factors strongly favor a finding that confusion is likely in this case.

Invisible Narratives' and Next Level's marks are not only similar, they are identical. Each party prominently uses the SKIBIDI TOILET mark to denote their goods and services. As to the relatedness of the parties' goods and services,[1] Invisible Narratives uses SKIBIDI TOILET in connection with a series of episodes (audiovisual works) streamed on the Internet. Boom Decl. ¶¶ 5-41; Goodman Decl. ¶¶ 7-8. Next Level *also* uses SKIBIDI TOILET in connection with video clips (audiovisual works) streamed on the Internet, advertising the Infringing App, and featuring the same characters and similar themes (that happen to infringe the Skibidi Toilet Copyrighted Works as well). Trachtenberg Decl., Exs. 1-5, 7-10. Moreover, mobile applications (such as the Infringing App) and streaming videos are both forms of digital entertainment media, and there are countless examples of computer games (interactive media) being created and published based on the plots, settings, and characters in movies and television shows (linear media). As the Ninth Circuit recognized, "[e]ntertainment studios control all sorts of related industries: publishing, clothing, amusement parks, **computer games** and an endless list of toys and kids' products." *Dreamwerks*, 142 F.3d at 1131 (emphasis added) (rejecting defendant's argument that "making movies and promoting sci-fi merchandise are different businesses promoting different products"). Finally, both Invisible Narratives and Next Level use the Web, and even social media, as a marketing channel. Invisible Narratives' Skibidi Toilet videos are available through the Boom Channel, and Next Level advertises its Infringing App on the Infringing Site and Infringing Social Media Accounts.

The remaining *Sleekcraft* factors further support a finding of likelihood of confusion. **First**, as discussed above, SKIBIDI TOILET is at least suggestive, and commercially very popular. Goodman Decl. ¶¶ 8-13, Exs. 2-5. Thus, it is a strong mark. **Second**, SKIBIDI TOILET content and related goods and services (such as apps) are overwhelmingly consumed by young consumers who access content on YouTube for free, and are extremely unlikely to exercising a high degree of care in scrutinizing the goods and services and their sources. *See UV RML NL Assets, LLC v. Coulter Ventures, LLC*, 2021 U.S. Dist. LEXIS 233260, at *29-30 (C.D. Cal. Oct. 22, 2021) ("Here, Defendant's films are made available to consumers online at no cost…. [T]he Court does not agree with Defendant that the average consumer exercises a high degree of care in consuming free content."). **Third**, the circumstances of the illicit acquisition of the Infringing Site, the two

---

[1] Goods are sufficiently related when they are "complementary," "sold to the same class of purchasers," or "similar in use and function." *Sleekcraft*, 599 F.2d at 350.

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE

emails sent to Boom and Invisible Narratives "suggest[ing] that [they] enter into a dialog" about a ransom payment (*see* Boom Decl. Ex. 29; Goodman Decl. Ex. 7), and the fact that Next Level's principals have engaged in the same type of fraudulent scheme before (*see* Factual Background, § V, *supra*) are clear indicators of Next Level's bad faith. **Fourth**, as discussed above, video games (including mobile games) are a natural area of expansion for purveyors of video content. Finally, although Invisible Narratives has collected no evidence of actual confusion to date—unsurprisingly, since this lawsuit has just begun—"actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Trade Mark Act." *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991).

### B.   Invisible Narratives Has Suffered and Will Suffer Immediate Irreparable Harm in the Absence of a Preliminary Injunction.

Under the Trademark Modernization Act of 2020, a trademark plaintiff is entitled to a rebuttable presumption of irreparable harm once it establishes a likelihood of success on the merits. 15 U.S.C. § 1116(a); *Vital Pharms. v. Ph.D. Mtkg., Inc.*, 2021 WL 6881866, at *5 (C.D. Cal. Mar. 12, 2021). Next Level is unlikely to be able to produce evidence to rebut this presumption.

"[W]holly apart from the presumption," irreparable harm may be found in "the loss of control over one's trademarks, reputation, and goodwill[.]" *City & Cty. of San Francisco v. City of Oakland*, 2024 WL 4775737, at *17 (N.D. Cal. Nov. 12, 2024) (quoting *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021). As described above, if Next Level is able to continue using SKIBIDI TOILET to promote its Infringing App and other media—especially since Next Level uses Infringing Material in the content of such media—Invisible Narratives will be unable to control its reputation, goodwill, or the perceived quality of Skibidi Toilet content. Goodman Decl. ¶ 20. Such harms are not readily calculable or compensable. *See City & Cty. of San Francisco*, 2024 WL 4775737, at *17 (recognizing "depriv[ing] plaintiff] of control over its Mark" is a "type of damage [that] is likely to be difficult or impossible to quantify in a way that would support a jury verdict for damages.").

### C.   The Balance of Hardships and the Public Interest Factors Favor an Injunction.

The balance of hardships favors Invisible Narratives. "Without an injunction, [Invisible Narratives] will suffer irreparable harm from the unauthorized use of its marks," but Next Level will only suffer "lost profits from operating under a false name." *Fitness Int'l, LLC v. Alspaugh*, 2022 WL 17886049, at *2 (C.D.

Cal. Oct. 16, 2022). "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Biomax Health Prods. LLC v. Perfectx USA*, 2023 WL 4477210, at *3 (N.D. Cal. July 11, 2023) (quoting *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)).

Finally, "preliminary relief is appropriate … to promote the public interest in protecting trademarks generally." *Fitness Int'l*, 2022 WL 17886049, at *2 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)).

## IV.    The Court Should Not Require Invisible Narratives to Post a Bond.

Under Rule 65(c), "[t]he court may issue a ... temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have considerable discretion in setting the amount of the bond, "and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotations omitted).

As explained above, Next Level is making knowing misrepresentations about its copyright ownership of the Fraudulent Deposits and is infringing the Skibidi Toilet Marks by using SKIBIDI TOILET in connection with the Infringing App, Infringing Site, and Infringing Social Media Accounts. Invisible Narratives' requested injunction will not cause harm. It will instead stop Next Level's unlawful conduct. Thus, there is no realistic likelihood of harm to Next Level from an injunction, and Invisible Narratives respectfully requests that the Court exercise its discretion to dispense with the filing of a bond in this case.

## V.    The Court Should Permit Invisible Narratives to Serve Next Level by Email.

Invisible Narratives requests that the Court authorize service of the Complaint, summons, and all papers associated with this Application by email to ip_support@nxtlvlcomp.org, ciapchisvladislav@gmail.com, and shareholder@nxtlvlcomp.org. Under Federal Rule of Civil Procedure 4(f)(3), a plaintiff may serve an individual in a foreign country "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Under Federal Rule of Civil Procedure 4(h)(2), a

plaintiff may serve a foreign corporation in the same manner. *See* Fed. R. Civ. P. 4(h)(2); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). "[T]he only requirements of Rule 4(f)(3) alternative service are that such service is: (1) ordered by the court, (2) not expressly prohibited by an international agreement, and (3) reasonably calculated to give the defendant notice and an opportunity to be heard, to comport with constitutional notions of due process." *Sarieddine v. Vaptio, Inc.*, 2020 WL 8024863, at *2 (C.D. Cal. Dec. 2, 2020). In addition, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"—it "is neither a last resort nor extraordinary relief." *Trader Joe's Co. v. Desertcart Trading FZE*, 2023 WL 3959376, at *2 (N.D. Cal. June 12, 2023) (quoting *Rio Props.*, 284 F.3d at 1015).

Here, Next Level purports to be located in Dubai, UAE. Trachtenberg Decl., Exs. 11, 13, 19. UAE is not a signatory to the Hague Convention or any other international agreement with the United States regarding service of process, and Invisible Narratives knows of no international agreement that expressly prohibits service by email in the UAE. A number of courts have found the same. *See Trader Joe's*, 2023 WL 3959376, at *2 (citing cases). Even assuming a method of service of paper documents through diplomatic or other channels exists, such a method is not reasonable or practicable given the posture of this action, the likely time to effect service by such means, and the need for *immediate* injunctive relief, as discussed above.

Moreover, email to ip_support@nxtlvlcomp.org, ciapchisvladislav@gmail.com, and shareholder@nxlvlcomp.org "is reasonably calculated to give notice to" Next Level, so that it may be heard. *See id.* Next Level submitted its False Notification to YouTube and provided its ip_support@nxtlvlcomp.org email address as "Contact info." Boom Decl. Ex. 25. It also emailed both Boom and Invisible Narratives from that same email address, attempting to initiate discussions for a ransom payment—emails which necessitated this lawsuit and Application. Boom Decl. Ex. 29; Goodman Decl. Ex. 7. Clearly, Next Level is anticipating a response from Invisible Narratives at that email address regarding the issues raised in this action. Moreover, when Invisible Narratives submitted a DMCA Takedown Notice to Google to disable access to the Infringing App in the Google Play store, Next Level (through its co-founder, Vladislav Ciapchis), submitted its False Counter-Notification which stated, among other things, that "I will accept service of process from the person who provided notification under subsection (c)(1)(C) [i.e., Invisible Narratives] or an agent of such person" and provided ciapchisvladislav@gmail.com as its applicable email address. Trachtenberg Decl., Ex. 20.

Finally, Next Level submitted its Counter-Notification to Apple from the shareholder@nxlvlcomp.org email address, and corresponded with Apple, copying Invisible Narratives' counsel, using that address. *Id.*, Ex. 18.

**VI.    CONCLUSION**

For the foregoing reasons, Invisible Narratives respectfully requests that the Court grant its motion for an *ex parte* temporary restraining order, preliminary injunction, and permitting alternative service.

Respectfully submitted,

Dated: February 18, 2025

By:    */s/ Jie (Lisa) Li*
Ian C. Ballon
Jie (Lisa) Li
Amy L. Kramer (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP

Attorneys for Plaintiff Invisible Narratives, LLC

PLAINTIFF'S POINTS & AUTHORITIES ISO APPLICATION FOR TEMPORARY RETRAINING ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER PERMITTING ALTERNATIVE SERVICE