**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

INVISIBLE NARRATIVES LLC,

      Plaintiff,

v.

NEXT LEVEL APPS TECHNOLOGY –
FZCO,

      Defendants.

CASE NO. 5:25-cv-01644 -NM

**DECLARATION OF PHILIP ALLISTER IN SUPPORT OF MOTION FOR *EX PARTE*
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR
PRELIMINARY INJUNCTION**

I, Philip Allister, hereby declare and state as follows:

1.      I am over the age of eighteen years old and am competent to give this Declaration. I have personal knowledge of the facts set forth herein and, if called to testify, I would and could competently testify to those facts.

2.      I am submitting this Declaration in support of Plaintiff Invisible Narratives LLC's ("Invisible Narratives") *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause for Preliminary Injunction in the above-captioned matter.

3.      I am a Director of Berkeley Research Group UK Limited (Dubai Branch) ("BRG"). BRG was retained by Greenberg Traurig, LLP on behalf of Invisible Narratives LLC ("Invisible Narratives") to conduct an investigation into Next Level Apps Technology – FZCO ("Next Level"). The object of the investigation was to confirm the legal, ownership, and subsidiary structure of Next Level, and profile both Next Level and its identified stakeholders through information in the public domain.

4.      Attached hereto as **Exhibit 1** is BRG's investigative report ("Report"), which sets out BRG's findings.

5.      In particular, BRG confirmed that Next Level is a Free Zone Company located in the Dubai Silicon Oasis Free Zone, United Arab Emirates ("UAE"). Next Level has the following

Directors and Shareholders:

| Ownership and Management | |
| --- | --- |
| Directors | Serhii Osadchyi (Managing Director)<br><br>Eduard Ciapchis<br><br>Vladislav Ciapchis<br><br>Stanislav Chuprykov |
| Shareholders | Eduard Ciapchis (38%)<br><br>Vladislav Ciapchis (37%)<br><br>Stanislav Chuprykov (25%) |

*See* Report § 2.1.1.

6.      During the course of BRG's investigation, BRG learned that the four Directors of Next Level are also connected to Iviliia Millionic IT Spolka Z Ograniczona Odpowiedzialnoscia ("Iviliia"), a Polish software development company incorporated in 2022. In particular, Serhii Osadchyi is identified as Iviliia's CEO; Eduard Ciapchis is a 50% shareholder in Iviliia; Vladislav Ciapchis is also a 50% shareholder in Ivillia; and Stanislav Chuprykov is listed as an authorized signatory for Iviliia. *See* Report §§ 3.1.3, 4.1.3, 4.2.4, 4.3.4, 4.4.2, 4.5.2.

7.      BRG also learned that Iviliia is subject to U.S. court litigation filed by Ducky Ltd, the creators of online game *Melon Sandbox*. *See* Report §§ 4.6.4, 5.1.1-5.1.7, and Exhibits 3 and 4.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  February 18, 2025

_____

Philip Allister



# Company Profile:

## Next Level Apps Technology – FZCO

**14 February 2025**

INTELLIGENCE THAT WORKS



**BRG**  **INTELLIGENCE THAT WORKS**

# Contents

1 **Introduction** ...................................................................................................... **1**
   1.1 Background and Scope of Work................................................................ 1
   1.2 Disclaimer ................................................................................................ 1
2 **Next Level Apps Technology – FZCO** ............................................................ **2**
   2.1 Registration Details .................................................................................. 2
   2.2 Similarly-named entities ........................................................................... 2
3 **Subject Profile**................................................................................................. **4**
   3.1 Summary.................................................................................................. 4
   3.2 Findings ................................................................................................... 4
4 **Stakeholders' Profiles** ................................................................................... **8**
   4.1 Summary.................................................................................................. 8
   4.2 Serhii Osadchyi ....................................................................................... 8
   4.3 Eduard Ciapchis .................................................................................... 10
   4.4 Vladislav Ciapchis ................................................................................. 11
   4.5 Stanislav Chuprykov ............................................................................. 11
   4.6 Rudyy Taras Hryhorovych ..................................................................... 12
5 **US Lawsuit Taken against Iviliia** ................................................................ **13**
Appendix A **List of Exhibits** ............................................................................... **14**
Appendix B **Glossary** ......................................................................................... **15**

# 1   Introduction

## 1.1   BACKGROUND AND SCOPE OF WORK

1.1.1   Greenberg Traurig Limited ("**Counsel**"), on behalf of Invisible Narratives LLC ("**Client**"), engaged Berkeley Research Group UK Limited (Dubai branch) ("**BRG**") in relation to an investigation into Next Level Apps Technology – FZCO ("**Next Level**" or the "**Subject**").

1.1.2   The scope of work was to confirm the legal, ownership, and subsidiary structure of the Subject, and profile both Next Level, and its identified stakeholders, through information in the public domain.

1.1.3   This report, dated 14 February 2025, sets out our findings.

## 1.2   DISCLAIMER

1.2.1   The opinions expressed in this publication are those of the individual author(s) and do not represent the opinions of BRG or its other employees and affiliates. The information provided in the publication is not intended to and does not render legal, accounting, tax, or other professional advice or services, and no client relationship is established with BRG by making any information available in this publication, or from you transmitting an email or other message to us. None of the information contained herein should be used as a substitute for consultation with competent advisors.

# 2      Next Level Apps Technology – FZCO

## 2.1      REGISTRATION DETAILS

2.1.1    BRG confirmed the following registration details of the Subject following inquiries with a source at the Dubai Silicon Oasis free zone in Dubai ("**DSO**").

| Registration Information | |
|---|---|
| Registered Name (English) | Next Level Apps Technology – FZCO |
| Registered Name (Arabic) | ايكونيك إكستنشينج - ش م ح |
| Legal Status | Active |
| Licence Number | 33430 |
| Incorporation Date | 3 August 2023 |
| Licence Expiry Date | 2 August 2025 |
| Registered Address | DSO-IFZA, IFZA Properties, Dubai Silicon Oasis |
| Registered Capital | AED 50,000 |
| Registered Activities | Social Media Applications Development & Management |
| | Computer Systems & Communication Equipment Software Design |
| **Ownership and Management** | |
| Directors | Serhii Osadchyi (Managing Director) |
| | Eduard Ciapchis |
| | Vladislav Ciapchis |
| | Stanislav Chuprykov |
| Shareholders | Eduard Ciapchis (38%) |
| | Vladislav Ciapchis (37%) |
| | Stanislav Chuprykov (25%) |
| Subsidiary(ies) | n/a |

*Table 2-1      Subject's Registration Information*

2.1.2    BRG retrieved a copy of the Subject's trade licence. This is enclosed as **Exhibit 1** of this report.

## 2.2      SIMILARLY-NAMED ENTITIES

2.2.1    During our research, we identified two similarly-named entities to the Subject.

*UAE Entity*

2.2.2    The first, *Next Level Apps – FZE*, is, like the Subject, also registered with DSO. It was incorporated on 8 November 2022, and holds a trade licence until 7 November 2025.

2.2.3    Despite the similarities in name, it is neither a shareholder or subsidiary of the Subject, and is therefore seemingly a separate legal entity.[1]

*Swiss Entity*

2.2.4    Secondly, we identified *NextLevelApps GmbH*, a registered software development company incorporated in Swizterland in December 2011.[2]

2.2.5    According to Swiss corporate records, this entity is wholly owned by its sole director, Sebastian Hubrich. As we have not identified any direct link to the Subject, we have also assess that this is another unrelated entity.

2.2.6    Therefore, for the remainder of this report, BRG has focused its research only on Next Level Apps Technology – FZCO, and its four directors set out in **Table 2-1** above (the "**Directors**").

---

[1] BRG has not undertaken research to confirm the owners and management of this entity, who may be the same as the individuals connected to the Subject. This research can be done, if required.
[2] https://www.nextlevelapps.ch/

# 3    Subject Profile

## 3.1    SUMMARY

3.1.1    Next Level's online profile is almost exclusively associated with its development of a mobile application called *Skibidi Toilet*, a game based on the animated YouTube series of the same name.[3]

3.1.2    The Subject is accused of plagiarising the YouTube series by successfully obtaining various trademarks to its name and characters (the "**Scheme**").[4] We understand the original Skibidi Toilet content was published by YouTube channel *DaFuqBoom*, a partner of the Client.

3.1.3    As set out in **section 4.6.7**, the Scheme is similar to that detailed in a US lawsuit against a Polish software development company, Iviliia Millionic IT Spolka Z Ograniczona Odpowiedzialnoscia ("**Iviliia**"), connected to the Directors.

## 3.2    FINDINGS

3.2.1    The Subject has a limited online profile for what we would expect to find for a software development company.

*Presence on app stores*

3.2.2    As expected, it holds a profile on the Apple App Store, although this profile does not list it as the developer of any apps.[5] It also previously had a profile on the Google Play store, which is currently offline.[6]

3.2.3    According to archived screenshots of these app stores, the Subject was due to launch an app, *Skibidi Toilet*, which was claimed to be associated with a content series of the same name published on YouTube.

3.2.4    The Subject's app was due to be available for download in February 2025. However, the profile page for this app was recently removed from these stores. Archived screenshots show the app maintained a profile on the App Store as recently as 27 January 2025.[7]

*Presence on social media*

3.2.5    In addition, the Subject holds social media accounts with Facebook, Instagram, X, and YouTube. However as detailed below, none of these profiles have the popularity consistent with the underlying YouTube series, which, for context, boasts over 45 million followers.

---

[3] https://web.archive.org/web/20250127143828/https://apps.apple.com/us/developer/next-level-apps-technology/id1761371138
[4] https://www.reddit.com/r/skibiditoilet/comments/1dwvseb/company_next_level_apps_technology_fzco_is/?rdt=52500;
[5] https://apps.apple.com/us/developer/next-level-apps-technology/id1761371138?l=es-MX
[6] https://play.google.com/store/apps/developer?id=NEXT+LEVEL+APPS+TECHNOLOGY+FZCO&hl=ar
[7] https://web.archive.org/web/20250127143828/https://apps.apple.com/us/developer/next-level-apps-technology/id1761371138

3.2.6    For each of the below social media profiles, most engagement from users are commenting on the Scheme. For example, one post on *X*, in an apparent direct reference to the Subject states, "*FZCO what have you done to skibidi toilet*".[8]

3.2.7    The Subject's social media accounts are as follows:

**Facebook**

- Account name: Skibidi Toilet | Dubai
- Status: Active
- URL: www.facebook.com/people/Skibidi-Toilet/61563277741932
- Launch Date: 2 August 2024
- Followers: 16

**Instagram**

- Account name: Skibidi Toilet Survival
- Status: Active
- URL: www.instagram.com/skibidi_toilet_survival
- Launch Date: 25 August 2024 (date of first post)
- Followers: 9

**X**

- Account name: Skibidi Toilet
- Status: Active
- URL: https://x.com/skibidisurvival
- Launch Date: August 2024
- Followers: 393

**YouTube**

- Account name: Skibidi Toilet TV series
- Status: Inactive[9]
- URL: www.youtube.com/@SkibidiToiletTVseries
- Launch Date: unknown

**Websites**

- Site name: Skibidi Toilet
- Status: Active[10]
- URL: https://skibiditoilet.com/; https://nxtlvlcomp.org/; https://nextlvlapps.com/
- Launch Date: September 2024[11]

---

[8] https://x.com/ParrotKing831/status/1883039666997542927
[9] https://www.youtube.com/@SkibidiToiletTVseries
[10] https://skibiditoilet.com/
[11] According to archived screenshots of the website beginning 12 September 2024. Screenshots from 26 August 2024 indicate the domain was still available for purchase.

*Websites*

3.2.8    As mentioned above, we have identified two additional websites affiliated to the Subject: nxtlvlcomp.org; and nextlvlapps.com.

3.2.9    According to domain registration databases, **nxtlvlcomp.org** was registered on 3 October 2023, approximately two months after the Subject was incorporated in the UAE. Further analysis did not identify a registrant contact for the domain, as these have been made private.

3.2.10    The website lists its physical address as the Subject's registered address, while also including the email address *office@nextlvlapps.com*.[12] The website also lists two phone numbers: a UAE landline number, +97142285286, and a Ukrainian number, +380671958465. Reverse searches on this email and phone numbers did not provide any additional leads into their ownership, while attempts to contact the above number failed.

3.2.11    According to domain registration databases, **nextlvlapps.com** was registered on 27 March 2023, in the period before the Subject was incorporated, but after the similarly-named *Next Level Apps FZE* (referenced in **section 2.2**) was incorporated. Further analysis did not identify a registrant contact for the domain, as these have been made private.

3.2.12    This website has both English- and Ukraine-language versions. There is no reference to the UAE on its website; the only contact details listed on this website is listing the following physical address in Ukraine as its office: *Stepana Bander[y], 9b, Kyiv, Ukraine*.

3.2.13    We identified that the office of another software developer, US-headquartered Solvd Inc, is at the same address[13] - but there is nothing to suggest the Subject is linked to this company. Given the slight spelling variations between the two websites (*"nxt"* vs. *"next"*), it may be that nxtlvlcomp.org, the website which references the UAE office is deliberately referencing the Ukraine-based nextlvlapps.com to add another layer of confusion to its true identity.

*Presence on IP databases*

3.2.14    Other than its social media, and associated comments on blogs about the Scheme, the Subject's profile is limited to trademarks owned by the company, all of which relate to Skibidi Toilet.

3.2.15    For example, according to the World Intellectual Property Organization ("**WIPO**") database,[14] Next Level applied for naming and image rights to Skibidi Toilet, between 10 September 2024 and 1 November 2024.[15]

---

[12] https://nxtlvlcomp.org/
[13] https://www.linkedin.com/company/solvdinc/about/
[14] https://trademarks.justia.com/owners/next-level-apps-technology-fzco-6100488/
[15] https://trademarks.justia.com/794/14/skibidi-79414126.html; https://www.trademarkelite.com/wipo/trademark/trademark-owner/NEXT%20LEVEL%20APPS%20TECHNOLOGY%20-%20FZCO/1685086

3.2.16    According to WIPO, filed 871 applications to 112 unique trademarks across 46 countries. The Subject's international trademark applications are enclosed as **Exhibit 2** of this report.

3.2.17    As of the date of this report, 24 trademarks have been registered, with applications for 88 of the trademarks pending.

3.2.18    According to a trademark database, the listed correspondent for several of the afore-mentioned applications filed by the Subject is *Rudyy Taras Hryhorovych*, who provides a contact address in Ukraine.

3.2.19    Hryhorovych, alongside the Directors (collectively, the "**Stakeholders**"), are profiled in the following section.

# 4    Stakeholders' Profiles

## 4.1    SUMMARY

4.1.1    In this section we profile the Subject's four directors, alongside Rudyy Taras Hryhorovych, the provided contact for many of the company's trademark applications.

4.1.2    Of the Stakeholders, Serhii Osadchyi ("**Serhii**") appears to the public face of Next Level. However, we note he is the only director who is not also a shareholder. It is unclear therefore whether he is being used by the shareholders to hide their involvement, or whether his ownership in the business which is being held on his behalf by the other shareholders.

4.1.3    As set out in **section 5** in more detail, Serhii, alongside Next Level's shareholders, are connected to Polish software development company Iviliia. This company was the subject of a lawsuit in a US district court in relation to similar allegations now being made against Next Level.[16]

## 4.2    SERHII OSADCHYI

4.2.1    As set out in **Table 2-1**, Serhii Osadchyi ("**Serhii**") is the Managing Director of Next Level, and is described as the creator of Skibidi Toilet on the company website. According to corporate records, Serhii was born on ▮▮▮▮▮▮▮▮▮▮.

4.2.2    Based on his name, he appears to be a Ukrainian national, although we could not identify an address for the individual, nor confirm his domicile.

4.2.3    The same individual is, however, a director in two Polish software companies, as set out below.[17] While corporate filings do not list his nationality, nor a contact address, they do list his Polish ID number as being ▮▮▮▮▮▮▮.[18]

4.2.4    As set out in **section 4.6.7**, one of these two companies, Iviliia, is connected to all four Next Level directors and connected to activities similar to the Scheme, while the second, Quantum AI Group, is only associated with Serhii:

(I)    **Iviliia** is an active software and IT company incorporated on 28 June 2022. Serhii is the company's CEO, but, like Next Level, does not own shares in this business.

(II)    **Quantum AI Group** is an active software and IT company incorporated on 13 November 2024. Serhii is a director and 50% shareholder of this company. The other 50% of the company is held by an individual named Oleksandr Semchenko, an authorised signatory of Iviliia.

---

[16] See Exhibit 3
[17] Polish corporate records
[18] In Poland, an ID number is provided for those "domiciled for permanent or temporary (more than 3 months) residence and persons applying for an identity card or passport, as well as people who under the provisions of Polish law need to have a social security number".

4.2.5    While this company does not have a discernible public profile, corporate records list the following company email address: *2kchosen@gmail.com*.

4.2.6    While we were not able to identify the holder of this address, we note its is connected to a Google Maps user profile, which has left public reviews for businesses in Poland in both Russian and Polish language, which may fit Serhii's profile.[19]

4.2.7    Other than these directorships, Serhii has a very limited public profile. While Serhii Odachyi is a very common name, we identified two individuals who work as software developers in Ukraine.[20]

*Image of Serhii on Skibidi Toilet website*

4.2.8    We note an image is attributed to Serhii on the company website (reproduced below (left)).[21] We conducted searches of this image using a powerful reverse image search tool. This identified photos of the same individual from an April 2018 local Ukrainian media article reporting on firefighters receiving an award from a local church in Svitlovodsk, Ukraine (reproduced below (right)).[22]

    

4.2.9    While not conclusive, nor do we have a name for the firefighter found in the images, this may suggest this is the individual involved in Next Level, or may indicate that the firefighter's image has been taken and reproduced on the Next Level website.

*Social Media and Email Review*

4.2.10    While there are numerous social media accounts for individuals named Serhii Osadchyi, none of these, based on available identifiers, could be attributed to the Managing Director of Next Level.

4.2.11    In addition, BRG reviewed three email addresses provided by Counsel that were purportedly linked to Serhii:

---

19
https://www.google.com/maps/contrib/113664800253682101295/reviews/@21.2436563,54.2391069,4z/data=!3m1!4b1!4m3!8m2!3m1!1e1?entry=ttu&g_ep=EgoyMDI1MDIxMC4wIKXMDSoASAFQAw%3D%3D
20 https://dou.ua/users/sergii-osadchyi/ ; https://www.linkedin.com/in/serhii-osadchyi/?originalSubdomain=ua
21 https://skibiditoilet.com/about-us
22 https://svetlovodsk.com.ua/11974-svtlovodsk-ryatuvalniki-otrimali-cerkovn-nagorodi.html

(I)     soufiane.za9zo919@gmail.com;

(II)    nlatechnology.legal@gmail.com; and

(III)   over.the.immense@gmail.com.

4.2.12    The first email is linked to a Google account belonging to an individual named *Soufiane Meez* based in Morocco. We identified accounts on LinkedIn and Facebook for an individual with the same name, also based in Morocco, who works as an application developer.[23] Given his background, it is possible that he was hired by the Subject to help develop their app. We did not identify any direct connections between this individual and the Stakeholders.

4.2.13    Reverse searches conducted against *nlatechnology.legal@gmail.com* did not yield any results, while an anonymous Google account was identified for *over.the.immense@gmail.com*, however, its posts are private and therefore no further investigation could be conducted.

## 4.3      EDUARD CIAPCHIS

4.3.1     As set out in **Table 2-1**, Eduard Ciapchis ("**Eduard**") is a director and 38% shareholder of Next Level. According to corporate records, he is a Moldovan-Israeli national born on 11 June 1988.

4.3.2     In historical UK corporate filings, Eduard provided the following residential address in Ukraine: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ukraine, 02100.

4.3.3     We have not identified any additional addresses for Eduard, who also holds the following Polish ID: ▮▮▮▮▮▮▮.

4.3.4     In addition to Next Level, Eduard is connected to the following two companies:

(I)     **Iviliia**, in which he is a 50 percent shareholder; and

(II)    **BAT Performance Limited**, a now-dissolved UK company in which he was the sole shareholder. The company was dissolved in March 2022, shortly after its incorporation in October 2020.

*Social Media and Email Review*

4.3.5     Eduard otherwise maintains a very small public domain profile, with references limited to corporate record databases. We identified one social media account for Eduard – a Facebook account with private settings.[24] Therefore, no further investigation could be conducted.

---

[23] https://www.linkedin.com/in/soufiane-meez-2a62111a5/?locale=ar_AE&trk=people-guest_people_search-card; www.facebook.com/soufiane.rajawi.1694?comment_id=Y29tbWVudDo4MjIwNTMwMzc5MDc3NjFfODI3NzQ5NzY3MzM4MDg4
[24] https://www.facebook.com/people/Eduard-Ciapchis/pfbid02HwkDRKg3G1NNdpqFwTzgmqHVes9Sm5Q1Bozns4T7sakJnXHaevpXKJmmDTTQ5Qhbl/

## 4.4       VLADISLAV CIAPCHIS

4.4.1    As set out in **Table 2-1**, Vladislav Ciapchis ("**Vladislav**") is a director and 37% shareholder of Next Level. He appears to be a younger brother of Eduard, born on 13 March 1993, and is a fellow Moldovan-Israeli national.

4.4.2    Aside from Next Level, the only other corporate affiliation identified for Vladislav is **Iviliia**, where he holds the remaining 50 percent of equity.

4.4.3    He holds Polish person ID ██████████, however no correspondence address was identified for Vladislav in Poland or other jurisdictions.

*Social Media and Email Review*

4.4.4    Vladislav maintains a very limited public profile. We identified one social media account for Vladislav, a *LinkedIn* profile which appears to be outdated and has no followers.[25]

4.4.5    According to information provided by Counsel, he may hold residence in Romania; however, public domain research did not identify any additional links to this jurisdiction.

4.4.6    Counsel also provided the following two email addresses and a UAE phone number for Vladislav:

(I)      ciapchisvladislav@gmail.com;

(II)     shareholder@nxtlvlcomp.org; and

(III)    ██████████

4.4.7    Reverse searches against these identifiers did not find additional identifiers for the individual; the only reference to *shareholder@nxtlvlcomp.org,* for example, was it being listed on the Subject's previously active Google Play profile.[26]

4.4.8    Similarly, searches against Vladislav's email address did not find any additional identifiers or online profiles.

## 4.5       STANISLAV CHUPRYKOV

4.5.1    As set out in **Table 2-1,** Stanislav Chuprykov ("**Stanislav**") is a director and 25% shareholder of Next Level. According to Polish corporate records, Stanislav was born on 4 January 1992.

4.5.2    Searches of global databases and corporate data aggregators did not identify any other corporate affiliations for Stanislav beyond Next Level and Iviliia, where he is listed as an authorised signatory.

4.5.3    He holds Polish ID number ██████████ and, while his nationality could not be confirmed, his name suggests he is likely a Ukrainian national.

---

[25] https://www.linkedin.com/in/vladislav-ciapchis-486551180/?originalSubdomain=ua
[26] https://play.google.com/store/apps/details?id=com.skibiditoilet.survival&hl=tr

*Social Media and Email Review*

4.5.4    We did not identify a social media presence, email addresses, or any other references in the public domain for Stanislav.

## 4.6    RUDYY TARAS HRYHOROVYCH

4.6.1    As set out in **section 3.2**, Rudyy Taras Hryhorovych ("**Hryhorovych**") is the listed correspondent for several trademark applications filed by the Subject.

*Patent Trademark Services*

4.6.2    Hryhorovych is the beneficiary of several companies in Ukraine according to local corporate aggregators, including Patent Studio Ruddy LLC. It is through this company he describes himself on his *LinkedIn* profile as a "Patent and trademark attorney".[27]

4.6.3    While we identified one instance of Hryhorovych being named on a trademark application for a seemingly unrelated Cypriot company, Blauberg Cyprus Ltd,[28] Hryhorovych appears to have also filed trademarks on behalf of Iviliia.

4.6.4    As set out in **section 5**, Iviliia was subject to US court action by Ducky Ltd, the creators of online game *Melon Sandbox*. Hryhorovych (under the spelling, "Rudyi Taras Hryhorovych") filed two trademarks applications on behalf of Iviliia over Melon Sandbox-related content.[29] [30]

*Contact Information*

4.6.5    Hryhorovych appears resident in Kyiv, with multiple databases listing the following partial correspondence address: *PO Box 131, Kyiv-136 04136, Ukraine*.[31]

4.6.6    No other companies of note were identified connected to this address, nor to Patent Studio Ruddy LLC's registered address: *Office 1012, Building 13, Vyhovskoho Ivana Street, Kyiv, Ukraine, 04136*, nor its phone number: +380502240855.

*Social Media and Email Review*

4.6.7    We did not identify a social media presence, email addresses, or any other references in the public domain for Hryhorovych.

---

[27] https://www.linkedin.com/in/taras-rudyy-19855865
[28] https://iprop-ua.com/madrid/1831191/
[29] https://branddb.wipo.int/en/brand/WO500000001824162
[30] Around the same time, Hryhorovych / Iviliia obtained at least one trademark over a further online game known as *Infinite Craft*, although due to a seemingly lack of online uproar in relation to this action (or perhaps because of the Ducky Ltd legal action) it is unclear whether this game was ultimately targeted by the company.
[31] https://www.trademarkelite.com/wipo/trademark/trademark-detail/1829684/SKIBIDI-TOILET; https://www.ipo.gov.uk/t-tmj.htm/t-tmj/tm-journals/2025-002/WO0000001830277.html

# 5      US Lawsuit Taken against Iviliia

5.1.1     As set out in **section 4**, the Directors are all connected to a Polish software company called Iviliia.

*Corporate Information*

5.1.2     The company was registered on 28 June 2022, and according to Polish corporate records is affiliated with the following individuals:

(I)      **Eduard** - 50% shareholder;

(II)     **Vladislav** - 50% shareholder;

(III)    **Serhii -** President of the Board;

(IV)     **Stanislav -** authorised signatory

(V)      **Maksym Stus** – authorised signatory; and

(VI)     **Oleksandr Semchenko** – authorised signatory.[32]

*US litigation proceedings*

5.1.3     On 16 April 2024, Cyprus-registered Ducky Ltd filed a complaint with the US District Court, Northern District of California, against Iviliia for fraudulent copyright claims related to the game mobile phone game *Melon Sandbox*.

5.1.4     The Court granted a default judgment in favour of Ducky Ltd, declaring it the rightful owner of Melon Sandbox, after Iviliia failed to respond. BRG obtained the US case filings for *Ducky Ltd v. Iviliia Millionic IT Sp. Z O.O.*, enclosed as **Exhibit 3** of this report.

5.1.5     Like the accusations levelled at Next Level, Iviliia attempted to claim ownership over the Melon Sandbox game (developed by Ducky Ltd) and its graphical elements by fraudulently registering copyrights and submitting Digital Millennium Copyright Act ("**DMCA**") takedown notices on platforms like Google Play, Apple App Store, and YouTube. Iviliia falsely reported Melon Sandbox and related games as copyright infringements, resulting in removal requests on these platforms.[33]

5.1.6     After falsely claiming trademark over the content, Iviliia allegedly offered licencing agreements to third parties in exchange for compensation. In response, Ducky Ltd also successfully filed an injunction against Ivillia in a Polish court, according to the court filings.[34]

5.1.7     Examples of trademark applications made by Iviliia in relation to this game are provided in **Exhibit 4**.

---

[32] Oleksandr Semchenko is the co-owner of Quantum AI Group with Serhii.
[33] Exhibit 3 – Ducky Ltd v. Iviliia Millionic IT Sp. Z o.o - case filings
[34] ibid

# Appendix A    List of Exhibits

| Exhibit No. | Exhibit Name |
|---|---|
| 1 | Exhibit 1 – Trade Licence |
| 2 | Exhibit 2 – Trademark Applications made by the Subject |
| 3 | Exhibit 3 – Ducky Ltd v. Iviliia Millionic IT Sp. Z o.o - case filings |
| 4 | Exhibit 4 – Trademark Applications made by Iviliia |

# Appendix B    Glossary

| Term | Definition |
|---|---|
| BRG | Berkeley Research Group (UK) Limited (Dubai branch) |
| Client | Invisible Narratives LLC |
| Counsel | Greenberg Traurig Limited |
| Directors | (i) Serhii Osadchyi<br>(ii) Eduard Ciapchis<br>(iii) Vladislav Ciapchis<br>(iv) Stanislav Chuprykov |
| DMCA | Digital Millennium Copyright Act |
| DSO | Dubai Silicon Oasis free zone authority |
| Eduard | Eduard Ciapchis |
| IP | Intellectual Property |
| Iviliia | Iviliia Millionic IT Spolka Z Ograniczona Odpowiedzialnoscia |
| Next Level | Next Level Apps Technology – FZCO |
| Scheme | Allegations of fraudulent activity by the Subject against Skibidi Toilet |
| Serhii | Serhii Osadchyi |
| Stakeholders | (i) Directors<br>(ii) Rudyy Taras Hryhorovych |
| Subject | Next Level Apps Technology – FZCO |
| Vladislav | Vladislav Ciapchis |
| WIPO | World Intellectual Property Organization |

رخصة تجارية
# Trade License
Government of Dubai



## License Details        تفاصيل الرخصة

| | | | |
|---|---|---|---|
| License Number | 33430 | 33430 | رقم الرخصة |
| Licensee | NEXT LEVEL APPS TECHNOLOGY - FZCO | نكست ليفل أبس تكنولوجي - ش م ح | صاحب الرخصة |
| Trade Name | NEXT LEVEL APPS TECHNOLOGY - FZCO | نكست ليفل أبس تكنولوجي - ش م ح | الإسم التجاري |
| Legal Status | Freezone Company | شركة بمنطقة حرة | الشكل القانوني |
| Issue Date | 03-Aug-2023 | 03-Aug-2023 | تاريخ الإصدار |
| Expiry Date | 02-Aug-2025 | 02-Aug-2025 | تاريخ الانتهاء |
| Issuing Authority | Dubai Integrated Economic Zones Authority | سلطة دبي للمناطق الاقتصادية المتكاملة | جهة الاصدار |

## Company Manager        مدير الشركة

| | | | |
|---|---|---|---|
| Name of Manager | Serhii Osadchyi | سيرهي أوسادشي | إسم مدير الشركة |

## Address        العنوان

| | | | |
|---|---|---|---|
| Premises No | DSO-IFZA | DSO-IFZA | رقم المقر |
| Building Name | IFZA Properties | IFZA Properties | إسم المبنى |
| Area Name | Dubai Silicon Oasis | واحة دبي للسيليكون | إسم المنطقة |

## Activities        الأنشطة

Social Media Applications Development & Management        خدمات تطوير وإدارة مواقع التواصل الإجتماعي

Computer Systems & Communication Equipment Software Design        تصميم نظم الحاسب الالي وأجهزة الاتصال








# GLOBAL BRAND DATABASE - FIND BY BRAND NAME REPORT  *Generated on February 12, 2025*

**Owner:** contains the word **'next level apps technology - fzco'**

Results view   Statistics view

| | | | |
|---|---|---|---|
| 1. | **SKIBIDI TOILET**  | National Trademark Application Pending (September 19, 2024) Number 1279172 Expiry date 2034-09-20 | Nice class 3 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
| 2. | [No verbal element]  | National Trademark Application Pending (September 19, 2024) Number 2363500 Expiry date 2034-09-20 | Nice class 3 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 3. | [No verbal element]  | National Trademark Application Pending (October 1, 2024) Number 2363563 Expiry date 2034-10-02 | Nice class 16 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 4. | **SKIBIDI TOILET**  | International Trademark International Registration in Force (October 1, 2024) Expiry date 2034-10-02 | Nice class 16 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 5. | **SKIBIDI TOILET**  | National Trademark Application Pending (September 19, 2024) Number M0020241825151 | Nice class 30 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (Ukraine) Country of filing Indonesia |
| 6. | [No verbal element]   | National Trademark Application Pending (November 1, 2024) Number 2369625 Expiry date 2034-11-02 | Nice class 28 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 7. | **SKIBIDI TOILET**  | International Trademark International Registration in Force (September 19, 2024) Expiry date 2034-09-20 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |



| 8. | **SKIBIDI TOILET** | National Trademark Application Pending (October 1, 2024) Number 40202427375V Expiry date 2034-10-02 | Nice class 16 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
|---|---|---|---|
| 9. | [No verbal element] | National Trademark Application Pending (September 19, 2024) Number 2365096 Expiry date 2034-09-20 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 10. | [No verbal element] | National Trademark Application Pending (September 10, 2024) Number 2362044 Expiry date 2034-09-11 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 11. | **SKIBIDI TOILET** | National Trademark Application Pending (October 1, 2024) Number 240153423 | Nice class 16 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 12. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 250102313 | Nice class 42 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 13. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 250101536 | Nice class 28 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 14. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 240153395 | Nice class 3 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 15. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 250101641 | Nice class 18 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 16. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 2502352 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Australia |
| 17. | **SKIBIDI TOILET** | National Trademark Application Pending (October 1, 2024) Number 2500707 | Nice class 16 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Australia |
| 18. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 79410890 | Nice class 14 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |
| 19. | **SKIBIDI TOILET** | National Trademark Application Pending (September 18, 2024) Number 79410596 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |
| 20. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 79410442 | Nice class 32 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |
| 21. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 79412843 | Nice class 21 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |
| 22. | **Gacha Club & Life 2 Mods: Nox, Nebula & Plus** | International Trademark International Registration in Force (February 6, 2024) Expiry date 2034-02-07 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY – FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, Hungary, Sweden, Slovenia, Slovakia, Ireland, USA, Estonia, Malta, European Union, Greece, Italy, China, Spain, Austria, Cyprus, Czech Republic, Poland, Romania, Netherlands |



| 23. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 40202430187T Expiry date 2034-11-02 | Nice class 18 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
|---|---|---|---|
| 24. | [No verbal element] | National Trademark Application Pending (November 1, 2024) Number 2372353 Expiry date 2034-11-02 | Nice class 35 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 25. | **SKIBIDI TOILET** | International Trademark International Registration in Force (November 1, 2024) Expiry date 2034-11-02 | Nice class 18 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 26. | **SKIBIDI TOILET** | National Trademark Application Pending (September 18, 2024) Number 1279765 Expiry date 2034-09-19 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
| 27. | **SKIBIDI TOILET SURVIVAL** | International Trademark International Registration in Force (September 10, 2024) Expiry date 2034-09-11 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Australia, UK, Canada |
| 28. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 1279289 Expiry date 2034-09-20 | Nice class 32 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
| 29. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number M0020241823322 | Nice class 3 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (Ukraine) Country of filing Indonesia |
| 30. | [No verbal element] | National Trademark Application Pending (November 1, 2024) Number 2371072 Expiry date 2034-11-02 | Nice class 41 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 31. | [No verbal element] | National Trademark Application Pending (September 17, 2024) Number 2370953 Expiry date 2034-09-18 | Nice class 43 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 32. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 40202428080Q Expiry date 2034-09-20 | Nice class 30 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
| 33. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number 1281641 Expiry date 2034-11-02 | Nice class 21 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
| 34. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 79410888 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |

| 35. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 2500852 | Nice class 32 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Australia |
|---|---|---|---|
| 36. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 2500747 | Nice class 3 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Australia |
| 37. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 240153587 | Nice class 32 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 38. | [No verbal element] | National Trademark Application Pending (September 18, 2024) Number 2365092 Expiry date 2034-09-19 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 39. | [No verbal element] | National Trademark Application Pending (September 19, 2024) Number 2365099 Expiry date 2034-09-20 | Nice class 14 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
| 40. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 40202428078V Expiry date 2034-09-20 | Nice class 14 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
| 41. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 1279742 Expiry date 2034-09-20 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
| 42. | **SKIBIDI TOILET** | International Trademark International Registration in Force (September 19, 2024) Expiry date 2034-09-20 | Nice class 32 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 43. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 240155330 | Nice class 30 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 44. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number 240155309 | Nice class 29 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 45. | **SKIBIDI TOILET** | International Trademark International Registration in Force (September 18, 2024) Expiry date 2034-09-19 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |





WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

| 46. | SKIBIDI TOILET |  | National Trademark Application Pending (November 1, 2024) Number 1282458 Expiry date 2034-11-02 | Nice class 35 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing New Zealand |
|---|---|---|---|---|
| 47. | SKIBIDI TOILET |  | International Trademark International Registration in Force (November 1, 2024) Expiry date 2034-11-02 | Nice class 25 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 48. | SKIBIDI TOILET |  | International Trademark International Registration in Force (November 1, 2024) Expiry date 2034-11-02 | Nice class 41 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 49. | SKIBIDI TOILET |  | International Trademark International Registration in Force (November 1, 2024) Expiry date 2034-11-02 | Nice class 42 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 50. | SKIBIDI TOILET |  | National Trademark Application Pending (November 1, 2024) Number 250102323 | Nice class 41 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 51. | SKIBIDI TOILET |  | National Trademark Application Pending (November 1, 2024) Number 250101644 | Nice class 21 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Thailand |
| 52. | SKIBIDI TOILET TOWER DEFENCE TITANS: CLOCKMAN, SPEAKERMAN, CINEMAMAN |  | International Trademark International Registration in Force (May 20, 2024) Expiry date 2034-05-21 | Nice class 9 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, Hungary, Sweden, Slovenia, Slovakia, Ireland, USA, Estonia, Malta, European Union, Greece, Italy, China, Spain, Austria, Cyprus, Czech Republic, Poland, Romania, Netherlands |
| 53. | SKIBIDI TOILET | | National Trademark Application Pending (November 1, 2024) Number 79413147 | Nice class 25 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

| # | Mark | Details | Info |
|---|---|---|---|
| 54. | **SKIBIDI TOILET** | National Trademark Application Pending (September 18, 2024) Number  2502474 | Nice class  9 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Australia |
| 55. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number  2502369 | Nice class  30 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Australia |
| 56. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number  1279785 Expiry date  2034-09-20 | Nice class  30 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  New Zealand |
| 57. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number  250102296 | Nice class  25 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Thailand |
| 58. | **SKIBIDI TOILET** | International Trademark International Registration in Force (November 1, 2024) Expiry date  2034-11-02 | Nice class  28 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country  Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 59. | **SKIBIDI TOILET** | National Trademark Application Pending (September 17, 2024) Number  250101638 | Nice class  43 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Thailand |
| 60. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number  240155338 | Nice class  14 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Thailand |
| 61. | [No verbal element] | National Trademark Application Pending (November 1, 2024) Number  2371071 Expiry date  2034-11-02 | Nice class  25 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Canada |
| 62. | **SKIBIDI TOILET** | National Trademark Application Pending (November 1, 2024) Number  1282130 Expiry date  2034-11-02 | Nice class  25 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  New Zealand |
| 63. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number  40202427302P Expiry date  2034-09-20 | Nice class  3 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  Singapore |
| 64. | **SKIBIDI TOILET** | National Trademark Application Pending (September 19, 2024) Number  79410061 | Nice class  3 Owner  NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing  USA |
| 65. | **SKIBIDI TOILET VS CAMERAMAN TV WOMAN X TV MAN VS G-MAN** | International Trademark International Registration in Force (November 30, 2023) Expiry date  2033-12-01 | Nice class  9 Owner  NEXT LEVEL APPS TECHNOLOGY – FZCO (UAE) Designation country  Germany, Belgium, Finland, Portugal, Bulgaria, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, Hungary, Sweden, Slovenia, Slovakia, Ireland, USA, Estonia, Malta, European Union, Greece, Italy, China, Spain, Austria, Cyprus, Czech Republic, Poland, Romania, Netherlands |



| | | | |
|---|---|---|---|
| 66. | **SKIBIDI TOILET** | International Trademark<br>International Registration in Force<br>(November 1, 2024)<br>Expiry date 2034-11-02 | Nice class 21<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Designation country** Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 67. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 18, 2024)<br>Number 40202427969Q<br>Expiry date 2034-09-19 | Nice class 9<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** Singapore |
| 68. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 19, 2024)<br>Number M0020241825150 | Nice class 29<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (Ukraine)<br>**Country of filing** Indonesia |
| 69. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (October 1, 2024)<br>Number M0020241823771 | Nice class 16<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (Ukraine)<br>**Country of filing** Indonesia |
| 70. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 1282132<br>Expiry date 2034-11-02 | Nice class 42<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** New Zealand |
| 71. | **SKIBIDI TOILET** | International Trademark<br>International Registration in Force<br>(September 19, 2024)<br>Expiry date 2034-09-20 | Nice class 3<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Designation country** Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 72. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 17, 2024)<br>Number 40202430580V<br>Expiry date 2034-09-18 | Nice class 43<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** Singapore |
| 73. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 40202430678Q<br>Expiry date 2034-11-02 | Nice class 41<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** Singapore |
| 74. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 40202430671Y<br>Expiry date 2034-11-02 | Nice class 25<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** Singapore |
| 75. | [No verbal element] | National Trademark Application<br>Pending (November 1, 2024)<br>Number 2371073<br>Expiry date 2034-11-02 | Nice class 42<br>**Owner** NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>**Country of filing** Canada |

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

| | | | | |
|---|---|---|---|---|
| 76. | **SKIBIDI TOILET** | | National Trademark Application<br>Pending (November 1, 2024)<br>Number 79412842 | Nice class 18<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing USA |
| 77. | **SKIBIDI TOILET** | | National Trademark Application<br>Pending (September 19, 2024)<br>Number 79410889 | Nice class 30<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing USA |
| 78. | **SKIBIDI TOILET** | | National Trademark Application<br>Pending (September 17, 2024)<br>Number 79412989 | Nice class 43<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing USA |
| 79. | [No verbal element] |  | National Trademark Application<br>Pending (November 1, 2024)<br>Number 2369626<br>Expiry date 2034-11-02 | Nice class 18<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Canada |
| 80. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (November 1, 2024)<br>Number 40202430155W<br>Expiry date 2034-11-02 | Nice class 28<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Singapore |
| 81. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (September 19, 2024)<br>Number M0020241825152 | Nice class 14<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO<br>(Ukraine)<br>Country of filing Indonesia |
| 82. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (September 19, 2024)<br>Number 40202428076T<br>Expiry date 2034-09-20 | Nice class 29<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Singapore |
| 83. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (November 1, 2024)<br>Number 1281518<br>Expiry date 2034-11-02 | Nice class 18<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| 84. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (November 1, 2024)<br>Number 1282134<br>Expiry date 2034-11-02 | Nice class 41<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| 85. | [No verbal element] |  | National Trademark Application<br>Pending (September 19, 2024)<br>Number 2363501<br>Expiry date 2034-09-20 | Nice class 32<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Canada |
| 86. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (October 1, 2024)<br>Number 1279194<br>Expiry date 2034-10-02 | Nice class 16<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| 87. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (September 19, 2024)<br>Number 1279698<br>Expiry date 2034-09-20 | Nice class 14<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| 88. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (September 18, 2024)<br>Number 240153928 | Nice class 9<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Thailand |
| 89. | **SKIBIDI TOILET** |  | National Trademark Application<br>Pending (November 1, 2024)<br>Number 250102797 | Nice class 35<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Thailand |



http://www.wipo.int

| | | | |
|---|---|---|---|
| 90. | **SKIBIDI TOILET** | International Trademark<br>International Registration in Force<br>(September 19, 2024)<br>Expiry date 2034-09-20 | Nice class 30<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Designation country Germany, Belgium, Finland,<br>Portugal, Bulgaria, Japan, Denmark, Lithuania,<br>Luxembourg, Croatia, Latvia, France, New Zealand,<br>Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia,<br>UK, Indonesia, Ireland, Canada, USA, Estonia, India,<br>Malta, Korea (Republic of), European Union, Chile,<br>Greece, Italy, Mexico, Spain, Austria, Australia, Thailand,<br>Cyprus, Czech Republic, Philippines, Viet Nam, Poland,<br>Romania, Netherlands, Türkiye |
| 91. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 79413180 | Nice class 41<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing USA |
| 92. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (October 1, 2024)<br>Number 79410261 | Nice class 16<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing USA |
| 93. | **SKIBIDI TOILET SURVIVAL** | National Trademark Application<br>Pending (September 10, 2024)<br>Number 2498839 | Nice class 9<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Australia |
| 94. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 19, 2024)<br>Number 2502374 | Nice class 14<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Australia |
| 95. | [No verbal element] | National Trademark Application<br>Pending (September 19, 2024)<br>Number 2365098<br>Expiry date 2034-09-20 | Nice class 30<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Canada |
| 96. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 19, 2024)<br>Number 40202427433T<br>Expiry date 2034-09-20 | Nice class 32<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Singapore |
| 97. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 19, 2024)<br>Number M0020241824173 | Nice class 32<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO<br>(Ukraine)<br>Country of filing Indonesia |
| 98. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 18, 2024)<br>Number M0020241824362 | Nice class 9<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO<br>(Ukraine)<br>Country of filing Indonesia |
| 99. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 40202430184Y<br>Expiry date 2034-11-02 | Nice class 21<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing Singapore |
| 100. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (November 1, 2024)<br>Number 1281631<br>Expiry date 2034-11-02 | Nice class 28<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| 101. | **SKIBIDI TOILET** | National Trademark Application<br>Pending (September 17, 2024)<br>Number 1282079<br>Expiry date 2034-09-18 | Nice class 43<br>Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)<br>Country of filing New Zealand |
| | | National Trademark Application | Nice class 21 |

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

| 102. [No verbal element] | | National Trademark Application Pending (November 1, 2024) Number 2369627 Expiry date 2034-11-02 | Nice class 21 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Canada |
|---|---|---|---|
| 103. **SKIBIDI TOILET** | | National Trademark Application Pending (November 1, 2024) Number 40202430667Q Expiry date 2034-11-02 | Nice class 42 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
| 104. **SKIBIDI TOILET** | | National Trademark Application Pending (November 1, 2024) Number 40202500329X Expiry date 2034-11-02 | Nice class 35 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing Singapore |
| 105. **SKIBIDI TOILET** | | International Trademark International Registration in Force (September 17, 2024) Expiry date 2034-09-18 | Nice class 43 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 106. **SKIBIDI TOILET** |  | International Trademark International Registration in Force (September 19, 2024) Expiry date 2034-09-20 | Nice class 14 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 107. **SKIBIDI TOILET** |  | International Trademark International Registration in Force (November 1, 2024) Expiry date 2034-11-02 | Nice class 35 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Japan, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, New Zealand, Hungary, Brazil, Sweden, Singapore, Slovenia, Slovakia, UK, Indonesia, Ireland, Canada, USA, Estonia, India, Malta, Korea (Republic of), European Union, Chile, Greece, Italy, Mexico, Spain, Austria, Australia, Thailand, Cyprus, Czech Republic, Philippines, Viet Nam, Poland, Romania, Netherlands, Türkiye |
| 108. **SKIBIDI TOILET** | | National Trademark Application Pending (November 1, 2024) Number M0020241830242 | Nice class 25 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (Ukraine) Country of filing Indonesia |
| 109. **SKIBIDI TOILET** | | National Trademark Application Pending (November 1, 2024) Number 79413160 | Nice class 42 Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE) Country of filing USA |
| **SKIBIDI TOILET** | | National Trademark Application | Nice class 9 |



110. **SKIBIDI TOILET TOWER DEFENCE TITANS: CLOCKMAN, SPEAKERMAN, CINEMAMAN**

National Trademark Application
Pending (May 20, 2024)
Number 79400196

Nice class 9
Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)
Country of filing USA

111. **SKIBIDI TOILET**

National Trademark Application
Pending (November 1, 2024)
Number 79412803

Nice class 28
Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)
Country of filing USA

112. **SKIBIDI TOILET**

National Trademark Application
Pending (November 1, 2024)
Number 79414126

Nice class 35
Owner NEXT LEVEL APPS TECHNOLOGY - FZCO (UAE)
Country of filing USA

1  **KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
2  Jeffrey M. Rosenfeld (Bar No. 222187)
Kelly Mulcahy (Bar No. 305472)
3  548 Market Street #85399
San Francisco, CA 94104
4  Telephone: (415) 955-1155
Facsimile: (415) 955-1158
5  karl@kr.law
jeff@kr.law
6  kelly@kr.law
7
8  Attorneys for Plaintiff Ducky Ltd.

9

10

11                    **UNITED STATES DISTRICT COURT**
12                  **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
13

14  **DUCKY LTD.**, a Cyprus limited company        Case No. 3:24-CV-02268-PHK

15              Plaintiff,

16      v.                                          **PLAINTIFF DUCKY LTD.'S NOTICE**
                                                    **OF MOTION AND MOTION FOR**
                                                    **DEFAULT AGAINST DEFENDANT**
17  **IVILIIA MILLIONIC IT SP. Z O.O.**, a          **IVILIIA MILLIONIC IT SP. Z O.O.;**
    Polish private limited liability company,       **MEMORANDUM OF POINTS AND**
18                                                  **AUTHORITIES**
                Defendant.
19                                                  Date:     January 24, 2024
                                                    Time:     2:30 p.m.
20                                                  Ctrm:     F – 15th Floor
                                                    Judge:    The Hon. Peter H. Kang
21

22

23

24

25

26

27

28

**PLAINTIFF'S NTC OF MTN AND MTN FOR**
                                                    **DEFAULT JUDGMENT; MPA**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 24, 2024, at 2:30 p.m., in Courtroom F of the above-referenced Court, located at the San Francisco Courthouse, 450 Golden Gate, 15th Floor, San Francisco, California, 94102, Plaintiff Ducky Ltd. will and hereby does move the Court to enter default judgment against Defendant Iviliia Millionic IT sp. z o.o. ("Defendant"). This motion is made on the grounds that:

1.  Default was entered against Defendant on November 6, 2024. [D.E. No. 26.].

2.  Because Defendant is not a natural person, Defendant is not an infant, incompetent, in active military service, or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

3.  Notice of the amount requested by Plaintiff in judgment is being made to Defendant concurrently with the filing of this motion.

4.  Default judgment in favor of Plaintiff and against Defendant is justified in light of the substantive merits of Plaintiff's claims, the sufficiency of Plaintiff's allegations, the amount of money at stake in this action, the possibility of prejudice to Plaintiff if relief is denied, the lack of any possible dispute with respect to any material fact in the case, and because Defendant's default did not result from excusable neglect.

Plaintiff seeks a declaratory judgment, a permanent injunction, and attorney's fees in the amount of $47,669.

This motion is based upon the entry of default against Defendant, the concurrently filed Memorandum of Points and Authorities, declarations of Jeffrey M. Rosenfeld and Vladimir Adashchik, all pleadings and papers on file in this action, and such other and further evidence and argument that may be presented at the hearing on this motion. Plaintiff has also submitted a proposed order with the filing of this motion.

//

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 Respectfully Submitted,

2 DATED: December 16, 2024

**KRONENBERGER ROSENFELD, LLP**

3

4 By: _____ s/ Jeffrey M. Rosenfeld _____
      Jeffrey M. Rosenfeld

5 Attorneys for Plaintiff Ducky Ltd.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ....................................................1

FACTUAL BACKGROUND..................................................................................1

A. Development of Melon Sandbox; Plaintiff's Ownership of the Game....................................1

B. Plaintiff's Copyright Registrations and Trademark Rights ................................2

C. Defendant's Fraudulent Copyright Registrations, Trademark Application and Misuse of the

Same ....................................................................................................................2

PROCEDURAL BACKGROUND...........................................................................3

POLISH AND INTERNATIONAL PROCEEDINGS .........................................4

ARGUMENT ............................................................................................................4

A. Defendant was properly served with process and is receiving notice of this motion ...............4

B. This Court has subject matter jurisdiction and personal jurisdiction over Defendant .............5

   1. The Court has subject matter jurisdiction over Plaintiff's declaratory judgment claim

      where it presents federal questions ...................................................................5

   2. The Court has personal jurisdiction over Defendant where Defendant aimed its

      misconduct at California and the U.S. .............................................................7

      a. Legal Standard for Personal Jurisdiction .....................................................7

      b. Defendant purposefully directed its conduct at California and the U.S. ......9

C. The *Eitel* factors weigh in favor of granting default judgment..................................9

   1. *Eitel* Factor 1: Plaintiff will be prejudiced if default judgment is not granted .................10

   2. *Eitel* Factors 2 & 3: Plaintiff has alleged a viable declaratory judgment claim ...............10

   3. *Eitel* Factor 4: Plaintiff does not seek any monetary damages (just fees) .......................11

   4. *Eitel* Factor 5: Because the Complaint's allegations are taken as true, there is no dispute

      of facts.............................................................................................................12

   5. *Eitel* Factor 6: Where Defendant was served with process, there was no excusable

      neglect .............................................................................................................12

   6. *Eitel* Factor 7: Default judgment is warranted despite public policy favoring decisions on

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108



the merits ............................................................................................................12

D.  The Court should grant the requested declaratory judgment ..................................13

E.  The Court should enter a permanent injunction against Defendant .........................14

F.  The Court should award Plaintiff its attorney's fees ..............................................15

CONCLUSION.............................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*23andMe, Inc. v. Ancestry.com DNA, LLC,*

    356 F. Supp. 3d 889 (N.D. Cal. 2018) ...................................................................... 5

*AMA Multimedia, LLC v. Wanat,*

    970 F.3d 1201 (9th Cir. 2020) ................................................................................. 8

*Apple Inc. v. Psystar Corp.,*

    673 F. Supp. 2d 943 (N.D. Cal. 2009) .............................................................. 14, 15

*Automattic Inc. v. Steiner,*

    82 F. Supp. 3d 1011 (N.D. Cal. 2015) ..................................................................... 8

*Ayla, LLC v. Alya Skin Pty. Ltd.,*

    11 F.4th 972 (9th Cir. 2021) .................................................................................... 9

*Black v. Irving Materials, Inc.,*

    398 F. Supp. 3d 592 (N.D. Cal. 2019) .................................................................... 5

*Calder v. Jones,*

    465 U.S. 783 (1984) ................................................................................................. 8

*Craigslist, Inc. v. Naturemarket, Inc.,*

    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ................................................................ 14

*Curtis v. Illumination Arts, Inc.,*

    33 F. Supp. 3d 1200 (W.D. Wash. 2014) .............................................................. 10

*Digi Fama LLC v. SnapNHD, LLC,*

    No. CV2011792RSWLJEMX, 2021 WL 8773299 (C.D. Cal. Sept. 15, 2021) .................... 5, 6

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.,*

    172 F. Supp. 2d 1282 (C.D. Cal. 2001) ................................................................ 10

*Doc's Dream, LLC v. Dolores Press, Inc.,*

    959 F.3d 357 (9th Cir. 2020) ................................................................................. 15

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

*Doe v. WebGroup Czech Republic, a.s.*,

    93 F.4th 442 (9th Cir. 2024) ................................................................. 8, 9

*Dole Food Co., Inc. v. Watts*,

    303 F.3d 1104 (9th Cir. 2002) ................................................................. 8

*eBay Inc. v. MercExchange, L.L.C.*,

    547 U.S. 388 (2006) ................................................................. 14

*Eitel v. McCool*,

    782 F.2d 1470 (9th Cir. 1986) ................................................................. 10, 11

*Elektra Entm't Grp. Inc. v. Crawford*,

    226 F.R.D. 388 (C.D. Cal. 2005) ................................................................. 12

*Expensify, Inc. v. Swappoint AG*,

    No. 22-CV-05720-LB, 2023 WL 6323103 (N.D. Cal. Sept. 28, 2023) .................... 9

*Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*,

    290 F. Supp. 3d 923 (N.D. Cal. 2017) ................................................................. 8

*Gold Value Int'l Texile, Inc. v. Sanctuary Clothing, LLC*,

    No. LACV1600339JAKFFMX, 2017 WL 2903180 (C.D. Cal. Mar. 24, 2017) .............. 13

*Gov't Emps. Ins. Co. v. Dizol*,

    133 F.3d 1220 (9th Cir. 1998) ................................................................. 5

*In re Tuli*,

    172 F.3d 707 (9th Cir. 1999) ................................................................. 5

*Jordan v. Multnomah Cnty.*,

    815 F.2d 1258 (9th Cir. 1987) ................................................................. 15

*Lanard Toys Ltd. v. Dimple Child LLC*,

    843 F. App'x 894 (9th Cir. 2021) ................................................................. 15

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,

    725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................................................. 12

*Matter of Visioneering Const.*,

    661 F.2d 119 (9th Cir. 1981) ................................................................. 5

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,

    647 F.3d 1218 (9th Cir. 2011) ................................................................................. 8

*Michael Grecco Prods., Inc. v. TrekMovie.com*,

    677 F. Supp. 3d 1104 (C.D. Cal. 2023) ................................................................. 15

*Moroccanoil, Inc. v. Allstate Beauty Prod., Inc.*,

    847 F. Supp. 2d 1197 (C.D. Cal. 2012) ................................................................. 10

*Negrete v. City of Oakland*,

    46 F.4th 811 (9th Cir. 2022) ................................................................................... 6

*PepsiCo., Inc. v. California Sec. Cans*,

    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................................. 10

*Rhoades v. Avon Prod., Inc.*,

    504 F.3d 1151 (9th Cir. 2007) ................................................................................. 6

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ............................................................................... 7, 8

*Shanghai Automation Instrument Co. v. Kuei*,

    194 F. Supp. 2d 995 (N.D. Cal. 2001) ................................................................. 12

*Starkle v. Wollrab*,

    818 F. Supp. 2d 1231 (S.D. Cal. 2011) ................................................................. 6

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,

    No. 17-CV-06059-EMC, 2018 WL 2183295 (N.D. Cal. May 11, 2018) ................ 15

*UN4 Prods., Inc. v. Primozich*,

    372 F. Supp. 3d 1129 (W.D. Wash. 2019) ........................................................... 14

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,

    52 F.4th 1054 (9th Cir. 2022) ......................................................................... 10, 15

*Vernor v. Autodesk, Inc.*,

    555 F. Supp. 2d 1164 (W.D. Wash. 2008) ............................................................. 5

*Vestron, Inc. v. Home Box Off., Inc.*,

    839 F.2d 1380 (9th Cir. 1988) ................................................................................. 6

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Vietnam Reform Party v. Viet Tan–Vietnam Reform, Pty,*
   416 F. Supp. 3d 948 (N.D. Cal. 2019) ................................................................ 12

*Vogel v. Rite Aid Corp.,*
   992 F. Supp. 2d 998 (C.D. Cal. 2014) .................................................... 4, 10, 12

*Wacker v. Hammerking Prods. Inc.,*
   608 F. Supp. 3d 947 (C.D. Cal. 2022) .......................................................... 5, 11

*Wecosign, Inc. v. IFG Holdings, Inc.,*
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) .............................................................. 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006) ............................................................................ 8

*Yelp Inc. v. Catron,*
   70 F. Supp. 3d 1082 (N.D. Cal. 2014) ............................................................... 10

*Yokeno v. Mafnas,*
   973 F.2d 803 (9th Cir. 1992) .............................................................................. 6

Statutes

17 U.S.C. §411(b) ...................................................................................... 6, 10, 13

17 U.S.C. §502(a) ................................................................................................ 14

17 U.S.C. §505 .................................................................................................... 15

17 U.S.C. §512 ...................................................................................................... 1

28 U.S.C. §1331 .................................................................................................... 5

28 U.S.C. §2201 ........................................................................................... 1, 4, 11

Rules

Fed. R. Civ. P. 4(f)(1) ................................................................................. 3, 4, 12

Fed. R. Civ. P. 4(k) ...................................................................................... 7, 8, 9

Fed. R. Civ. P. 55(b) ............................................................................................ 4

Fed. R. Civ. P. 57 ................................................................................................ 4

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Other Authorities

U.S. Const. art. III .................................................................................................................... 5

**PLAINTIFF'S NTC OF MTN AND MTN FOR DEFAULT JUDGMENT; MPA**

**INTRODUCTION**

Plaintiff Ducky Ltd. brings this motion for default judgment against Defendant Iviliia Millionic IT Sp. z o.o. Default judgment is warranted because the factual allegations in the Complaint and the evidence submitted by Plaintiff show that Defendant fraudulently registered copyrights in the mobile application game, Melon Sandbox (the "Game").

By way of background, Plaintiff owns all rights and interests to the Game, including all copyrights to the Game. Defendant has no rights or interest in the Game. Yet, in an attempt to exploit the success of the Game, Defendant fraudulently registered copyrights in the Game with the United States Copyright Office ("Copyright Office"). Defendant then used these fraudulently obtained registrations to extort settlement payments and licensing fees from third parties who had published derivative works based on the Game. Defendant also sent fraudulent takedown notices under the Digital Millenium Copyright Act, 17 U.S.C. §512 ("DMCA") to Apple and Google, resulting in the temporary removal of the Game from the Apple App Store and the Google Play Store.

Plaintiff brought this lawsuit to stop Defendant's misuse of Plaintiff's intellectual property. Despite proper service under the Hague Convention, Defendant has not responded to the Complaint, and the Clerk entered default against Defendant on November 6, 2024. Plaintiff now asks the Court to enter default judgment against Defendant as to the sole cause of action under the Federal Declaratory Judgment Act, 28 U.S.C. §2201. Default judgment is warranted because the pleadings and evidence establish an actual case or controversy regarding substantial issues of federal law and that Plaintiff is entitled to the requested relief. Thus, Plaintiff requests: a) that the Court enter default judgment, b) provide the requested declaratory relief and permanent injunction, and c) award attorney's fees in the amount of $47,669.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the court should enter default judgment in favor of Plaintiff and against Defendant?

**FACTUAL BACKGROUND**

**A.    Development of Melon Sandbox; Plaintiff's Ownership of the Game**

Melon Sandbox, also known as Melon Playground, is a 2-D sandbox game, where players can create, simulate, and build nearly anything with the various objects and items provided in the

1

1  Game. (Compl. ¶17.) The Game contains several characters, which players can insert into the
2  gameplay, such as Melon, Pumpkin, Corn, and Apple. (Compl. ¶18.)

3      On October 30, 2023, Plaintiff acquired all rights and title to the Game, including all
4  copyrights to the Game. (Compl. ¶25.) Since its release, the Game has been downloaded more than
5  70 million times on the Google Play Store and more than 22 million times on the Apple App Store.
6  (Compl. ¶40.) Fans of the Game create and publish derivative works to social media websites and
7  video-sharing websites, which Plaintiff generally encourages. (Compl. ¶42.)

8  **B.    Plaintiff's Copyright Registrations and Trademark Rights**

9      On October 17, 2023, Plaintiff acquired six U.S. copyright registrations covering the artwork
10 for characters in the Game (i.e., Apple, CORN, Melon, Pumpkin, ROBOT) and the artwork
11 comprising the Game's Melon Sandbox logo. (Compl. ¶¶28-33.) On February 29, 2024, Plaintiff
12 acquired three U.S. copyright registrations covering the entirety of the Game, including all artwork
13 comprising the Game, and the artwork for the Game's "Cactus" and "Tomato" characters. (Compl.
14 ¶¶27, 34-35.)

15     Additionally, Plaintiff has developed rights in multiple trademarks that it uses in connection
16 with the Game, and Plaintiff has applied for several trademark registrations with the United States
17 Patent and Trademark Office ("PTO") for those trademarks. (Compl. ¶36.) For example, on October
18 17, 2023, Plaintiff applied to the PTO to register the mark "MELON SANDBOX," Serial No.
19 98227522, and on March 19, 2024, Plaintiff applied to the PTO to register the mark "MELON
20 PLAYGROUND," Serial No. 98457426. (Compl. ¶¶37-38.)

21 **C.    Defendant's Fraudulent Copyright Registrations, Trademark Application and**
22 **       Misuse of the Same.**

23     Defendant is a Polish-formed company based in Warsaw, Poland. (Compl. ¶11.) Defendant
24 was not involved in the creation, development, authorship, or publication of the Game or in the
25 artwork displayed in the Game. (Compl. ¶43.) Defendant does not own any rights or interest in the
26 Game or to the artwork displayed in the Game, is not a licensee of any rights in the Game, and has
27 no relationship with Plaintiff. (Compl. ¶¶44-46.)

28     In its attempt to capitalize on the popularity of the Game, and despite having no legitimate

2

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

rights or interest in the Game or its underlying artwork, in 2023 Defendant applied for and obtained at least 22 U.S. copyright registrations with the Copyright Office for artwork featured in the Game (the "Disputed Registrations"). (Compl. ¶¶43, 47.) Additionally, on November 30, 2023, Defendant submitted an international trademark application under the Madrid Protocol for the mark MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME, and on March 28, 2024, Defendant sought protection for that mark with the PTO, Application Serial Number 79/392,571. (Compl. ¶¶62-63.)[1]

Beginning in or around October or November 2023, Defendant began using its Disputed Registrations to extort settlement payments and licensing fees from third parties who had published derivative works based on the Game. (Compl. ¶50.) To effectuate its scheme, Defendant submitted takedown notices under the DMCA regarding these third parties' supposedly infringing content. (Compl. ¶51.) Defendant then demanded either payment of a settlement fee from the third party or said that it would allow reinstatement of the supposedly infringing content in exchange for an ongoing licensing fee from the third party. (Compl. ¶52.)

In addition to its extortion attempts, Defendant submitted DMCA takedown requests to Apple and Google demanding the removal of the Game from the Apple App Store and the Google Play Store. (Compl. ¶55.) Plaintiff was forced to submit counter-notifications under the DMCA to reinstate the Game in these mobile application stores. (Compl. ¶55.) When Plaintiff reached out to Defendant about its misconduct, Defendant falsely claimed that it was only trying to protect Plaintiff's rights by making demands to third parties. (Compl. ¶56.)

## PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on April 16, 2024. [D.E. No. 1.] The Clerk of the Court issued the Summons to Defendant on April 19, 2024. [D.E. No. 7.] Defendant was served with the Complaint and Summons on July 24, 2024, under Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). [D.E. No. 21.] The time allowed for Defendant to respond to the Complaint has

---

[1] On August 16, 2024, during the pendency of this lawsuit, the PTO refused Defendant's trademark application based on a likelihood of confusion with Plaintiff's trademark.

3

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

expired. Defendant has not filed any responsive pleading or motion or otherwise appeared in the action. On November 11, 2024, the Clerk entered default against Defendant. [D.E. No. 26.] Defendant is not a minor, incompetent person, or a member of the military. (Rosenfeld Decl. ¶7.)

### POLISH AND INTERNATIONAL PROCEEDINGS

On April 5, 2024, Plaintiff initiated a civil action in the Regional Court of Warsaw, Poland seeking an injunction against Defendant. (Adashchik ¶14.) On September 9, 2024, the Regional Court of Warsaw issued a Decision and Injunction against Defendant, enjoining Defendant from: a) attempting to block the Game on the Apple App Store and the Google Play Store, b) attempting to block videos of the Game on YouTube, and c) impersonating the owner of the copyrights to the Game. (Adashchik Decl. ¶14 & Ex. J.)

On or around November 11, 2023, Defendant applied to register the trademark MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS; RAGDOOL PEOPLE GAME with the European Union Intellectual Property Office ("EUIPO"). (Adashchik Decl. ¶13.) On July 31, 2024, Plaintiff filed an opposition to Defendant's application. (Adashchik Decl. ¶13 & Ex. I.)

### ARGUMENT

Federal Rule of Civil Procedure 55(b) allows the Court to enter a default judgment where the defaulting party has "failed to plead or otherwise defend," and the clerk has entered the party's default. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1005 (C.D. Cal. 2014). "Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party." *Id.* Here, there is proper notice and jurisdiction. Plaintiff's factual allegations establish that Plaintiff is eligible for declaratory relief pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57. Additionally, the other relevant factors that the Court must consider in evaluating Plaintiff's motion—i.e., the *Eitel* factors—weigh in favor of entering default judgment.

### A. Defendant was properly served with process and is receiving notice of this motion.

On July 24, 2024, Defendant was served with the Summons and Complaint under Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention. [D.E. No. 21.] Specifically, the Regional Court of Warsaw Poland, the Central Authority-designee for Poland under Article 18 of the Hague

4

1  Convention, served Defendant with process by a method prescribed by Polish law for the service of

2  documents in domestic actions upon persons who are within its territory under Article 5 of the

3  Hague Convention. [D.E. No. 21.] Concurrently with the filing of this motion, Plaintiff is serving

4  Defendant with a copy of the moving papers by email. (Rosenfeld Decl. ¶6.)

5  **B.    This Court has subject matter jurisdiction and personal jurisdiction over Defendant.**

6        In a motion for default judgment, the Court must determine whether it may properly exercise

7  both subject matter jurisdiction and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir.

8  1999).  Well-pleaded jurisdictional allegations are taken as admitted on a motion for default

9  judgment. *See Matter of Visioneering Const.*, 661 F.2d 119, 124 (9th Cir. 1981).

10        **1.    The Court has subject matter jurisdiction over Plaintiff's declaratory**

11              **judgment claim where it presents federal questions.**

12  Legal Standard: Federal courts have original jurisdiction over civil actions arising under the

13  laws of the United States. *See* 28 U.S.C. §1331. A lawsuit asserting a claim under the Federal

14  Declaratory Judgment Act must: (1) satisfy statutory jurisdictional prerequisites, and (2) present an

15  actual case and controversy within the meaning of Article III, section 2 of the United States

16  Constitution. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998).

17  Additionally, the Court must also be satisfied that entertaining the action is appropriate. *See id.*

18        An actual case or controversy exists where the facts alleged show that there is a substantial

19  controversy between parties having adverse legal interests of sufficient immediacy and reality to

20  warrant the issuance of a declaratory judgment. *See Wacker v. Hammerking Prods. Inc.*, 608 F.

21  Supp. 3d 947, 965 (C.D. Cal. 2022). For copyright and trademark disputes, a case or controversy

22  exists where the plaintiff seeks a declaration of non-infringement and the parties have an actual,

23  concrete disagreement about use and ownership of the intellectual property. *See 23andMe, Inc. v.*

24  *Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 914 (N.D. Cal. 2018); *Digi Fama LLC v. SnapNHD,*

25  *LLC*, No. CV2011792RSWLJEMX, 2021 WL 8773299, at *5 (C.D. Cal. Sept. 15, 2021). Similarly,

26  a defendant's use of legal processes to prevent the plaintiff from exploiting its intellectual property

27  creates an actual case and controversy. *See, e.g.*, *Vernor v. Autodesk, Inc.*, 555 F. Supp. 2d 1164

28  (W.D. Wash. 2008) (alleged misuse of DMCA takedown procedure); *Black v. Irving Materials,*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Inc.*, 398 F. Supp. 3d 592, 616-17 (N.D. Cal. 2019) (alleged erroneous UDRP decision).

Second, for federal question jurisdiction to extend to a declaratory judgment action, the claim itself must present a substantial issue of federal law unaided by anything alleged in anticipation or avoidance of defenses. *See Negrete v. City of Oakland*, 46 F.4th 811, 820 (9th Cir. 2022); *Yokeno v. Mafnas*, 973 F.2d 803, 807 (9th Cir. 1992). A substantial issue of federal law exists where the plaintiff's claim seeks clarification of ownership of copyrights or trademarks and a concrete dispute has arisen regarding that ownership. *See, e.g., Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). While a suit for a naked declaration of copyright ownership will not support federal jurisdiction, if the claim contains bona fide infringement allegations or requires a construction of the Copyright Act, the action arises under federal law, and a federal court has jurisdiction. *See Vestron, Inc. v. Home Box Off., Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988). Thus, a suit that seeks a declaration that a copyright registration is invalid under 17 U.S.C. §411(b) raises a question of federal law. *See Digi Fama LLC v. SnapNHD, LLC*, 2021 WL 8773299 at *7.

Finally, courts look at several factors in deciding whether to exercise their discretion to consider claims for declaratory relief, including: (1) avoiding the needless determination of state law issues; (2) discouraging the filing of declaratory actions as a means of forum shopping; (3) avoiding duplicative litigation; (4) resolving all aspects of the controversy in a single proceeding if possible; (5) avoiding intervention unless the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (6) avoiding procedural fencing or permitting one party to obtain an unjust *res judicata* advantage at the expense of the other; (7) avoiding entanglement between the federal and state court systems; and (8) avoiding jeopardizing the convenience of the parties. *See Starkle v. Wollrab*, 818 F. Supp. 2d 1231, 1235 (S.D. Cal. 2011).

Analysis: Here, an actual case or controversy exists between the parties regarding federal questions. First, an actual case and controversy exists between Plaintiff and Defendant in that: a) both parties claim intellectual property rights in the Game, b) Defendant has claimed that Plaintiff is infringing on its copyrights in the Game, c) Defendant has sent fraudulent DMCA takedown notices to Apple and Google, and d) Defendant has frustrated Plaintiff's relationship with its fans and users by sending demand letters and sham license agreements, claiming that Defendant owns

6

the copyrights to the Game.

Second, Plaintiff's declaratory judgment claim presents federal questions that amount to more than a naked declaration of copyright ownership. Specifically, Plaintiff seeks a declaration that it has not infringed on Defendant's purported copyrights, that Defendant committed fraud on the Copyright Office, and that Defendant sent fraudulent DMCA notices. (Compl. Prayer ¶¶4-6.)

Finally, the relevant factors weigh in favor of the Court exercising its discretion to grant declaratory relief. Specifically: (1) this lawsuit does not raise any state law issues; (2) Plaintiff has not engaged in forum shopping; in fact, Plaintiff had to pursue legal relief in both the U.S. and Poland because Defendant's misconduct permeated both countries; (3) while Plaintiff obtained an injunction from the Polish court, the injunction does not address the validity of Defendant's copyright registrations under U.S. copyright law; (4) this proceeding seeks to resolve all aspects of the controversy that have a connection to the U.S.; (5) Plaintiff seeks to clarify the legal relations at issue; (6) Plaintiff has not engaged in any procedural fencing; rather, Plaintiff has sought relief in both fora where Defendant has connections (i.e., the U.S. and Poland); (7) there are no pending or threatened state court actions; and (8) there is no risk of inconvenience to Defendant where it has not made any effort to defend itself either in the U.S. or Poland.

In summary, this Court has subject matter jurisdiction where an actual case and controversy exists arising under U.S. copyright laws.

**2.      The Court has personal jurisdiction over Defendant where Defendant aimed its misconduct at California and the U.S.**

Plaintiff alleges that this Court has personal jurisdiction over Defendant because Defendant expressly aimed its intentional misconduct at California. In the alternative, Plaintiff alleges that this Court has personal jurisdiction over Defendant under Federal Rule 4(k)(2) because Defendant expressly aimed its intentional misconduct at the United States and Defendant is not subject to jurisdiction in any state's courts.

**a.      Legal Standard for Personal Jurisdiction**

The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

7

2004). First, the non-resident defendant must have purposefully directed its activities at the forum. *See id.* Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *See id.* Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *See id.*

Purposeful Direction. For a court to have specific jurisdiction over a defendant, the defendant must purposefully direct its activities at the forum state or purposefully avail itself of the privilege of conducting activities there. *See Schwarzenegger*, 374 F.3d at 802. For "suits sounding in tort," the Ninth Circuit has applied a distinct "purposeful direction analysis." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quotation omitted). Specifically, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Copyright infringement claims are treated as tort-like for personal jurisdiction purposes, and thus analyzed under the purposeful direction framework. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). In such cases, sending fraudulent takedown notices to the forum state is sufficient to establish purposeful direction. *See Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1024 (N.D. Cal. 2015) (court had specific jurisdiction based on sending of allegedly fraudulent DMCA takedown notice); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (cease-and-desist letter by itself may constitute express aiming where the letter itself is abusive, tortious, or otherwise wrongful); *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 936–37 (N.D. Cal. 2017) (defendant expressly aimed misconduct at California, including by sending two demand letters to plaintiff in California).

Fed. R. Civ. P. 4(k). Under Federal Rule 4(k)(2), "[f]or a claim that arises under federal law," a court may assert "personal jurisdiction over a defendant" if (1) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 450–51 (9th Cir. 2024). In the context of Rule

8

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   4(k)(2), the relevant forum for assessing whether minimum contacts exist is the United States "as a

2   whole." *WebGroup Czech Republic, a.s.*, 93 F.4th at 450-51.

3        Courts have found that the U.S. registrations of trademark and copyrights can be considered

4   compelling evidence of purposeful direction at the U.S. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11

5   F.4th 972, 983 n.4 (9th Cir. 2021); *Expensify, Inc. v. Swappoint AG*, No. 22-CV-05720-LB, 2023

6   WL 6323103, at *6 (N.D. Cal. Sept. 28, 2023) ("Courts have held that filing a trademark application

7   is enough to establish an intentional act, the first requirement for personal jurisdiction.").

8        **b.**     **Defendant purposefully directed its conduct at California and the U.S.**

9        This Court has personal jurisdiction over Defendant where it purposefully directed its

10   misconduct at California, and where Plaintiff's claims arise out of that conduct. Specifically,

11   Defendant sent fraudulent DMCA takedown notices to Apple and Google, both of which are based

12   in California. (Compl. ¶55.) The takedown notices resulted in the temporary removal of the Game

13   from the Apple App Store and the Google Play Store until Plaintiff submitted, and Apple and

14   Google processed, DMCA counternotices. (Compl. ¶55.) Given the popularity of the Game, these

15   takedown notices immediately and significantly affected Plaintiff.

16        If the Court finds that these contacts with Apple and Google are insufficient to support

17   personal jurisdiction, Defendant is still subject to the Court's jurisdiction under Federal Rule

18   4(k)(2). First, Defendant sought and has obtained multiple fraudulent copyright registrations with

19   the U.S. Copyright Office, which constitutes purposeful direction toward the U.S. (Compl. ¶47.)

20   Additionally, Defendant submitted DMCA takedown notices to Apple and Google, which also

21   constitutes purposeful direction toward the U.S. (Compl. ¶55.)

22        Moreover, Plaintiff's claim arises out of Defendant's fraudulent copyright registrations and

23   DMCA takedown notices. Finally, the exercise of jurisdiction is presumptively reasonable where

24   Defendant has not made any showing that the exercise of jurisdiction would be unreasonable.

25   **C.**     **The *Eitel* factors weigh in favor of granting default judgment.**

26        Courts in this Circuit consider the following factors in deciding whether to enter default

27   judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive

28   claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the

possibility of a dispute concerning the material facts, (6) whether the defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In this case, the *Eitel* factors weigh in Plaintiff's favor, and the Court should grant default judgment in favor of Plaintiff.

**1.    *Eitel* Factor 1: Plaintiff will be prejudiced if default judgment is not granted.**

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *See Vogel*, 992 F. Supp. 2d at 1007. Prejudice exists where the plaintiff lacks other recourse to recover damages for its injury or means to prevent further harm. *See Moroccanoil, Inc. v. Allstate Beauty Prod., Inc.*, 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).

Here, Defendant has continued its misconduct after the filing of this suit, after the filing of the Polish lawsuit, and even after the Polish court issued its injunction. (Adashchik Decl. ¶15 & Exs. D-H.) Defendant has not appeared in this action, and it has continued to engage in its unlawful behavior. (Rosenfeld Decl. ¶5.) Absent relief from this Court, Plaintiff will be prejudiced regarding its rights in the Game in the U.S. Importantly, while Plaintiff has obtained an injunction from the Regional Court of Warsaw, Poland, a U.S. court must determine whether Ducky has rebutted the presumption of validity accorded to Defendant's U.S. copyright registrations by disputing their validity and must seek advice from the U.S. Copyright office on the same. *See* 17 U.S.C. §411(b)(2); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1079 (9th Cir. 2022). Thus, the first *Eitel* factor weighs in favor of Plaintiff.

**2.    *Eitel* Factors 2 & 3: Plaintiff has alleged a viable declaratory judgment claim.**

The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together. *See PepsiCo., Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The Ninth Circuit has suggested that the second and third *Eitel* factors require that the plaintiff's allegations state a claim for which the plaintiff may recover. *See Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001). In analyzing the sufficiency of a claim, the well-pleaded allegations of the complaint are taken as true. *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1091 (N.D. Cal. 2014).

Plaintiff has asserted a single cause of action under the Declaratory Judgment Act, 28 U.S.C. §2201. A declaratory judgment claim is sufficient if it sets forth facts establishing: (1) the existence of an actual controversy, (2) between parties having adverse legal interests, and (3) of sufficient immediacy and reality to warrant the issuance of declaratory judgment. *See Wacker*, 608 F. Supp. 3d at 965. Here, Plaintiff has alleged facts establishing a claim for declaratory judgment.

First, Plaintiff has alleged real and actual controversies between itself and Defendant as to: (1) whether Plaintiff is the rightful owner of the copyrights in the Game and to the characters and artwork in the Game, (2) whether Defendant fraudulently obtained the Disputed Registrations with the Copyright Office, (3) whether the Disputed Registrations are valid and enforceable, (4) whether Plaintiff has infringed on Defendant's purported copyrights in marketing and publishing the Game, and (5) whether Defendant sent fraudulent DMCA takedown notices. (Compl. ¶¶68-73.)

Second, the parties have adverse legal interests. Plaintiff has alleged that it owns all copyrights to the Game and all protectable elements of the Game. In contrast, Defendant has repeatedly claimed that it owns copyrights and trademarks in the Game, including by filing copyright and trademark applications and sending DMCA takedown notices. (Compl. ¶¶47-65.)

Third, the controversy is sufficiently immediate and real to warrant declaratory relief where: 1) Defendant has targeted Plaintiff's core intellectual property rights in its core asset, i.e., the Game; 2) Defendant's misconduct has affected Plaintiff's ability to capitalize on the Game, including by temporarily making the Game unavailable; and 3) Defendant's misconduct has continued since the filing of this lawsuit, even after the issuance of the Polish court injunction. (Adashchik Decl. ¶15.)

Finally, Plaintiff has alleged that it is the sole and rightful owner of all copyrights in the Game. (Compl. *passim*.)

Because Plaintiff has alleged a viable claim for declaratory judgment against Defendant, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. *Eitel* Factor 4: Plaintiff does not seek any monetary damages (just fees).

The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct. *Eitel*, 782 F. 2d at 1471. Because Plaintiff is not seeking any monetary damages, and only attorney's fees and costs, this factor weighs in favor of default judgment. *See*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Vietnam Reform Party v. Viet Tan–Vietnam Reform Pty*, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019).

### 4. *Eitel* Factor 5: Because the Complaint's allegations are taken as true, there is no dispute of facts.

The fifth *Eitel* factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). However, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Id.* In other words, because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default, there is rarely a likelihood that disputes of material fact exist. *See Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

Here, Plaintiff filed a well-pled complaint alleging a single cause of action for declaratory judgment. Defendant has not challenged the Complaint by answer, motion, or otherwise. On November 11, 2024, the Clerk entered default against Defendant, rendering the Complaint's factual allegations true for the purposes of this motion. [D.E. No. 26.] Because there is no dispute between the parties regarding the material facts, the fifth *Eitel* factor favors granting default judgment.

### 5. *Eitel* Factor 6: Where Defendant was served with process, there was no excusable neglect.

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *Vogel*, 992 F. Supp. 2d at 1013. Where the defendant was properly served with process, the possibility of excusable neglect is remote. *See, e.g.*, *id.*; *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Here, Defendant was properly served under Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention. [D.E. No. 21.] Thus, this factor also favors granting default judgment.

### 6. *Eitel* Factor 7: Default judgment is warranted despite public policy favoring decisions on the merits.

While the seventh *Eitel* factor cautions that cases should be decided on their merits whenever possible, the fact that Rule 55(b) has been enacted indicates that this preference by itself is not dispositive. *See Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Cal. 2010). Where a defendant has failed to respond to the plaintiff's claims after sufficient notice,

2   the seventh *Eitel* factor does not preclude the entry of default judgment.

3         Here, Defendant was properly served with the Complaint and put on notice of the lawsuit.

4   Defendant voluntarily chose not to defend itself in this action despite full knowledge of these

5   proceedings. As such, Defendant has forfeited any right to contest the allegations in the Complaint

6   and avoid default judgment.

7   **D.**    **The Court should grant the requested declaratory judgment.**

8         As discussed above, Plaintiff has alleged facts demonstrating a substantial controversy

9   between Plaintiff and Defendant concerning the copyrights in the Game. Moreover, Plaintiff has

10  alleged facts demonstrating that it is the owner of the copyrights in the Game, that Defendant

11  fraudulently registered copyrights in the Game, and that Defendant submitted fraudulent DMCA

12  takedown notices to Apple and Google regarding the Game. Because a declaratory judgment will

13  clarify the parties' respective rights, the Court should enter a declaratory judgment finding:

14        1.    That Plaintiff is the rightful owner in the copyrights in the Game and to the characters

15  and artwork in the Game;

16        2.    That Defendant does not own any copyrights in the Game, or to any artwork or other

17  elements in the Game;

18        3.    That Defendant fraudulently obtained the following copyright registrations, and that

19  such registrations are invalid:[2]

20  - Ambush Mutant (VA0002355331)
    - Humanoid monster hero (VA0002355283)

21  - Apple hero (VA0002353215)
    - Blind figure hero (VA0002355282)
    - Jester mutant (VA0002355339)

22  - Corn hero (VA0002353217)
    - Jumbo monster (VA0002355255)

23  - Cyan mutant (VA0002355604)
    - Looky Monster (VA0002355605)

24  - Gooey Monster (VA0002355557)
    - Mechanoid hero (VA0002355281)
    - Green Monster (VA0002355602)
    - Melon sky background (VA0002363785)

25

26  _____

    [2] Pursuant to 17 U.S.C. §411(b), Plaintiff requests that the Court first refer the question of the

27  invalidity of Disputed Registrations to the Copyright Office based on the allegations in the
    Complaint and defer the resolution of the question of invalidity pending receipt of a response from

28  the Copyright Office. *See Gold Value Int'l Texile, Inc. v. Sanctuary Clothing, LLC*, No.
    LACV1600339JAKFFMX, 2017 WL 2903180, at **11-12 (C.D. Cal. Mar. 24, 2017).

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

- Orange Monster (VA0002355606)
- Pumpkin hero (VA0002353216)
- Purple Monster (VA0002355556)
- Rush monster (VA0002355327)
- Screech hero (VA0002355284)
- Stinger monster (VA0002355340)
- Toilethead hero (VA0002355338)
- Watermelon hero (VA0002353214)
- Yellow monster (VA0002355608)

4.      That Plaintiff did not infringe on Defendant's claimed copyrights.[3]

**E.      The Court should enter a permanent injunction against Defendant.**

Under the Copyright Act, a court is authorized to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a); *see, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1062 (N.D. Cal. 2010) (finding that plaintiff in default judgment proceeding had established right to permanent injunction with respect to copyright infringement claims). A plaintiff must show that it is entitled to a permanent injunction by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff has satisfied these requirements.

First, irreparable harm exists in the copyright context where the defendant's conduct has harmed the plaintiff, and if not enjoined, will continue to harm the plaintiff, including through a threat of continuing violations. *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th Cir. 2011); *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1134 (W.D. Wash. 2019). Here, Defendant continues to interfere with Plaintiff's publication of the Game and continues to tarnish Plaintiff's reputation with third party fans of the Game.

Second, legal remedies may be inadequate where the defendant will not be able to pay and/or plaintiff will not be able to collect on any monetary damages. *See Apple Inc.*, 673 F. Supp. 2d at 949. Legal remedies may also be inadequate where the harm to the plaintiff's reputation and brand is difficult to quantify. *See id.* Here, Defendant has not responded to this action or the Polish action,

---

[3] Plaintiff no longer seeks a declaratory judgment that Defendant's trademark application contains knowing and material misrepresentations, (Compl. Prayer ¶7), because the PTO has denied that application.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  raising doubts about whether it can or would pay any money judgment. Moreover, Defendant's

2  misconduct continues to harm Plaintiff's reputation and brand in that Defendant has continued to

3  demand payments and license agreements from third-party fans of the Game. (Adashchik ¶17.)

4     Third, courts must balance the competing claims of injury and the effect on each party. *See

5  Apple Inc.*, 673 F. Supp. 2d at 950. Where an injunction serves the narrow purpose of preventing or

6  restraining further infringement of the plaintiff's copyrights, this factor weighs in favor of an

7  injunction. *See id.* Here, because Defendant has not (and cannot) claim any legitimate hardship from

8  being enjoined from committing unlawful activities, the hardships weigh in favor of an injunction.

9     Finally, under copyright law, the public receives a benefit when the legitimate rights of

10  copyright holders are vindicated. *See Apple Inc.*, 673 F. Supp. 2d at 950. Here, a narrowly tailored

11  injunction would serve no purpose other than to vindicate Plaintiff's legitimate rights in the Game.

12  **F.    The Court should award Plaintiff its attorney's fees.**

13     The Copyright Act's fee provision applies to "any civil action under" the Act. 17 U.S.C.

14  §505; *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020). This rule

15  includes claims for declaratory relief that raise substantial issues under the Copyright Act. *See id.*

16     Whether to award attorney's fees under the Copyright Act is a matter of the Court's

17  discretion. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1089 (9th Cir.

18  2022). Courts consider several factors in determining whether to award fees, including

19  frivolousness, motivation, objective unreasonableness, and the need to advance considerations of

20  compensation and deterrence. *See id.* Because Defendant has engaged in blatant misuse of

21  copyrights in the Game for monetary gain, an award of attorney's fees is justified.

22     Courts typically award attorney's fees by first determining a reasonable "lodestar" fee. *See

23  Lanard Toys Ltd. v. Dimple Child LLC*, 843 F. App'x 894, 897 (9th Cir. 2021). In fact, a "strong

24  presumption" exists that the "lodestar" figure represents a reasonable fee. *Jordan v. Multnomah

25  Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "[D]istrict courts in Northern California have found

26  that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable,"

27  including in copyright infringement cases. *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, No.

28  17-CV-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018); *see Michael Grecco*

Case No. 3:24-CV-02268-PHK

15

**PLAINTIFF'S NTC OF MTN AND MTN FOR DEFAULT JUDGMENT; MPA**

KRONENBERG ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

*Prods., Inc. v. TrekMovie.com*, 677 F. Supp. 3d 1104 (C.D. Cal. 2023).

Here, Plaintiff seeks attorney's fees of $47,669, which reflects a reasonable and proportionate lodestar, evidenced by Plaintiff's attorney's billing summaries. (Rosenfeld Decl. ¶¶9-13 & Ex. B.)

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against Defendant.

Respectfully Submitted,

DATED: December 16, 2024                    **KRONENBERGER ROSENFELD, LLP**


By: /s/ Jeffrey M. Rosenfeld
            Jeffrey M. Rosenfeld


Attorneys for Plaintiff Ducky Ltd.

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Kelly Mulcahy (Bar No. 305472)
548 Market Street #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
kelly@kr.law

Attorneys for Plaintiff Ducky Ltd.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **DUCKY LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**IVILIIA MILLIONIC IT SP. Z O.O.,**<br><br>Defendant. | Case No. 3:24-CV-02268-PHK<br><br>**DECLARATION OF JEFFREY M. ROSENFELD IN SUPPORT OF PLAINTIFF DUCKY LTD.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT IVILIIA MILLIONIC IT SP. Z O.O.**<br><br>Date:  January 24, 2024<br>Time:  2:30 p.m.<br>Ctrm:  F – 15th Floor<br>Judge:  The Hon. Peter H. Kang |

I, Jeffrey M. Rosenfeld, do hereby declare:

1.      I am an attorney admitted to practice law in the State of California and before this Court. I am a partner at the law firm of Kronenberger Rosenfeld, LLP, counsel of record for Plaintiff Ducky Ltd. ("Plaintiff") in the above-captioned matter. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2.      On April 16, 2024, my office filed Plaintiff's Complaint. [D.E. No. 1.]

3.      On May 29, 2024, my office, in coordination with Plaintiff's Polish counsel (Jakub Bogucki of Rymarz Zdort Maruta), submitted a completed application ("Hague Convention Application") to serve Defendant under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") to the Polish Central Authority-designee— i.e., the President of the Regional Court of Warsaw.

4.      On October 25, 2024, my office received the returned and executed Hague Convention Application from the Regional Court of Warsaw, which was attached to an enclosure letter in Polish. My office filed with this Court the returned and executed Hague Convention Application, the enclosure letter in Polish, and a translation of the enclosure letter in English. [D.E. Nos. 21 & 22.]

5.      Defendant has not responded to the Complaint by pleading, motion, or otherwise, and I have not received any communications from Defendant or its counsel (if any).

6.      Concurrently with the filing of this motion, my office is serving Defendant with a copy of all of the moving papers by email to the address identified in Plaintiff's withdrawn Motion for Order Authorizing Service Under Fed. R. Civ. P. 4(f)(3) and 4(h)(2), namely addresses info@iviliiamilionicit.com, ivilliamilionic@gmail.com, and iviliiamillioniciit@gmail.com. [D.E. No. 13.]

7.      Because Defendant is not a natural person, Defendant is not a minor nor an incompetent person nor an active member of the military.

8.      On September 4, 2024, I wrote to Apple and Google, enclosing a copy of the Polish court injunction and "Requesting "Apple's cooperation in enforcing this injunction should Iviliia again attempt to submit fraudulent takedown notices to Apple." Google did not respond to my

**DECL OF J. ROSENFELD ISO MTN FOR DEFAULT JUDGEMENT**

communication. On September 23, 2024, Apple sent a response, a true and correct copy of which is attached hereto as **Exhibit A**. In its response, Apple states, "[u]pon review of the injunction, it does not appear that Apple Inc. or any Apple-affiliated entities were named as a party in that action. Accordingly, we do not believe that this injunction requires any action on Apple's part."

9.      Kronenberger Rosenfeld, LLP ("Kronenberger Rosenfeld") is AV-rated and its attorneys are accomplished trial and complex litigation attorneys. Martindale-Hubbell rates our firm as "AV Preeminent," which is the highest rating available in the Martindale-Hubbell peer rating system. Kronenberger Rosenfeld has a national practice with eight attorneys and two paralegals.

10.     I am a partner of Kronenberger Rosenfeld. For over two decades, I have focused my legal practice on intellectual property litigation, speech litigation, and internet-related litigation. I have significant experience litigating copyright disputes. Prior to joining Kronenberger Rosenfeld, I was a litigation associate with Howard Rice Nemerovski Canady Falk & Rabkin in San Francisco, and before that, a litigation and privacy associate with Covington & Burling in Washington, D.C. I received my J.D., *magna cum laude*, from the Georgetown University Law Center in 2002, where I was elected to the Order of the Coif and was an editor on the Georgetown Law Journal, and I received my A.B. from Stanford University. In this matter, Kronenberger Rosenfeld has billed my time at $675/hour.

11.     Kelly Mulcahy is a senior associate with Kronenberger Rosenfeld. Kelly obtained her B.A. from the University of California, Irvine in 2009 and received her J.D. from Golden Gate University School of Law in 2014. For nearly eight years, Kelly's legal practice has focused on intellectual property, including trademark enforcement and prosecution. Since joining Kronenberger Rosenfeld in 2020, Kelly has continued to counsel clients on intellectual property matters in addition to privacy and internet-related litigation. In this matter, Kronenberger Rosenfeld has billed Kelly's time at $415/hour.

12.     Where possible, Kronenberger Rosenfeld used paralegals to perform the work in litigating this case. Paralegal Jasper Eagleton graduated from Texas State University – San Marcos in 2009, and in 2015 obtained a paralegal certificate through the Center for Advanced Legal

1

**DECL OF J. ROSENFELD ISO MTN FOR DEFAULT JUDGEMENT**

Studies. Further, Jasper has a Certified Paralegal credential through the National Association of Legal Assistants. Jasper has eleven years of experience as a paralegal, including over six years of experience in civil litigation. Jasper joined Kronenberger Rosenfeld as a paralegal in 2021. Paralegal Ema Tilton graduated from John Jay College of Criminal Justice in 2009 with a B.A. in Forensic Psychology. Ema has been working as a paralegal for approximately eleven years and is well-versed in all aspects of civil procedure. Ema joined Kronenberger Rosenfeld as a paralegal in 2022. In this matter, Kronenberger Rosenfeld billed Jasper's and Ema's time at $225 per hour.

13.     To date, Plaintiff has incurred $47,699 in fees litigating this case and directly related matters. Kronenberger Rosenfeld, LLP generates billing summaries on a regular basis, which include billing times and work descriptions. My colleagues and I adhered to Kronenberger Rosenfeld's billing procedures in tracking and entering our time billed in litigating this case. Attached hereto as **Exhibit B** is a true and correct copy of a billing summary reflecting the work Kronenberger Rosenfeld billed in litigating this action. As **Exhibit B** shows, in total, Kronenberger Rosenfeld has billed Plaintiff $47,699 for all aspects of litigating this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on December 16, 2024 in San Francisco, California.

By:  /s/ Jeffrey M. Rosenfeld
        Jeffrey M. Rosenfeld

Exhibit A



September 23, 2024

Jeffrey M. Rosenfeld
Kronenberger Rosenfeld, LLP
150 Post Street, Ste 520
San Francisco, CA 94108

Via FedEx

**Re:     Ducky Ltd. v. Iviliia Millionic IT Sp. z o.o., Regional Ct. of Warsaw, Case No. XXII GWo
           222/24
           Ducky Ltd. v. Iviliia Millionic IT Sp. z o.o., U.S. Dist. Ct., N.D. Cal., Case No. 3:24-
           cv-02268**

Dear Mr. Rosenfeld,

I write in response to your September 4, 2024 email to "subpoenas@apple.com" in which you
describe an injunction issued by the Regional Court of Warsaw on August 2, 2024 in the above-
captioned action. For future correspondence related to this matter, please direct it to me at
bier@apple.com.

Upon review of the injunction, it does not appear that Apple Inc. or any Apple-affiliated entities were
named as a party in that action. Accordingly, we do not believe that this injunction requires any action
on Apple's part.

If you have any questions or would like to discuss this matter further, please do not hesitate to contact
me.

Sincerely,

David J. Bier
Legal Counsel
bier@apple.com

Exhibit B

**Billing Summary for D*ucky Ltd. v. Iviliia Millionic IT sp z o.o.* , Case No. 3:24-CV-02268-PHK**
**Report Preapred on December 16, 2024**

| Date | User | Hours | Description | Rate ($) | Billable ($) |
|---|---|---|---|---|---|
| 2/22/2024 | Jeff Rosenfeld | 1.01 | Conference with client and Polish counsel re: general strategy for pursuing copyright claims; brief research re: Hague Convention as adopted by Poland and jurisdiction in U.S. | 675 | 681.75 |
| 2/23/2024 | Jeff Rosenfeld | 0.99 | Begin drafting background questionnaire to gather facts for U.S. lawsuit. | 675 | 668.25 |
| 2/26/2024 | Jeff Rosenfeld | 0.53 | Continue researching and drafting background memo and questionnaire; internal communications re: same. | 675 | 357.75 |
| 2/26/2024 | Kelly Mulcahy | 0.52 | Review and edit memo and questionnaire  to client. | 415 | 215.8 |
| 2/27/2024 | Jeff Rosenfeld | 0.47 | Review client edits to joint memo and questionnaire; review background correspondence and Melon Sandbox game. | 675 | 317.25 |
| 2/28/2024 | Kelly Mulcahy | 0.47 | Review client edits to joint memo and questionnaire; review background correspondence and Melon Sandbox game. | 415 | 195.05 |
| 2/28/2024 | Jeff Rosenfeld | 0.46 | Review co-counsel additional questions to client and edits to joint memo and questionnaire. | 675 | 310.5 |
| 3/4/2024 | Kelly Mulcahy | 1.98 | Review and consider responses and background materials provided by client; create timeline re: same. | 415 | 821.7 |
| 3/4/2024 | Jeff Rosenfeld | 0.53 | Review client's further responses to questionnaires and background materials. | 675 | 357.75 |
| 3/6/2024 | Jeff Rosenfeld | 0.14 | Communicate with client re: analysis of information and legal strategy. | 675 | 94.5 |
| 3/6/2024 | Kelly Mulcahy | 0.25 | Review ongoing correspondence with client re: dispute with Iviliia and background information; review additional questions provided by Polish counsel. | 415 | 103.75 |
| 3/7/2024 | Jeff Rosenfeld | 0.04 | Briefly review new copyright applications; communicate with client re: same. | 675 | 27 |
| 3/7/2024 | Kelly Mulcahy | 0.09 | Continue to review ongoing correspondence with client and Polish counsel re: litigation strategy. | 415 | 37.35 |
| 3/18/2024 | Kelly Mulcahy | 0.37 | Review clients updated responses to Polish counsel re: collection of background information; review takedown client received from Google; review ongoing correspondence re: dispute. | 415 | 153.55 |

| 3/18/2024 | Jeff Rosenfeld | 1.29 | Communicate with client and co-counsel re: dispute status and litigation strategy. | 675 | 870.75 |
|---|---|---|---|---|---|
| 3/19/2024 | Kelly Mulcahy | 0.08 | Review ongoing correspondence from client and Polish counsel re: litigation strategy. | 415 | 33.2 |
| 3/19/2024 | Jeff Rosenfeld | 0.56 | Continue researching and drafting complaint. | 675 | 378 |
| 3/20/2024 | Jeff Rosenfeld | 0.69 | Conference with client and co-counsel re: litigation strategy; review background materials provided by client. | 675 | 465.75 |
| 3/20/2024 | Kelly Mulcahy | 0.87 | Attend conference call with client and Polish counsel; internal conference re: same; continue researching and drafting complaint. | 415 | 361.05 |
| 3/21/2024 | Jeff Rosenfeld | 1.57 | Continue researching and drafting copyright declaratory relief complaint and case-initiating documents. | 675 | 1059.75 |
| 3/21/2024 | Kelly Mulcahy | 1.58 | Research contact information and data access process on Google Play Store; internal conference re: same; continue to research and draft portions of complaint. | 415 | 655.7 |
| 3/22/2024 | Kelly Mulcahy | 0.31 | Continue researching and drafting copyright declaratory relief complaint | 415 | 128.65 |
| 3/25/2024 | Kelly Mulcahy | 2.46 | Continue researching and drafting copyright declaratory relief complaint | 415 | 1020.9 |
| 3/25/2024 | Jeff Rosenfeld | 0.02 | Internal conference re: draft complaint. | 675 | 13.5 |
| 3/26/2024 | Jeff Rosenfeld | 1.4 | Briefly review client's corporate documents; continue to review and revise draft complaint. | 675 | 945 |
| 3/26/2024 | Kelly Mulcahy | 0.24 | Continue researching and drafting portions copyright declaratory relief complaint | 415 | 99.6 |
| 3/27/2024 | Jeff Rosenfeld | 0.6 | Continue researching and drafting copyright declaratory relief complaint; communicate re: same to client and co-counsel. | 675 | 405 |
| 3/27/2024 | Kelly Mulcahy | 0.07 | Review ongoing correspondence with client and Polish counsel. | 415 | 29.05 |
| 3/28/2024 | Kelly Mulcahy | 0.07 | Continue researching and drafting portions of copyright declaratory relief complaint. | 415 | 29.05 |
| 4/2/2024 | Jeff Rosenfeld | 0.03 | Review correspondence from co-counsel; review defendant's copyright registrations. | 675 | 20.25 |
| 4/3/2024 | Jeff Rosenfeld | 0.51 | Review correspondence from client re: reinstatement of game on Google Play; revise draft complaint based on same. | 675 | 344.25 |
| 4/10/2024 | Jeff Rosenfeld | 0.81 | Review U.S. copyright registration; review and revise draft complaint based on same; communicate with client and co-counsel re: same. | 675 | 546.75 |

| Date | Name | Hours | Description | Rate | Amount |
|------|------|-------|-------------|------|--------|
| 4/11/2024 | Jeff Rosenfeld | 0.61 | Review and revise draft complaint per client edits; communicate with client and co-counsel re: same. | 675 | 411.75 |
| 4/11/2024 | Kelly Mulcahy | 0.48 | Review clients edits to complaint; internal conference re: same; review ongoing correspondence with client re: strategy. | 415 | 199.2 |
| 4/12/2024 | Kelly Mulcahy | 1.51 | Internal conference re: fraudulent trademark applications filed by defendant; revise complaint accordingly; correspond with client re: same. | 415 | 626.65 |
| 4/12/2024 | Jeff Rosenfeld | 0.84 | Communicate with client and co-counsel re: filing of lawsuit; review defendant's trademark application; internal conference re: same. | 675 | 567 |
| 4/15/2024 | Kelly Mulcahy | 0.46 | Conduct brief research re: opposition procedure for WIPO application re: defendant's trademark application; internal conference re: same; correspond with client re: same and complaint against Iviliia; review ongoing correspondence re: same. | 415 | 190.9 |
| 4/15/2024 | Jeff Rosenfeld | 0.13 | Internal conference re: draft complaint. | 675 | 87.75 |
| 4/15/2024 | Jasper Eagleton | 1.3 | Internal conference re. review and filing of complaint; review and revise draft complaint, summons, and civil cover sheet. | 225 | 292.5 |
| 4/16/2024 | Kelly Mulcahy | 1.1 | Review and revise draft complaint and supporting documents; internal conference re: same. | 415 | 456.5 |
| 4/16/2024 | Jasper Eagleton | 1.26 | Finalize and file complaint and other initiating documents; draft case memo and pleading template. | 225 | 283.5 |
| 4/16/2024 | Jeff Rosenfeld | 0.3 | Review filed complaint; brief research on service of process. | 675 | 202.5 |
| 4/17/2024 | Jeff Rosenfeld | 0.29 | Communicate with client and co-counsel re: filing of complaint and service of process. | 675 | 195.75 |
| 4/17/2024 | Kelly Mulcahy | 0.09 | Review ongoing correspondence with client re: filing of complaint. | 415 | 37.35 |
| 4/18/2024 | Jeff Rosenfeld | 2.23 | Internal conference re: filing of complaint; begin researching and drafting motion for alternative service. | 675 | 1505.25 |
| 4/18/2024 | Kelly Mulcahy | 0.25 | Review ongoing correspondence re: service of complaint in Poland and trademark opposition strategy. | 415 | 103.75 |
| 4/18/2024 | Jasper Eagleton | 0.83 | Call with clerk re: assignment to judge; re-file summons separately; review, finalize, and file reports on filing of an action re. copyright and trademark. | 225 | 186.75 |
| 4/19/2024 | Jeff Rosenfeld | 1.05 | Communicate with co-counsel re: service of complaint under Hague Convention; continue researching and drafting motion for alternative service. | 675 | 708.75 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 4/19/2024 | Kelly Mulcahy | 0.09 | Continue to review ongoing correspondence with client and co-counsel re: litigation strategy. | 415 | 37.35 |
| 4/19/2024 | Jasper Eagleton | 0.55 | Update case memo; download judge's standing orders; draft consent to magistrate judge. | 225 | 123.75 |
| 4/22/2024 | Jeff Rosenfeld | 1.2 | Complete Hague Convention application; communicate with co-counsel and client re: same. | 675 | 810 |
| 4/22/2024 | Ema Tilton | 0.24 | Process and route incoming order setting initial case management order with ADR deadlines and summons issued into client document management system; update litigation calendar re: same. | 225 | 54 |
| 4/23/2024 | Jeff Rosenfeld | 1.71 | Complete application for service under Hague Convention; communicate with co-counsel re: same; continue drafting motion for alternative service and supporting documents. | 675 | 1154.25 |
| 4/29/2024 | Kelly Mulcahy | 0.06 | Review ongoing correspondence with client and Polish counsel re: case status and strategy. | 415 | 24.9 |
| 4/30/2024 | Ema Tilton | 0.17 | Draft consent to magistrate judge. | 225 | 38.25 |
| 5/1/2024 | Ema Tilton | 0.37 | Finalize and file consent to magistrate judge. | 225 | 83.25 |
| 5/6/2024 | Jeff Rosenfeld | 0.46 | Continue researching and drafting motion for alternative service. | 675 | 310.5 |
| 5/6/2024 | Jasper Eagleton | 0.09 | Process and route incoming clerk's notice re. consent to magistrate judge into document management system and check for related deadlines. | 225 | 20.25 |
| 5/7/2024 | Jeff Rosenfeld | 0.17 | Communicate with client and co-counsel re: motion for alternative service; internal conference re: same. | 675 | 114.75 |
| 5/7/2024 | Kelly Mulcahy | 0.28 | Review motion authorizing service via email; review correspondence re: same. | 415 | 116.2 |
| 5/8/2024 | Jeff Rosenfeld | 0.14 | Communicate with co-counsel re: Hague Convention application. | 675 | 94.5 |
| 5/8/2024 | Kelly Mulcahy | 0.22 | Continue to review ongoing correspondence with Polish counsel and client re: status of Polish proceedings and serving Iviliia. | 415 | 91.3 |
| 5/9/2024 | Jeff Rosenfeld | 0.39 | Execute Hague Convention application; transmit same to co-counsel in Poland by Federal Express. | 675 | 263.25 |
| 5/10/2024 | Ema Tilton | 0.09 | Update litigation calendar. | 225 | 20.25 |
| 5/10/2024 | Kelly Mulcahy | 0.09 | Continue to review ongoing correspondence with Polish counsel re: case status and strategy; internal conference re: upcoming case management conference. | 415 | 37.35 |
| 5/14/2024 | Jeff Rosenfeld | 0.04 | Communicate with Polish counsel re: Hague Convention application. | 675 | 27 |

| 5/17/2024 | Jeff Rosenfeld | 0.11 | Review new fraudulent claim of infringement. | 675 | 74.25 |
|---|---|---|---|---|---|
| 5/17/2024 | Kelly Mulcahy | 0.17 | Continue to review correspondence with client and Polish counsel re: ongoing reporting of infringement by Inviliia. | 415 | 70.55 |
| 5/20/2024 | Jeff Rosenfeld | 0.09 | Review correspondence from Polish counsel re: decision of Polish authorities not to prosecute. | 675 | 60.75 |
| 5/20/2024 | Kelly Mulcahy | 0.07 | Review ongoing correspondence re: criminal proceeding against Iviliia in Poland. | 415 | 29.05 |
| 5/23/2024 | Jeff Rosenfeld | 0.1 | Communicate with Polish counsel re: status of Hague Convention application translation and declaration. | 675 | 67.5 |
| 5/23/2024 | Kelly Mulcahy | 0.11 | Review update received from court re: upcoming case management conference; update calendar accordingly. | 415 | 45.65 |
| 5/23/2024 | Ema Tilton | 0.2 | Process and route incoming clerk's notice resetting initial case management conference into client document management system; update calendar re: same. | 225 | 45 |
| 5/24/2024 | Jeff Rosenfeld | 0.57 | Communicate with Polish counsel re: Hague Convention application and declaration in support of motion for alternative service; begin drafting case management statement. | 675 | 384.75 |
| 5/24/2024 | Kelly Mulcahy | 1.26 | Review and process certificates of translation; review and edit motion for alternative service and supporting declarations; internal conference re: same. | 415 | 522.9 |
| 5/28/2024 | Kelly Mulcahy | 0.71 | Continue to review ongoing correspondence with client; continue to review declarations and supporting evidence. | 415 | 294.65 |
| 5/28/2024 | Jeff Rosenfeld | 0.07 | Review and accept edits to motion for alternative service. | 675 | 47.25 |
| 5/31/2024 | Jeff Rosenfeld | 1.72 | Communicate with Polish counsel re: status of Hague Convention application; review and revise motion for alternative service and supporting documents; continue drafting case management statement. | 675 | 1161 |
| 5/31/2024 | Kelly Mulcahy | 0.1 | Review ongoing correspondence re: filing of Hague Convention application. | 415 | 41.5 |
| 6/3/2024 | Jeff Rosenfeld | 0.19 | Compile exhibits to motion for alternative service; communicate with co-counsel and client's counsel re: same. | 675 | 128.25 |
| 6/3/2024 | Ema Tilton | 0.36 | Finalize exhibits to declarations in support of motion for alternative service. | 225 | 81 |

| 6/4/2024 | Jeff Rosenfeld | 0.15 | Review and incorporate client's counsel's edits to declaration in support of motion to authorize email service. | 675 | 101.25 |
|---|---|---|---|---|---|
| 6/4/2024 | Kelly Mulcahy | 0.18 | Review ongoing correspondence with client re: revised declaration in support of motion for alternative service; briefly review updated declaration of V. Adashchik in support of motion for alternative service. | 415 | 74.7 |
| 6/5/2024 | Jeff Rosenfeld | 0.18 | Review and implement edits to co-counsel's declaration in support of motion for alternative service. | 675 | 121.5 |
| 6/5/2024 | Kelly Mulcahy | 0.27 | Briefly review revised Pekala declaration in support of motion for altnernative service; internal conference re: hearing on same. | 415 | 112.05 |
| 6/5/2024 | Ema Tilton | 0.22 | Finalize and transmit declaration in support of plaintiff's motion for alternative service. | 225 | 49.5 |
| 6/6/2024 | Ema Tilton | 0.09 | Process and route incoming signed declaration in support of motion to dismiss. | 225 | 20.25 |
| 6/6/2024 | Jeff Rosenfeld | 0.04 | Communicate with co-counsel and client's counsel re: execution of declarations in support of motion to authorize email service. | 675 | 27 |
| 6/7/2024 | Jeff Rosenfeld | 0.08 | Finalize and assist in filing motion to authorize email service. | 675 | 54 |
| 6/7/2024 | Ema Tilton | 4.22 | Review, finalize, and file motion for order authorizing email service; declarations in support of and proposed order; copies submitted to chambers. | 225 | 949.5 |
| 6/7/2024 | Kelly Mulcahy | 0.64 | Final review of motion for alternative service; internal conference re: same. | 415 | 265.6 |
| 6/10/2024 | Kelly Mulcahy | 0.1 | Continue to review ongoing email correspondence with Polish counsel re: status of cases against Iviliia. | 415 | 41.5 |
| 6/10/2024 | Jeff Rosenfeld | 0.66 | Communicate with co-counsel re: filing of motion for email service; continue drafting case management statement. | 675 | 445.5 |
| 6/11/2024 | Jeff Rosenfeld | 0.02 | Communicate with client re: ADR and ESI certifications. | 675 | 13.5 |
| 6/11/2024 | Kelly Mulcahy | 0.03 | Continue to review ongoing correspondence with client and Polish counsel re: ongoing misconduct by Iviliia. | 415 | 12.45 |
| 6/11/2024 | Ema Tilton | 0.09 | Process and route incoming third notice to defendant re: filing consent or declination of magistrate judge into client document management system. | 225 | 20.25 |
| 6/18/2024 | Jeff Rosenfeld | 0.21 | Communicate with client re: ADR certification; internal communications re: same. | 675 | 141.75 |

| 6/18/2024 | Ema Tilton | 0.12 | Finalize and send ADR certification by parties and counsel to client for signature. | 225 | 27 |
|---|---|---|---|---|---|
| 6/19/2024 | Jeff Rosenfeld | 0.08 | Draft reply declaration in support of reply to motion to authorize email service. | 675 | 54 |
| 6/20/2024 | Kelly Mulcahy | 0.16 | Review notice from court clerk re" terminating hearing; review docket for upcoming deadlines. | 415 | 66.4 |
| 6/20/2024 | Jeff Rosenfeld | 0.04 | Review clerk's notice re: termination of motion hearing; internal communications re: same. | 675 | 27 |
| 6/20/2024 | Jasper Eagleton | 0.2 | Process and route incoming clerk's notice vacating hearing on Plaintiff's motion for an order authorizing service by email into document management system and update litigation calendar. | 225 | 45 |
| 6/24/2024 | Jeff Rosenfeld | 0.1 | Review correspondence from co-counsel; finalize ADR certification; communicate with client re: same. | 675 | 67.5 |
| 6/24/2024 | Kelly Mulcahy | 0.11 | Continue to review email correspondence with Polish counsel and client re: litigation status and strategy. | 415 | 45.65 |
| 6/25/2024 | Ema Tilton | 0.27 | Process and route incoming client signed ADR certification into client document management system. | 225 | 60.75 |
| 6/27/2024 | Ema Tilton | 0.17 | File ADR certification by parties and counsel. | 225 | 38.25 |
| 6/28/2024 | Jeff Rosenfeld | 0.2 | Conference with client re: case status and strategy. | 675 | 135 |
| 7/1/2024 | Kelly Mulcahy | 0.21 | Review ongoing correspondence re: international trademark opposition; check status of Iviliia US TM app; correspond with client re: same. | 415 | 87.15 |
| 7/2/2024 | Kelly Mulcahy | 0.06 | Continue to review ongoing correspondence with client and Polish counsel. | 415 | 24.9 |
| 7/2/2024 | Jeff Rosenfeld | 0.25 | Continue drafting case management statement. | 675 | 168.75 |
| 7/3/2024 | Kelly Mulcahy | 0.06 | Review ongoing correspondence with client and Polish counsel re: strategy for international trademark opposition. | 415 | 24.9 |
| 7/8/2024 | Jeff Rosenfeld | 0.02 | Review correspondence from co-counsel re: status of international trademark proceeding. | 675 | 13.5 |
| 7/9/2024 | Kelly Mulcahy | 0.11 | Continue to review ongoing correspondence with client and Polish counsel re: international trademark opposition. | 415 | 45.65 |
| 7/10/2024 | Jeff Rosenfeld | 0.16 | Review correspondence from co-counsel re: trademark opposition proceeding; continue drafting case management statement. | 675 | 108 |

| 7/15/2024 | Kelly Mulcahy | 0.06 | Continue to review ongoing correspondence with client and Polish counsel re: international trademark opposition proceding. | 415 | 24.9 |
|---|---|---|---|---|---|
| 7/17/2024 | Kelly Mulcahy | 0.1 | Internal conference re:case management statement and case status and strategy. | 415 | 41.5 |
| 7/22/2024 | Jeff Rosenfeld | 0.6 | Finalize case management statement and supporting declaration; review similar complaint about Iviliia from Overwolf. | 675 | 405 |
| 7/22/2024 | Kelly Mulcahy | 0.12 | Review and consider correspondence received from Overwolf re: Iviliia extortion. | 415 | 49.8 |
| 7/23/2024 | Jasper Eagleton | 0.49 | Draft, finalize, and file notice of appearance. | 225 | 110.25 |
| 7/25/2024 | Jeff Rosenfeld | 0.15 | Internal conference re: filing of case management statement. | 675 | 101.25 |
| 7/25/2024 | Jasper Eagleton | 0.91 | Review, revise, finalize, file, and serve case management statement and declaration. | 225 | 204.75 |
| 7/25/2024 | Kelly Mulcahy | 0.06 | Internal conference re: finalizing and filing case management statement. | 415 | 24.9 |
| 7/29/2024 | Ema Tilton | 0.2 | Process and route order resetting case management conference into client document management system; update litigation calendar re: same. | 225 | 45 |
| 7/30/2024 | Jasper Eagleton | 0.17 | Update litigation calendar re: re-setting of initial case management conference and deadline for case management statement. | 225 | 38.25 |
| 7/31/2024 | Jeff Rosenfeld | 0.02 | Communicate with client re: continuance of CMC. | 675 | 13.5 |
| 8/8/2024 | Kelly Mulcahy | 0.11 | Review ongoing correspondence from foreign counsel re: status of injunction against Iviliia. | 415 | 45.65 |
| 8/9/2024 | Jasper Eagleton | 0.1 | Update litigation calendar re: 26(f) conference deadline. | 225 | 22.5 |
| 8/14/2024 | Jeff Rosenfeld | 0.04 | Review injunction issued by Polish court. | 675 | 27 |
| 8/14/2024 | Kelly Mulcahy | 0.16 | Review ongoing correspondence with Polish counsel; briefly review order issued by Polish court re: injunction against Iviliia. | 415 | 66.4 |
| 8/16/2024 | Jasper Eagleton | 0.09 | Process and route incoming enforcement documents from Polish court into document management system. | 225 | 20.25 |
| 8/20/2024 | Jeff Rosenfeld | 0.03 | Communicate with client and co-counsel re: case status and timing. | 675 | 20.25 |
| 8/22/2024 | Kelly Mulcahy | 0.14 | Continue to review ongoing correspondence re: status of Polish case and injunction. | 415 | 58.1 |
| 8/22/2024 | Jeff Rosenfeld | 0.65 | Communicate with client and co-counsel re: service of process under the Hague Convention and notification of Google and Apple of Polish | 675 | 438.75 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 8/23/2024 | Kelly Mulcahy | 0.16 | Continue to review ongoing correspondence with client and Polish counsel. | 415 | 66.4 |
| 8/23/2024 | Jeff Rosenfeld | 0.13 | Review correspondence between client and Polish counsel re: fee request; communicate with client and co-counsel re: draft correspondence to Google and Apple re: Polish injunction. | 675 | 87.75 |
| 8/26/2024 | Kelly Mulcahy | 0.06 | Continue to review ongoing correspondence with client and Polish counsel. | 415 | 24.9 |
| 8/27/2024 | Jeff Rosenfeld | 0.03 | Follow up with client re: draft notices to Google and Apple re: Polish injunction. | 675 | 20.25 |
| 9/3/2024 | Jeff Rosenfeld | 0.08 | Communicate with client re: notice to Google and Apple re: Polish injunction; briefly review denial of appeal of dismissal of Polish criminal complaint. | 675 | 54 |
| 9/4/2024 | Jeff Rosenfeld | 0.2 | Communicate with co-counsel re: status of service under Hague Convention; communicate with Google and Apple re: injunction in Polish action. | 675 | 135 |
| 9/17/2024 | Jeff Rosenfeld | 0.38 | Briefly review scheduling for continued case management conference; draft supplemental case management statement. | 675 | 256.5 |
| 9/18/2024 | Jeff Rosenfeld | 0.46 | Continue drafting supplemental case management statement and supporting declaration. | 675 | 310.5 |
| 9/18/2024 | Kelly Mulcahy | 0.13 | Briefly review office action issued against Iviilia in U.S. trademark application; review correspondence with client re: same. | 415 | 53.95 |
| 9/25/2024 | Jeff Rosenfeld | 0.13 | Review correspondence from client and co-counsel re: ongoing infringement. | 675 | 87.75 |
| 9/26/2024 | Jeff Rosenfeld | 0.48 | Communicate with client and Polish counsel re: filing of additional lawsuit in Poland. | 675 | 324 |
| 9/30/2024 | Jeff Rosenfeld | 0.08 | Communicate with Polish counsel re: service of process under the Hague Convention. | 675 | 54 |
| 10/2/2024 | Jeff Rosenfeld | 0.05 | Review communication from Polish counsel re: sham license agreements with Iviilia. | 675 | 33.75 |
| 10/2/2024 | Ema Tilton | 0.09 | Review status of Iviilia U.S. trademark application re: publication. | 225 | 20.25 |
| 10/3/2024 | Jeff Rosenfeld | 0.03 | Communicate with client and Polish counsel re: potential collateral legal action against Iviilia. | 675 | 20.25 |
| 10/7/2024 | Kelly Mulcahy | 0.1 | Review ongoing email correspondence with client and Polish counsel. | 415 | 41.5 |

| Date | Person | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 10/8/2024 | Jeff Rosenfeld | 0.04 | Communicate with Polish counsel re: non-receipt of proof of service from Warsaw Regional Court. | 675 | 27 |
| 10/9/2024 | Ema Tilton | 0.09 | Process and route incoming Apple response to injunction into client document management system. | 225 | 20.25 |
| 10/10/2024 | Jeff Rosenfeld | 0.07 | Review and revise case management statement re: anticipated proof of service. | 675 | 47.25 |
| 10/11/2024 | Jeff Rosenfeld | 0.04 | Communicate with Polish counsel re: expected proof of service from Warsaw Regional Court. | 675 | 27 |
| 10/14/2024 | Jeff Rosenfeld | 0.19 | Communicate with Polish counsel re: proof of service under the Hague Convention. | 675 | 128.25 |
| 10/14/2024 | Jasper Eagleton | 1.06 | Review and revise supplemental case management and declaration. | 225 | 238.5 |
| 10/15/2024 | Jeff Rosenfeld | 0.04 | Communicate with Polish counsel re: proof of service under the Hague Convention. | 675 | 27 |
| 10/15/2024 | Jasper Eagleton | 0.46 | Review, revise, finalize, and file supplemental case management statement and supporting declaration. | 225 | 103.5 |
| 10/15/2024 | Kelly Mulcahy | 0.11 | Continue to review ongoing correspondence with client and Polish counsel; internal conference re: upcoming case management conference. | 415 | 45.65 |
| 10/17/2024 | Jeff Rosenfeld | 0.07 | Briefly review judge's case calendar and standing order re: forthcoming case management conference. | 675 | 47.25 |
| 10/25/2024 | Jeff Rosenfeld | 0.62 | Prepare request for clerk's default in anticipation of proof of service; review proof of service; communicate with co-counsel re: same. | 675 | 418.5 |
| 10/28/2024 | Jeff Rosenfeld | 0.56 | Communicate with co-counsel re: proof of service under Hague Convention; prepare same for filing; finalize request for default. | 675 | 378 |
| 10/28/2024 | Ema Tilton | 1.06 | Review, proof and finalize proof of service, declaration in support and exhibits. | 225 | 238.5 |
| 10/29/2024 | Ema Tilton | 1.42 | Review, finalize and file request for entry of default and declaration in support of same. | 225 | 319.5 |
| 10/29/2024 | Jeff Rosenfeld | 0.11 | Review request for default; internal communications re: same. | 675 | 74.25 |
| 10/31/2024 | Jeff Rosenfeld | 0.04 | Communicate with the court re: withdrawal of motion for alternative service; internal communications re: same. | 675 | 27 |
| 10/31/2024 | Kelly Mulcahy | 0.15 | Internal communiations re: notice of withdrawal of motin for alternative service. | 415 | 62.25 |

| 10/31/2024 | Ema Tilton | 0.94 | Draft notice of withdrawal of motion for alternative service; finalize and file same. | 225 | 211.5 |
| 10/31/2024 | Jasper Eagleton | 0.14 | Process and route incoming notice resetting initial case management conference into document management system and calendar related deadlines. | 225 | 31.5 |
| 11/6/2024 | Ema Tilton | 0.09 | Process and route clerk's notice entry of default into client document management system. | 225 | 20.25 |
| 11/6/2024 | Kelly Mulcahy | 0.35 | Review correspondence re: motion for default judgment; internal conference re: same. | 415 | 145.25 |
| 11/6/2024 | Jeff Rosenfeld | 0.23 | Communicate with client re: entry of clerk's default; internal conference re: motion for default judgment. | 675 | 155.25 |
| 11/7/2024 | Kelly Mulcahy | 2.14 | Begin to research and draft portions of motion for default judgment. | 415 | 888.1 |
| 11/7/2024 | Ema Tilton | 2.3 | Draft templates for motion for default judgement and supporting documents. | 225 | 517.5 |
| 11/8/2024 | Jeff Rosenfeld | 0.17 | Internal conference re: motion for default judgment. | 675 | 114.75 |
| 11/8/2024 | Kelly Mulcahy | 0.17 | Internal conference re: motion for default judgment. | 415 | 70.55 |
| 11/11/2024 | Jeff Rosenfeld | 0.41 | Research process for establihsing entitlement to injunctive relief at default judgment. | 675 | 276.75 |
| 11/12/2024 | Jeff Rosenfeld | 2.09 | Continue research re: motion for default judgment; begin drafting portions of same. | 675 | 1410.75 |
| 11/12/2024 | Kelly Mulcahy | 0.66 | Continue researching and drafting portions of motion for default judgment. | 415 | 273.9 |
| 11/13/2024 | Kelly Mulcahy | 3.37 | Continue to draft MPA | 415 | 1398.55 |
| 11/13/2024 | Jeff Rosenfeld | 1.12 | Continue researching and drafting portions of motion for default judgment. | 675 | 756 |
| 11/14/2024 | Jeff Rosenfeld | 1.24 | Continue researching and drafting portions of motion for default judgment. | 675 | 837 |
| 11/14/2024 | Kelly Mulcahy | 3.87 | Continue researching and drafting portions of motion for default judgment. | 415 | 1606.05 |
| 11/15/2024 | Jeff Rosenfeld | 0.5 | Continue researching and drafting portions of motion for default judgment. | 675 | 337.5 |
| 11/18/2024 | Jeff Rosenfeld | 0.55 | Continue researching and drafting portions of motion for default judgment. | 675 | 371.25 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 11/19/2024 | Jasper Eagleton | 0.12 | Process and route incoming clerk's notice setting compliance deadline for motion for default judgment into document management system and calendar related deadlines. | 225 | 27 |
| 11/20/2024 | Kelly Mulcahy | 0.11 | | 415 | 45.65 |
| 11/20/2024 | Jeff Rosenfeld | 0.86 | Continue researching and drafting motion for default judgment. | 675 | 580.5 |
| 11/21/2024 | Jeff Rosenfeld | 0.07 | Communicate with client re: status of motion for default judgment and ongoing incidents of misconduct by defendant. | 675 | 47.25 |
| 11/21/2024 | Kelly Mulcahy | 1.51 | Continue to draft MPA. | 415 | 626.65 |
| 11/22/2024 | Kelly Mulcahy | 0.36 | Review correspondence from co-counsel. | 415 | 149.4 |
| 11/25/2024 | Kelly Mulcahy | 0.38 | Review ongoing correspondence with Polish counsel; continue to draft MPA. | 415 | 157.7 |
| 11/25/2024 | Jeff Rosenfeld | 1.84 | Continue researching and drafting portions of motion for default judgment; research and draft second supplemental case management statement. | 675 | 1242 |
| 11/26/2024 | Kelly Mulcahy | 0.21 | Internal conference re: motion for default judgment and case management conference and statement; briefly review same. | 415 | 87.15 |
| 11/26/2024 | Ema Tilton | 0.32 | Review, finalize and file case management statement and declaration. | 225 | 72 |
| 12/2/2024 | Jeff Rosenfeld | 0.3 | Communicate with client re: motion for default judgment; review and revise motion for default judgment. | 675 | 202.5 |
| 12/2/2024 | Kelly Mulcahy | 0.06 | Review communication from Polish counsel re: sham license agreements with Iviliia. | 415 | 24.9 |
| 12/2/2024 | Jasper Eagleton | 0.09 | Update litigation calendar re: continued deadline to file case management statement. | 225 | 20.25 |
| 12/6/2024 | Jeff Rosenfeld | 0.55 | Communicate with client re: status of declaration in support of motion for default judgment; review materials provided by client. | 675 | 371.25 |
| 12/10/2024 | Jeff Rosenfeld | 0.35 | Communicate with client re: execution of declaration in support of motion for default judgment; review and revise same. | 675 | 236.25 |
| 12/10/2024 | Ema Tilton | 0.58 | Review declaration in support of motion for default judgement, combine exhibits re: same; send to client for signature. | 225 | 130.5 |
| 12/11/2024 | Jasper Eagleton | 0.76 | Review, revise, finalize, and send declaration in support of motion for default for client's signature. | 225 | 171 |
| 12/12/2024 | Jasper Eagleton | 2.96 | Review, revise, and finalize notice of motion for default and memorandum of points and authorities; draft table of authorities. | 225 | 666 |

| | | | | | |
|---|---|---|---|---|---|
| | | | Review and revise Adashchik declaration; communicate with client and | | |
| 12/13/2024 | Jeff Rosenfeld | 0.06 | internally re: same; finalize motion and supporting papers. | 675 | 40.5 |
| 12/16/2024 | Jasper Eagleton | 0.5 | Finalize and file motion for default judgment and supporting documents; serve same on defendant by email. | 225 | 1.2 |

**Total:**     **$47,669.30**

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Kelly Mulcahy (Bar No. 305472)
548 Market Street #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
kelly@kr.law

Attorneys for Plaintiff Ducky Ltd.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DUCKY LTD.,**<br><br>                    Plaintiff,<br><br>        v.<br><br>**IVILIIA MILLIONIC IT SP. Z O.O.,**<br><br>                    Defendant. | Case No. 3:24-CV-02268-PHK<br><br><br>**DECLARATION OF VLADIMIR ADASHCHIK IN SUPPORT OF PLAINTIFF DUCKY LTD.'S MOTION FOR DEFAULT AGAINST DEFENDANT IVILIIA MILLIONIC IT SP. Z O.O.**<br><br>Date:        January 24, 2024<br>Time:        2:30 p.m.<br>Ctrm:        F – 15th Floor<br>Judge:      The Hon. Peter H. Kang |

**ADASHCHIK DECL. ISO MTN FOR DEFAULT JUDGMENT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

I, Vladimir Adashchik, do hereby declare:

1.      I am an attorney residing in Paphos, Cyprus. I have been engaged by Plaintiff Ducky Ltd. regarding various intellectual property issues, including the dispute at issue in this action. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

2.      On or around October 18, 2023, I learned, by email, that Defendant had submitted a copyright infringement notice to Apple regarding Plaintiff's mobile application game Melon Sandbox (the "Game"). As a result of Defendant's copyright infringement notice, Apple threatened to remove the Game from the Apple App Store.

3.      In late March 2024, I learned that Defendant had submitted a copyright infringement notice to Google regarding the Game by email. As a result of Defendant's copyright infringement notice, the Game was temporarily removed from the Google Play Store.

4.      On or around November 24, 2023, I learned that Defendant had accused third party Skullhead Gaming of copyright infringement arising from derivative works that Skullhead Gaming had created based on the Game. Skullhead Gaming forwarded the email correspondence between it and Defendant to me. A true and correct copy of that email chain, which I received from Skullhead Gaming, is attached hereto as **Exhibit A**.

5.      On or around April 2, 2024, I learned that Defendant had accused third party Hiếu Hoàng Trung of copyright infringement arising from derivative works that Mr. Trung had created based on the Game. Mr. Trung forwarded the email correspondence between himself and Defendant to Plaintiff. A true and correct copy of that email chain, which Plaintiff received from Mr. Trung, is attached hereto as **Exhibit B**.

6.      On or around April 2, 2024, I learned that Defendant had accused third party Just Playground of copyright infringement arising from derivative works that Just Playground had created based on the Game. Just Playground forwarded the email correspondence between itself and Defendant to Plaintiff. A true and correct copy of that email chain, which Plaintiff received from Just Playground, is attached hereto as **Exhibit C**.

7.      On September 29, 2024, I learned by email that Defendant had accused third party Marbles Labs of copyright infringement arising from derivative works that Marbles Labs had

1

ADASHCHIK DECL. ISO MTN FOR
DEFAULT JUDGMENT

created based on the Game. Attached hereto as **Exhibit D** is a true and correct copy of that email from Marbles Labs dated September 29, 2024.

8.     On September 25, 2024, I learned by email that Defendant had entered into an agreement with third party Hien Phan to license copyrights in the Game to Phan. Attached hereto as **Exhibit E** is a true and correct copy of an email chain among me, Apple, and Hien Phan, the topmost email of which is dated September 25, 2024, in which Phan states that "our application is licensed by IVILIIA MILLIONIC IT Sp. z o.o., which is the copyright holder of Melon Sandbox."

9.     On September 25, 2024, I learned by email that Defendant had entered into an agreement with third party Loan Truong to license copyrights in the Game to Truong. Attached hereto as **Exhibit F** is a true and correct copy of an email chain among me (attachment omitted), Apple, and Loan Truong, the topmost email of which is dated September 25, 2024, in which Truong states, "I and the company IVILIIA MILLIONIC IT Sp. z o.o have an agreement on the use of melon characters (please refer to the attached document)."

10.    On September 26, 2024, I learned by email that Defendant had entered into an agreement with third party Bảo Cao to license copyrights in the Game to Cao. Attached hereto as **Exhibit G** is a true and correct copy of an email chain among me, Apple, and Bảo Cao, the topmost email of which is dated September 26, 2024. In this email chain, Cao states, "I have discussed with Mr. Osadchyi of IVILIIA MILLIONIC It Sp. z o.o. I have full legal rights to use the characters registered by IVILIIA MILLIONIC It Sp. z o.o."

11.    On September 26, 2024, I learned by email that Defendant had entered into an agreement with third party Vladyslav Kovalov to license copyrights in the Game to Kovalov. Attached hereto as **Exhibit H** is a true and correct copy of an email chain among me, Apple, and Kovalov, the topmost email of which is dated September 27, 2024. In this email chain, Kovalov states:

> "I would like to draw your attention to the fact that my application does not violate your intellectual property rights, as I have obtained all the necessary permissions to use the app name from the companies IVILIIA MILLIONIC IT Sp. z o.o. (trademark registration number - 1782870- MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOLL PEOPLE GAME) and NEXT LEVEL APPS TECHNOLOGY – FZCO (trademark registration number - 1771641 – SKIBIDI TOILET VS CAMERAMAN TV WOMAN X TV MAN VS G-MAN)."

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

12.     **Exhibits A-H** reflect a sample of the complaints and communications that Plaintiff has received about Defendant claiming copyrights in the Game. Plaintiff believes that it has only learned about a small sample of Defendant's claims to third parties that it owns the copyrights in the Game.

13.     On or around November 11, 2023, Defendant applied to register the design and word trademark MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS; RAGDOOL PEOPLE GAME with the European Union Intellectual Property Office ("EUIPO"). On July 31, 2024, Plaintiff filed an opposition to Defendant's application. A true and correct copy of the Receipt of Notice of Opposition from the EUIPO is attached hereto as **Exhibit I**.

14.     On April 5, 2024, Plaintiff initiated a civil case in the Regional Court of Warsaw, Poland seeking an injunction against Defendant. On September 9, 2024, the Regional Court of Warsaw issued a Decision and Injunction against Defendant. A true and correct copy of a sworn translation of the Decision of the Regional Court of Warsaw is attached hereto as **Exhibit J**. As reflected in **Exhibit J**, the Regional Court of Warsaw enjoined Defendant from: a) attempting to block the Game on the Apple App Store and the Google Play Store, b) attempting to block videos of the Game on YouTube, and c) impersonating the owner of the copyrights to the Game. The Decision imposes fines of up to 5,000 Polish Zloty for Defendant's future violations of the Polish injunction.

15.     As shown by **Exhibits D-H,** Defendant's misconduct continued after the initiation of the above-captioned lawsuit and after Plaintiff obtained the injunction from the Polish court. As reflected by these Exhibits, Defendant's continued misconduct included DMCA takedown notices submitted to Apple.

16.     Defendant's misconduct has caused Plaintiff to lose money, goodwill, and brand recognition when the Game was temporarily removed from the Apple App Store and Google Play Store.

17.     Defendant's misconduct has also caused Plaintiff to lose goodwill because Defendant reached out to an unknown number of third parties, claiming to be the copyright holder to the Game, and demanded money and license agreements from these third parties.

3

ADASHCHIK DECL. ISO MTN FOR
DEFAULT JUDGMENT

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

18.    Defendant's misconduct has caused and is still causing Plaintiff to devote a substantial amount of time and money, including by: a) responding to Google and Apple with counter notifications, b) responding to third parties who have received demands from Defendant, c) pursuing legal relief in the U.S. and Poland, and d) pursuing the above-described opposition proceeding with the EUIPO.

19.    Without an injunction from a U.S. court, I believe that Defendant will continue to send takedown notices and other legal process to Apple and Google, thereby interrupting the availability of the Game.

I declare under penalty perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  ___Dec 15, 2024_____    By: ___*Vladimir Adashchik*_____
                                          Vladimir Adashchik (Dec 15, 2024 12:11 GMT+3)
                                          Vladimir Adashchik

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Exhibit A

| | |
|---|---|
| **From:** | Ivan Fedyanin <fedyanin@playducky.com> |
| **Sent:** | Friday, November 24, 2023 5:46 AM |
| **To:** | Vladimir Adashchik; Alisher Yakubov |
| **Subject:** | Fwd: I agree, please restore my videos. (IGNORE OTHER EMAILS) |

Ivan,
Ducky
---------- Forwarded message ----------
**From:** Skullhead Gaming <bros51459@gmail.com>
**Date:** 24 Nov 2023 at 15:42 +0200
**To:** Ivan@playducky.com
**Subject:** Fwd: I agree, please restore my videos. (IGNORE OTHER EMAILS)

---------- Forwarded message ---------
From: **Ivillia Milionic** <ivilliamilionic@gmail.com>
Date: Sat, 25 Nov 2023 at 02:22
Subject: Re: I agree, please restore my videos. (IGNORE OTHER EMAILS)
To: Skullhead Gaming <bros51459@gmail.com>

if you delete all melon videos with our characters - we will not have grounds to strike, YouTube do not ban without legal documents.
Regarding your question - we are a company who is a fan of the Melon Playground and tries to do the best to remove copies.

пт, 24 нояб. 2023 г. в 15:20, Skullhead Gaming <bros51459@gmail.com>:
  I need to understand, do you guys own Melon Playground or Mods for Melon Playground?

 On Sat, 25 Nov 2023 at 02:18, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
  So if you decide to terminate the agreement, warn us two weeks before the December payout and we will prepare the termination.

 пт, 24 нояб. 2023 г. в 15:17, Ivillia Milionic <ivilliamilionic@gmail.com>:
  we don't have the goal to destroy bloggers, only to delete copies of original melon playground, and the developers of these copies steal videos from guys like you and use them as adds. That is it.

  пт, 24 нояб. 2023 г. в 15:16, Ivillia Milionic <ivilliamilionic@gmail.com>:
   yep, or you can continue using our characters in videos for 20%

   пт, 24 нояб. 2023 г. в 15:12, Skullhead Gaming <bros51459@gmail.com>:
    I could have read wrong, but If I pay the $1000, and pay the 20% for november and december, and delete the videos. You are fine with that? or no?

    On Sat, 25 Nov 2023 at 02:07, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:

1

No, you don't have to pay if you decide to delete. Legally it works in another way.
1) You violated copyright => we deleted your channel
2) you agreed for our conditions => we restored your channel
3) for november and december you have to pay anyway, if you decided to stop this permission - you warn us, we are closing month with your last payment and you can delete all videos by yourself, not by copyright claim. that is it.
which website?

пт, 24 нояб. 2023 г. в 14:55, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
 Also I will set up a profile for the website in the morning if that's fine with you.

 On Sat, 25 Nov 2023 at 01:41, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
  we discuss the question of prolongation or deleting all copyrighted content.
  also you can terminate it, for example you warn us about your intent to terminate it and delete content 2 weeks before next payment, then you pay and we are making termination agreement.

  пт, 24 нояб. 2023 г. в 14:34, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
   I also have a question. What happens when the contract ends?

  On Sat, 25 Nov 2023 at 01:28, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
   trust wallet is good. We have been working with it for 3 years now. Verification is not required. But you can choose any you want, there are a lot of similar services.
   [https://trustwallet.com/](https://trustwallet.com/)

   пт, 24 нояб. 2023 г. в 14:26, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
    What website do I use to make one?

   On Sat, 25 Nov 2023 at 01:24, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
    have you created TRC-20 wallet?

    пт, 24 нояб. 2023 г. в 14:14, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
    Okay

    On Sat, 25 Nov 2023 at 01:13, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
     as we agreed after you will receive payment from youtube. As i understood it will be till the next week

     пт, 24 нояб. 2023 г. в 14:08, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
     Okay. Also what is the time limit on the $1000?

     On Sat, 25 Nov 2023 at 00:58, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
      You need to show it when all payments will be displayed there for the current month

      пт, 24 нояб. 2023 г. в 13:32, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
       Do I show you the adsense today or later this month?

      On Sat, 25 Nov 2023 at 00:26, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)> wrote:
       You requested for something earlier, what was it?

       On Fri, 24 Nov 2023 at 22:50, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:
        yep, both, i think need to wait.
        If something will left unbanned - send me titles of videos and links again.

пт, 24 нояб. 2023 г. в 11:36, Skullhead Gaming <bros51459@gmail.com>:
That is strange. Okay tho. Will the Melon Gaming and SkullGamez videos both be unbanned?

On Fri, 24 Nov 2023 at 22:30, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
Have already sent youtube email regarding those 2 videos.
Will be unbanned.
Regarding 2 small channels, we have checked all claims - we haven't claimed them, only your 2 main channels.

пт, 24 нояб. 2023 г. в 10:03, Ivillia Milionic <ivilliamilionic@gmail.com>:
I will try to find them.

пт, 24 нояб. 2023 г. в 10:00, Skullhead Gaming <bros51459@gmail.com>:
I don't have the links for the terminated videos on those channels.

YouTube removed them with no strike or warning.

But I know it was for this reason due to I was told by the Copyright Team.

On Fri, 24 Nov 2023 at 20:56, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
also links and videos on terminated channels

пт, 24 нояб. 2023 г. в 09:55, Skullhead Gaming <bros51459@gmail.com>:
Melon Gaming Terminated videos:
- https://youtube.com/shorts/bRlVn6zRR_Y
- https://youtu.be/WouefjoqQpY

Terminated channels
Channel names were "Toilet Playground" and "Melon Stories". Or over email it may say "Skull LIVE"
- https://www.youtube.com/channel/UCES1YBu63I5GdLljUKrCtQg
- https://www.youtube.com/channel/UCylrGMtb7w_03v7w2EfJVVw

On Fri, 24 Nov 2023 at 20:45, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
write here please again
Links of all still banned videos and their titles + name of channels. Hard to search in our email conversation.

пт, 24 нояб. 2023 г. в 09:28, Ivillia Milionic <ivilliamilionic@gmail.com>:
ok, I will try to solve this problem today. And remember that you need to create a TRC-20 wallet and show video with adsense payments starting from this month.

пт, 24 нояб. 2023 г. в 09:25, Skullhead Gaming <bros51459@gmail.com>:
Adsense pays on the 22nd, I can provide proof. I will get some money from sponsors when I upload next. So I can pay you $1000 from that.

I think the channel names were "Toilet Playground" and "Melon Stories".

On Fri, 24 Nov 2023 at 20:21, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
provide full names of those channels. and when is the AdSense payment be?

пт, 24 нояб. 2023 г. в 09:18, Skullhead Gaming <bros51459@gmail.com>:
2 of my channels got terminated by you guys earlier in the month. 1k subbed channels.

Also the 4 videos need to be back up, please.

On Fri, 24 Nov 2023 at 20:16, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
ah videos? not channels?

пт, 24 нояб. 2023 г. в 09:14, Skullhead Gaming <bros51459@gmail.com>:
Also I still have 2 strikes on SkullGamez as well



On Fri, 24 Nov 2023 at 20:08, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
good day!
I have checked, your channels are active and are not banned.
I retracted all the videos and shorts and also emailed them that we have signed a license agreement.

пт, 24 нояб. 2023 г. в 07:44, Skullhead Gaming <bros51459@gmail.com>:
Maybe email the appeal team, or something like that

On Fri, 24 Nov 2023 at 15:33, Skullhead Gaming <bros51459@gmail.com> wrote:
Can you send YouTubes legal team an email with the contract saying to give the channels back.

Terminated Channels:
- https://www.youtube.com/channel/UCES1YBu63I5GdLljUKrCtQg
- https://www.youtube.com/channel/UCylrGMtb7w_03v7w2EfJVVw

On Fri, 24 Nov 2023 at 04:59, Ivillia Milionic <ivilliamilionic@gmail.com> wrote:
If they will not unban your channel - send them the contract between us. If it will not help, I will assist you tomorrow.

4

чт, 23 нояб. 2023 г. в 15:58, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)>:
reinstated all videos and shorts.
And also sent retracting request to YouTube.
Need to wait.

чт, 23 нояб. 2023 г. в 15:02, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)>:
pk, doing it right now, please check tomorrow and send me links if i will miss
some of them. Also don't forget about payment and create trc20 wallet

чт, 23 нояб. 2023 г. в 14:53, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
Ima sleep. Please have all the shorts and videos on Melon Gaming and
SkullGamez reinstated by morning. Thanks.

On Fri, 24 Nov 2023 at 01:51, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)>
wrote:
Here you are.
Now we will reinstate your content.

чт, 23 нояб. 2023 г. в 14:47, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:



On Fri, 24 Nov 2023 at 01:44, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)>
wrote:
ok... but do it in online pdf editor, not in word, at least the signature will
be different from the text

чт, 23 нояб. 2023 г. в 14:39, Skullhead Gaming <[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
I cannot figure this out at all. Can I just write my name in text?

On Fri, 24 Nov 2023 at 01:29, Ivillia Milionic <[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)>
wrote:
you can put your scanned signature into word agreement.
you can scan signature by using your ios/android device

чт, 23 нояб. 2023 г. в 14:26, Skullhead Gaming
<[bros51459@gmail.com](mailto:bros51459@gmail.com)>:
I don't have a printer. any way i can sign it online?

On Fri, 24 Nov 2023 at 01:25, Ivillia Milionic
<[ivilliamilionic@gmail.com](mailto:ivilliamilionic@gmail.com)> wrote:

5

just print, sign, scan and send back to me

чт, 23 нояб. 2023 г. в 14:14, Skullhead Gaming
<bros51459@gmail.com>:
I agree. How do i sign it

On Fri, 24 Nov 2023 at 01:01, Ivillia Milionic
<ivilliamilionic@gmail.com> wrote:
yep, it is fine. Waiting

чт, 23 нояб. 2023 г. в 13:07, Skullhead Gaming
<bros51459@gmail.com>:
If it's fine with you I will need a few hours or so to read this
carefully and also have another person proofread it.

On Thu, 23 Nov 2023 at 23:53, Ivillia Milionic
<ivilliamilionic@gmail.com> wrote:
Check please, if you have questions -ask.
After you sign and send it to us - we will reinstate content.

чт, 23 нояб. 2023 г. в 12:27, Ivillia Milionic
<ivilliamilionic@gmail.com>:
ok, will get back with the document to sign

чт, 23 нояб. 2023 г. в 12:27, Skullhead Gaming
<bros51459@gmail.com>:
New Zealand

Christchurch

6

Exhibit B

| From: | Ivillia Milionic <ivilliamilionic@gmail.com> |
|---|---|
| Sent: | Tuesday, April 2, 2024  2:00 AM |
| To: | Hi  u Ho  ng Trung |
| Subject: | Re: I want to talk about the   opyright of your characters |
| tt  c  ments: | Guarantee letter   opyright ( ).pdf |

Good day!

We, the company IVILIIA MILLIONIC IT Sp. z o.o. holds registered copyright for the designs of 13 (thirteen) characters and 1 (one) background in the U.S. Copyright Office.
Copyright registration can be checked online in U.S. Copyright registry via this link https:// cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?PAGE=sbSearch_SEQ=20230809035552_PID=xotUtnnf5IFWQd_j8FFfAF-zEH_  by their names :
(1) watermelon hero
(2) pumpkin hero
(3) corn hero
(4) apple hero
(5) Mechanoid hero
(6) Blind figure hero
(7) Humanoid Monster hero
(8) Ambush Mutant
(9) Rush monster
(10) Screech hero
(11) Toilethead hero
(12) Stinger monster
(13) Jumbo Monster
(14) Melon sky background
We also have an official documents confirming our copyright for the above designs, issued by the U.S. Copyright Office, namely certificates.

We inform you that the above video was used in the application s advertising account.

We inform you that the strike can be canceled under the following conditions:

One-time payment is 300$. In the future, if your video gets into advertising accounts, we will not throw a strike on it, but will report information about the presence of violations directly to you.
Please note that if you refuse to cooperate, there is a possibility that the channel will be blocked after receiving the third strike.


Regards,
Director IVILIIA MILLIONIC IT Sp. z o.o.
Serhii Osadchyi


вт, 2  п . 2024 г. в 09:47, Hi  u Ho  ng Trung <hieuhoang09021710@gmail.com>:
  Dear IVILIIA MILLIONIC

  I am the owner of HTI3 Playground channel

1

I recently received a copyright complaint from you. I'm very sorry for using your character's image without permission. This is my mistake. I hope you can remove the copyright for me. And grant me permission to use your character in the future.

Thank you very much!

Exhibit C

**From:** Serhii Osadchyi <info@iviliiamilionicit.com>
**Sent:** ednesday, March 20, 2024 5:2   AM
**To:** ust   layground
**Subject:** Re: App removal due to copyright violation

Your application has indeed been removed for violating our copyright, we inform you that we may enter into a license agreement for the use of some of our characters, this list has been attached to this message.

We can offer you cooperation on the following terms:

1) Concluding a license agreement for the use of these characters - $1000 one-time payment for concluding a license agreement as well as 20% per month of application income (application + admob / similar services)

2) If you want to delete characters, $3000 for withdrawing a complaint, after which you will delete characters containing violations, the payment can be divided into 2 parts ($1500 advance and $1500 after restoring the application)

3) A one-time payment for concluding a license agreement of $5,000 implies a license agreement for the use of characters for a period of 3 years.

If you are interested, please let us know.



IVILIIA MILLI
C
Address: ul
nr 58, lok. 15, Warszaw
E-mail: info@ivi



| Pumpkin hero | https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Pumpkin+hero&Search_Code=TALL&PID=_nB7DUek0MOs9hGeGyQBLCmST&SEQ=20230727025358&CNT=10&HIST=1 | VA 2-353-216 |  |
|---|---|---|---|



IVILIIA MILLI
C
Address: ul
nr 58, lok. 15, Warszaw
E-mail: info@ivi



IVILIIA MILLI
C
Address: ul
nr 58, lok. 15, Warszaw
E-mail: info@ivi



| Pumpkin hero | https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=Pumpkin+hero&Search_Code=TALL&PID=_nB7DUek0MOs9hGeGyQBLCmST&SEQ=20230727025358&CNT=10&HIST=1 | VA 2-353-216 |  |
| --- | --- | --- | --- |



IVILIIA MILLI
C
Address: ul
nr 58, lok. 15, Warszaw
E-mail: info@ivi

Regards,
Director IVILIIA MILLIONIC IT Sp. z o.o.
Serhii Osadchyi

On 03/20/2024 1:56 PM EET Just Playground <justplayground.game@gmail.com> wrote:


Hello, can I clarify which specific copyrights were violated by me?

Exhibit D

**Jeff Rosenfeld**

| | |
|---|---|
| **From:** | Marbles Labs <marblelabs      @gmail.com> |
| **Sent:** | Sunday, September 2 , 2024  :    M |
| **To:** | legal@playducky.com; yakubov@playducky.com; fedyanin@playducky.com |
| **c:** | App Store Notices |
| **Subject:** | Mod for Melon  layground  ro (Apple ref  A  2 5624 L) |
| **tt c ments:** | G  F agreement.pdf; Anne  G  F.pdf; lviliia  Ageement.pdf; Anne  NLA.pdf; Appendi  No. lvil.pdf; NLA  Agreement.pdf |

| | |
|---|---|
| **Follo    Fl :** | Follow up |
| **Fl  St tus:** | Flagged |

Dear Playducky and Apple Legal Team,

We have received an email notification from Apple stating that our app, "Mod for Melon Playground Pro," has been reported by your side for copyright infringement.

We can prove that we possess all the legal documents permitting the use of the copyrighted characters and objects. Please find the full information in the attached files.

Therefore, we reject any complaints from your side unless you provide sufficient images of the alleged infringements as well as documentation proving copyright ownership related to them. This is a baseless accusation. Hence, we request that the Apple Legal Team please consider closing the matter regarding this application.

Regards,
Anh Tu Nguyen

To unsubscribe from this group and stop receiving emails from it, send an email to legal+unsubscribe@playducky.com.

# License Agreement for IP objects Usage No. 08/14-2

**Warsaw**                                                    **August 14, 2024**

This License Agreement is a legally binding Agreement between Anh Tu Nguyen (hereinafter referred to as the"Licensee") and the Iviliia Millionic It Sp. z o.o., Ul. Marszałkowska, Nr 58, Lok. 15, Miejsc. Warszawa, Kod 00-545, Poczta Warszawa, Kraj Polska, Nip: 5252913576 (hereinafter referred to as the "Licensor"), concerning the use of character designs (hereinafter referred to as the "designs").

To make this Agreement effective, the Licensee must remunerate the Licensor for the use of the character designs specified in Appendix 1, which is an integral part of this Agreement.

By performing actions such as installation, copying, downloading, or any other use of the character designs, the Licensee agrees to comply with the terms of this License Agreement. In the event that the Licensee disagrees with the terms of this License Agreement, they should refrain from installing, copying, downloading, or otherwise using the character designs.

## 1. License

1.1. The Licensee is granted a License for the use of the Character Designs exclusively in applications released via Google Play Developer account and AppStore Developer accounts specified below: https://apps.apple.com/us/app/mod-for-melon-playground-pro/id6464111302

1.2. The Licensor providesthe Licensee with a non-exclusive, sublicensable (hereinafter referred to as the "License") to use the character designs. The designs can be used by third parties (including through sublicense) or for marketing or further distribution, either separately or as a component of any other product.

1.1. By installing, copying, downloading, or otherwise using the character designs, the Licensee shall be bound by the terms of this License Agreement. In the event the Licensee does not agree with these terms, they shall refrain from installing, copying, downloading, or otherwise using the character designs by notifying the Licensor in advance of any disagreement with the terms of the Agreement.

1.2. The character designs may be accompanied by modifications or additions to this License Agreement. Any such modification or addition shall be considered a part of the License Agreement. Written form is required to amend or add. In the event of any inconsistency between a modification or addition and the actual terms concerning such inconsistency, the relevant provisions of the modification or addition shall apply.

1.3. The license applies Worldwide. Subject to the terms of this License Agreement and unless terminated earlier in accordance with the License Agreement, the licenses are limited in time and shall be effective for 12 months from the date of the signing this Agreement.

## 2. Intellectual Property Rights

2.1. The rights to the Character Designs granted to the Licensee under this Agreement are solely in the form of a License. No provisions of the License Agreement or any other document shall provide the Licensee with any ownership rights to the Character Designs, in whole or in part.

2.2. The Character Designs are protected by copyright and other intellectual property rights, laws, and Agreements. Based on a License Agreement with the owner of exclusive intellectual property rights to the Character Designs, the Licensor has the right to grant sublicenses and the Licensor guarantees that he is the sole creator of this character designs.

2.3. The Licensee acknowledges that the Character Designs are subject to copyright protection and that the Licensee shall not at any time (whether before or after the termination of this License) perform or allow any actions that would infringe on copyright.

2.4. The Licensor retains rights to the Character Designs not expressly granted to the Licensee under this License Agreement.

## 3. License Fees (Royalties)

3.1. In consideration for the License granted by Iviliia Millionic It Sp. z o.o, the Licensee shall pay the Licensor the License Fee (Royalty) in the amount of 500 U.S. dollars within 5 (five) calendar days from the date on which this Agreement entered into force.

3.2. Non-payment of royalty within the specified payment terms shall result in the immediate termination of the licenses granted under the License Agreement.

3.3. The payment can be made via e-wallet in USDT.

## 4. Rights and Limitations

4.1. The Licensee shall ensure that the Character Designs are used exclusively by the Licensee personally in strict compliance with the terms of the License Agreement.

4.2. The Licensee has the right to use Character Designs in application and make it available for use on Google Play and AppStore worldwide.

4.3. The Licensee has the right to modify, adapt and transform the Character Designs. The Licensee is not permitted to lease, lease out, loan, market, sell, distribute, transfer, or create any derivative designs based on the Character Designs or any part thereof.

4.4. The Character Designs contain trade secrets, and the Licensee agrees not to disclose, directly or indirectly, any such trade secrets to any person unless and until they cease to be confidential through no fault of the Licensee.

## 5. Licensing Mechanisms and Penalties

5.1. If at any time the Licensor has reasonable suspicion that the Character Designs has been distributed or obtained by any person without the written consent of the Licensor or that the Licensee has otherwise violated the terms of this License Agreement, the Licensor may demand that the Licensee provide confirmation of the Licensee's compliance with the terms of the License Agreement.

5.2. If the Licensee fails to provide such confirmation within 15 days from the date of the Licensor's respective request to the Licensee (or within a longer period as may be agreed upon at the discretion of the Licensor), the Licensee shall be deemed to be in breach of the terms of the License Agreement, and the Licensor shall have the right to terminate the License Agreement and revoke all licenses granted under it.

## 6. Termination of the License

6.1. The Licensor has the right to terminate the License with immediate effect by sending written notice in the following cases:

- The Licensee fails to pay the royalty within 5 (five) calendar days from the date on which this agreement entered into force.

- The Licensee violates any terms of this License, and the violation has not been rectified within 14 (fourteen) days of receiving written notice from the Licensor.

6.2. In the event of the termination of the License for any reason:

a) The Licensee must cease any use of the Character Designs.

b) The Licensee must delete all copies of the Character Designs from their hardware and system, as well as from any other system, and delete or destroy all copies of the Character Designs in their possession, custody, or control.

The Licensee's obligations to pay Licence Fees and to delete copies of the Character Images shall remain in full force and effect until such time as they have been satisfied.

c) The Licensee is required to provide confirmation of compliance with paragraphs 6.2(a) and 6.2(b) to the Licensor.

d) The Licensor may remove the Character Designs from the Licensee's possession, custody, or control.

e) The Licensor is released from any further obligations under this License Agreement.

6.3. Withdrawal of the Character Designs from use by the Licensee terminates the License Agreement between the Licensor and the Licensee.

6.4. In the event of the termination of this License for any reason, the Licensee shall not be entitled to a full or partial refund of license fee (royalty).

6.5. The termination shall not prejudice any rights that the Licensor may have as a result of the Licensee's breach of this License.

## 7. Assignment or Transfer

7.1. The Licensee is not entitled to assign this License.

7.2. Any planned assignment or transfer of the Character Designs by the Licensee other than as provided in this section shall be considered void and shall give the Licensor the right to terminate the License Agreement pursuant to Section 6.

7.3. The Licensor may assign its rights and obligations under the License Agreement without the consent of the Licensee.

## 8. Compensation for Damages

8.1. In the event that the Character Designs becomes or may become the subject of a claim due to the infringement of any third-party intellectual property rights, the Licensor may, at its sole discretion:

- Seek for the Licensee the right to use the Character Designs without incurring any liability;

- Replace or modify the Character Designs in a way that it no longer infringes on the intellectual property rights;

- Reimburse the Licensee for the License fee (royalty).

8.2. The legal remedies described in clause 8.1 constitute the exclusive liability of the Licensor and provide the exclusive legal remedies to the Licensee in connection with any infringement of intellectual property rights by the Licensor in the Character Designs or other components supplied by the Licensor under the License Agreement.

8.3. The Licensee acknowledges and agrees that in the event of its breach of the License Agreement and causing damage, harm, or expenses, directly or indirectly, as a result of such breach, the Licensor shall have the right to commence legal proceedings against the Licensee.

8.4. The Licensee shall indemnify the Licensor against loss and shall release the Licensor from liability in connection with any expenses, damages, and claims against the Licensor resulting from any infringement of the Licensor's intellectual property rights or those of any third party arising from the Licensee's modification or any part of the Character Designs or other components supplied by the Licensor, or from any breach of the License Agreement caused by the fault of the Licensee.

## 9. Dispute Resolution

9.1. The Parties agree to abide by the provisions for dispute resolution in this Section 9 for any disputes arising between the Parties under the License Agreement before initiating any legal proceedings.

9.2. Notice of Dispute. In the event of a dispute between the Parties, either Party may send written notice to the other Party by registered mail with a detailed description of the nature of the conflict and a statement that it is a notice of dispute pursuant to this Section 9.

9.3. Response Notice. Within 5 business days of receiving a notice of dispute, the recipient must send a response notice to the other Party:

- Acknowledging receipt of the notice of dispute;
- Stating that this response notice, sent pursuant to Section 9.3, has been received;
- Providing a brief description of any information that, in the recipient's view, relates directly to the dispute
9.4. Initial Meeting:
- Within 10 business days of the delivery of a notice of dispute between the Parties, they must meet or hold an online conference and attempt to resolve the dispute.
- Each Party shall use its best efforts to resolve the dispute.
9.5. Preservation of Agreement. Each Party shall continue to perform its respective obligations under this Agreement pending resolution of the dispute.
9.6. Survival. Section 9 shall survive any termination, expiration, or completion of the term of this Agreement.

## 10. Limitations

10.1. Export of the Character Designs from the country of initial purchase may be subject to control or restrictions under applicable local law.
10.2. The Licensee shall:
- Determine the applicability of and comply with any local laws regarding the intended export and obtain all necessary consents and permits;
- Refrain from exporting the Character Designs if it violates any applicable legal restrictions.

## 11. General Provisions

11.1. The Licensee shall promptly notify the Licensor if, at any time, it becomes aware of any breach of its obligations under the License Agreement.
11.2. This License shall be governed by and construed in accordance with applicable EU and U.S. law.

### 12. DATA AND SIGNATURES OF THE PARTIES

| Licensor | Licensee |
|---|---|
| IVILIIA MILLIONIC IT sp. z o.o. | Anh Tu Nguyen |
| | **Director** |
| ul. MARSZAŁKOWSKA, nr 58, lok. 15, miejsc. WARSZAWA, kod 00-545, poczta WARSZAWA, kraj POLSKA | |
| NIP: 5252913576 | |
| info@iviliiamilionicit.com | |
| **Director** | |
| (signature)        Serhii Osadchyi | |

Exhibit E

| From: | Hien han <phan uanhien20 4@gmail.com> |
|-------|----------------------------------------|
| Sent: | ednesday, September 25, 2024  2:44 AM |
| To: | Vladimir Adashchik |
| c: | App Store Notices; fedyanin@playducky.com; legal@playducky.com; yakubov@playducky.com |
| Subject: | Re: Apple Inc. (our ref  A  2 5624  ) Notice of  omplaint |
| | |
| Follo     Fl : | Follow up |
| Fl   St tus: | Flagged |

Hi!
Thank you for your reply. However, our application is licensed by IVILIIA MILLIONIC IT Sp. z o.o., which is the copyright holder of Melon Sandbox. You can contact them directly regarding this issue.
Best regards

On Tue, 24 Sep 2024 at 13:48 Vladimir Adashchik <adashchik@area.games> wrote:

Dear Hien Phan,

We have outlined the copyright registration in our claim.

Please note that your app is designated for modification of our copyrighted software product, which has never been authorized by us and therefor constitutes infringement of our intellectual property rights.

We claim immediate removal of your application from the App Store.

In the meantime, all rights are and remain fully reserved.

Vladimir

**From:** Hien Phan <phanxuanhien2014@gmail.com>
**Sent:** Tuesday, September 24, 2024 8:15 AM
**To:** App Store Notices <AppStoreNotices@apple.com>

**Cc:** fedyanin@playducky.com legal@playducky.com yakubov@playducky.com
**Subject:** Re: Apple Inc. (our ref   APP215624-B) Notice of Complaint

Hello!

Thank you for contacting us. Please send us your copyright documents to help us identify the issue. Thank you very much!

On Tue, 24 Sep 2024 at 03:24 App Store Notices <AppStoreNotices@apple.com> wrote:

>     Please include APP215624-B in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.
>
> Hello,
>
> On 9/20/2024, we received a notice from Ducky Ltd ("Claimant") that Claimant believes the app listed below infringes its intellectual property rights.  In particular, Claimant believes you are infringing its copyright.  Please see their comments below.
>
> B. Developer:   uan Hien Phan
> Provider:   uan Hien Phan
> App Title: Mods For Melon Playground
> Apple ID: 6472698403
>
> Comment: 1. DUCKY LTD (  We   or   Ducky  ) is the legal and beneficial owner of intellectual rights, including copyrights, in and to interactive game software known as   Melon: Sandbox   operated on iOs and Android platforms (the   Game  )  2.  Ducky has a U.S. copyright registration for the entirety of the Game, including all artwork comprising the Game, Registration No. T  9378090. 3.  Moreover, Ducky has several U.S. copyright registrations covering the artwork comprising certain Game characters and elements. 4. The disputed app violates our Intellectual Property Rights: distributes illegal modifications for the Game, incorporates Game s title and several artworks from the Game, including it's characters. 5.  We, being the owner of the Game and all the associated content, including the Game's title and characters, claim that   uan Hien Phan immediately cease and desist illegal utilization of our intellectual property and remove the app "Mods For Melon Playground   " from the AppStore. -
>
> You can reach Claimant through Vladimir Adaschik (email: legal@playducky.com), Alisher Yakubov (email: yakubov@playducky.com) or Ivan Fedyanin (email: fedyanin@playducky.com), copied on this email.  Please exchange correspondence directly with Claimant.
>
> We look forward to receiving written assurance that your application does not infringe Claimant's rights, or that the parties are taking steps to promptly resolve the matter.  Please keep us apprised of your progress.

Please note that during the course of this matter:

1.  Correspondence to Apple must include the reference number noted above in the subject line and copy the other party.  All correspondence sent to Apple may be shared with the other party.

2.  Written assurance of rights may include confirmation that your application does not infringe Claimant's rights, an express authorization from Claimant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3.  Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com and access your app in the Manage Your Application module.

   Access your app in the "My Apps" module
   Click on the "Pricing and Availability" tab from the App   Summary Page and select "Edit" by "Availability"
   Select and deselect "All" territories to uncheck all App Store territories
   Click on the "Done" button

4.  Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Claimant are at risk of termination from the Developer Program.

5.  Failure to respond to the Claimant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement.  Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Abe

 Apple Legal   Apple   One Apple Park Way Cupertino, CA 95014
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

To unsubscribe from this group and stop receiving emails from it, send an email to legal+unsubscribe@playducky.com.

Exhibit F

# Jeff Rosenfeld

| | |
|---|---|
| **From:** | Loan Truong <truongthiloan040          @gmail.com> |
| **Sent:** | ednesday, September 25, 2024  2:3  AM |
| **To:** | App Store Notices |
| **c:** | legal@playducky.com; yakubov@playducky.com; fedyanin@playducky.com |
| **Subject:** | Re: Apple Inc. (our ref  A  2 5624 I) Notice of  omplaint |
| **tt c ments:** | ermission  opyright Iviliia.pdf |

Dear Ducky Team,

I and the company IVILIIA MILLIONIC IT Sp. z o.o have an agreement on the use of melon characters (please refer to the attached document).
Please let me know specifically what my application violates.
Thank you

V o Th 3, 24 thg 9, 2024 v  o l  c 03:24 App Store Notices <AppStoreNotices@apple.com>    vi t:

Please include APP215624-I in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.

Hello,

On 9/20/2024, we received a notice from Ducky Ltd ("Claimant") that Claimant believes the app listed below infringes its intellectual property rights.  In particular, Claimant believes you are infringing its copyright.  Please see their comments below.

I. Developer: Truong Loan
Provider: Truong Loan
App Title: Best Addons for Melon Sandbox
Apple ID: 6466820777

Comment: 1. DUCKY LTD ( We  or  Ducky ) is the legal and beneficial owner of intellectual rights, including copyrights, in and to interactive game software known as  Melon: Sandbox  operated on iOs and Android platforms (the  Game ) 2. Ducky has a U.S. copyright registration for the entirety of the Game, including all artwork comprising the Game, Registration No. T  9378090. 3. Moreover, Ducky has several U.S. copyright registrations covering the artwork comprising certain Game characters and elements. 4. The disputed app violates our Intellectual Property Rights: distributes illegal modifications for the Game, incorporates Game s title and several artworks from the Game, including it's characters. 5. We, being the owner of the Game and all the associated content, including the Game's title and characters, claim that Truong Loan immediately cease and desist illegal utilization of our intellectual property and remove the app "Best Addons for Melon Sandbox" from the AppStore.
-

You can reach Claimant through Vladimir Adaschik (email: legal@playducky.com), Alisher Yakubov (email: yakubov@playducky.com) or Ivan Fedyanin (email: fedyanin@playducky.com), copied on this email.  Please exchange correspondence directly with Claimant.

We look forward to receiving written assurance that your application does not infringe Claimant's rights, or that the parties are taking steps to promptly resolve the matter.  Please keep us apprised of

your progress.

Please note that during the course of this matter:

1.  Correspondence to Apple must include the reference number noted above in the subject line and copy the other party.  All correspondence sent to Apple may be shared with the other party.

2.  Written assurance of rights may include confirmation that your application does not infringe Claimant's rights, an express authorization from Claimant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3.  Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com and access your app in the Manage Your Application module.

   Access your app in the "My Apps" module
   Click on the "Pricing and Availability" tab from the App   Summary Page and select "Edit" by "Availability"
   Select and deselect "All" territories to uncheck all App Store territories
   Click on the "Done" button

4.  Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Claimant are at risk of termination from the Developer Program.

5.  Failure to respond to the Claimant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement.  Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Abe

 Apple Legal    Apple    One Apple Park Way Cupertino, CA 95014
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

To unsubscribe from this group and stop receiving emails from it, send an email to legal+unsubscribe@playducky.com.

Exhibit G

## Jeff Rosenfeld

| | |
|---|---|
| **From:** | o ao <cao uocbao020   @gmail.com> |
| **Sent:** | Thursday, September 26, 2024  :0  AM |
| **To:** | Vladimir Adashchik |
| **c:** | App Store Notices; legal@playducky.com; yakubov@playducky.com; fedyanin@playducky.com |
| **Subject:** | Re: Apple Inc. (our ref  A  2 5624 ) Notice of  omplaint |
| | |
| **Follo      Fl  :** | Follow up |
| **Fl  St tus:** | Flagged |

Dear Vladimir,

My app does not work in many European countries, including Warsaw (Poland).
The character copyright of the company IVILIIA MILLIONIC IT Sp. z o.o. is still found on the United States Copyright Office.
In addition, you have not provided documents that you have registered copyright and evidence that my app is using your property without permission.

V  o Th 5, 26 thg 9, 2024 v  o l  c 21:44 Vladimir Adashchik <adashchik@area.games>     vi  t:

> Dear B  o,
>
> Iviliia has no assets, please re-read my email and all the attachments.
>
> Your failure to remove the App leaves as no choice, but proceed with legal action.
>
> All the cost borne will be at your expense.
>
> This letter is specifically and expressly without prejudice to any of DUCKY LTD rights, claims and remedies each of which is hereby reserved in its entirety.
>
> Vladimir

---

**From:** B  o Cao <caoquocbao02091989@gmail.com>
**Sent:** Thursday, September 26, 2024 5:37 PM
**To:** Vladimir Adashchik <adashchik@area.games>
**c:** App Store Notices <AppStoreNotices@apple.com>  legal@playducky.com  yakubov@playducky.com
fedyanin@playducky.com
**Subject:** Re: Apple Inc. (our ref   APP215624-J) Notice of Complaint

Dear Vladimir,

1

IVILIIA MILLIONIC IT Sp. z o.o. registered all assets according to all legal procedures.

They provided us permission to use all their assets.

So I have all grounds to use their characters.

Regarding other issues, you can contact them directly.
Once again, I would like you to send me the documents of the characters you have registered and the evidence that my application uses them without permission.

Thank you

V  o Th 5, 26 thg 9, 2024 v  o l  c 21:08 Vladimir Adashchik <adashchik@area.games>      vi  t:

Dear B  o,

Thank you for your response.

We regret to inform you have been cheated by IVILIIA MILLIONIC IT Sp. z o.o. (  Iviliia  ). DUCKY LTD is sole legal and beneficial owner of interactive game software known as   Melon: Sandbox   and all associated content. Ivillia has no rights or interest in the Game.

Please be advised that Registration cited in the authorization you have submitted does not create a copyright and solely proves the date the work has been deposited to the US Copyright Office and states the person who has effected such action.

We are aware of certain other fraudulent actions that Iviliia is making: in an attempt to exploit the success of the Game, Iviliia has repeatedly submitted fraudulent takedown requests to Apple, Google and YouTube regarding the Game and derivative works of the Game, including under the Digital Millenium Copyright Act, 17 U.S.C.   512. Moreover, in certain cases Ivillia claims money for utilization of Ducky s Intellectual Property.

We are not in a position to tolerate Iviliia s actions and have already initiated several lawsuits against Iviliia. As of now, the  e ional  ourt o    ar a    a i  ued an injunction  ro ibitin  Iviliia  rom  amon  ot er t in   enterin  into  a reement  relatin  to Duc    intellectual  ro ert  . You may find the cited document attached. Please read it carefully.

Please note that notwithstanding the agreement you have entered with Iviliia or payments you might have made to them, you are still unlawfully utilizing Ducky s intellectual property.

*Please immediately cease and desist this illegal utilization of our intellectual property by removing the app  "Addons for Melon Sandbox 2D PG" from the AppStore and inform us of such action no later than October 01, 2024*

Should you fail to remove the app "Addons for Melon Sandbox 2D PG" from the AppStore on or before <u>October 01, 2024</u>  the issue will be transferred to Ducky s special counsels for further enforcement and pursuing any available remedies.

On a separate note We would like to highlight that you may also initiate a lawsuit or otherwise enforce your rights against Iviliia and we would appreciate if you could share details of communication with Iviliia and agreement entered into.

This letter is specifically and expressly without prejudice to any of DUCKY LTD rights, claims and remedies each of which is hereby reserved in its entirety.

Vladimir

---

**From:** B  o Cao <<u>caoquocbao02091989@gmail.com</u>>
**Sent:** Thursday, September 26, 2024 6:42 AM
**To:** App Store Notices <<u>AppStoreNotices@apple.com</u>>
 **c:** <u>legal@playducky.com</u>  <u>yakubov@playducky.com</u>  <u>fedyanin@playducky.com</u>
**Subject:** Re: Apple Inc. (our ref   APP215624-J) Notice of Complaint

Dear Play Ducky team,

I have discussed with Mr. Osadchyi of IVILIIA MILLIONIC It Sp. z o.o.
I have full legal rights to use the characters registered by IVILIIA MILLIONIC It Sp. z o.o.
The attached file is proof.
Please provide me with your company's copyright registration documents.

V  o Th 4, 25 thg 9, 2024 v  o l  c 11:26 B  o Cao <<u>caoquocbao02091989@gmail.com</u>>     vi  t:

Dear Play Ducky team,

I have an agreement with IVILIIA MILLIONIC It Sp. z o.o., the company that holds the copyright to the Melon characters.

Is there some mistake here?

3

Best regards,


V  o Th 3, 24 thg 9, 2024 l  c 03:24 App Store Notices <AppStoreNotices@apple.com>      vi t:

Please include APP215624-J in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.

Hello,

On 9/20/2024, we received a notice from Ducky Ltd ("Claimant") that Claimant believes the app listed below infringes its intellectual property rights.  In particular, Claimant believes you are infringing its copyright.  Please see their comments below.

J. Developer: Quoc Bao Cao
Provider: Quoc Bao Cao
App Title: Addons for Melon Sandbox 2D PG
Apple ID: 6472606888

Comment: 1. DUCKY LTD ( We  or  Ducky ) is the legal and beneficial owner of intellectual rights, including copyrights, in and to interactive game software known as  Melon: Sandbox  operated on iOs and Android platforms (the  Game ) 2.  Ducky has a U.S. copyright registration for the entirety of the Game, including all artwork comprising the Game, Registration No. T  9378090. 3.  Moreover, Ducky has several U.S. copyright registrations covering the artwork comprising certain Game characters and elements. 4. The disputed app violates our Intellectual Property Rights: distributes illegal modifications for the Game, incorporates Game s title and several artworks from the Game, including it's characters. 5.  We, being the owner of the Game and all the associated content, including the Game's title and characters, claim that Quoc Bao Cao immediately cease and desist illegal utilization of our intellectual property and remove the app "Addons for Melon Sandbox 2D PG" from the AppStore.
-

You can reach Claimant through Vladimir Adaschik (email: legal@playducky.com), Alisher Yakubov (email: yakubov@playducky.com) or Ivan Fedyanin (email: fedyanin@playducky.com), copied on this email.  Please exchange correspondence directly with Claimant.

We look forward to receiving written assurance that your application does not infringe Claimant's rights, or that the parties are taking steps to promptly resolve the matter.  Please keep us apprised of your progress.

Please note that during the course of this matter:

1.  Correspondence to Apple must include the reference number noted above in the subject line and copy the other party.  All correspondence sent to Apple may be shared with the other party.

2.  Written assurance of rights may include confirmation that your application does not infringe Claimant's rights, an express authorization from Claimant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3.  Should you choose to remove your application (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com and access your app in the Manage Your Application module.

   Access your app in the "My Apps" module
   Click on the "Pricing and Availability" tab from the App   Summary Page and select "Edit" by "Availability"
   Select and deselect "All" territories to uncheck all App Store territories
   Click on the "Done" button

4.  Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Claimant are at risk of termination from the Developer Program.

5.  Failure to respond to the Claimant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement.  Please keep Apple apprised of your progress.

Thank you for your immediate attention.

Sincerely,

Abe

⬛ Apple Legal    Apple    One Apple Park Way Cupertino, CA 95014
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

To unsubscribe from this group and stop receiving emails from it, send an email to legal+unsubscribe@playducky.com.

Exhibit H

## Jeff Rosenfeld

| | |
|---|---|
| **From:** | Vladyslav   ovalov <ghetto  p@gmail.com> |
| **Sent:** | Friday, September 2  , 2024   :56 AM |
| **To:** | Vladimir Adashchik |
| **c:** | App Store Notices; legal@playducky.com; yakubov@playducky.com; fedyanin@playducky.com |
| **Subject:** | Re: Apple Inc. (our ref  A   2  5624 N) Notice of  omplaint |
| | |
| **Follo       Fl  :** | Follow up |
| **Fl   St  tus:** | Flagged |

Hello Vladimir,

Thank you for the reply and for providing lawsuit documents. I believe that I probably have a better understanding of what is going on here now.

I asked IVILIIA about this case, but they still state that: "Iviliia registered all assets according to all legal procedures. Iviliia provided me permission to use all their assets. As Ducky hasn't cancelled Ivillia's registrations, those registrations have legal power and developer have all grounds to use the content."

**However**, I prefer to conduct business in a legal manner and don't want to infringe any intellectual property. Therefore I would be glad to ask your permission to keep apps on the store, because I believe my apps don't mimic or harm the "Melon: Sandbox" app or its community in any way.

**Here is why:**
• Apps don't pretend to be the "Melon: Sandbox" game or so, they're mod files catalogues. It's clear on the App Store listing pages;
• Apps don't sell any of the "Melon: Sandbox" characters, graphics or any other part of the original game content;
• Both apps provide a convenient way to download and export the additional content (mods);
• The content (mods) is made by players worldwide and is available for free. It's publically available and has been taken from thematic web-sites, YouTube, Discord and Telegram channels.
• Such content is usually distributed via Common Creative license and available for free. The content isn't modified by me. The name of each author (who could be identified) is listed in the apps. Apps even have a special section to highlight most major authors;
• Apps don't sell the mod files. Again, the content is available for free, as at original sources. But in order to support my server (where files are stored), there are some daily limits for files downloading. Therefore the apps have an optional subscription to remove the limits and unlock some additional catalogue apps features. And again, the subscription is optional, not required.
• As stated above, apps don't force users to do any payments. Apps don't sell any intellectual property. My apps are not such apps that are called "scam apps". They have clear and safe functionality. They're made by gamers for gamers.
• Apps have a good audience and good ratings on the App Store.

According to the facts above, I believe that my app follows the Common Creative type of the license and could stay available on the App Store.

**In my belief, there are some minor parts of the apps that might make you think the copyright is violated:**
• Part of the title: "for Melon Sandbox". Apps clearly state that they are "Mods" apps not the original one. I've added that text to the title to make sure that users will be able to find the app on the store. If you believe this part infringes your intellectual property, I can change/remove it (despite it will reduce ASO rating for both apps);
• Apps use "Melon: Sandbox" characters graphics as a part of mods (covers), so users can visually understand what the specific mod file is about and what it does. All of these covers are made by mod creators (CC license), which are publicly available on the web or thematic services. And again, those covers are not used to act as or pretend to be the original game (or for any case described above).
• If needed, I would be glad to provide an additional link to the original "Melon: Sandbox" game and/or put the copyright information wherever it's needed inside of the both apps.

1

If the proposed changes are not enough, I would be glad to know the best ways to resolve the case without removing apps from the store.

**Besides**, I believe this is a good practice for the brand: support and engage their players who create additional content. And I believe that both of my apps help to do so.
Many reviews for my apps are saying that they help to play the "Melon: Sandbox" game even more and make it more fun, which leads to more playtime for the original app.

Please let me know what you think about and what questions you might have.

Thanks
-
Best Regards,
Vladislav Kovalyov (Vladyslav Kovalov)

вт, 24 сент. 2024 г. в 10:35, Vladimir Adashchik <adashchik@area.games>:

> Dear Vladislav,
>
> Thank you for your response.
>
> We regret to inform you have been cheated by IVILIIA MILLIONIC IT Sp. z o.o. ("Iviliia") and most likely by NEXT LEVEL APPS TECHNOLOGY – FZCO. DUCKY LTD is sole legal and beneficial owner of interactive game software known as "Melon: Sandbox" and all associated content. Ivillia has no rights or interest in the Game. You are referring to application which has not been registered and has already been rejected in the USA and has no chance to be approved in the EU.
>
> We are aware of certain fraudulent actions that Iviliia is making: in an attempt to exploit the success of the Game, Iviliia has repeatedly submitted fraudulent takedown requests to Apple, Google and YouTube regarding the Game and derivative works of the Game, including under the Digital Millenium Copyright Act, 17 U.S.C. §512. Moreover, in certain cases Ivillia claims money for utilization of Ducky's Intellectual Property.
>
> We are not in a position to tolerate Iviliia's actions and have already initiated several lawsuits against Iviliia. As of now, the Regional Court of Warsaw has issued an injunction prohibiting Iviliia from, among other things, entering into agreements relating to Ducky's intellectual property. You may find the cited document attached.
>
> Please note that notwithstanding the agreement you might have entered with Iviliia, you are still unlawfully utilizing Ducky's intellectual property. Thus, we claim immediate removal of the disputed application form the App Store.
>
> On a separate note We would like to highlight that you may also initiate a lawsuit or otherwise enforce your rights against Iviliia and we would appreciate if you could share details of communication with Iviliia and agreement entered into.
>
> In the meantime, all rights are and remain fully reserved.

Vladimir

---

**From:** Vladyslav Kovalov <ghettozp@gmail.com>
**Sent:** Tuesday, September 24, 2024 10:13 AM
**To:** App Store Notices <AppStoreNotices@apple.com>
**Cc:** legal@playducky.com; yakubov@playducky.com; fedyanin@playducky.com
**Subject:** Re: Apple Inc. (our ref# APP215624-N) Notice of Complaint

Hello Abe and Play Ducky team,

Thank you for reaching out to me.

I would like to draw your attention to the fact that my application does not violate your intellectual property rights, as I have obtained all the necessary permissions to use the app name from the companies IVILIIA MILLIONIC IT Sp. z o.o. (trademark registration number - 1782870- MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOLL PEOPLE GAME) and NEXT LEVEL APPS TECHNOLOGY – FZCO (trademark registration number - 1771641 - SKIBIDI TOILET VS CAMERAMAN TV WOMAN X TV MAN VS G-MAN).

As for the characters and other content, this group of companies has granted me the rights to all of their assets, registered with the U.S. Copyright Office, which can be verified online via the following link: https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First.

If you have any further questions, you can contact them directly via email at info@iviliiamilionicit.com or nlatechnology.legal@gmail.com.

Best regards,
Vladislav Kovalyov (Vladyslav Kovalov)

пн, 23 сент. 2024 г. в 23:24, App Store Notices <AppStoreNotices@apple.com>:

> **Please include APP215624-N in the subject line of any future correspondence on this matter as failure to do so may prevent our system from properly recording your response.**
>
> Hello,
>
> On 9/20/2024, we received a notice from Ducky Ltd ("Claimant") that Claimant believes your apps listed below infringe its intellectual property rights.  In particular, Claimant believes you are infringing its copyright.  Please see their comments below.
>
> You can reach Claimant through Vladimir Adaschik (email: legal@playducky.com), Alisher Yakubov (email: yakubov@playducky.com) or Ivan Fedyanin (email: fedyanin@playducky.com), copied on this email.  Please exchange correspondence directly with Claimant.

We look forward to receiving written assurance that your applications do not infringe Claimant's rights, or that the parties are taking steps to promptly resolve the matter. Please keep us apprised of your progress.

Please note that during the course of this matter:

1. Correspondence to Apple must include the reference number noted above in the subject line and copy the other party. All correspondence sent to Apple may be shared with the other party.

2. Written assurance of rights may include confirmation that your applications do not infringe Claimant's rights, an express authorization from Claimant, or other evidence acceptable to Apple, and should include documentation wherever possible.

3. Should you choose to remove your applications (for example, while you make any necessary changes), visit App Store Connect at https://appstoreconnect.apple.com and access your apps in the Manage Your Application module.

• Access your app in the "My Apps" module
• Click on the "Pricing and Availability" tab from the App Summary Page and select "Edit" by "Availability"
• Select and deselect "All" territories to uncheck all App Store territories
• Click on the "Done" button

4. Developers with a history of allegations of repeat infringement, or those who misrepresent facts to Apple and/or the Claimant are at risk of termination from the Developer Program.

5. Failure to respond to the Claimant or to take steps toward resolving a dispute may lead to removal of the app(s) at issue as in violation of the App Store Review Guidelines and/or the iOS Developer Program License Agreement. Please keep Apple apprised of your progress.

Thank you for your immediate attention.

N. Developer: Vladislav Kovalyov
Provider: Vladislav Kovalyov
App Title: Melon Mods for Melon Sandbox!
Apple ID: 1664705223

Comment: 1. DUCKY LTD ("We" or "Ducky") is the legal and beneficial owner of intellectual rights, including copyrights, in and to interactive game software known as "Melon: Sandbox" operated on iOs and Android platforms (the "Game"); 2. Ducky has a U.S. copyright registration for the entirety of the Game, including all artwork comprising the Game, Registration No. TX9378090. 3. Moreover, Ducky has several U.S. copyright registrations covering the artwork comprising certain Game characters and elements. 4. The disputed app violates our Intellectual Property Rights: distributes illegal modifications for the Game, incorporates Game's title and several artworks from the Game, including it's characters. 5. We, being the owner of the Game and all the associated content, including the Game's title and characters, claim that Vladislav Kovalyov immediately cease and desist illegal utilization of our intellectual property and remove the app "Melon Mods for Melon Sandbox!" from the AppStore.
-

N. Developer: Vladislav Kovalyov

Provider: Vladislav Kovalyov
App Title: Skibidi Mods for Melon Sandbox
Apple ID: 6499259354

Comment: 1. DUCKY LTD ("We" or "Ducky") is the legal and beneficial owner of intellectual rights, including copyrights, in and to interactive game software known as "Melon: Sandbox" operated on iOs and Android platforms (the "Game"); 2. Ducky has a U.S. copyright registration for the entirety of the Game, including all artwork comprising the Game, Registration No. TX9378090. 3. Moreover, Ducky has several U.S. copyright registrations covering the artwork comprising certain Game characters and elements. 4. The disputed app violates our Intellectual Property Rights: distributes illegal modifications for the Game, incorporates Game's title and several artworks from the Game, including it's characters. 5. We, being the owner of the Game and all the associated content, including the Game's title and characters, claim that Vladislav Kovalyov immediately cease and desist illegal utilization of our intellectual property and remove the app "Skibidi Mods for Melon Sandbox" from the AppStore.
-

Sincerely,

Abe

⬛ Apple Legal | Apple | One Apple Park Way Cupertino, CA 95014 |
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

--

Best Regards,

Vladislav Kovalyov

To unsubscribe from this group and stop receiving emails from it, send an email to [legal+unsubscribe@playducky.com](mailto:legal+unsubscribe@playducky.com).

--
Best Regards,
Vladislav Kovalyov

Exhibit I

EUIPO
EUROPEAN UNION
INTELLECTUAL PROPERTY OFFICE

B270

Alicante, 31/07/2024

Michał Pękała
Rymarz, Zdort, Maruta, Wachta, Gasiński, Her i
Wspólnicy sp.k. ul. Prosta 18
00-850   Warszawa
Poland

### Receipt of notice of opposition

| | |
|---|---|
| *Number of the opposition:* | 003221275 |
| *Your reference:* | |
| *Trade mark:* | W01782870 |
| *Opponent:* | DUCKY LTD.<br>Gladstonos, 106, 1-st floor<br>3032 Limassol<br>Cyprus |

Your notice of opposition, directed against the abovementioned trade mark, was received by the Office on **31/07/2024 at 13:06:33** .

It was given the above opposition number.

**Please quote this number in all future communications regarding the opposition.**

Please note that EUIPO will not send an invoice.

**SHOULD YOU HAVE OPTED FOR BANK TRANSFER PAYMENT**
Please note that the application shall be deemed not to have been filed until the required **320.0 €** fee has been paid.

**Operations Department**

---

**Thank you for filing online**

Our online services make it easier for you to file your notice of opposition, send attachments and spot any mistakes. Filing online is also quicker and safer than using fax or post, as you can be sure your notice of opposition reaches EUIPO instantly via our secure servers.

---



EUIPO
EUROPEAN UNION
INTELLECTUAL PROPERTY OFFICE

B270

# BANK TRANSFER INSTRUCTIONS

> **You may complete this template with your name, bank account and selected destination bank (CaixaBank or Banco Santander) and submit it to your bank.**

| From | NAME:<br>Bank account (IBAN): |
|---|---|
| **To Bank \***<br>(Select one) | ☐  **CaixaBank**<br>Alicante (Spain)<br>CAIXESBBXXX<br>ES03 2100 2353 0107 0000 0888 |
| | ☐  **Banco Santander**<br>Alicante (Spain)<br>BSCHESMMXXX<br>ES08 0049 6659 0121 1622 4792 |
| **Amount** | **320.0 €** (excluding bank charges) |
| **Reference / Concept \*\*** | **24EPTHF4 # 003221275 # Rep ID 91453 #** |

\*Some computer programs do not accept the last three digits XXX of the BIC code.
Should this be the case, you should indicate CAIXESBB or BSCHESMM.

\*\*You may use a different document to instruct your bank, however, it is mandatory to use the exact reference/concept as indicated in this document.

| Date of receipt (DD/MM/YYYY) | Number of pages (including this one) |
|---|---|
| 31/07/2024 | 5 |

## Acknowledgement of receipt of a Notice of opposition

Your notice of opposition has been submitted successfully.
We thank you for choosing to use the online OPPOSITION form.

| | |
|---|---|
| Opposition number: | 003221275 |
| Date of submission: | 31/07/2024 |
| Time of submission: | 13:06 |
| Number of attached files: | 2 |
| Payment method: | Bank Transfer |
| Payment ID number: | 24EPTHF4 |

Please indicate the opposition number in any further communication with the EUIPO.



# NOTICE OF OPPOSITION

| | Your reference: | |
|---|---|---|

| **Opponent(s)** | Opponent EUIPO ID: | 1504625 |
|---|---|---|

| Name of legal entity or first name and surname: | DUCKY LTD. |
|---|---|
| Legal form: | LTD |
| Type: | Legal Entity |
| Street address: | Gladstonos, 106, 1-st floor |
| City: | Limassol |
| Postal Code: | 3032 |
| Country: | Cyprus |
| Postal address (if different): | DUCKY LTD.<br>Gladstonos, 106, 1-st floor<br>CY-3032 Limassol<br>Cyprus |
| Telephone number: | |
| E-mail address: | |
| Website: | |

| **Representative(s)** | EUIPO representative ID: | 91453 |
|---|---|---|

| Name or legal name: | Michał Pękała |
|---|---|
| Type: | Lawyer |
| Street address: | Rymarz, Zdort, Maruta, Wachta, Gasiński, Her i Wspólnicy sp.k. ul. Prosta 18 |
| City: | Warszawa |
| Postal Code: | 00-850 |
| Country: | Poland |
| Postal address (if different): | Michał Pękała<br>Rymarz, Zdort, Maruta, Wachta, Gasiński, Her i Wspólnicy sp.k. ul. Prosta 18<br>00-850 Warszawa<br>Poland |
| Telephone number: | |
| E-mail address: | |
| Website: | |

| **Representative(s)** | EUIPO representative ID: | 120832 |
|---|---|---|

| Name or legal name: | Aleksandra Modzelewska |
|---|---|
| Type: | Lawyer |
| Street address: | ul. Prosta 18 |
| City: | Warszawa |
| Postal Code: | 00-850 |
| Country: | Poland |
| Postal address (if different): | Rymarz, Zdort, Maruta, Wachta, Gasiński, Her i Wspólnicy Sp.k.<br>Aleksandra Modzelewska<br>ul. Prosta 18<br>00-850 Warszawa<br>Poland |
| Telephone number: | |
| E-mail address: | |
| Website: | |



EUIPO
EUROPEAN UNION
INTELLECTUAL PROPERTY OFFICE

# NOTICE OF OPPOSITION

| **Challenged entity** | | Challenged registration ID: | W01782870 |
|---|---|---|---|

| Type of entity | IR |
|---|---|
| Name of the owner/holder: | IVILIIA MILLIONIC IT Sp.z.o.o. |
| Designation date: | 30/11/2023 |
| Representation of the trade mark | MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME |
| Trade mark type | Figurative |

| Representation of mark | |
|---|---|



| **Language of proceedings** | X First language: EN (English)    ☐ Second language: FR (French) |
|---|---|

| **Extent of the application** | X Against all the goods and services |
|---|---|
| | ☐ Against some of the goods and services |

| Class | Goods and services |
|---|---|
| 9 (EN) | Animated cartoons; computer software applications, downloadable; computer software platforms, recorded or downloadable; downloadable image files; downloadable music files. |

| **Grounds for opposition** |
|---|
| **Selected ground number 1** |
| Article 8(1)(b) EUTMR - There exists a likelihood of confusion on the part of the public |
| **Basis of opposition** |

| Type of basis | EUTM/A |
|---|---|
| Name of the owner/applicant | DUCKY LTD. |
| Application date | 17/04/2024 |
| Filing number | 019014721 |
| Registration number | 019014721 |
| Priority date | 17/10/2023 |
| Evidence of priority | 1. 98227522,"Melon Sandbox", USPTO.pdf |
| Trade mark type | Word |
| Verbal elements | MELON SANDBOX |

X The opposing party accepts that the necessary information for this trade mark is imported from the relevant online official database, accessible through TMVIEW, and that this source is used for substantiation purposes without prejudice to its right or obligation to provide any additional information that may be necessary to comply with the substantiation requirements of Article 7(2) and (4) EUTMDR

| **Goods and services used** |
|---|



**EUIPO**
EUROPEAN UNION
INTELLECTUAL PROPERTY OFFICE

# NOTICE OF OPPOSITION

| as basis | [X] Based on all the goods and services |
|---|---|
| | [ ] Based on part of the goods and services, namely: |

| Class | Goods and services |
|---|---|
| 9 (EN) | Video game software; computer software for interactive games. |

| Class | Goods and services |
|---|---|
| 38 (EN) | Providing online chat rooms for exchange of messages among users of computers and other devices concerning topics related to interactive games. |

| Class | Goods and services |
|---|---|
| 41 (EN) | Entertainment services, namely, providing an interactive game via electronic and optical communications networks. |

| Entitlement | [X] Owner/Co-owner        [ ] Authorised licensee |
|---|---|
| | [ ] Person authorised under the applicable law |

## Arguments

**Uploaded File(s)**

| Title | Confidential |
|---|---|
| Opposition.pdf | [ ] |

## Fees

| Payment method | Bank Transfer |
|---|---|
| Opposition of EUTM fee | 320.00 € |
| Total amount | 320.00 € |

## Bank Transfer Information

| Bank | Address | BIC Code | IBAN |
|---|---|---|---|
| CaixaBank | Alicante (Spain) | CAIXESBBXXX | ES03 2100 2353 0107 0000 0888 |
| Santander | Alicante (Spain) | BSCHESMMXXX | ES08 0049 6659 0121 1622 4792 |

## Signature

| First name and Surname | Capacity of the signatory |
|---|---|
| Michał Pękała | Legal practitioner |
| Aleksandra Modzelewska | |

**Annexes:**

| Selected ground number 1 |
|---|
| No attachments |

# NOTICE OF OPPOSITION

| Arguments |
| --- |
| Opposition.pdf |
| **Annexes to Arguments (Evidence)** |
| No attachments |

**Generated on:** This page was generated by TSDR on 2024-07-08 06:03:12 EDT

**Mark:** MELON SANDBOX

MELON SANDBOX

| | | | |
|---|---|---|---|
| **US Serial Number:** | 98227522 | **Application Filing Date:** | Oct. 17, 2023 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark, Service Mark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** Applicant's response to a non-final Office action has been entered. The application is being returned to the examining attorney for further review. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** Jul. 05, 2024

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | MELON SANDBOX |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |
| **Disclaimer:** | sandbox |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Downloadable video game software | | |
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 23, 2021 | **Use in Commerce:** | Aug. 23, 2021 |

| | | | |
|---|---|---|---|
| **For:** | Providing online chat rooms for exchange of messages among users of computers and other devices concerning topics related to interactive games | | |
| **International Class(es):** | 038 - Primary Class | **U.S Class(es):** | 100, 101, 104 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 23, 2021 | **Use in Commerce:** | Aug. 23, 2021 |

| | | | |
|---|---|---|---|
| **For:** | Providing temporary use of online non-downloadable video game software | | |
| **International Class(es):** | 042 - Primary Class | **U.S Class(es):** | 100, 101 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 23, 2021 | **Use in Commerce:** | Aug. 23, 2021 |

## Basis Information (Case Level)

|  |  |  |  |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

**Owner Name:** DUCKY Ltd.

**Owner Address:** Gladstonos, 106, 1-st floor CY-3032
Limassol CYPRUS

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** CYPRUS

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Pollie Gautsch

**Attorney Primary Email Address:** pollie@gandalegal.com

**Attorney Email Authorized:** Yes

### Correspondent

**Correspondent Name/Address:** Pollie Gautsch
G&A LEGAL, APC
665 SAN RODOLFO 124-209
SOLANA BEACH, CALIFORNIA United States 92075

**Phone:** 858-344-5905

**Fax:** 760-454-4673

**Correspondent e-mail:** pollie@gandalegal.com

**Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 05, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jul. 05, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jul. 05, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| May 16, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 16, 2024 | NON-FINAL ACTION E-MAILED | |
| May 16, 2024 | NON-FINAL ACTION WRITTEN | |
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Oct. 24, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Oct. 20, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

**TM Attorney:** SINGH, TEJBIR

**Law Office Assigned:** LAW OFFICE 106

### File Location

**Current Location:** TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED

**Date in Location:** Jul. 05, 2024

RYMARZ ▪ ZDORT ▪ MARUTA

Warsaw, 31 July 2024

| | |
|---|---|
| **To:** | **European Union Intellectual Property Office (EUIPO)** |
| | Operations Department |
| | Avenida de Europa, 4 |
| | 03008 Alicante, Spain |
| **From:** | **Ducky Ltd.** |
| | Gladstonos 106, 1st floor |
| | 3032 Limassol, Cyprus |
| | reg. No. HE 410635 |
| | (the "**Opponent**") |

| | |
|---|---|
| **Contested trademark number:** | **1782870** |
| **Name of the Applicant:** | **Iviliia Millionic IT sp. z o.o.** |
| | ul. Marszałkowska 58, lok. 15 |
| | 00-545 Warsaw |
| | KRS No.: 0000979361 |

## – NOTICE OF OPPOSITION –

## GROUNDS FOR THE OPPOSITION

Acting on behalf of Ducky Limited with its registered office in Limassol, Cyprus, based on the attached power of attorney, I hereby file a notice of opposition against the "MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME" figurative trademark, under application No. 1782870 (the "**Contested Trademark**"), based on Article 8(1)(b) EUTMR[1].

Ducky Limited is a company that operates on the GameDev market as a publisher and a developer of hyper-causal games for mobile devices. These are games that have a relatively short lifespan; however, they are very popular among the players due to their simplicity and the short duration of a single gameplay. The games that the Opponent offers through mobile stores (Google Play, App Store, etc.) have been downloaded more than 500 million times worldwide. This puts the Opponent among

---

[1] Regulation (EU) 2017/1001 of the European Parliament and of the Council of 14 June 2017 on the European Union trademark (codification)(Text with EEA relevance) (the "**EUTMR**").

RYMARZ ZDORT MARUTA
ul. Prosta 18
00-850 Warsaw
+48 22 520 4000
www.rzmlaw.com

RYMARZ, ZDORT, MARUTA, WACHTA, GASIŃSKI, HER i Wspólnicy Spółka Komandytowa is entered in the Register of Business Entities kept by the District Court for the Capital City of Warsaw in Warsaw, XIII Business Division of the National Court Register, under number KRS 0000026546, NIP 5252191456

#100496246v5<RZDMS

the top publishers of hyper-casual games and makes the Opponent a widely recognisable entity on the gaming market.

The Opponent distributes, among others, the "Melon Sandbox" game itself or through its affiliates (i.e. Payge Limited). The game has a large fan base as at this date – it has been downloaded over 66 million times from the Google Play store, and it is also available on the App Store (iOS - Apple), where it has reached over 22 million downloads (screenshots confirming the number of downloads of the Melon Sandbox game in the Google Play and the App Store are attached to this notice of opposition).

The game has been widely and continuously labelled with the "Melon Sandbox" and/or "Melon Playground" designation since its first launch. As a result, the Opponent – in order to secure its rights to the above – filed for several trademark applications through various trademark offices around the world. As a matter of fact, the Opponent owns several game-related trademarks and/or trademarks applications, such as those specified in the table below (nevertheless, this is not an exhaustive list).

| Trademark name | Application No. | Application / registration date | Classes | Trademark Office | Priority |
|---|---|---|---|---|---|
| "Melon Sandbox" (*word*) | 98227522 | 17 October 2023 | 9, 38, 41 | USPTO | N |
| "Melon Playground" (*word*) | 98457426 | 19 March 2024 | 9, 35, 42 | USPTO | N |
| (*figurative*) | 98252270 | 2 November 2023 | 9 | UPSTO | N |
| (*figurative*) | 98252315 | 2 November 2023 | 9 | UPSTO | N |

2

| | | | | | |
|---|---|---|---|---|---|
| (figurative) | 98252375 | 2 November 2023 | 9 | UPSTO | N |
| (figurative) | 98252805 | 2 November 2023 | 9 | UPSTO | N |
| (figurative) | 98252259 | 2 November 2023 | 9 | UPSTO | N |
| (figurative) | 98252355 | 2 November 2023 | 9 | UPSTO | N |
| (figurative) | 98252292 | 2 November 2023 | 9 | UPSTO | N |
| "Melon Sandbox" (word) | UK00004039830 | 16 April 2024 05 July 2024 | 9, 38, 41 | UKIPO | Y (98227522) |

3

| | | | | | |
|---|---|---|---|---|---|
| "Melon Playground" (*word*) | UK00004041384 | 19 April 2024 05 July 2024 | 9, 35, 42 | UKIPO | Y (98457426) |
|  (*figurative*) | UK00004041408 | 19 April 2024 12 July 2024 | 9 | UKIPO | Y (9825237) |
|  (*figurative*) | UK00004041426 | 19 April 2024 12 July 2024 | 9 | UKIPO | Y (98252805) |
| "Melon Sandbox" (*word*) | 019014721 | 17 April 2024 | 9, 38, 41 | EUIPO | Y (98227522) |
| "Melon Playground" (*word*) | 019016082 | 19 April 2024 | 9, 35, 42 | EUIPO | Y (98457426) |
|  (*figurative*) | 019016053 | 19 April 2024 | 9 | EUIPO | Y (98252375) |
|  (*figurative*) | 019016093 | 19 April 2024 | 9 | EUIPO | Y (98252805) |

Relevant excerpts of the US, UK and EUIPO databases in relation to the trademarks specified above are attached to this notice of opposition.

4

Of particular importance for this opposition are the Opponent's earlier EU trademark applications, i.e.

- the EUIPO's "Melon Sandbox" trademark application No. 019014721, filed on 17 April 2024, taking into account of the priority claimed in respect of this particular trademark (US application No. 98227522, filed on 17 October, 2023);

- the EUIPO's figurative trademark application No. 019016053, filed on 19 April 2024, taking into account of the priority claimed in respect of this particular trademark (US application No. 98252375, filed on 2 November, 2023);

  - hereinafter all of the above referred to as the: "**Earlier Trademarks**".

This opposition is directed against all the goods claimed in class 9 by the Contested Trademark which <u>are identical</u> to the goods protected by the Earlier Trademarks owned by Ducky Limited.

The Contested Trademark and the Earlier Trademarks are <u>similar to a high degree</u>, since:

- the Contested Trademark comprises the "*Melon Sandbox Playground*" word element, which is – at the same time – the dominant element of the Contested Trademark. Having said that, the Contested Trademark uses – as its dominant element – the same word element as it is covered under "Melon Sandbox" trademark application No. 019014721. It should also be noted that another word element of the Contested Trademark, i.e. "*Human Workshops: ragdoll people game*", is of a descriptive nature – it describes a specific genre of the games, i.e. games using so-called ragdoll physics on puppets resembling human figures;

- the Contested Trademark comprises an abstract graphic of a character which is similar to the character covered under figurative trademark application No. 019016053.

Furthermore, there is a high likelihood of confusion between the Contested Trademark and the Earlier Trademarks under Article 8(1)(b) EUTMR. All trademarks at issue are targeted at the same relevant public, i.e. gamers with short attention spans. Hence, the Contested Trademark should be rejected in whole, for all the claimed goods in class 9.

The grounds for the opposition are briefly reported here and will be explained in greater detail in observations in support of the opposition. Notwithstanding the foregoing, please be also advised that the Contested Trademark infringes the Opponent's copyrights, i.e. the copyrights to the character that is used in the Contested Trademark (a character was created as part of the game). Furthermore, the application for the Contested Trademark was filed by the Iviliia Millionic in a bad faith – however the Opponent will provide further explanation in further observations. The Opponent hereby reserves the right to file documentation supporting its current opposition.

***

**Michał Pękała**
- advocate -

**Aleksandra Modzelewska**
- advocate -

 **EUIPO**
EUROPEAN UNION
INTELLECTUAL PROPERTY OFFICE
*Protect your intellectual property in the European Union*

# EUTM file information

# MELON SANDBOX
## 019014721

## Timeline



| | | |
|---|---|---|
| | Examination | **Opposition proceedings** |

**08/07/2024**
0 oppositions received

**17/04/2024**
EUTM application
received

**17/04/2024**
Application
published

**17/09/2024**
End of
opposition period

## Trade mark information

| | | | |
|---|---|---|---|
| Name | **MELON SANDBOX** | Filing date | **17/04/2024** |
| Filing number | **019014721** | Registration date | |
| Basis | **EUTM** | Expiry date | |
| Date of receipt | **17/04/2024** | Designation date | |
| Type | **Word** | Filing language | **English** |
| Nature | **Individual** | Second language | **Spanish** |
| Nice classes | **9, 38, 41 ( Nice Classification )** | Application reference | **7423** |
| Vienna Classification | | Trade mark status | **Application published** |
| | | Acquired distinctiveness | **No** |

## Goods and services

English (en)

**9** Video game software; computer software for interactive games.

**38** Providing online chat rooms for exchange of messages among users of computers and other devices concerning topics related to interactive games.

**41** Entertainment services, namely, providing an interactive game via electronic and optical communications networks.

## Description

No data

## Owners

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies          No thanks. only essential cookies

| ID | 1504625 | Country | CY - Cyprus | Correspondence address | |
|---|---|---|---|---|---|
| Organisation | DUCKY LTD. | State/county | n/a | DUCKY LTD. | Hidden. You can set your contact details to be publicly available via the User Area. |
| Legal status | Legal entity | Town | Limassol | Gladstonos, 106, 1-st floor CY-3032 Limassol CHIPRE | |
| | | Post code | 3032 | | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | Address | Gladstonos, 106, 1-st floor | | |
| | | | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Representatives

## A2 ESTUDIO LEGAL

| ID | 26270 | Country | ES - Spain | Correspondence address | |
|---|---|---|---|---|---|
| Organisation | n/a | State/county | n/a | A2 ESTUDIO LEGAL | Hidden. You can set your contact details to be publicly available via the User Area. |
| Legal status | Legal person | Town | Madrid | Calle de María Molina, 41 28006 Madrid ESPAÑA | |
| Type | Association | Post code | 28006 | | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | Address | Calle de María Molina, 41 | | |
| | | | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Correspondence

| | From | Procedure | Filing number | Subject | Date | Actions |
|---|---|---|---|---|---|---|
| | | EUTM | 019014721 | L101F - Receipt of an application for a European Union trade mark (EUTM) and notification that a provisional filing date has been accorded | 17/04/2024 | |
| | | EUTM | 019014721 | Application form and attachment | 17/04/2024 | |
| | | EUTM | 019014721 | Application form and attachment | 17/04/2024 | |

Showing 1 to 3 of 3 entries

## IR transformation

No data

## Seniority

No data

## Exhibition priority

No data

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.        *Accept all cookies*        *No thanks  only essential cookies*

| Country | Filing number | Date | Status |
|---|---|---|---|
| United States | 98227522 | 17/10/2023 | Claimed |
| Showing 1 to 1 of 1 entries | | | |

## Publications

| Bulletin number | Date | Section | Description |
|---|---|---|---|
| 2024/113 | 17/06/2024 | A.1 | Applications published under Article 44 EUTMR |
| Showing 1 to 1 of 1 entries | | | |

## Cancellation

No data

## Recordals

No data

## Oppositions

No data

## Appeals

No data

## Decisions

No data

## Renewals

No data

## Trade mark relations

No data

## InternationalApplications

No data

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies    No thanks, only essential cookies



*Protect your intellectual property in the European Union*

# EUTM file information

# MELON PLAYGROUND
## 019016082

## Timeline

Timeline is unavailable.

## Trade mark information

| | | | |
|---|---|---|---|
| Name | **MELON PLAYGROUND** | Filing date | **19/04/2024** |
| Filing number | **019016082** | Registration date | |
| Basis | **EUTM** | Expiry date | |
| Date of receipt | **19/04/2024** | Designation date | |
| Type | **Word** | Filing language | **English** |
| Nature | **Individual** | Second language | **Spanish** |
| Nice classes | **9, 35, 42 ( Nice Classification )** | Application reference | **7425** |
| Vienna Classification | | Trade mark status | **Application under examination** |
| | | Acquired distinctiveness | **No** |

## Goods and services

English (en) ▼

**9**   Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software.

**35**   Mobile game publishing; Marketing services; marketing in the framework of software and mobile game publishing; targeted marketing services; business management of performing artists; updating and maintenance of data in computer databases; online retail store, outlet, distributorship services for downloadable and pre-recorded music and movies; online retail store, outlet, distributorship services for downloadable digital music; sales promotion for others; on-line advertising on a computer network; compilation of information into computer databases; systemization of information into computer databases; market intelligence services.

**42**   Updating of computer software; software as a service services featuring software for creating digital games, mobile games, database management, publication of mobile games and digital games; rental of computer software for mobile games; development of computer platforms; computer software design; computer programming; cloud computing featuring software for mobile games, digital games electronic data storage.

## Description

No data

## Owners

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.                    Accept all cookies          No thanks. only essential cookies

# DUCKY LTD.

| | | | | | | |
|---|---|---|---|---|---|---|
| ID | **1504625** | Country | **CY - Cyprus** | **Correspondence address** | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Organisation | **DUCKY LTD.** | State/county | **n/a** | DUCKY LTD. Gladstonos, 106, 1-st floor CY-3032 Limassol CHIPRE | | |
| Legal status | **Legal entity** | Town | **Limassol** | | | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | Post code | **3032** | | | |
| | | Address | **Gladstonos, 106, 1-st floor** | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Representatives

# A2 ESTUDIO LEGAL

| | | | | | | |
|---|---|---|---|---|---|---|
| ID | **26270** | Country | **ES - Spain** | **Correspondence address** | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Organisation | **n/a** | State/county | **n/a** | A2 ESTUDIO LEGAL Calle de María Molina, 41 28006 Madrid ESPAÑA | | |
| Legal status | **Legal person** | Town | **Madrid** | | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Type | **Association** | Post code | **28006** | | | |
| | | Address | **Calle de María Molina, 41** | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Correspondence

| | From | Procedure | Filing number | Subject | Date | Actions |
|---|---|---|---|---|---|---|
| No data available in table | | | | | | |
| Showing 0 to 0 of 0 entries | | | | | | |

## IR transformation

No data

## Seniority

No data

## Exhibition priority

No data

## Priority

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.    *Accept all cookies*    *No thanks, only essential cookies*

| Country | Filing number | Date | Status |
|---|---|---|---|
| United States | 98457426 | 19/03/2024 | Claimed |
| Showing 1 to 1 of 1 entries | | | |

## Publications

No data

## Cancellation

No data

## Recordals

No data

## Oppositions

No data

## Appeals

No data

## Decisions

No data

## Renewals

No data

## Trade mark relations

No data

## InternationalApplications

No data

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies    No thanks, only essential cookies



*Protect your intellectual property in the European Union*

## EUTM file information

# (Trade mark without text)
## 019016053

## Timeline

Timeline is unavailable.

## Trade mark information

| | | | |
|---|---|---|---|
| Name | **(Trade mark without text)** | Filing date | **19/04/2024** |
| Filing number | **019016053** | Registration date | |
| Basis | **EUTM** | Expiry date | |
| Date of receipt | **19/04/2024** | Designation date | |
| Type | **Figurative** | Filing language | **English** |
| Nature | **Individual** | Second language | **Spanish** |
| Nice classes | **9 ( Nice Classification )** | Application reference | **7427** |
| Vienna Classification | **02.01.96, 21.01.25 ( Vienna Classification )** | Trade mark status | **Application under examination** |
| | | Acquired distinctiveness | **No** |

## Graphic representation

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.    *Accept all cookies*    *No thanks, only essential cookies*



## Goods and services



**9**   Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; computer browser game software.

## Description

No data

## Owners

## DUCKY LTD.

| ID | 1504625 | Country | CY - Cyprus | Correspondence address | |
|---|---|---|---|---|---|
| Organisation | DUCKY LTD. | State/county | n/a | DUCKY LTD. | Hidden. You can set your contact details to be publicly available via the User Area. |
| Legal status | Legal entity | Town | Limassol | Gladstonos, 106, 1-st floor CY-3032 Limassol | |
| | | Post code | 3032 | CHIPRE | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | Address | Gladstonos, 106, 1-st floor | | |
| | | | | | Hidden. You can set your contact details to be publicly available via the User Area. |

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

*Accept all cookies*        *No thanks, only essential cookies*

Case 5:25-cv-01283-PHK    Document 94-2    Filed 02/28/24    Page 147 of 205

# A2 ESTUDIO LEGAL

| | | | | Correspondence address | |
|---|---|---|---|---|---|
| ID | **26270** | Country | **ES - Spain** | **Correspondence address** | Hidden. You can set your contact details to be publicly available via the User Area. |
| Organisation | **n/a** | State/county | **n/a** | A2 ESTUDIO LEGAL | |
| Legal status | **Legal person** | Town | **Madrid** | Calle de María Molina, 41 | |
| Type | **Association** | Post code | **28006** | 28006 Madrid | |
| | | Address | **Calle de María Molina, 41** | ESPAÑA | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Correspondence

| | From | Procedure | Filing number | Subject | Date | Actions |
|---|---|---|---|---|---|---|
| No data available in table | | | | | | |

Showing 0 to 0 of 0 entries

## IR transformation

No data

## Seniority

No data

## Exhibition priority

No data

## Priority

| Country | Filing number | Date | Status |
|---|---|---|---|
| United States | 98252375 | 02/11/2023 | Claimed |

Showing 1 to 1 of 1 entries

## Publications

No data

## Cancellation

No data

## Recordals

No data

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies    No thanks. only essential cookies

Case 3:25-cv-01268-RNK    Document 34-2    Filed 02/28/24    Page 148 of 205

## Oppositions

No data

## Appeals

No data

## Decisions

No data

## Renewals

No data

## Trade mark relations

No data

## InternationalApplications

No data

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies          No thanks, only essential cookies



*Protect your intellectual property in the European Union*

# EUTM file information

# (Trade mark without text)
## 019016093

## Timeline

Timeline is unavailable.

## Trade mark information

| | | | |
|---|---|---|---|
| Name | **(Trade mark without text)** | Filing date | **19/04/2024** |
| Filing number | **019016093** | Registration date | |
| Basis | **EUTM** | Expiry date | |
| Date of receipt | **19/04/2024** | Designation date | |
| Type | **Figurative** | Filing language | **English** |
| Nature | **Individual** | Second language | **Spanish** |
| Nice classes | **9 ( Nice Classification )** | Application reference | **7428** |
| Vienna Classification | **03.11.12, 03.11.25 ( Vienna Classification )** | Trade mark status | **Application under examination** |
| | | Acquired distinctiveness | **No** |

## Graphic representation



This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.    *Accept all cookies*    *No thanks, only essential cookies*



English (en)

**9**  Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software.

## Description

No data

## Owners

## DUCKY LTD.

| | | | | | | |
|---|---|---|---|---|---|---|
| ID | 1504625 | Country | CY - Cyprus | **Correspondence address** | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Organisation | DUCKY LTD. | State/county | n/a | DUCKY LTD. Gladstonos, 106, 1-st floor CY-3032 Limassol CHIPRE | | |
| Legal status | Legal entity | Town | Limassol | | | Hidden. You can set your contact details to be publicly available via the User Area. |
| | | Post code | 3032 | | | |
| | | Address | Gladstonos, 106, 1-st floor | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Representatives

## A2 ESTUDIO LEGAL

| | | | | | | |
|---|---|---|---|---|---|---|
| ID | 26270 | Country | ES - Spain | **Correspondence address** | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Organisation | n/a | State/county | n/a | A2 ESTUDIO LEGAL Calle de María Molina, 41 28006 Madrid ESPAÑA | | |
| Legal status | Legal person | Town | Madrid | | | Hidden. You can set your contact details to be publicly available via the User Area. |
| Type | Association | Post code | 28006 | | | |
| | | Address | Calle de María Molina, 41 | | | Hidden. You can set your contact details to be publicly available via the User Area. |

## Correspondence

| From | Procedure | Filing number | Subject | Date | Actions |
|---|---|---|---|---|---|
| No data available in table | | | | | |

Showing 0 to 0 of 0 entries

## IR transformation

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies    No thanks, only essential cookies

No data

## Seniority

No data

## Exhibition priority

No data

## Priority

| Country | Filing number | Date | Status |
|---------|---------------|------|--------|
| United States | 98252805 | 02/11/2023 | Claimed |
| Showing 1 to 1 of 1 entries | | | |

## Publications

No data

## Cancellation

No data

## Recordals

No data

## Oppositions

No data

## Appeals

No data

## Decisions

No data

## Renewals

No data

## Trade mark relations

No data

## InternationalApplications

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies     No thanks, only essential cookies

This site uses cookies to offer you a better browsing experience, including for anonymized analytics. Find out more on how we use Cookies.

Accept all cookies

No thanks  only essential cookies

Generated on:   This page was generated by TSDR on 2024-07-08 06:03:12 EDT

Mark:   MELON SANDBOX

MELON SANDBOX

US Serial Number: 98227522

Application Filing Date: Oct. 17, 2023

Register: Principal

Mark Type: Trademark, Service Mark

TM5 Common Status Descriptor:

LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

Status: Applicant's response to a non-final Office action has been entered. The application is being returned to the examining attorney for further review. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

Status Date: Jul. 05, 2024

## Mark Information

Mark Literal Elements: MELON SANDBOX

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

Disclaimer: sandbox

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Downloadable video game software

International Class(es): 009 - Primary Class

U.S Class(es): 021, 023, 026, 036, 038

Class Status: ACTIVE

Basis: 1(a)

First Use: Aug. 23, 2021

Use in Commerce: Aug. 23, 2021

For: Providing online chat rooms for exchange of messages among users of computers and other devices concerning topics related to interactive games

International Class(es): 038 - Primary Class

U.S Class(es): 100, 101, 104

Class Status: ACTIVE

Basis: 1(a)

First Use: Aug. 23, 2021

Use in Commerce: Aug. 23, 2021

For: Providing temporary use of online non-downloadable video game software

International Class(es): 042 - Primary Class

U.S Class(es): 100, 101

Class Status: ACTIVE

Basis: 1(a)

First Use: Aug. 23, 2021

Use in Commerce: Aug. 23, 2021

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

# Current Owner(s) Information

**Owner Name:** DUCKY Ltd.

**Owner Address:** Gladstonos, 106, 1-st floor CY-3032
Limassol CYPRUS

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** CYPRUS

# Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Pollie Gautsch

**Attorney Primary Email Address:** pollie@gandalegal.com

**Attorney Email Authorized:** Yes

### Correspondent

**Correspondent Name/Address:** Pollie Gautsch
G&A LEGAL, APC
665 SAN RODOLFO 124-209
SOLANA BEACH, CALIFORNIA United States 92075

**Phone:** 858-344-5905

**Fax:** 760-454-4673

**Correspondent e-mail:** pollie@gandalegal.com

**Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 05, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jul. 05, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jul. 05, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| May 16, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 16, 2024 | NON-FINAL ACTION E-MAILED | |
| May 16, 2024 | NON-FINAL ACTION WRITTEN | |
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Oct. 24, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Oct. 20, 2023 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

### TM Staff Information

**TM Attorney:** SINGH, TEJBIR

**Law Office Assigned:** LAW OFFICE 106

### File Location

**Current Location:** TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED

**Date in Location:** Jul. 05, 2024

Generated on: This page was generated by TSDR on 2024-07-08 06:04:25 EDT

Mark: MELON PLAYGROUND

MELON PLAYGROUND

| | | | |
|---|---|---|---|
| US Serial Number: | 98457426 | Application Filing Date: | Mar. 19, 2024 |
| Register: | Principal | | |
| Mark Type: | Trademark, Service Mark | | |
| TM5 Common Status Descriptor: |  | | LIVE/APPLICATION/Under Examination |
| | | | The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner. |
| Status: | A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page. | | |
| Status Date: | May 15, 2024 | | |

## Mark Information

| | |
|---|---|
| Mark Literal Elements: | MELON PLAYGROUND |
| Standard Character Claim: | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| Mark Drawing Type: | 4 - STANDARD CHARACTER MARK |

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | |
|---|---|
| For: | Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software |
| International Class(es): | 009 - Primary Class      U.S Class(es): 021, 023, 026, 036, 038 |
| Class Status: | ACTIVE |
| Basis: | 1(a) |

| | |
|---|---|
| For: | Mobile game publishing; Marketing services; marketing in the framework of software and mobile game publishing; targeted marketing services; business management of performing artists; updating and maintenance of data in computer databases; online retail store, outlet, distributorship services for downloadable and pre-recorded music and movies; online retail store, outlet, distributorship services for downloadable digital music; sales promotion for others; on-line advertising on a computer network; compilation of information into computer databases; systemization of information into computer databases; market intelligence services |
| International Class(es): | 035 - Primary Class      U.S Class(es): 100, 101, 102 |
| Class Status: | ACTIVE |
| Basis: | 1(a) |

| | |
|---|---|
| For: | Updating of computer software; software as a service services featuring software for creating digital games, mobile games, database management, publication of mobile games and digital games; rental of computer software for mobile games; development of computer platforms; computer software design; computer programming; cloud computing featuring software for mobile games, digital games electronic data storage |
| International Class(es): | 042 - Primary Class      U.S Class(es): 100, 101 |

**Class Status:** ACTIVE

**Basis:** 1(a)

## Basis Information (Case Level)

| | | |
|---|---|---|
| **Filed Use:** Yes | | **Currently Use:** Yes |
| **Filed ITU:** No | | **Currently ITU:** No |
| **Filed 44D:** No | | **Currently 44D:** No |
| **Filed 44E:** No | | **Currently 44E:** No |
| **Filed 66A:** No | | **Currently 66A:** No |
| **Filed No Basis:** No | | **Currently No Basis:** No |

## Current Owner(s) Information

**Owner Name:** DUCKY Ltd.

**Owner Address:** Gladstonos, 106, 1-st floor CY-3032
Limassol CYPRUS

**Legal Entity Type:** CORPORATION

**State or Country Where Organized:** CYPRUS

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Pollie Gautsch, Esq.

**Attorney Primary Email Address:** pollie@gandalegal.com

**Attorney Email Authorized:** Yes

### Correspondent

**Correspondent Name/Address:** Pollie Gautsch, Esq.
G&A Legal, APC
665 San Rodolfo 124-209
Solana Beach, CALIFORNIA United States 92075

**Phone:** 858-344-5905

**Fax:** 760-454-4673

**Correspondent e-mail:** pollie@gandalegal.com

**Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Apr. 02, 2024 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Mar. 19, 2024 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

**TM Attorney:** SINGH, TEJBIR

**Law Office Assigned:** LAW OFFICE 106

### File Location

**Current Location:** TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED

**Date in Location:** May 15, 2024

Generated on: This page was generated by TSDR on 2024-07-08 06:05:51 EDT

Mark:



US Serial Number: 98252270

Register: Principal

Mark Type: Trademark

TM5 Common Status Descriptor:



Status: A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

Status Date: May 15, 2024

Application Filing Date: Nov. 02, 2023

LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

## Mark Information

Mark Literal Elements: None

Standard Character Claim: No

Mark Drawing Type: 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S)

Description of Mark: The mark consists of a stylized pixelated image of a figure with a melon head with a face in an idle pose.

Color Drawing: Yes

Color(s) Claimed: The color(s) green and black is/are claimed as a feature of the mark.

Design Search Code(s): 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects
04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person
05.09.25 - Coconuts; Kiwi Fruit; Other fruits

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software

International 009 - Primary Class                    U.S Class(es): 021, 023, 026, 036, 038

| | |
|---|---|
| **Class(es):** | |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |
| **First Use:** | Aug. 23, 2021 |

**Use in Commerce:** Aug. 23, 2021

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

# Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | DUCKY Ltd. |
| **Owner Address:** | Gladstonos, 106, 1-st floor CY-3032<br>Limassol CYPRUS |
| **Legal Entity Type:** | CORPORATION |

**State or Country Where Organized:** CYPRUS

# Attorney/Correspondence Information

**Attorney of Record**

| | |
|---|---|
| **Attorney Name:** | Pollie Gautsch, Esq. |
| **Attorney Primary Email Address:** | pollie@gandalegal.com |

**Attorney Email Authorized:** Yes

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | POLLIE GAUTSCH, ESQ.<br>G&A LEGAL, APC<br>665 SAN RODOLFO 124-209<br>SOLANA BEACH, CALIFORNIA UNITED STATES 92075 |
| **Phone:** | 858-344-5905 |
| **Correspondent e-mail:** | pollie@gandalegal.com |

**Correspondent e-mail Authorized:** Yes

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

**TM Staff Information**

| | | | |
|---|---|---|---|
| **TM Attorney:** | SINGH, TEJBIR | **Law Office Assigned:** | LAW OFFICE 106 |

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED | **Date in Location:** | May 15, 2024 |

**Generated on:** This page was generated by TSDR on 2024-07-08 06:07:33 EDT

**Mark:**



| | | |
|---|---|---|
| **US Serial Number:** 98252375 | **Application Filing Date:** | Nov. 02, 2023 |
| **Register:** Principal | | |
| **Mark Type:** Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** A final Office action refusing registration has been sent (issued) because the applicant neither satisfied nor overcame all requirements and/or refusals previously raised. The applicant may respond by filing (1) a request for reconsideration; and/or (2) an appeal to the Trademark Trial and Appeal Board. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** May 17, 2024

## Mark Information

**Mark Literal Elements:** None

**Standard Character Claim:** No

**Mark Drawing Type:** 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S)

**Description of** The mark consists of a stylized pixelated image of a figure in dark green and light green, with black shading, with three dark pink and

|  | |
|---|---|
| **Mark:** | light pink cacti, and with a cactus-shaped head, in an idle pose. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) dark green, light green, black, dark pink, and light pink is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects |
|  | 04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person |
|  | 05.13.06 - Cacti |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

|  | |
|---|---|
| **For:** | Downloadable video game software; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices. |
| **International Class(es):** | 009 - Primary Class |

**U.S Class(es):** 021, 023, 026, 036, 038

|  | |  | |
|---|---|---|---|
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Oct. 23, 2023 | **Use in Commerce:** | Oct. 23, 2023 |

## Basis Information (Case Level)

|  | |  | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

|  | |  | |
|---|---|---|---|
| **Owner Name:** | DUCKY Ltd. | | |
| **Owner Address:** | Gladstonos, 106, 1-st floor CY-3032 Limassol CYPRUS | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized** | CYPRUS |

## Attorney/Correspondence Information

### Attorney of Record

|  | |  | |
|---|---|---|---|
| **Attorney Name:** | Pollie Gautsch, Esq. | | |
| **Attorney Primary Email Address:** | pollie@gandalegal.com | **Attorney Email Authorized** | Yes |

### Correspondent

|  | |  | |
|---|---|---|---|
| **Correspondent Name/Address:** | Pollie Gautsch, Esq. G&A LEGAL, APC 665 SAN RODOLFO 124-209 SOLANA BEACH, CALIFORNIA United States 92075 | | |
| **Phone:** | 858-344-5905 | **Fax:** | 760-454-4673 |
| **Correspondent e-mail:** | pollie@gandalegal.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | | Proceeding Number |
|---|---|---|---|

| | |
|---|---|
| May 17, 2024 | NOTIFICATION OF FINAL REFUSAL EMAILED |
| May 17, 2024 | FINAL REFUSAL E-MAILED |
| May 17, 2024 | FINAL REFUSAL WRITTEN |
| May 16, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED |
| May 16, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| May 16, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED |
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED |
| May 15, 2024 | NON-FINAL ACTION E-MAILED |
| May 15, 2024 | NON-FINAL ACTION WRITTEN |
| May 14, 2024 | ASSIGNED TO EXAMINER |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Nov. 06, 2023 | NEW APPLICATION ENTERED |

80804

## TM Staff and Location Information

### TM Staff Information

**TM Attorney:** SINGH, TEJBIR

**Law Office Assigned:** LAW OFFICE 106

### File Location

**Current Location:** TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED

**Date in Location:** May 17, 2024

**Generated on:** This page was generated by TSDR on 2024-07-08 06:08:13 EDT

**Mark:**



| | | | |
|---|---|---|---|
| **US Serial Number:** | 98252805 | **Application Filing Date:** | Nov. 02, 2023 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** May 15, 2024

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of A stylized and pixelated melon head image with an orange hat, white eyes and a straight line mouth. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) orange, green, black and white is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects |
| | 02.01.37 - Busts of men in profile; Heads of men in profile; Men - heads, portraiture, or busts in profile; Portraiture of men in profile |
| | 04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person |
| | 05.09.10 - Cantaloupes; Watermelons |
| | 09.05.10 - Men's narrow-brimmed hats, including fedoras and derbies |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software | | |
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Jul. 31, 2023 | **Use in Commerce:** | Jul. 31, 2023 |

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

# Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | DUCKY Ltd. |
| **Owner Address:** | Gladstonos, 106, 1-st floor CY-3032 Limassol CYPRUS |
| **Legal Entity Type:** | CORPORATION |
| **State or Country Where Organized:** | CYPRUS |

# Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** | Pollie Gautsch, Esq. |
| **Attorney Primary Email Address:** | pollie@gandalegal.com |
| **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | POLLIE GAUTSCH, ESQ. G&A LEGAL, APC 665 SAN RODOLFO 124-209 SOLANA BEACH, CALIFORNIA UNITED STATES 92075 |
| **Phone:** | 858-344-5905 |
| **Fax:** | 760-454-4673 |
| **Correspondent e-mail:** | pollie@gandalegal.com |
| **Correspondent e-mail Authorized:** | Yes |

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

### TM Staff Information

| | |
|---|---|
| **TM Attorney:** | SINGH, TEJBIR |
| **Law Office Assigned:** | LAW OFFICE 106 |

### File Location

| | |
|---|---|
| **Current Location:** | TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED |
| **Date in Location:** | May 15, 2024 |

**Generated on:** This page was generated by TSDR on 2024-07-08 06:17:34 EDT

**Mark:**



**US Serial Number:** 98252259

**Register:** Principal

**Mark Type:** Trademark

**TM5 Common Status Descriptor:**



**Status:** A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** May 15, 2024

**Application Filing Date:** Nov. 02, 2023

LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

## Mark Information

**Mark Literal Elements:** None

**Standard Character Claim:** No

**Mark Drawing Type:** 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S)

**Description of Mark:** The mark consists of a stylized pixelated image of a figure with an apple head with a face and leaf on top of the head in an idle pose.

**Color Drawing:** Yes

**Color(s) Claimed:** The color(s) green and red is/are claimed as a feature of the mark.

**Design Search Code(s):** 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects
04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person
05.09.05 - Apples

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software

| International Class(es): | 009 - Primary Class | U.S Class(es): | 021, 023, 026, 036, 038 |
|---|---|---|---|
| Class Status: | ACTIVE | | |
| Basis: | 1(a) | | |
| First Use: | Mar. 27, 2022 | Use in Commerce: | Mar. 27, 2022 |

## Basis Information (Case Level)

| Filed Use: | Yes | Currently Use: | Yes |
|---|---|---|---|
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44D: | No |
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

| Owner Name: | DUCKY Ltd. |
|---|---|
| Owner Address: | Gladstonos, 106, 1-st floor CY-3032 Limassol CYPRUS |
| Legal Entity Type: | CORPORATION |
| State or Country Where Organized: | CYPRUS |

## Attorney/Correspondence Information

### Attorney of Record

| Attorney Name: | Pollie Gautsch, Esq. | | |
|---|---|---|---|
| Attorney Primary Email Address: | pollie@gandalegal.com | Attorney Email Authorized: | Yes |

### Correspondent

| Correspondent Name/Address: | POLLIE GAUTSCH, ESQ. G&A LEGAL, APC 665 SAN RODOLFO 124-209 SOLANA BEACH, CALIFORNIA UNITED STATES 92075 | | |
|---|---|---|---|
| Phone: | 858-344-5905 | Fax: | 760-454-4673 |
| Correspondent e-mail: | pollie@gandalegal.com | Correspondent e-mail Authorized: | Yes |

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

| TM Attorney: | SINGH, TEJBIR | Law Office Assigned: | LAW OFFICE 106 |
|---|---|---|---|

### File Location

| Current Location: | TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED | Date in Location: | May 15, 2024 |
|---|---|---|---|



**Generated on:** This page was generated by TSDR on 2024-07-08 06:19:15 EDT

**Mark:**

| | | |
|---|---|---|
| **US Serial Number:** | 98252292 | **Application Filing Date:** Nov. 02, 2023 |
| **Register:** | Principal | |
| **Mark Type:** | Trademark | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** May 15, 2024

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of The mark consists of a stylized pixelated image of a figure with a corn head with a face in an idle pose. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) yellow, green and black is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects |
| | 04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person |
| | 05.07.01 - Corn, stalks |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software

| | | | |
|---|---|---|---|
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Dec. 30, 2021 | **Use in Commerce:** | Dec. 30, 2021 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | DUCKY Ltd. |
| **Owner Address:** | Gladstonos, 106, 1-st floor CY-3032 Limassol CYPRUS |
| **Legal Entity Type:** | CORPORATION |
| **State or Country Where Organized:** | CYPRUS |

## Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** | Pollie Gautsch, Esq. |
| **Attorney Primary Email Address:** | pollie@gandalegal.com |
| **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | POLLIE GAUTSCH, ESQ. G&A LEGAL, APC 665 SAN RODOLFO 124-209 SOLANA BEACH, CALIFORNIA UNITED STATES 92075 |
| **Phone:** | 858-344-5905 |
| **Correspondent e-mail:** | pollie@gandalegal.com |
| **Correspondent e-mail Authorized:** | Yes |

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Dec. 15, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Dec. 14, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

| | | | |
|---|---|---|---|
| **TM Attorney:** | SINGH, TEJBIR | **Law Office Assigned:** | LAW OFFICE 106 |

### File Location

| | | | |
|---|---|---|---|
| **Current Location:** | TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED | **Date in Location:** | May 15, 2024 |

Generated on: This page was generated by TSDR on 2024-07-08 06:06:47 EDT

Mark:



| | | | |
|---|---|---|---|
| **US Serial Number:** 98252315 | | **Application Filing Date:** | Nov. 02, 2023 |
| **Register:** Principal | | | |
| **Mark Type:** Trademark | | | |
| **TM5 Common Status Descriptor:** |  | LIVE/APPLICATION/Under Examination | |

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** May 15, 2024

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of The mark consists of a stylized pixelated image of a figure with a pumpkin head with a face in an idle pose. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) orange and black is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 02.01.34 - Monsters (not robots); Other grotesque including men formed by plants or objects 02.01.37 - Busts of men in profile; Heads of men in profile; Men - heads, portraiture, or busts in profile; Portraiture of men in profile 04.07.01 - Person formed by plants; Plants forming a person; Plants or combinations of plants representing a person; Plants representing a person 05.09.12 - Pumpkins |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks "..*" identify additional (new) wording in the goods/services.

**For:** Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software

| | | |
|---|---|---|
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | |
| **Basis:** | 1(a) | |
| **First Use:** | Nov. 19, 2021 | **Use in Commerce:** Nov. 19, 2021 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | DUCKY Ltd. |
| **Owner Address:** | Gladstonos, 106, 1-st floor CY-3032 Limassol CYPRUS |
| **Legal Entity Type:** | CORPORATION |
| **State or Country Where Organized:** | CYPRUS |

## Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** | Pollie Gautsch, Esq. |
| **Attorney Primary Email Address:** | pollie@gandalegal.com |
| **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | POLLIE GAUTSCH, ESQ. G&A LEGAL, APC 665 SAN RODOLFO 124-209 SOLANA BEACH, CALIFORNIA UNITED STATES 92075 |
| **Phone:** | 858-344-5905 |
| **Correspondent e-mail:** | pollie@gandalegal.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | 80804 |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

| | |
|---|---|
| **TM Attorney:** | SINGH, TEJBIR |
| **Law Office Assigned:** | LAW OFFICE 106 |

### File Location

| | |
|---|---|
| **Current Location:** | TMEG LAW OFFICE 106 - EXAMINING ATTORNEY ASSIGNED |
| **Date in Location:** | May 15, 2024 |



**Generated on:** This page was generated by TSDR on 2024-07-08 06:18:33 EDT

**Mark:**

| | | | |
|---|---|---|---|
| **US Serial Number:** | 98252355 | **Application Filing Date:** | Nov. 02, 2023 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** |  | LIVE/APPLICATION/Under Examination |
| | | The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner. |
| **Status:** | A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page. |
| **Status Date:** | May 15, 2024 |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of The mark consists of a stylized pixelated image of a figure with a robot head with a face in an idle pose. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) green, orange and black is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 02.01.26 - Men, mechanical men, robots; Robots (men) |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | |
|---|---|
| **For:** | Video game software; computer software for interactive games; downloadable video game software for simulation games; downloadable interactive video game programs; video game software downloadable to mobile phones, tablets, laptops, and mobile gaming devices; creating browser based video games; computer browser game software |
| **International Class(es):** | 009 - Primary Class |
| **U.S Class(es):** | 021, 023, 026, 036, 038 |

Class Status: ACTIVE
Basis: 1(a)
First Use: Jun. 12, 2023                              Use in Commerce: Jun. 12, 2023

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes |
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44D: | No |
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

Owner Name: DUCKY Ltd.
Owner Address: Gladstonos, 106, 1-st floor CY-3032
Limassol CYPRUS
Legal Entity Type: CORPORATION            State or Country  CYPRUS
Where Organized:

## Attorney/Correspondence Information

### Attorney of Record

Attorney Name: Pollie Gautsch, Esq.
Attorney Primary  pollie@gandalegal.com          Attorney Email  Yes
Email Address:                                   Authorized:

### Correspondent

Correspondent  POLLIE GAUTSCH, ESQ.
Name/Address: G&A LEGAL, APC
665 SAN RODOLFO 124-209
SOLANA BEACH, CALIFORNIA UNITED STATES 92075
Phone: 858-344-5905                              Fax: 760-454-4673
Correspondent e-  pollie@gandalegal.com         Correspondent e-  Yes
mail:                                            mail Authorized:

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 15, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION E-MAILED | |
| May 15, 2024 | NON-FINAL ACTION WRITTEN | |
| May 14, 2024 | ASSIGNED TO EXAMINER | |
| Nov. 21, 2023 | NOTICE OF DESIGN SEARCH CODE E-MAILED | 80804 |
| Nov. 20, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 06, 2023 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

TM Attorney: SINGH, TEJBIR            Law Office  LAW OFFICE 106
Assigned:

### File Location

Current Location: TMEG LAW OFFICE 106 - EXAMINING    Date in Location: May 15, 2024
ATTORNEY ASSIGNED

Skip to main content

# Intellectual Property Office

**Trade mark number**
UK00004039830

**Status**
Registered

## Overview

### Trade mark

MELON SANDBOX

## Dates

**Filing date**
16 April 2024

**Date of entry in register**
05 July 2024

**Renewal date**
16 April 2034

## Priority details

**Priority date**
17 November 2023

**Priority country**
United States of America

**TM from which priority claimed**
98227522

**Claim**
Whole

# Goods and services

## Classes and terms

**Class 9**

**Class 38**

**Class 41**

# Names and addresses

## Owner(s) name

**DUCKY Ltd.**
Gladstonos, 106, 1-st floor CY-3032, Limassol, CY-3032, Cyprus

**Country of Incorporation**
Cyprus

## IPO representative name

**Marcaria.com LLC**
1874 Davenport House, 207 Regent Street, London, W1B 3HH, United Kingdom

# Publications

## First advert

**Journal**
2024/017

**Date of publication**
26 April 2024

Intellectual Property Office is an operating name of the Patent Office

Skip to main content

# Intellectual Property Office

**Trade mark number**
UK00004041384

**Status**
Registered

## Overview

### Trade mark

MELON PLAYGROUND

## Dates

**Filing date**
19 April 2024

**Date of entry in register**
05 July 2024

**Renewal date**
19 April 2034

## Priority details

**Priority date**
19 March 2024

**Priority country**
United States of America

**TM from which priority claimed**
98457426

**Claim**
Whole

# Goods and services

## Classes and terms

**Class 9**

**Class 35**

**Class 42**

# Names and addresses

## Owner(s) name

**DUCKY Ltd.**
Gladstonos, 106, 1-st floor CY-3032, Limassol, CY-3032, Cyprus

**Country of Incorporation**
Cyprus

## IPO representative name

**Marcaria.com LLC**
1874 Davenport House, 207 Regent Street, London, W1B 3HH, United Kingdom

# Publications

## First advert

**Journal**
2024/017

**Date of publication**
26 April 2024

Intellectual Property Office is an operating name of the Patent Office

Skip to main content

# Intellectual Property Office

**Trade mark number**
UK00004041408

**Status**
Registered

## Overview

### Trade mark



## Dates

**Filing date**
19 April 2024

**Date of entry in register**
12 July 2024

**Renewal date**
19 April 2034

## Priority details

**Priority date**
02 November 2023

**Priority country**
United States of America

**TM from which priority claimed**
98252375

**Claim**
Whole

---

---

# Goods and services

## Classes and terms

**Class 9**

---

# Names and addresses

## Owner(s) name

**DUCKY Ltd.**
Gladstonos, 106, 1-st floor CY-3032, Limassol, CY-3032, Cyprus

**Country of Incorporation**
Cyprus

---

## IPO representative name

**Marcaria.com LLC**
1874 Davenport House, 207 Regent Street, London, W1B 3HH, United Kingdom

---

---

# Publications

## First advert

**Journal**
2024/018

**Date of publication**
03 May 2024

Intellectual Property Office is an operating name of the Patent Office

Skip to main content

# Intellectual Property Office

**Trade mark number**
UK00004041426

**Status**
Registered

## Overview

### Trade mark



## Dates

**Filing date**
19 April 2024

**Date of entry in register**
12 July 2024

**Renewal date**
19 April 2034

## Priority details

**Priority date**

02 November 2023

**Priority country**
United States of America

**TM from which priority claimed**
98252805

**Claim**
Whole

# Goods and services

## Classes and terms

### Class 9

# Names and addresses

## Owner(s) name

**DUCKY Ltd.**
Gladstonos, 106, 1-st floor CY-3032, Limassol, CY-3032, Cyprus

**Country of Incorporation**
Cyprus

## IPO representative name

**Marcaria.com LLC**
1874 Davenport House, 207 Regent Street, London, W1B 3HH, United Kingdom

# Publications

## First advert

**Journal**
2024/018

**Date of publication**
03 May 2024

Intellectual Property Office is an operating name of the Patent Office





Exhibit J

*[Translated from Polish]*

COPY

Case No. XXII GWo 222/24

**DECISION**

On 9 September 2024

The Regional Court in Warsaw, XXII Intellectual Property Division, represented by:

Presiding Judge:: **Judge Aleksandra Ziółkowska-Majkowska**

having examined on 9 September 2024 in Warsaw

at a closed hearing

the case brought by **Ducky Ltd with its registered office w Limassol (Cyprus)**

with the participation of **Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw**

**seeking an injunction**

**hereby resolves to:**

correct the decision of 2 August 2024 as follows:

1. in the recitals and in the body of the decision, replace the incorrect name of the applicant: "Ducky Ltd with its registered office w Limassol Ltd with its registered office w Limassol (Cyprus)" and "Ducky Ltd with its registered office w Limassol Ltd in Cyprus" with the correct entry: "Ducky Ltd with its registered office w Limassol (Cyprus)";

2. in point 1, in the fifth line, delete the unnecessary "j";

3. in the body of the decision, replace the incorrect word: "Pampkin" with the word: "Pumpkin";

4. in section 2, replace the incorrect name of "Millionic IT sp. z o.o. with its registered office in Warsaw" with the correct name of: "Iviliia Millionic IT sp. z o.o. with its registered office in Warsaw".

*[State seal: „Regional Court in Warsaw – 22"]*

Judge Aleksandra Ziółkowska-Majkowska

*Stamp:* "This is a true and correct copy"

*Stamped and signed:* "Senior Court Secretary
Regional Court in Warsaw,
Monika Nowak"



COPY

**Case No. XXII GWo 222/24**

## DECISION

On 2 August 2024

The Regional Court in Warsaw, XXII Intellectual Property Division, represented by:

Presiding Judge:    **Judge Aleksandra Ziółkowska-Majkowska**

having examined on 2 August 2024 in Warsaw

at a closed hearing

the case brought by **Ducky Ltd with its registered office w Limassol Ltd with its registered office w Limassol (Cyprus)**

with the participation of **Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw Millionic IT Sp. z o.o. with its registered office in Warsaw**

**seeking an injunction**

**hereby resolves to:**

1.    grant an injunction in favour of Ducky Ltd, with its registered office in Limassol Ltd in Cyprus, securing its non-monetary claim against Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw, pursuant to Article 18(1)(1) in conjunction with Article 3(1) and Article 14(1) of the Act on Preventing Unfair Competition, which claim seeks the desisting of unlawful activities involving:

    a)    attempts to block, on the mobile application distribution platforms Google Play and the App Store, the Melon Sandbox game owned by Ducky, as well as other games featuring the graphic works appearing in the Melon Sandbox game, by reporting such games to the owners of the aforementioned platforms (i.e. Google and Apple, respectively) as infringing a fictitious copyright of Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw;

    b)    attempts to block gameplay videos of Melon Sandbox or other games featuring Melon Sandbox graphics on YouTube by reporting such videos to the YouTube platform as infringing a fictitious copyright of Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw;

    c)    impersonating the owner of the copyrights to the graphic works appearing in the Melon Sandbox game, and proposing to the uploaders of the recordings referred to in letter "b" above the conclusion of licence agreements pursuant to which, in return for adequate remuneration, Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw "undertakes" to "unblock" the above-mentioned recordings on the YouTube platform and grants a "licence" to such persons to publish recordings containing the graphic works appearing in the Melon Sandbox game – to which in fact it does not hold any rights;

by prohibiting Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw, pending the final and non-appealable conclusion of the exploratory proceedings, to undertake any activities aimed at:

    a)    making reports to the owners of the Google Play and App Store platforms that the Melon Sandbox games or other games featuring images of computer graphics from the Melon Sandbox game in the form of the following characters: Apple hero, Corn hero, Pampkin hero and Watermelon hero (shown in the images below) infringe the copyrights of Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw:

    *[graphics depicting four characters]*

    b)    notifying vloggers or other entities publishing gameplay videos featuring Melon Sandbox or other games containing images of computer graphics from the Melon Sandbox game: Apple hero, Corn hero, Pampkin hero and Watermelon hero (shown in the images above), on the YouTube platform or any other platforms, that the images of those graphics infringe the copyrights of Iviliia Millionic IT Sp. z o.o. with its registered office in Warsaw;

c) concluding agreements for the use by others of computer graphics images appearing in the Melon Sandbox game in the form of the following characters: Apple hero, Corn hero, Pampkin hero and Watermelon hero (shown in the images above);

2. Threaten Millionic IT sp. z o.o. with its registered office in Warsaw with an order to pay PLN 5,000 (five thousand zlotys) to Ducky Ltd with its registered office in Limassol Ltd with its registered office in Limassol, Cyprus, for each and every case of non-compliance with the prohibitions described in point 1;

3. Dismiss the remainder of the motion

4. Grant the Entitled Party, Ducky Ltd with its registered office in Limassol Ltd with its registered office in Limassol (Cyprus), a two-week period to lodge a pleading initiating proceedings against the Obligor, failing which the security shall lapse;

5. Leave the decision on the costs of the injunction proceedings to the Court examining the merits of the case

Judge Aleksandra Ziółkowska-Majkowska

Case No. **XXII GW0 222/24**

**JUSTIFICATION**

**for the decision of 2 August 2024**

1. In the request of 5 April 2024, Ducky Ltd with its registered office w Limassol in Cyprus ("**Entitled Party**") sought an injunction securing a non-monetary claim against Iviliia Millionic IT sp. z o.o. with its registered office in Warsaw ("**Obligor**") pursuant to Article 18(1)(1) in conjunction with Article 3(1) and Article 14(1) of the act on preventing unfair competition (the "Act on Preventing Unfair Competition")

   a. which claim seeks the desisting of unlawful activities involving:

      (i) attempts to block, on the mobile application distribution platforms Google Play and the App Store, the Melon Sandbox game owned by Ducky, as well as other games featuring the graphic works appearing in the Melon Sandbox game, by reporting such games to the owners of the aforementioned platforms (i.e. Google and Apple, respectively) as infringing a fictitious copyright of the Obligor;

      (ii) attempts to block gameplay videos of Melon Sandbox or other games featuring Melon Sandbox graphics on YouTube by reporting such videos to the YouTube platform as infringing a fictitious copyright of the Obligor.;

      (iii) impersonating the owner of the copyrights to the graphic works appearing in the Melon Sandbox game, and proposing to the uploaders of the recordings referred to in letter (ii) above the conclusion of licence agreements pursuant to which, in return for adequate remuneration, the Obligor "undertakes" to "unblock" the above-mentioned recordings on the YouTube platform and grants a "licence" to such persons to publish recordings containing the graphic works appearing in the Melon Sandbox game – to which in fact it does not hold any rights;

   by:

   prohibiting the Obligor, pending the final and non-appealable conclusion of the exploratory proceedings, to undertake any activities aimed at:

      (iv) blocking or limiting availability on the Google Play and App Store mobile platforms of the Melon Sandbox game or other games featuring the graphic works appearing in the Melon Sandbox game;

      (v) blocking or limiting availability of gameplay videos of Melon Sandbox or other games featuring Melon Sandbox graphics on YouTube or any other platform;

      (vi) obtaining any financial advantage, including the conclusion with any person of any licence agreement based on which the Obligor would be entitled to remuneration in exchange for consent or confirmation of the right to use in any way – any graphic works featured in the Melon Sandbox game;

   b. threatening the Obligor, pursuant to Article 756$^2$ § 1 of the Code of Civil Procedure, with an order to pay PLN 50,000 (fifty thousand zlotys) to Ducky for each and every case of non-compliance with the prohibitions described in point 1 of the request.

/request k. 3-26/

2. The Obligor failed to present its position regarding the case and did not come to the hearing despite having accepted delivery of the notification (k. 306, k. 314, k. 338

3. At the hearing on 1 August 2024, the counsel of the Entitled Party specified further that the injunction is to secure four graphic works featured in the Melon Sandbox game as presented in schedule 4 to the request, i.e. Apple Hero, Pumpkin Hero, Corn Hero, Watermelon Hero (k. 338).

   *[graphics depicting four characters]*

**The Court established the following:**

4

1.  Ducky Ltd with its registered office w Limassol in Cyprus is a company involved in publishing and development of hyper-casual mobile games. The games are available in Google Play and App Store mobile platforms.

2.  The Melon Sandbox game (formerly Melon Playground) was created by Oleg and Tatyana Podvalov. In the game the players may create their own unique play scenarios with a variety of items and characters provided by the developers of the game. The game features such specific characters as Melon Hero, Watermelon Hero, Apple Hero, Corn Hero or Pumpkin Hero which were created by Tatyana Podvalova in July 2021. In the Google Play store the game was downloaded more than 66 million times and more than 22 million times from App Store (iOS -Apple).

/print screens k. 46, 47/

3.  On 10 January 2022, Oleg and Tatyana Podvalov assigned their copyrights to Yurii Podvalov who, subsequently, on 6 March 2023, concluded an agreement with the Entitled Party based on which the Entitled Party was granted a licence to publish the game in the Google Play Store and App Store. On 23 March 2023, an annex to the licence agreement was signed and based on that annex the Entitled Party was granted the right to modify the Melon Sandbox game for the purposes of improvement and development thereof.

    /Agreement on the Assignment of Exclusive Rights of 10 January 2022 with a translation thereof k. 49-61, Licence Agreement of 6 March 2023 with a translation of an excerpt thereof k. 63-78, Addendum of 23 March 2023 to the Licence Agreement of 6 March 2023 with a certified translation of an excerpt thereof k. 80-84/

4.  Pursuant to the Addendum #1 to the Agency Agreement concluded on 1 November 2022 between the Entitled Party and Payge Limited with its registered office in Nicosia, Cyprus, the Entitled Party commissioned the publication of the of the game in the App Store to Payge, a whole owned subsidiary of the Entitled Party (the Entitled Party holds 100% of the shares in Payge).

    /Agency Agreement of 1 November 2022 and Addendum No. 1 of 6 March 2023 with a translation of an excerpt thereof k. 86-91, copy of certificate from the Cypriot register of companies  k. 93-94/

5.  On 18 May 2023, Yurii Podvalov assigned the copyright to the Melon Sandbox game to a subsidiary, Twenty Seven IT Services LLC with its registered office in United Arab Emirates. Based on the Novation Agreement concluded on 19 May 2023, the rights and obligations of Yurii Podvalov under the Licence Agreement were transferred to Twenty Seven IT Services LLC with its registered office in United Arab Emirates. The Entitled Party and its subsidiary remained the publishers of the Melon Sandbox game in Google Play and App Store.

    /Agreement on the Assignment of Exclusive Rights to the Game of 18 May 2023 with a certified translation of an excerpt thereof k. 96-107, Novation Agreement of 19 May 2023 with a certified translation of an excerpt thereof k. 109-114/

6.  On 30 October 2023, the Entitled Party and Twenty Seven IT Services LLC with its registered office in the United Arab Emirates, Oleg Podvalov, Tatyana Podvalov and Yuriy Podvalov concluded an Asset Purchase Agreement pursuant to which the Entitled Party acquired from Twenty Seven IT Services LLC with its registered office in the United Arab Emirates all author's economic rights in the Melon Sandbox game, including all patents, trademarks and other rights related therewith.

    /Asset Purchase Agreement of 30 October 2023 with a certified translation of an excerpt thereof k. 116-142/

7.  The Obligor has registered with the U.S. Copyright Office certain graphic works hero that are featured in the Melon Sandbox game, among other things: apple hero, corn hero, pumpkin hero, watermelon hero.

    /Printout from the website of the U.S. Copyright Office https://www.copyright.gov/help/faq/faqgeneral.html with a sworn translation into Polish k. 163-20/

8.  The Obligor raised claims regarding specific graphic characters featured in the Melon Sandbox game. On 18 October 2023, a subsidiary of the obligor, Payge, was informed by Apple, that the Obligor has requested that the Melon Sandbox game be immediately removed from the App Store

5

on the grounds that it violates Obligor's copyrights to four graphic works, i.e. watermelon hero, pumpkin hero, corn hero and apple hero. Moreover, Alexandru Bejan (a developer of mobile games), who developed a modifications to the Melon Sandbox game, informed the Entitled Party that the Obligor attempted to "block" its products in the App Store by claiming that it was the owner of rights to the graphic works featured in the Melon Sandbox game..

/Email from "Hai Lam" of 20 September 2023, with certified translation thereof into Polish k. 144-146, Guarantee letter k. 148 -157, email correspondence with certified translation thereof into Polish k. 203 _215, Email of 18 October 2023 from Alexandru Bejana with certified translation thereof into Polish k. 217-219/

9.  The Entitled Party received information from a New Zealand vlogger, Jamie Wyllie, who publishes his Melon Sandbox gameplays on the YouTube, that the Obligor has succeeded in blocking his YouTube channels. The Obligor suggested to the vlogger that he signs a licence agreement which was a condition for un-blocking the vlogger's channels.

    /email correspondence with certified translation thereof into Polish k. 221-230, draft of the licence agreement with certified translation of an excerpt thereof into Polish k. 237-242/

10. As a result of the Obligor's notification which suggested that it held rights to graphic works, Google Play blocked a game published by one of the Entitled Party's partners, Hookah Games, Nextbots In Backrooms: Shooter in which the players may use the characters featured in the Melon Sandbox game. The Entitled Party was entitled to a share in profits from the ads displayed in the game of Hookah Games. The Entitled Party objected against the decision of Google Play on blocking the Nextbots In Backrooms: Shooter game. Google Play has unblocked the Nextbots In Backrooms: Shooter game.

    /message from the Google team to Hookah Games of 31 January 2024 with certified translation thereof into Polish k. 244-260, letter to the Google team in connection with the blocking of the Nextbots In Backrooms: Shooter game with certified translation thereof into Polish k. 253-268, email correspondence between Hoohah and the Google team with certified translation thereof into Polish 264-268/

11. The Entitled Party submitted applications to the U.S. Copyright Office for registration of its copyrights to graphic works features in the game. The U.S. Copyright Office registered pumpkin hero (No. VA 2-378-857), melon hero (No. VA 2-377-097), corn hero (No. VA 2-377-099), robot hero (No. VA 2-377-100) and apple hero (No. VA 2-377101).

    /confirmation of registration in the U.S. Copyright Office k. 278-290/

12. The Google team blocked the Melon Sandbox game in the Google Play store in consequence of the notification by the Obligor which indicated breaches of its copyrights. The Entitled Party submitted an objection against the above-mentioned decision. Since the game has been blocked the Entitled Party was prevented from benefiting from the game.

    /Email from the Google team with certified translation thereof into Polish k. 292-299, objection of the Entitled Party k. 301-304/

13. The Obligor continues its efforts to block YouTube channels of entities publishing films with Melon Sandbox gameplays and to block in Google Play any games using graphic characters features in the Melon Sandbox game.

    /letter k. 320-321/

14. The above-presented facts have been established on the basis of documents attached to the request which, in the opinion of the Court and at this stage of the proceedings, are sufficient to find that both the claims and the legal interest in the injunction are plausible.

**The Court considered the following:**

15. The Bussel I Bis Regulation (Regulation No. 1215/2012) which governs jurisdiction and the recognition and enforcement of judgments in civil and commercial matters in the European Union. Pursuant to Article 4(1) persons domiciled (or having a registered office, in case of legal persons) in a Member State shall, whatever their nationality, be sued in the courts of that Member State.

6

Since the company has its registered office in Poland, pursuant to Article 4(1) of the Regulation, the Polish courts have jurisdiction to examine the case and, thus, also to issue an injunction.

16. Pursuant to Article 730 § 1 of the Code of Civil Procedure, one may seek an injunction in any civil case subject to examination by a court or a court of arbitration, provided that the court may grant an injunction prior to the commencement of proceedings or in the course thereof. Pursuant to Article 730¹ of the Code of Civil Procedure, an injunction may be sought by any party to or participant of proceedings, provided that it makes its claims and the legal interest in the injunction plausible. One has legal interest in an injunction, if the lack of an injunction would prevent or significantly hinder the execution of any ruling/award issued in the case or would otherwise prevent or significantly hinder the achievement of the objective of the proceedings (Article 730¹ §2 of the Code of Civil Procedure). Both of the premises determined in Article 730¹ §2 of the Code of Civil Procedure – making the claim and the legal interest in an injunction plausible – must be satisfied for an injunction to be granted.

17. Computer games as a whole need to be considered as mixed (hybrid) works and, depending on their internal structure and type of an understanding between authors, they will constitute a disjoint work of several authors or a joint work of several authors. Computer games include both graphic and sound elements and each of those elements is self-existing and creative. In the matter at hand, the Eligible Party has demonstrated that it has the rights to the Melon Sandbox computer game and to the elements of that game, i.e. to the computer graphic elements of Apple Hero, Pumpkin Hero, Corn Hero, Watermelon Hero. On 30 October 2023, the Entitled Party and Twenty Seven IT Services LLC with its registered office in the United Arab Emirates, Oleg Podvalov, Tatyana Podvalov and Yuriy Podvalov concluded an Asset Purchase Agreement pursuant to which the Entitled Party acquired from Twenty Seven IT Services LLC with its registered office in the United Arab Emirates the author's economic rights to the Melon Sandbox game, including all patents, trademarks and other rights related therewith. Moreover, the Court did not doubt the assertions of the Entitled Party that, in the United States, in order to register any work with the U.S. Copyright Office it is not required to formally prove the authorship of such work at the time of submission of an application. Based on the information available on that office's website https://www.copyright.gov/registration/, the registration process is based on a declaration of the person submitting the application that such person is the author of a given work or has the right to register it (e.g. based on licence or an agreement of transfer of copyright). For the purposes of the application to the U.S. Copyright Office, the applicant fills in a questionnaire in which it provides information about the authorship of the work and the characteristics thereof. The U.S. Copyright Office does not verify if the applicant is in fact the author and any disputes regarding authorship may be subsequently settled in court if any such claims are submitted by any other parties.

18. The counsel of the Entitled Party is right to compare Obligor's actions to Copyright trolling, i.e. a practice involving aggressive enforcement of copyright in a manner that aims at achieving financial advantage and not at protection of actual interests of the author or the owner of a right.

19. The Entitled Party referred to Article 3(1) of the Act on Preventing Unfair Competition and Article 14 of the Act on Preventing Unfair Competition as the grounds for its claims.

20. Firstly, it must be stated that, pursuant to Article 3(1) of the Act on Preventing Unfair Competition: "any action that is in breach of the law or good customs is considered to be unfair competition if it threatens or violates the interests of another business entity or client". The Entitled Party demonstrated that the Obligor, within the scope of its business, takes actions which not only threaten but also violate the interests of the Entitled Party. Those actions led to the blocking of the Melon Sandbox game and other games featuring computer graphic images used in the Melon Sandbox game. Obligor's actions prevented the Entitled Party from taking advantage of the profits from, among other things, advertising income. In addition, Obligor's actions also violate the interests of players who publish on the Internet videos with their Melon Sandbox gameplays or other games that feature computer graphics used in the Melon Sandbox game. The Entitled Party made it probable that the Obligor seeks to "block" such recordings and then to obtain monetary compensation from those vloggers in exchange for a "licence". The actions of the Obligor are illegal. On the one hand it acts illegally by violating the property of the Entitled Party (i.e. the rights to the Melon Sandbox game and the computer graphics images featured therein), while on the other hand its actions violate good customs and the principles of social coexistence – as morally

reprehensible attempts generating profits from posing as the owner of the rights to computer graphic images featured in the Melon Sandbox game. At this stage of the proceedings, the court concluded that the Entitled Party made it plausible that an act referred to in Article 3 (1) of the Act on Preventing Unfair Competition has been committed.

21. Although similar actions will satisfy the premises presented in Article 14(1) of the Act on Preventing Unfair Competition, but, in the opinion of the court, because it is impossible to make a plausible claim that all the actions were taken knowingly (the Obligor claimed that it did not send any messages, although the email address was that of the company info@iviliiamilionicit.com), the court granted the injunction to secure the actions referred to in Article 3(1) of the Act on Preventing Unfair Competition.

22. Pursuant to Article 14(1) of the Act on Preventing Unfair Competition it is an act of unfair competition if one disseminates any information that is untrue or misleading about one's own or other business entity, taken to generate profits or to cause damages.

23. The protection awarded by Article 14 of the Act on Preventing Unfair Competition covers the truthfulness and reliability of information and advertising notices relating to one's own or any third-party business. Such information may also apply to a businessman or a competitor. Any untrue information covered by the above-mentioned regulation may be divided into categories relating to: one's own business entity, the businessman, third-party business entity, third-party businessman. The information may be false or untrue if they are of informative nature and if their truthfulness may be subject to objective interpretation. The second group of information are those that constitutes acts of unfair competition pursuant to Article 14 and includes misleading information. It is obvious that any false information is misleading. However, even true information may be misleading, if it is unclear or if it is missing certain facts which, for the purposes of completeness, should be have been disclosed to clients. Whether the information is misleading or not is decided by the manner in which it is perceived by clients, and not only its objective content. This opinion is also shared by the Supreme Court in the judgement of 9 October 2024 (IV CSK 56/14, Legalis) who declared that under Article 14 it is prohibited to misinform the addressees and not to provide untrue information. In the opinion of the Supreme Court, misinformation should be assessed from the point of view of the persons it was addressed to. (J. Szwaja (ed.), Act on Preventing Unfair Competition. Ed. 5, Warsaw 2019).

24. In the matter at hand, in the notifications sent to the mobile store owners of Google Play and the owner of the YouTube platform about the alleged breach of its copyrights, the Obligor has intentionally included untrue information about its own business entity (i.e. that it owned the rights to the graphic works featured in the Melon Sandbox game), thus misleading those entities. One of the consequences thereof was the blocking on the YouTube of the video recordings of gameplay which proves that those entities were mislead as to the actual state of rights concerning such materials.

25. The above-mentioned actions were in breach of facts and were misleading, and that constitutes breach of Article 14 of the Act on Preventing Unfair Competition, because the truthfulness thereof could be objectively verified based on how they were perceived by the addressees (e.g. store owners and vloggers), lead to incorrect conclusions.

26. The Entitled Party has demonstrated its legal interest in the injunction, because the lack of injunction "will prevent or significantly hinder the achievement of the objective of the proceedings, because continued efforts on the part of Obligor to "block" the Melon Sandbox game or other games featuring computer graphics images used in the Melon Sandbox game in mobile stores or blocking gameplays will cause further damages to the estate of the Entitled Party (e.g. decreased proceeds from profits, lower number of players, damage to the reputation of the Entitled Party).

27. The Court modified the injunction to make the security enforceable and in view of the representation made by the Entitled Party at the hearing on 1 August 2024.

28. Pursuant to Article 18(1)(1) and Article 18(1)(2) of the Act on Preventing Unfair Competition: "In case of any act of unfair competition, the business entity whose interest was threatened or breached may demand that any prohibited acts be stopped". The non-monetary claim of the Entitled Party seeking the desisting of unlawful activities may be secured in any way that, in view

8

of the relevant circumstances, will be sufficient, i.e. in a manner that, on the one hand, will provide the Entitled Party with proper legal protection and, at the same time, burden the Obligor excessively (Article 755 of the Code of Civil Procedure). The awarded injunction ensures that it will be possible to achieve the necessary objective of the proceedings in the matter at hand so that the Obligor would not have the opportunity to block games or gameplay featuring computer graphic images of Apple Hero, Pumpkin Hero, Corn Hero, Watermelon Hero. At the same time, the injunction does not create any excessive burden for the Obligor, because it is proportional to the nature of the claim and is necessary to reverse the damages threatening the Entitled Party.

29. The Court acknowledged that threatening the Obligor, pursuant to Article $756^2$ of the Code of Civil Procedure, with an order to pay PLN 50,000 (fifty thousand zlotys) for each case of breach, i.e. an amount that exceeds Obligor's share capital by 2.5 times (the share capital amounts to PLN 20,000) would not be proportional. In the opinion of the court the sum of PLN 5,000 will satisfy its preventive role.

30. Grant the Entitled Party a two-week period to lodge a pleading initiating proceedings against the Obligor.

31. The decision on the costs was made pursuant to Article 745 of the Code of Civil Procedure

Judge Aleksandra Ziółkowska-Majkowska

*Stamp: "This is a true and correct copy"*

*Stamped and signed: "Senior Court Secretary, Regional Court in Warsaw, Monika Nowak"*

---

*I, Hanna Husak, duly commissioned sworn translator of English, registered on the list of sworn translators maintained by the Minister of Justice under number TP/781/05, do hereby certify that the above is a true and correct translation of the document in Polish presented to me on 2 October 2024. Rep. No. 133/2024.*

1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DUCKY LTD.,** | Case No. 3:24-CV-02268-PHK |
| Plaintiff, | |
| v. | **[PROPOSED] ORDER GRANTING PLAINTIFF DUCKY LTD.'S MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT IVILIIA MILLIONIC IT SP. Z O.O.** |
| **IVILIIA MILLIONIC IT SP. Z O.O.,** | |
| Defendant. | Date:     January 24, 2024 |
| | Time:     2:30 p.m. |
| | Ctrm:     F – 15th Floor |
| | Judge:    The Hon. Peter H. Kang |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Ducky Ltd. ("Plaintiff")'s motion for default judgement against Defendant Iviliia Millionic IT sp. s o.o. ("Defendant") came on for regular hearing before this Court in Courtroom F on January 24, 2024. Having reviewed and considered the motion and supporting documents, as well as the other related papers pleadings on file herein, and finding good cause appearing, the Court hereby finds and orders as follows:

### BACKGROUND

**A.     Plaintiff's Allegations**

Plaintiff has alleged the following in its operative Complaint:

Melon Sandbox, also known as Melon Playground, is a 2-D sandbox game, where players can create, simulate, and build nearly anything with the various objects and items provided in the Game. (Compl. ¶17.) The Game contains several characters, which players can insert into the gameplay, such as Melon, Pumpkin, Corn, and Apple. (Compl. ¶18.)

On October 30, 2023, Plaintiff acquired all rights and title to the Game, including all copyrights to the Game. (Compl. ¶25.) Since its release, the Game has been downloaded more than 70 million times on the Google Play Store and more than 22 million times on the Apple App Store. (Compl. ¶40.) Fans of the Game create and publish derivative works to social media websites and video-sharing websites, which Plaintiff generally encourages. (Compl. ¶42.)

On October 17, 2023, Plaintiff acquired six U.S. copyright registrations covering the artwork for characters in the Game (i.e., Apple, CORN, Melon, Pumpkin, ROBOT) and the artwork comprising the Game's Melon Sandbox logo. (Compl. ¶¶28-33.) On February 29, 2024, Plaintiff acquired three U.S. copyright registrations covering the entirety of the Game, including all artwork comprising the Game, and the artwork for the Game's "Cactus" and "Tomato" characters. (Compl. ¶¶27, 34-35.)

Additionally, Plaintiff has developed rights in multiple trademarks that it uses in connection with the Game, and Plaintiff has applied for several trademark registrations with the United States Patent and Trademark Office ("PTO") for those trademarks. (Compl. ¶36.) For example, on October 17, 2023, Plaintiff applied to the PTO to register the mark "MELON SANDBOX," Serial No. 98227522, and on March 19, 2024, Plaintiff applied to the PTO to register

1

**[PROP] ORDER GRANTING PLAINTIFF'S MTN FOR DEFAULT JUDGEMENT**

the mark "MELON PLAYGROUND," Serial No. 98457426. (Compl. ¶¶37-38.)

Defendant is a Polish-formed company based in Warsaw, Poland. (Compl. ¶11.) Defendant was not involved in the creation, development, authorship, or publication of the Game or in the artwork displayed in the Game. (Compl. ¶43.) Defendant does not own any rights or interest in the Game or to the artwork displayed in the Game, is not a licensee of any rights in the Game, and has no relationship with Plaintiff. (Compl. ¶¶44-46.)

In its attempt to capitalize on the popularity of the Game, and despite having no legitimate rights or interest in the Game or its underlying artwork, in 2023 Defendant applied for and obtained at least 22 U.S. copyright registrations with the Copyright Office for artwork featured in the Game (the "Disputed Registrations"). (Compl. ¶¶43, 47.) Additionally, on November 30, 2023, Defendant submitted an international trademark application under the Madrid Protocol for the mark MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME, and on March 28, 2024, Defendant sought protection for that mark with the PTO, Application Serial Number 79/392,571. (Compl. ¶¶62-63.)

Beginning in or around October or November 2023, Defendant began using its Disputed Registrations to extort settlement payments and licensing fees from third parties who had published derivative works based on the Game. (Compl. ¶50.) To effectuate its scheme, Defendant submitted takedown notices under the DMCA regarding these third parties' supposedly infringing content. (Compl. ¶51.) Defendant then demanded either payment of a settlement fee from the third party or said that it would allow reinstatement of the supposedly infringing content in exchange for an ongoing licensing fee from the third party. (Compl. ¶52.)

In addition to its extortion attempts, Defendant submitted DMCA takedown requests to Apple and Google demanding the removal of the Game from the Apple App Store and the Google Play Store. (Compl. ¶55.) Plaintiff was forced to submit counter-notifications under the DMCA to reinstate the Game in these mobile application stores. (Compl. ¶55.) When Plaintiff reached out to Defendant about its misconduct, Defendant falsely claimed that it was only trying to protect Plaintiff's rights by making demands to third parties. (Compl. ¶56.)

//

2          **[PROP] ORDER GRANTING PLAINTIFF'S MTN FOR DEFAULT JUDGEMENT**

**B.     Procedural Background**

Plaintiff filed its Complaint on April 16, 2024 asserting a single cause of action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §2201. [D.E. No. 1.] The Court issued a Summons to Defendant on April 19, 2024. [D.E. No. 7.] Defendant was served with the Complaint and Summons on July 24, 2024, under Federal Rule of Civil Procedure 4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). [D.E. No. 21.] Specifically, the Regional Court of Warsaw Poland, the Central Authority-designee for Poland under Article 18 of the Hague Convention, served Defendant with process by a method prescribed by Polish law for the service of documents in domestic actions upon persons who are within its territory under Article 5 of the Hague Convention. [D.E. No. 21.]

The Clerk of the Court entered default against Defendant on November 6, 2024. [D.E. No. 26.]

**C.     Polish Legal Proceedings and Defendant's Continuing Misconduct**

On April 5, 2024, Plaintiff initiated a civil action in the Regional Court of Warsaw, Poland seeking an injunction against Defendant. (Adashchik ¶14.) On September 9, 2024, the Regional Court of Warsaw issued a Decision and Injunction against Defendant, enjoining Defendant from: a) attempting to block the Game on the Apple App Store and the Google Play Store, b) attempting to block videos of the Game on YouTube, c) impersonating the owner of the copyrights to the Game. (Adashchik Decl. ¶14 & Ex. J.) Continuing after the issuance of the Polish injunction, Defendant has continued to misuse Plaintiff's copyrights in the Game to extort settlements from third parties. (Adashchik Decl. ¶¶7-11 & Exs. D-H.)

## LEGAL STANDARD AND DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b) allows the Court to enter a default judgment where the defaulting party has "failed to plead or otherwise defend," and the clerk has entered the party's default. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1005 (C.D. Cal. 2014). "Once a party's default has been entered, the factual allegations of the complaint, except those concerning

1    damages, are deemed to have been admitted by the non-responding party." *Id*.

2    **B.      This Court has jurisdiction to enter default judgment.**

3          In a motion for default judgment, the Court must determine whether it may properly

4    exercise both subject matter jurisdiction and personal jurisdiction. *See In re Tuli*, 172 F.3d 707,

5    712 (9th Cir. 1999). Well-pleaded jurisdictional allegations are taken as admitted on a motion for

6    default judgment. *See Matter of Visioneering Const.*, 661 F.2d 119, 124 (9th Cir. 1981).

7          Subject Matter Jurisdiction. A lawsuit seeking federal declaratory relief must: (1) satisfy

8    statutory jurisdictional prerequisites and (2) present an actual case and controversy within the

9    meaning of Article III, section 2 of the United States Constitution. *See Gov't Emps. Ins. Co. v.*

10   *Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998). If the suit passes constitutional and statutory

11   muster, the Court must also be satisfied that entertaining the action is appropriate. *See id.*

12         Here, an actual case or controversy exists between the parties regarding federal questions

13   that are appropriately resolved by this Court. First, an actual case and controversy exists between

14   Plaintiff and Defendant as to: a) the ownership of the copyrights in the Game, b) whether Plaintiff

15   has infringed Defendant's purported copyrights in the Game, c) whether Defendant has sent

16   fraudulent DMCA takedown notices to Apple and Google regarding the Game, and d) whether

17   Defendant has sent demand letters and sham license agreements to third parties, claiming that

18   Defendant owns the copyrights to the Game. Second, these issues present federal questions that

19   amount to more than a naked declaration of copyright ownership. Finally, the relevant factors

20   weigh in favor of the Court exercising its discretion to grant declaratory relief.

21         Personal Jurisdiction. The Ninth Circuit has "established a three-prong test for analyzing a

22   claim of specific personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

23   802 (9th Cir. 2004). First, the non-resident defendant must have purposefully directed its activities

24   at the forum. *See id.* Second, the claim must be one which arises out of or relates to the defendant's

25   forum-related activities. *See id.* Third, the exercise of jurisdiction must comport with fair play and

26   substantial justice, i.e., it must be reasonable. *See id.* For "suits sounding in tort," the Ninth Circuit

27   has applied a distinct "purposeful direction analysis." *AMA Multimedia, LLC v. Wanat*, 970 F.3d

28   1201, 1208 (9th Cir. 2020) (quotation omitted). Specifically, the defendant must have "(1)

1  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

2  defendant knows is likely to be suffered in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S.

3  783 (1984)); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Copyright

4  infringement claims are treated as tort-like for personal jurisdiction purposes, and so purposeful

5  direction is the proper analytical framework. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

6  F.3d 1218, 1228 (9th Cir. 2011).

7  Here, accepting the allegations in the Complaint as true, Defendant purposefully directed

8  its misconduct toward California, and Plaintiff's claims arise out of that conduct. Specifically,

9  Defendant sent fraudulent DMCA takedown notices to Apple and Google, both of which are based

10  in California. (Compl. ¶55.) The takedown notices resulted in the temporary removal of the Game

11  from the Apple App Store and the Google Play Store until Plaintiff submitted, and Apple and

12  Google processed, DMCA counternotices. (Compl. ¶55.) Moreover, the exercise of jurisdiction is

13  reasonable because Defendant sought to defraud Apple and Google in California, and because

14  Defendant has not made any showing that the exercise of jurisdiction would be unreasonable.

15  **C.    The *Eitel* factors weigh in favor of granting default judgment.**

16  In this case, the factors set forth *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) weigh in

17  favor of granting default judgment against Defendant.

18  First, without default judgment, Plaintiff will be prejudiced where Defendant has continued

19  its misconduct after the filing of this suit, after the filing of the Polish lawsuit, and even after the

20  Polish court issued its injunction.

21  Second and third, Plaintiff has established the substantive merits of its claim and the

22  sufficiency of the Complaint by alleging a viable claim under the Federal Declaratory Judgment

23  Act.

24  Fourth, the fact that Plaintiff is not seeking any monetary damages, but only attorney's fees

25  and costs, weights in favor of default judgment.

26  Fifth, because Plaintiff has filed a well-pled Complaint alleging a single cause of action for

27  declaratory judgment, and because Defendant has not challenged the Complaint by answer,

28  motion, or otherwise, default judgment is appropriate.

Sixth, because Defendant was served with process, there is no excusable neglect in Defendant's failure to defend this action.

Finally, default judgment is warranted despite the policy of deciding cases on their merits because Defendant was properly served with the Complaint and put on notice of the lawsuit and then voluntarily chose not to defend itself.

Thus, the *Eitel* factors weigh in favor of granting default judgment.

**D.     The Court grants the requested declaratory relief.**

Declaratory judgment is justified because Plaintiff has alleged facts demonstrating a substantial controversy between Plaintiff and Defendant concerning the copyrights in the Game. Moreover, Plaintiff has alleged facts demonstrating that it is the owner of the copyrights in the Game, that Defendant fraudulently registered copyrights in the Game, and that Defendant submitted fraudulent DMCA takedown notices to Apple and Google regarding the Game. Because declaratory judgment will clarify the invalidity of Defendant's copyright registrations and the invalidity of Defendant's claims of infringement, the Court grants the following declaratory relief as part of this order and judgment:

1.     That Plaintiff is the rightful owner in the copyrights in the Game and to the characters and artwork in the Game;

2.     That Defendant does not own any copyrights in the Game, or to any artwork or other elements in the Game; and

3.     That Plaintiff did not infringe on Defendant's claimed copyrights.[1]

**E.     The Court will refer the question of the validity of Defendant's copyright registrations to the U.S. Copyright Office.**

Plaintiff asks the Court to enter a declaratory judgment that Defendant fraudulently obtained the following copyright registrations, and that such registrations are invalid:

• Ambush Mutant (VA0002355331)          • Apple hero (VA0002353215)

---

[1] Plaintiff no longer seeks a declaratory judgment that Defendant's trademark application contains knowing and material misrepresentations, (Compl. Prayer ¶7), because the PTO has denied that application.

| | |
|---|---|
| • Blind figure hero (VA0002355282) | • Melon sky background (VA0002363785) |
| • Corn hero (VA0002353217) | • Orange Monster (VA0002355606) |
| • Cyan mutant (VA0002355604) | • Pumpkin hero (VA0002353216) |
| • Gooey Monster (VA0002355557) | • Purple Monster (VA0002355556) |
| • Green Monster (VA0002355602) | • Rush monster (VA0002355327) |
| • Humanoid monster hero (VA0002355283) | • Screech hero (VA0002355284) |
| | • Stinger monster (VA0002355340) |
| • Jester mutant (VA0002355339) | • Toilethead hero (VA0002355338) |
| • Jumbo monster (VA0002355255) | • Watermelon hero (VA0002353214) |
| • Looky Monster (VA0002355605) | • Yellow monster (VA0002355608) |
| • Mechanoid hero (VA0002355281) | |

Pursuant to 17 U.S.C. §411(b), the Court must first refer the question of the invalidity of the above-referenced copyright registrations to the U.S. Copyright Office based on the allegations in the Complaint, and the Court thus defers the resolution of the question of invalidity of these registrations pending receipt of a response from the Copyright Office. *See Gold Value Int'l Texile, Inc. v. Sanctuary Clothing, LLC*, No. LACV1600339JAKFFMX, 2017 WL 2903180, at **11-12 (C.D. Cal. Mar. 24, 2017).

**F.    The Court grants the requested injunctive relief.**

Plaintiff asks the Court to grant various injunctive relief. The Court grants the requested relief.

Under the Copyright Act, a court is authorized to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). A plaintiff must show that it is entitled to a permanent injunction by demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Plaintiff has satisfied these requirements. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff has

1    made the necessary showing.

2         First, irreparable harm exists here because Defendant's illegal acts have harmed Plaintiff,

3    and if Defendant is not enjoined, Defendant will likely continue to harm Plaintiff in the form of

4    continued misuse of Plaintiff's copyrights. Second, legal remedies are inadequate because

5    Defendant has not shown an ability or willingness to pay monetary damages, including Plaintiff's

6    requested attorney's fees, and because Defendant has continued its misconduct during this lawsuit.

7    Third, the proposed injunction serves the narrow purpose of preventing Defendant's further

8    infringement and misuse of Plaintiff's copyrights. Finally, a narrowly tailored permanent

9    injunction serves no purpose other than to vindicate the legitimate rights of Plaintiff in its

10   copyrights.

11        Therefore, the Court enters a permanent injunction prohibiting Defendant from:

12             a) Claiming any copyright interest in the Game or its elements;

13             b) Requesting the removal of the Game or any derivative work from any online

14                platform based on Defendant's claimed copyright interests; and

15             c) Entering into any agreement with any third party regarding Defendant's

16                claimed copyrights to the Game or any of its elements.

17   **G.    Plaintiff is entitled to attorney's fees.**

18        Plaintiff requests an award of its attorney's fees. The Copyright Act's fee provision applies

19   to "any civil action under" the Act. 17 U.S.C. §505; *Doc's Dream, LLC v. Dolores Press, Inc.*, 959

20   F.3d 357, 363 (9th Cir. 2020). Any action that turns on the existence of a valid copyright and

21   whether that copyright has been infringed sufficiently invokes the Copyright Act as to allow for

22   the discretionary award of attorney's fees. *See Doc's Dream, LLC*, 959 F.3d at 363. Here, the

23   egregiousness of Defendant's misconduct and its failure to defend this action warrant an award of

24   reasonable fees. Plaintiff has provided billing records reflecting a reasonable lodestar for the work

25   performed. Thus, the Court awards attorney's fees to Plaintiff in the amount of $47,669.

26                            **CONCLUSION AND JUDGMENT**

27        For the foregoing reasons, the Court hereby grants Plaintiff's Motion for Default Judgment

28   against Defendant Iviliia Millionic IT sp. s o.o. and orders as follows:

1    IT IS HEREBY ORDERED THAT Plaintiff's Motion for Default Judgment is GRANTED.

2    IT IS HEREBY FURTHER ORDERED that the Court declares the following under the

3    Federal Declaratory Judgment Act, 28 U.S.C. §2201:

4    • Plaintiff is the rightful owner in the copyrights in the Game and to the characters and

5       artwork in the Game;

6    • Defendant does not own any copyrights in the Game, or to any artwork or other elements

7       in the Game; and

8    • Plaintiff did not infringe on Defendant's claimed copyrights.

9    IT IS HEREBY FURTHER ORDERED that, pursuant to 17 U.S.C. §411(b), the Court will

10   refer the question of the invalidity of Defendant's copyright registrations to the U.S. Copyright

11   Office based on the allegations in the Complaint; the Court will defer granting declaratory

12   judgment on the question of the invalidity pending receipt of a response from the Copyright Office.

13   IT IS HEREBY FURTHER ORDERED that Defendant is permanently enjoined from:

14   • Claiming any copyright interest in the Game or its elements;

15   • Requesting the removal of the Game or any derivative work from any online platform

16       based on Defendant's claimed copyright interests; and

17   • Entering into any agreement with any third party regarding Defendant's claimed copyrights

18       to the Game or any of its elements.

19   IT IS HEREBY FURTHER ORDERED that attorney's fees are awarded in favor of

20   Plaintiff and against Defendant in the amount of $47,669.

21   **IT IS SO ORDERED AND ADJUDGED.**

22

23   Date: _____          _____

24                                             Hon. Peter H. Kang
                                               United States District Judge

25

26

27

28

Case No. 3:24-cv-02268-PHK                    9          **[PROP] ORDER GRANTING PLAINTIFF'S
                                                            MTN FOR DEFAULT JUDGEMENT**



# GLOBAL BRAND DATABASE - ADVANCED SEARCH REPORT    *Generated on February 13, 2025*

**Owner:** contains the word **'iviliia'**

Results view    Statistics view

| | | | |
|---|---|---|---|
| 1. | **MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME**  | International Trademark International Registration in Force (November 30, 2023) Expiry date 2033-12-01 | Nice class 9 Owner IVILIIA MILLIONIC IT Sp.z.o.o. (Poland) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, Hungary, Sweden, Slovenia, Slovakia, Ireland, USA, Estonia, Malta, European Union, Greece, Italy, China, Spain, Austria, Cyprus, Czech Republic, Poland, Romania, Netherlands |
| 2. | **MELON SANDBOX PLAYGROUND HUMAN WORKSHOPS: RAGDOOL PEOPLE GAME**  | National Trademark Application Pending (November 30, 2023) Number 79392571 | Nice class 9 Owner IVILIIA MILLIONIC IT Sp.z.o.o. (Poland) Country of filing USA |
| 3. | **Infinite Craft**  | International Trademark International Registration in Force (September 17, 2024) Expiry date 2034-09-18 | Nice class 9 Owner IVILIIA MILLIONIC IT Sp.z.o.o. (Poland) Designation country Germany, Belgium, Finland, Portugal, Bulgaria, Denmark, Lithuania, Luxembourg, Croatia, Latvia, France, Hungary, Sweden, Slovenia, Slovakia, Ireland, Estonia, Malta, European Union, Greece, Italy, China, Spain, Austria, Cyprus, Czech Republic, Poland, Romania, Netherlands |