Ian C. Ballon (SBN 141819)
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone: 650.289.7881
Facsimile: 650.462.7881
Email: ballon@gtlaw.com

Jie (Lisa) Li (SBN 260474)
Kristin Louis O'Carroll
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Email: lil@gtlaw.com

Amy L. Kramer (*Pro Hac Vice*)
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone: 303.572.6500
Email: Amy.Kramer@gtlaw.com

Justin A. MacLean (*Pro Hac Vice*)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Email: Justin.MacLean@gtlaw.com

Attorneys for Plaintiff
Invisible Narratives LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INVISIBLE NARRATIVES LLC,<br><br>      Plaintiff,<br><br>v.<br><br>NEXT LEVEL APPS TECHNOLOGY – FZCO,<br><br>      Defendant. | CASE NO. 5:25-cv-01644-NW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT. 37) AND FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: **January 28, 2026**<br>Time: **9:00 a.m.**<br>Courtroom: **3 – 5th Floor**<br><br>Complaint Filed: February 14, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 28, 2026, at 9:00 a.m., in Courtroom 3 of the United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Noël Wise, Plaintiff Invisible Narratives LLC ("Invisible Narratives" or "Plaintiff") will and hereby does move the Court pursuant to Civil Local Rule 7-8 to issue an order to show cause why Defendant Next Level Apps Technology – FZCO ("Next Level" or "Defendant") should not be found in civil contempt of the Stipulated Preliminary Injunction entered on June 17, 2025 (Dkt. 37) ("Preliminary Injunction").

Paragraph 1(a) of the Preliminary Injunction enjoins Next Level from "[d]irectly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters[.]" But this is exactly what Next Level has done. On October 7, 2025, despite the clear directives in the Preliminary Injunction *to which Defendant stipulated*, Defendant sent a takedown notice under the Digital Millennium Copyright Act ("October 7 Notice") to YouTube alleging that a recent video on Plaintiff's channel contained "characters" owned by Defendant, without Defendant's permission. Based on Defendant's October 7 Notice (which, as with its other DMCA Takedown Notice that precipitated this action, is wholly fraudulent), YouTube removed the episode from the Boom Channel, and awarded the channel a "copyright strike." It also warned that YouTube would "have to terminate your channel" if the Boom Channel received multiple copyright strikes. This is the exact threatened harm that led to this litigation and that resulted in this Court granting a temporary restraining order ("TRO") against Defendant's behavior. Thus, Defendant should be held in contempt, and subject to terminating sanctions. At the very least, the Court should impose monetary sanctions adequate to compensate Plaintiff for losses connected to Defendant's baseless October 7 Notice.

This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Justin A. MacLean ("MacLean Decl."), the Proposed Order, any supplemental memoranda, evidence, and declarations, the Court's file in this case, any matters of which the Court must or may take judicial notice, and any argument at the hearing on this motion.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT
OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

Dated: October 29, 2025

By:      */s/ Justin A. MacLean*
          Ian C. Ballon
          Jie (Lisa) Li
          Amy L. Kramer (*pro hac vice*)
          Justin A. MacLean (*pro hac vice*)

          GREENBERG TRAURIG, LLP

          Attorneys for Plaintiff Invisible Narratives, LLC

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT
OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 7

II. FACTUAL BACKGROUND ...................................................................................... 8

    A.  The TRO and Next Level's Violations Thereof .............................................. 8

    B.  The Stipulated Preliminary Injunction ......................................................... 12

    C.  Next Level Violates the Preliminary Injunction and Offers Incredulous Excuses .......... 13

III. NEXT LEVEL IS IN CONTEMPT ......................................................................... 16

    A.  Next Level Is Violating the Terms of the Preliminary Injunction .................... 16

    B.  Next Level's Non-Compliance Is More than Technical or *De Minimis* .......................... 17

    C.  There Is No Good Faith Misunderstanding ................................................... 18

IV. NEXT LEVEL'S CONTEMPT SHOULD SUBJECT IT TO SEVERE SANCTIONS ............. 18

    A.  Next Level Should Face a Default Judgment on Plaintiff's Claims and Dismissal of Its Counterclaims ........ 18

        1.  Next Level's Violation of the Preliminary Injunction Was Willful ................... 19

        2.  The Risk of Prejudice to Plaintiff Is Substantial ................................. 19

        3.  Less Drastic Sanctions Would Not Be Adequate ................................. 20

    B.  In the Alternative, Next Level Should Be Subject to Compensatory Sanctions ............. 22

V.  CONCLUSION ......................................................................................................... 23

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adriana Int'l Corp. v. Thoeren,*
  913 F.2d 1406 (9th Cir. 1990) ..................................................................................18

*Canon Solutions Am., Inc. v. Gungap,*
  Case No. SACV 14-1990-JLS, 2016 WL 9108916 (C.D. Cal. Feb. 8, 2016) ........................22

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
  10 F.3d 693 (9th Cir. 1993) ......................................................................................16

*Facebook, Inc. v. Power Ventures, Inc.,*
  Case No. 08-cv-05780-LHK, 2017 WL 3394754 (N.D. Cal. Aug. 8, 2017)..........................16

*Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Stud., Inc.,*
  26 F.3d 948 (9th Cir. 1994) ......................................................................................23

*Leon v. IDX Sys. Corp.,*
  464 F.3d 951 (9th Cir. 2006) ....................................................................................19

*Livewirecyber, Inc. v. Lee,*
  No. 2:17-cv-00645-AB-ASx, 2019 WL 8230827 (C.D. Cal. Dec. 27, 2019)
  ........................................................................................................18, 19, 20, 21

*Reno Air Racing Ass'n, Inc. v. McCord,*
  452 F.3d 1126 (9th Cir. 2006) ..................................................................................16

*Singh v. Holder,*
  649 F.3d 1161 (9th Cir. 2011) ..................................................................................16

*Sophanthavong v. Palmateer,*
  378 F.3d 859 (9th Cir 2004) .................................................................................16, 17

*United States v. United Mine Workers of Am.,*
  330 U.S. 258 (1947)................................................................................................22

*Verizon Cal. Inc. v. OnlineNIC, Inc.,*
  647 F. Supp. 2d 1110 (N.D. Cal. 2009) ...................................................................16, 19

**Federal Statutes**

15 U.S.C.
  § 502....................................................................................................................17

15 U.S.C
  § 1116..................................................................................................................17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT
OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

17 U.S.C.
    § 512(c)(3)(A)........................................................................................19, 20
    § 512(g)(2)(B)........................................................................................23

DMCA....................................................................................................17, 22, 23

**Other Authorities**

Fed. R. Civ. P. 26(d)(1)..........................................................................14

https://www.youtube.com/dafuqboom............................................................7

MacLean Decl., Ex. T. On <u>October 17</u>.................................................15

28. MacLean Decl., Ex. U. On <u>October 24</u>........................................15

Rule 26(f)..............................................................................................14, 15

www.skibiditoilet.com...........................................................................10

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT
OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Next Level and its principals are serial impersonators and fraudsters that have no regard for Plaintiff's intellectual property rights, the trademark and copyright registration systems that were established to protect the rights of creators, like Plaintiff—the rightful owner of the popular animated series, Skibidi Toilet, or orders issued by this Court. As detailed below, since stipulating to the Temporary Restraining Order and Preliminary Injunction in this case, Next Level has repeatedly violated the express terms of those agreements by (a) continuing to use infringing websites and launching new infringing websites, (b) filing new Skibidi Toilet trademark applications, (c) transferring Skibidi Toilet trademarks involved in this litigation to allegedly unrelated third parties, and (d) now submitting another fraudulent takedown notice to Google that resulted in removal of another Skibidi Toilet video and assessment of a copyright strike on Invisible Narratives' YouTube channel which threatens the entire channel which is central to Invisible Narratives' business.

Most relevant to this Motion, the Preliminary Injunction enjoins Next Level, until entry of a final judgment or otherwise modified by the Court, from "[d]irectly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel,[1] including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters, or removing or disabling access to such material based on receipt of such DMCA Takedown Notices—and, to the extent that any actions to remove or disable access have already been taken, such actions shall, to the extent reasonably practicable, be immediately retracted and canceled[.]" *Id.* ¶ 1(a).

But Next Level thumbed its nose at the clear directives in the Preliminary Injunction. On October 7, 2025, Next Level submitted a takedown notice under the Digital Millennium Copyright Act ("October 7 Notice") to YouTube regarding a video on the Boom Channel entitled "skibidi toilet 77 (full episode)" (the "Removed Video"). In its October 7 Notice, Defendant stated: "We, company NEXT LEVEL APPS TECHNOLOGY – FZCO, hold 20 (twenty) characters, registered with the U.S. Copyright Office. There characters are used in video without our permission." Based on Defendant's October 7 Notice (which, as

---

[1] The "Boom Channel" is the YouTube channel located at https://www.youtube.com/dafuqboom.

with its other DMCA Takedown Notice that precipitated this action, is wholly fraudulent), YouTube removed the Removed Video from the Boom Channel, and awarded the Boom Channel a "copyright strike." It also warned that YouTube would "have to terminate your channel" if the Boom Channel received multiple copyright strikes. This is the exact threatened harm that led to this litigation and that resulted in this Court granting the TRO, prohibiting Defendant's behavior.

Defendant's serial violations of this Court's orders and willful disregard of a Preliminary Injunction *to which it stipulated* demonstrates that Defendant and its principals treat the judicial process with utter defiance. Unfortunately, even monetary sanctions cannot be considered adequate to curb Defendant's behavior. Defendant and its principals, who are located overseas, apparently assume that Plaintiff and the Court are powerless to compel compliance even with an order to pay. Accordingly, Plaintiff requests that the Court dismiss Next Level's counterclaims and issue a default judgment on all of Plaintiff's claims against it as a sanction for Defendant's contemptuous conduct.

In the alternative, at the very least, the Court should issue a finding of civil contempt and sanction Next Level to compensate Plaintiff for needing to respond to its illicit actions. Next Level's unlawful conduct and contempt for this Court should not continue unabated and its violations of this Court's Preliminary Injunction are inexcusable.

## II.    FACTUAL BACKGROUND

### A.    The TRO and Next Level's Violations Thereof

As the Court is aware, Plaintiff filed this action on February 14, 2025, and sought a temporary restraining order ("TRO") and order to show cause for a preliminary injunction on February 18. Dkt. 9. This Court issued the TRO one day later. Dkt. 11. In the TRO, the Court found that Plaintiff submitted Declarations establishing that it was the rightful assignee of "all copyright and trademark rights and associated goodwill" of the wildly popular Skibidi Toilet animated series, which at that time had 18.6 billion views globally. *Id.* at 2. The Court also acknowledged that Next Level filed and obtained fraudulent copyright and trademark registrations and the skibiditoilet.com domain, and placed infringing material on Apple and Google Play. *Id.* Next Level also used those fraudulent copyright and trademark registrations to submit takedown notices to YouTube, which caused extensive and irreparable harm to Plaintiff's business. *Id.* On these facts, the Court was "satisfied that [Plaintiff] is entitled to temporary injunctive

relief enjoining Next Level from creating or distributing any Skibidi Toilet content and taking any actions to remove or disable access to material hosted on the Boom Channel." *Id.* at 4, 7-8.

In particular, the Court's TRO enjoined Next Level from:

> (1) . . . directly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters, or removing or disabling access to such material based on receipt of such DMCA Takedown Notices—and, to the extent that any actions to remove or disable access have already been taken, such actions shall, to the extent reasonably practicable, be immediately retracted and canceled;
>
> (2) . . . releasing, distributing, or making any Infringing App[2] that includes Skibidi Toilet content or characters available for download on Apple's App Store, Google Play, or any other medium for distribution of mobile applications;
>
> (3) . . . using the Infringing Site[3] or Infringing Social Media Accounts[4] in connection with Skibidi Toilet-related videos or the Infringing App;
>
> (4) . . . otherwise using the SKIBIDI TOILET mark in advertising or marketing Next Level's products or services, including on the Infringing Site or on any "Infringing Social Media Accounts", as defined in the Complaint;
>
> (5) . . . filing applications with the United States Patent and Trademark Office or elsewhere for trademarks or trademark registrations that include the phrase "Skibidi Toilet," by itself or with other words, symbols, characters, graphic images, or other devices;

---

[2] The "Infringing App" refers to Defendant's Skibidi Toilet mobile application.
[3] The "Infringing Site" refers to the website at www.skibiditoilet.com.
[4] The "Infringing Social Media Accounts" refers to Defendant's social media accounts on platforms such as X (formerly Twitter), Facebook, Instagram, and TikTok.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

(6) . . . otherwise directly or indirectly infringing Plaintiff's valid SKIBIDI

TOILET mark; and

(7) . . . assisting, aiding, or abetting any other person or business entity in

engaging in or performing any of the activities referred to in the above

paragraphs (1) through (6) above.

*Id.* at 8-9. Plaintiff promptly served Next Level with the TRO and all case filings in accordance with the TRO. *See* MacLean Decl., Ex. A.

One business day before the scheduled hearing on the Order to Show Cause re Preliminary Injunction, Plaintiff was contacted by Next Level's Ukrainian counsel, Taras Ruddy, requesting that Invisible Narratives agree to postpone the hearing for sixty days to permit Next Level time to obtain U.S. counsel. *See* Dkt. 19. The parties entered into a stipulation extending the TRO for sixty days. Dkt. 20. The Court issued an Order extending the TRO under the parties' agreement the next day. Dkt. 22.

Plaintiff discovered that, despite agreeing to comply with the TRO, Next Level had violated it by continuing to operate and use the Infringing Site and Infringing Social Media Accounts in connection with Skibidi Toilet-related videos and/or its Skibidi Toilet application. *See* Dkt. 19; MacLean Decl., Exs. B-D. Next Level also continued to use the SKIBIDI TOILET mark in advertising or marketing Next Level's products or services. *Id.* In fact, Next Level's violation of Plaintiff's intellectual property rights had escalated. The Infringing Site was updated to contain a link to a *new* infringing website at skibiditoilet.wiki (the "New Infringing Site"), which can be accessed by clicking on the "Visite Page!" button at the bottom of the Infringing Site below the text "Visit the Official Skipidipedia Wiki Discover the ultimate guide to Skibidi's world! Uncover hidden stories, character details, and more. Start exploring now!" *See* MacLean Decl., Ex. B. The New Infringing Site also used the SKIBIDI TOILET mark in advertising or marketing Next Level's products or services in further violation of the TRO. *See* MacLean Decl., Ex. C. The New Infringing Site also engaged in false advertising and deceptive trade practices by continuing to perpetuate the false narrative that principals of Next Level created Skibidi Toilet. A month after the Court entered the TRO, and only after Plaintiff repeatedly contacted Next Level to remind it of its obligations and demand compliance with the TRO, did Next Level reverse course and disable the Infringing Site, New Infringing Site, and Infringing Social Media Accounts. *See* MacLean Decl., Exs. E-G.

On March 26, 2025, the Clerk of Court entered default against Next Level, as it had failed to respond to Plaintiff's Complaint by the deadline prescribed by the Federal Rules of Civil Procedure. Dkt. 24, 25. Nonetheless, after Next Level obtained U.S. counsel, who contacted counsel for Invisible Narratives three business days before the rescheduled preliminary injunction hearing, the parties stipulated on May 6, 2025 to vacate the default entered against Next Level.  At Next Level's request, the parties also agreed to again postpone the hearing for another approximately 43 days to permit Next Level's newly retained counsel time to prepare, and to continue the TRO until the hearing. Dkt. 30.

In May 2025, Plaintiff discovered that Next Level *again* violated the TRO by which it had agreed to abide. In particular, Plaintiff discovered that on March 20, 2025—*the day after* Next Level's Ukrainian counsel Taras Rudyy emailed Invisible Narratives to confirm that it "has complied completely with all of the TRO orders" to avoid Invisible Narratives seeking intervention from this court (*see* MacLean Decl., Ex. G)—Next Level filed Ukrainian trademark application No. M202504852 for SKIBIDI TOILET. MacLean Decl., Ex. H. Notably, Mr. Rudyy, who personally signed the Stipulation to Extend the TRO, *see*  Dkt. 20, is identified as Next Level's attorney of record on the application:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

| Applicant | NEXT LEVEL APPS TECHNOLOGY - FZCO<br>НЕКСТ ЛЕВЕЛ АППС ТЕХНОЛОДЖІ -<br>ФЗЦО<br>АйФЗЕй Бізнес Парк, ДДП, А1 -<br>3641379065, Дубай, Об'єднані Арабські<br>Емірати<br>AE (UNITED ARAB EMIRATES) |
|---|---|
| Agent | Рудий Тарас Григорович ( Rudyy Taras<br>Hryhorovych )<br>a/c 31, м. Київ, 04136<br>UA (UKRAINE) |
| Correspondent Info | Рудий Тарас Григорович ( Rudyy Taras<br>Hryhorovych )<br>a/c 31, м. Київ, 04136<br>UA (UKRAINE) |
| Status | APPLICATION (PENDING) - M202504852 |

**Application Date:** 20-MAR-2025
**Application Number:** M202504852
**Application Published:** 30-APR-2025

This trademark filing violates the TRO, which prohibited "filing applications with the United States Patent and trademark Office *or elsewhere* for trademarks or trademark registrations that include the phrase 'Skibidi Toilet.'" Dkt. 11 at 8-9 (emphasis added).

Plaintiff also learned in May that Next Level assigned its purported rights to International Registration No. 1771641 with designations in the EU, US, and China for SKIBIDI TOILET VS CAMERAMAN TV WOMAN X TV MAN VS G-MAN to non-party Outfitters EOOD, a Bulgarian company. Next Level recorded the assignment with WIPO on May 16, 2025, less than two weeks after Invisible Narratives stipulated to vacate and set aside Next Level's default in reliance on Next Level's continued compliance with the TRO. MacLean Decl., Ex. I. Importantly, Invisible Narratives' Complaint included allegations that Next Level committed fraud on the USPTO by knowingly making false statements in prosecution of the U.S. designation of this International Registration (SN 79387724). *See* Dkt. 1 ¶¶50-51. The USPTO recorded assignment of this application from Next Level to Outfitters EOOD on May 29, 2025. MacLean Decl., Exs. J-K. Next Level's assignment of a Skibidi Toilet trademark involved in this litigation frustrates the purpose of the TRO, if not explicitly violates Paragraph 7 thereof.

### B.   The Stipulated Preliminary Injunction

Rather than burden the Court with a motion for contempt at that time, Plaintiff and Next Level stipulated to the Preliminary Injunction in June 2025. Dkt. 37. Paragraph 1 of the Preliminary Injunction tracks the TRO, including its prohibition on "[d]irectly or indirectly taking any actions to remove or

disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters[.]" *Id.* at 2, ¶ 1(a). The Preliminary Injunction also required Next Level to "make a good faith effort to have Outfitters EOOD reassign International Registration No. 1771641 back to Next Level or to Invisible Narratives" and to "negotiate in good faith to expressly abandon before the opposition deadline Ukrainian Application No. M202504852 for SKIBIDI TOILET."[5] The Stipulation took the hearing for the Preliminary Injunction off calendar, and again extended Defendant's deadline to respond to Plaintiff's Complaint. *Id.* at 2-3, ¶¶ 2-3, 5-6.

## C.    Next Level Violates the Preliminary Injunction and Offers Incredulous Excuses

On October 3, 2025, the parties engaged in mediation before the Honorable Jeremy Fogel, in an (ostensible) attempt to resolve the parties' disputes. MacLean Decl., ¶ 13. The mediation was not successful in resolving this lawsuit. *Id.*

On October 7, 2025—two business days after the mediation—YouTube notified Invisible Narratives that Next Level had submitted the October 7 Notice. MacLean Decl., Ex. L. In particular, on its face, the October 7 Notice:

(1) states that the removal request was issued by "NEXT LEVEL APPS TECHNOLOGY - FZCO";

(2) lists the contact email address as IP_Support@nxtlvlcomp.org which (a) is the same email address listed on the False DMCA Takedown Notice attached as Exhibit E to the Complaint Dkt. 1 and (b) the same email that Invisible Narratives served the TRO and all pleadings on Next Level (*see* Dkt. 15, Ex. C); and

(3) contains the identical statement (including a typo) regarding "content used" as listed on the False DMCA Takedown Notice attached as Exhibit E to the Complaint, Dkt. 1, namely: "We, company NEXT LEVEL APPS TECHNOLOGY – FZCO, hold 20 (twenty) characters,

---

[5] Next Level did not abandon the application before the opposition deadline, and Invisible Narratives was forced to incur the cost of filing the opposition.

registered with the U.S. Copyright Office.  There [sic] characters are used in video without our permission."

MacLean Decl., Ex. L. YouTube's policy in dealing with copyright removal requests is to "review it to make sure it has the information required by copyright law and appears valid." MacLean Decl., Ex. M.

Invisible Narratives's counsel contacted Next Level's counsel *immediately* after Invisible Narratives received the October 7 Notice to demand that Next Level immediately retract the takedown so that YouTube reinstates the video.  MacLean Decl., Ex. N. The next morning, <u>October 8</u>, Next Level's counsel responded that "[o]ur client stated that this was not submitted by anyone at Next Level," and that "[w]e are investigating this situation to see if we can ascertain who else may have submitted this takedown notice and will circle back once we have more information."  MacLean Decl., Ex. O.  The following day (<u>October 9</u>), Next Level's counsel emailed again, and further asserted that "it is apparent someone submitted this take down request to harm **Next Level**, knowing that Next Level would be accused of being in violation of the Stipulated Preliminary Injunction." MacLean Decl., Ex. P. Next Level's counsel further offered to provide "sworn statements and evidence to document that" Next Level "did not make the request," apparently including screenshots it had viewed, and stated that it had asked YouTube to repost the video. *Id.* Next Level's counsel also stated that it would serve a premature[6] subpoena on Google "to ascertain who submitted this takedown request," *id.*, which it ultimately did. *See* MacLean Decl., Ex. Q.

On <u>October 10</u>, counsel for the parties met and conferred again, agreeing on November 19, 2025 as an available hearing date for a motion for contempt and sanctions. *See* MacLean Decl., Ex. R. However, Invisible Narratives indicated that it would agree <u>*not*</u> to file its motion during the three-day period following receipt of the Court's confirmation of the reserved hearing date, <u>*if*</u> Next Level provided, on or before noon on the third day, declarations under penalty of perjury from each person with access to Next Level's YouTube studio and email account, swearing that those persons did not submit the October 7 Notice, did not direct a third party to submit the October 7 Notice, and have no knowledge about who did. *Id.* On <u>October 13</u>, Next Level's counsel responded: "Yes, we confirm that Next Level agrees to your proposal." MacLean Decl., Ex. S. Next Level did not condition its agreement to provide sworn

---

[6] Fed. R. Civ. P. 26(d)(1) prohibits discovery until the Rule 26(f) conference of counsel, which did not occur until October 28.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

declarations from Next Level's principals on the receipt of any documents from Google responsive to the subpoena, which Next Level served 4 days before. *Id.*

On <u>October 16</u>, the Court responded to Plaintiff's email requesting a hearing date, indicating that the Court would be available on January 28, 2026 for the hearing and asking for counsel to confirm their availability. MacLean Decl., Ex. T. On <u>October 17</u>, counsel for the parties met and conferred and agreed to ask the Court for an extended briefing schedule in light of the time between the email exchange and contemplated motion, so that Plaintiff could evaluate any evidence that Defendant provided it in advance of the motion, and in light of the holidays in November and December. That evening, Plaintiff's counsel confirmed to the Court that counsel were available for a hearing on January 28 and requested the extended briefing schedule . MacLean Decl., Ex. U. On <u>October 24</u>, the Court confirmed the January 28 hearing date, triggering the "clock" for Next Level to provide the agreed-upon declarations from its principals regarding their alleged lack of involvement with the October 7 Notice, and advised the parties to submit an administrative motion regarding the proposed briefing schedule. MacLean Decl., Ex. V.

On <u>October 28</u>, the parties held their Rule 26(f) conference of counsel. In advance of the conference, Invisible Narratives's counsel advised Next Level's counsel that it was "looking forward to receiving your client's declarations by Wednesday, October 29, as agreed." MacLean Decl., Ex. W. At the Rule 26(f) conference, however, Next Level's counsel stated that it wanted to provide the declarations after receiving Google's production. Invisible Narratives objected not only as a violation of the agreement but because the declarations would be based on *personal knowledge*, and thus, Google's production (presumably not personally known to Next Level's principals) would be irrelevant to the declarations Next Level agreed to provide. Moreover, only declarations submitted before Google's production have no potential to be modified or influenced by Google's production. The parties' memorialized their positions in an email exchange after the Rule 26(f) conference. *See* MacLean Decl., Ex. X.

As discussed herein, the October 7 Notice violates Paragraph 1(a) of the Preliminary Injunction, resulted in removal of the Removed Video and a "copyright strike" against the Boom Channel, and—as with Defendant's other fraudulent notice—puts Invisible Narratives' business at risk due to the potential to terminate the entire channel if further fraudulent DMCA Takedown Notices are submitted.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT
OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

### III.    NEXT LEVEL IS IN CONTEMPT

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). "In civil contempt proceedings, the contempt need not be willful," *Verizon Cal. Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1115 (N.D. Cal. 2009), "and there is no good faith exception to the requirement of obedience to a court order," *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party alleging civil contempt "must demonstrate by clear and convincing evidence that (1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis, and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order." *Facebook, Inc. v. Power Ventures, Inc.*, Case No. 08-cv-05780-LHK, 2017 WL 3394754, at *8 (N.D. Cal. Aug. 8, 2017). However, "clear and convincing evidence" is a lower burden of proof than "beyond a reasonable doubt." *Singh v. Holder*, 649 F.3d 1161, 1168 (9th Cir. 2011). To meet this standard, a movant must "present sufficient evidence to produce in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Sophanthavong v. Palmateer*, 378 F.3d 859, 866-67 (9th Cir 2004) (cleaned up).

Invisible Narratives has met its burden here.

#### A.    Next Level Is Violating the Terms of the Preliminary Injunction

The Preliminary Injunction prohibits Next Level from, *inter alia*, "directly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters[.]" Dkt. 37 ¶ 1(a). This is a clear and unambiguous command. *See Verizon Cal.*, 647 F. Supp. 2d at 1117–18.

Despite knowing and stipulating to the Preliminary Injunction, Next Level is blatantly violating it. The October 7 Notice constitutes an action "to remove or disable access to any material hosted on the Boom Channel," which violates Paragraph 1(a). Indeed, it is the specific example which the Preliminary Injunction envisioned: a "DMCA Takedown Notice[] … to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters." Dkt. 37 ¶ 1(a).

Next Level claims that it was not responsible for the October 7 Notice. That claim strains credulity. Invisible Narratives has no reason to believe that the October 7 Notice was submitted from anyone aside from Next Level, or someone at its direction. The October 7 Notice, submitted shortly after an unsuccessful mediation, states that it came from Next Level and provides Next Level's contact information. Google, per its policies, would have reviewed the October 7 Notice for validity before acting on it. Next Level's pattern of noncompliance indicates that the October 7 Notice was yet another instance of conformance to that pattern. Next Level's alternative explanation—that someone else thought to frame Next Level by submitting a DMCA Takedown Notice using Next Level's information, thereby causing Invisible Narratives to blame Next Level—is implausible on its face. And, given Next Level's unwillingness to provide previously agreed-to declarations that Next Level had nothing to do with the takedown without first being able to moor their testimony to (or explain away) information from Google's production, any evidence that might be submitted in opposition to this motion should be viewed with a high level of skepticism.

In short, it is at least "highly probable," *Sophanthavong*, 378 F.3d at 867, that Next Level was responsible for the October 7 Notice, in violation of the unambiguous prohibition the Preliminary Injunction. An award of civil contempt is therefore warranted.

## B.    Next Level's Non-Compliance Is More than Technical or *De Minimis*

This Court ordered Next Level to stop submitting DMCA Takedown Notices to YouTube or otherwise taking action to disable access to material hosted on the Boom Channel. Dkt. 37. This injunctive relief was necessary to prevent "Next Level from creating or distributing any Skibidi Toilet content and taking any actions to remove or disable access to material hosted on the Boom Channel." Dkt. 11 at 4, 7-8. Injunctions of this nature are standard in copyright and trademark law and fundamental to their basic remedial scheme. *See* 15 U.S.C. § 502 ("any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); 15 U.S.C § 1116 ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation.").

Failing to comply with the injunctive relief ordered by the Court thus goes to the heart of the conduct that is at issue in this litigation and is not a mere technical or *de minimis* violation of the Preliminary Injunction.

### C.    There Is No Good Faith Misunderstanding

The Preliminary Injunction is clear that Next Level must refrain from taking action to remove or disable access to material hosed on the Boom Channel, including by submitting DMCA Takedown Notices to YouTube. Dkt. 37 ¶ 1(a). There is no suggestion that Next Level misunderstood these obligations. During the process of extending the TRO and continuing the hearing on the Motion for Preliminary Injunction, and in negotiating the Stipulated Preliminary Injunction, Next Level had ample opportunity to request clarification of, or even amendment to, its obligations. It did not do so. Instead, Next Level decided to make additional fraudulent claims of copyright ownership in Skibidi Toilet content, and put Plaintiff in the same precarious position that it faced when initiating this lawsuit, in furtherance of Next Level's infringing activities.

Next Level is well aware of its obligations, which are simple and straightforward, and thus it cannot claim that it misunderstood the TRO or was confused.

## IV.    NEXT LEVEL'S CONTEMPT SHOULD SUBJECT IT TO SEVERE SANCTIONS

### A.    Next Level Should Face a Default Judgment on Plaintiff's Claims and Dismissal of Its Counterclaims

"Courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Livewirecyber, Inc. v. Lee*, No. 2:17-cv-00645-AB-ASx, 2019 WL 8230827, at *2 (C.D. Cal. Dec. 27, 2019) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)). When determining whether to issue case-terminating sanctions, courts weigh five factors: "(1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions." *Id.* at *2 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against default. Therefore, it is the third and fifth factors that are decisive." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406,

1412 (9th Cir. 1990). "While the district court need not explicit findings regarding each of these factors ... a finding of willfulness, fault, or bad faith is required for dismissal to be proper." *Leon*, 464 F.3d at 958 (cleaned up). While noncompliance with a Court order need not be willful to draw a finding of civil contempt, *Verizon Cal.*, 647 F. Supp. 2d at 1115, willful contempt of a preliminary injunction is the precise type of conduct that warrants dismissal under the Court's inherent authority. *See Livewirecyber*, 2019 WL 8230827, at *3 ("Plaintiff has shown that Defendants' conduct in violating this Court's ... preliminary injunction was willful.").

### 1. Next Level's Violation of the Preliminary Injunction Was Willful

Here, there is no question that Next Level's violation of the Preliminary Injunction was willful. Next Level submitted the October 7 DMCA Takedown Notice to YouTube in violation of the Preliminary Injunction's express prohibition on submitting DMCA Takedown Notices to YouTube for content on the Boom Channel. DMCA Takedown Notices require the submission of several items of highly specific information, including (i) a physical or electronic signature, (ii) identification of the copyrighted work(s) claimed to be infringed, (iii) identification of the allegedly infringing material and information "reasonably sufficient to permit the service provider to locate the material," (iv) contact information, and (v) statements that the complainant believes the allegedly infringing material is unauthorized and that the complainant has the authority to act on behalf of the copyright owner. 17 U.S.C. § 512(c)(3)(A). It is not possible to collect and submit such material accidentally. And in fact, the October 7 Notice shows that Next Level took great care to identify a YouTube link to a specific Skibidi Toilet video and claim (falsely, but with precision) that 20 characters purportedly owned by Next Level were used in that video without authorization. Next Level's actions were calculated and in willful violation of the Preliminary Injunction.

Further, as discussed above, Next Level's assertion that it is not responsible for the October 7 Notice was "not submitted by anyone at Next Level" is not credible, particularly since it has refused to provide declarations under penalty of perjury in the timeframe it had agreed to. Advancing this assertion further demonstrates the willfulness of its contempt of the Preliminary Injunction.

### 2. The Risk of Prejudice to Plaintiff Is Substantial

Plaintiff runs "a substantial risk of prejudice because of Defendant['s] actions." *Livewirecyber*, 2019 WL 8230827, at *3. The parties' pleadings in this case present diametrically opposed stories as to

the true authors and owners of Skibidi Toilet. *Compare* Dkt. 1 ¶¶ 15-32 *with* Dkt. 40 ¶¶ 5-24. While Plaintiff is confident that the litigation process would prove its version of the facts to be true and Defendant's version to be false, Defendant's violation of the Preliminary Injunction threatens to render that process irrelevant. Under the DMCA, a service provider such as YouTube is *obliged* to act in response to a DMCA Takedown Notice as if the facts in the notice are 100% true, even if they are not. *See* 17 U.S.C. § 512(c)(1)(C) ("A service provider shall not be liable … if the service provider … upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity."). And a service provider like YouTube is also *obliged* to terminate so-called "repeat infringers." *See id.* § 512(i)(1)(A) ("The limitations on liability established by this section shall apply to a service provider only if the service provider … has reasonably adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers"). As YouTube informed Invisible Narratives, it has implemented a policy where the Boom Channel could be disabled for being subject to multiple "strikes," regardless of their merit. *See* MacLean Decl, Ex. L. Thus, Next Level's "conduct threatens to interfere with the rightful decision of this case," demonstrating prejudice to Plaintiff. *Livewirecyber*, 2019 WL 8230827, at *3. Adam Goodman, owner and founder of Invisible Narratives, provides further details about the risk of severe prejudice and further irreparable injury in a concurrently filed declaration.

### 3.  Less Drastic Sanctions Would Not Be Adequate

Finally, Invisible Narratives "has shown that less drastic sanctions would not be adequate in curbing Defendant['s] behavior." *Id.* "The Court has already imposed the less drastic sanctions of a TRO and preliminary injunction in an attempt to curb [Next Level's] behavior," but those measures have proven ineffective. *Id.* Moreover, as set forth above, Defendant's violation of Paragraph 1(a) of the Preliminary Injunction is only the latest in a pattern of acts showing callous disregard of this Court's orders—despite often professing to agree to comply with those orders in exchange for added relief. For example:

(i)    After obtaining the TRO, Plaintiff agreed to stipulate to move the hearing on its motion for preliminary injunction, in reliance on Defendant's representation that it would abide by the TRO in the

20

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION (DKT 37) AND FOR SANCTIONS

interim; Plaintiff then learned that Defendant violated the TRO by continuing to use the Infringing Website (including expanding its activities to the New Infringing Website) and Infringing Social Media Accounts during the period of the agreed-on extension. *See* MacLean Decl, Exs. B-D.

(ii)    After again agreeing to move the hearing on its motion for preliminary injunction in reliance on Defendant's representation that it would abide by the extended TRO, Plaintiff learned that Defendant had applied for a Ukrainian trademark in violation of the TRO, and had frustrated the purposes of the TRO by assigning its international trademark application, which has a corresponding U.S. application that is at issue in this litigation, to a third party. *See* MacLean Decl, Exs. H-K.

(iii)    After stipulating to the Preliminary Injunction during the pendency of this litigation, Defendant decided, just days after an unsuccessful mediation, that it would willfully violate the Preliminary Injunction and submit the October 7 DMCA Takedown Notice to YouTube. *See* MacLean Decl, Ex. L.

(iv)    Finally, Next Level failed to provide declarations stating that its principals did not submit the October 7 Notice, which were to be provided in exchange for Invisible Narratives' agreement to delay filing this motion until Google's document production.

Defendant's disdain for the Court, and its own agreements, is readily apparent. "There is no evidence to suggest that Defendant[] will comply with further orders of this Court prohibiting" the challenged conduct (or, for that matter, any conduct at all). *Livewirecyber*, 2019 WL 8230827, at *3. As a party located overseas, Defendant and its principals clearly view themselves as beyond the reach of the Court, and as a practical matter, it would be relatively easy for Defendant to avoid an order to comply with the Preliminary Injunction by not complying, or even an order awarding monetary sanctions by simply not paying, with very little consequence to it.

To illustrate the point: As the Court may recall, Next Level's principals are (or were) principals of Iviliia Millionic IT Sp z o.o., a Polish private limited liability company ("Iviliia") sued by Ducky Ltd. ("Ducky"), the developer and owner of a mobile gaming application called Melon Sandbox. Through Iviliia, Next Level's principals perpetrated a fraudulent scheme of registering copyrights related to the game Melon Sandbox, using them to extort settlement payments and licensing fees from third parties, and even seeking the takedown of the legitimate Melon Sandbox game from the Apple App Store and the

Google Play Store and fraudulently attempting to obtain a related trademark registration. Serhii Osadchyi—the alleged "creator" of Skibidi Toilet—wrote at least two such extortionate emails attempting to extract a license agreement with a third-party developer. *See* Dkt. 9-8, Trachtenberg Decl, Ex. 25 (Adaschik Decl.), at 14-21 of 117. But when Ducky sued, Iviliia failed to defend or appear. *See generally* Dkt. 9-1 at 11-12; Dkt. 9-8, Trachtenberg Decl. Ex. 23 (*Ducky* Complaint); Trachtenberg Decl. Ex. 24 (Motion for Default Judgment); Trachtenberg Decl., Ex. 25 (Adashchik Decl.).

In its Answer in this case, Defendant only denies that its named principals "are *currently* principals of, or in any way affiliated with, Iviliia." Dkt. 39 ¶ 81 (emphasis added). But there is extensive evidence that Defendant's principals were principals of Iviliia at least at the time they perpetrated the fraudulent scheme that is the subject of Ducky's lawsuit. This evidence, followed by the apparent abandonment of Iviliia, suggests that Defendant's principals would likewise merely abandon Next Level after forcing Plaintiff to expend much more time and money dealing with the inevitable gamesmanship and misconduct that is to come. Should Defendant be permitted to further litigate, such misconduct and subsequent abandonment would leave Plaintiff powerless to, for example, collect on any monetary sanctions the Court might issue. For these reasons, anything less than terminating sanctions would be inadequate to curb Defendant's egregious behavior.

## B.    In the Alternative, Next Level Should Be Subject to Compensatory Sanctions

Setting aside terminating sanctions, a district court has broad discretion to impose sanctions for civil contempt. "[J]udicial sanctions may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the plaintiff for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (citations omitted). Given that the Preliminary Injunction alone has not stopped Next Level from co-opting Plaintiff's intellectual property rights (and even emboldened it to violate Plaintiff's intellectual property rights more extensively), compensatory sanctions are warranted. A party that suffers damage from its adversary's contempt of Court is "entitled to actual losses sustained as a result of this contumacy." *Canon Solutions Am., Inc. v. Gungap*, Case No. SACV 14-1990-JLS (RNBx), 2016 WL 9108916, at *3 (C.D. Cal. Feb. 8, 2016) (quoting *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986)) (cleaned up).

The Court should order Next Level to reimburse Plaintiff for its losses for at least the first 10 business days that the Removed Video was unavailable. As Plaintiff has previously demonstrated, an illicit takedown of a video on the Boom Channel results in lost revenue stemming from advertising placement, as well as a loss of Plaintiff's ability to control the brand's reputation and interact with fans of the Skibidi Toilet franchise. *See* Dkt. 9-1 at 14; Dkt. 9-2 ¶¶ 18-20. Plaintiff is in the process of submitting a DMCA Counternotice, which should eventually result in the restoration of the Removed Video. But even if Plaintiff submitted a DMCA Counternotice *the very day* it received the October 7 Notice, Google would have had 10 business days to restore it. *See* 17 U.S.C. § 512(g)(2)(B); MacLean Decl., Ex. Z.

The Court should also order Next Level to pay Plaintiff's attorneys' fees and costs for bringing this motion and submitting a DMCA Counternotice. Such an award is within the court's discretion. *Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Stud., Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). Here, an award of attorneys' fees is appropriate and warranted as compensation for compelling Next Level to do what it should have done in the first place – comply with the Preliminary Injunction. The Court should find that Plaintiff is entitled to an award of attorneys' fees.

The Court should set a further briefing schedule to allow Plaintiff to submit sufficient information to determine the appropriate amount of the compensatory sanction, including attorneys' fees.

## V.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion, hold Defendant in contempt, and grant Plaintiff a default judgment and dismiss Defendant's counterclaims with prejudice; or, in the alternative, impose other sanctions adequate to ensure compliance with the Preliminary Injunction and to compensate Plaintiff for its losses.

Respectfully submitted,

Dated: October 29, 2025

By:     */s/ Justin A. MacLean*
        Ian C. Ballon
        Jie (Lisa) Li
        Amy L. Kramer (*pro hac vice*)
        Justin A. MacLean (*pro hac vice*)
        GREENBERG TRAURIG, LLP

        Attorneys for Plaintiff Invisible Narratives, LLC