Ian C. Ballon (SBN 141819)
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone:  650.289.7881
Facsimile:  650.462.7881
Email:    ballon@gtlaw.com

Jie (Lisa) Li (SBN 260474)
Kristin L. O'Carroll (SBN 312902)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone:  415.655.1300
Email:    lil@gtlaw.com
Email:    ocarrollk@gtlaw.com

Amy L. Kramer (Appearing Pro Hac Vice)
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone:  303.572.6500
Email:    Amy.Kramer@gtlaw.com

Justin A. MacLean (Appearing Pro Hac Vice)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone:  212.801.9200
Email:  Justin.MacLean@gtlaw.com

James M. Smedley (Appearing Pro Hac Vice)
Jonathan R. Lagarenne (Appearing Pro Hac Vice)
Cali Spota (Pro Hac Vice)
Jonathan Madara (Appearing Pro Hac Vice)
FOX ROTHSCHILD LLP
212 Carnegie Center, Suite 400
Princeton, NJ 08540
Telephone: 609.896.3600
Facsimile: 609.896.1469
Email:  jsmedley@foxrothschild.com
Email: jlagarenne@foxrothschild.com
Email:  cspota@foxrothschild.com
Email: jmadara@foxrothschild.com

Jack Praetzellis (SBN 267765)
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104
Telephone: 415.651.1424
Facsimile: 415.391.4436
Email: jpraetzellis@foxrothschild.com

Attorneys for Defendant
Next Level Apps Technology—FZCO

Attorneys for Plaintiff
Invisible Narratives LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INVISIBLE NARRATIVES LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NEXT LEVEL APPS TECHNOLOGY – FZCO,<br><br>    Defendant. | CASE NO. 5:25-cv-01644-NW<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>Hearing Date: November 18, 2025<br>Hearing Time: 9:00 a.m. |

Plaintiff and Counterclaim-Defendant Invisible Narratives LLC ("Plaintiff") and Defendant and Counterclaim-Plaintiff Next Level Apps Technology—FZCO ("Defendant") (collectively, the "Parties") respectfully submit this Joint Case Management Statement pursuant to the Court's August 13, 2025 Order granting, as modified, the Parties' request to continue the case management conference (Dkt. 46), and pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9, and the Standing Order for Judge Noël Wise.

## I.    Jurisdiction and Service

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1138(a), in that Plaintiff's claims and Defendant's current counterclaims arise under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, including Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), and the Declaratory Judgment Act, 28 U.S.C. § 2201, and that Plaintiff's claims further arise under the Lanham Act, 15 U.S.C. §§ 1121, 1125(a), and 1125(d). This Court has pendant and supplemental jurisdiction over Plaintiff's remaining claims under 28 U.S.C. § 1338(b), in that those claims are joined with a substantial and related claim under the trademark laws of the United States, and under 28 U.S.C. § 1367. In addition, because there is diversity of citizenship between the parties to this action and the matter in controversy exceeds $75,000, the Court has jurisdiction pursuant to 28 U.S.C. § 1332. All parties named in Plaintiff's Complaint and Defendant's current counterclaims have been served.

On October 20, 2025, the Court granted the parties' stipulation to allow Defendant to file amended counterclaims and join Alexey Gerasimov as a Counterclaim Defendant. The Parties will address matters of jurisdiction and service related to the amended counterclaims in due course after filing.

## II.   Facts

This action involves the creation, ownership, and use of characters and content actually or purportedly associated with the Skibidi Toilet multimedia franchise ("Skibidi Toilet"). The Parties disagree on many of the basic facts forming the premise of this action, including identity of the original authors of the copyrighted works at issue and the alleged infringer. The Parties provide summaries of their versions of the facts below.

//

//

### A.    Plaintiff's Position

Plaintiff is the exclusive owner of all copyright, trademark, and other intellectual property rights associated with the SKIBIDI TOILET multimedia franchise ("Skibidi Toilet"). The concept for Skibidi Toilet was created over several years by Alexey Gerasimov, aka "Boom." On February 7, 2023, Boom posted the first Skibidi Toilet episode to the *DaFuq!?Boom!* YouTube channel located at https://www.youtube.com/dafuqboom (the "Boom Channel"). Since the release of the first episode two years ago, Skibidi Toilet has become a global sensation. On October 12, 2023, Boom assigned to Plaintiff all rights to the Skibidi Toilet series and concept, including the IP at issue here. Skibidi Toilet comprises a number of works, including audiovisual works and pictorial or graphic works, subject to copyright protection (the "Skibidi Toilet Copyrighted Works"). The Skibidi Toilet Copyrighted Works include a number of copyrightable characters ("Skibidi Toilet Characters"), several of which have been registered with the United States Copyright Office. Plaintiff also owns common law and registered rights in the valuable SKIBIDI TOILET trademark (the "Skibidi Toilet Trademark").

Defendant and its proprietors are imposters, who have made false claims that they created Skibidi Toilet. They are illegally interfering with Plaintiff's YouTube channel, attempting to co-opt the Skibidi Toilet brand and content to Plaintiff's detriment, and infringing Plaintiff's copyright and trademark rights in myriad ways. For example, Defendant created a mobile gaming application (the "Infringing App") which infringed both Plaintiff's rights in its Skibidi Toilet Trademark and copyrights ("Infringing Material"). Defendant also registered domain names such as skibiditoilet.com and skibiditoilet.wiki (the "Infringing Domain Names"), on which it set up websites that infringe Plaintiff's copyrights and trademarks (the "Infringing Sites"), including to market the Infringing App. Defendant has similarly used and marketed content that contains Infringing Material on and through its social media accounts ("Infringing Social Media Accounts").

Defendant's deceptive conduct did not stop there. Defendant fraudulently obtained copyright registrations from the United States Copyright Office ("USCO") for 20 images deposited therewith (the "Fraudulently Obtained Copyright Registrations"), 17 of which were for images based on Plaintiff's copyrighted Skibidi Toilet Characters (the "Fraudulent Deposits"). Similarly, Defendant fraudulently applied for trademark registrations with the United States Patent and Trademark Office ("USPTO") as

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

well as foreign trademark offices ("Fraudulent Trademark Applications") for copycat trademarks. For example, the Fraudulent Trademark Applications incorporate the trademark "Skibidi Toilet" and, in many cases, depict an image of a character that infringes Plaintiff's copyright rights.

Defendant has also willfully and illegally interfered with Plaintiff's online channels and apps. For example, in response to takedown notices to Google and Apple under the DMCA ("DMCA Takedown Notice"), Defendant supplied Google and Apple with false Counter-Notifications, falsely stating that Defendant owned the relevant trademarks and copyrights. Defendant does not. And Plaintiff is aware that Defendant submitted at least one false DMCA Takedown Notice to YouTube, falsely claiming that Defendant owned copyrights in characters registered with the Copyright Office (i.e. the Fraudulently Obtained Copyright Registrations), and that a Skibidi Toilet video on the Boom Channel ("Skibidi Toilet Season 25") used those characters "without [Defendant's] permission." As a result of Defendant's false takedown notice, YouTube **took down** Skibidi Toilet Season 25 and issued the Boom Channel a "copyright strike," noting that multiple copyright strikes would result in termination of the channel. Defendant did not stop there. It followed up on its fraudulent DMCA Takedown Notice with emails to both Boom and Plaintiff, attempting to blackmail Boom and Plaintiff into "enter[ing] into a dialog with us and resolv[ing] all contentious issues through negotiations, which will save time and budget." Although YouTube eventually re-posted Skibidi Toilet Season 25 after several DMCA Counter-Notifications, it took several attempts, and Plaintiff was injured by way of both lost revenue and lost goodwill among its fanbase.

Plaintiff is not the only target and victim of Defendant and its principals and their corrupt and predatory enterprise. Defendant's principals are (or were) also principals of a company called Iviliia Millionic IT Sp z o.o. ("Iviliia"). Iviliia was sued by Ducky Ltd. ("Ducky"), owners of a game called Melon Sandbox. As detailed in Ducky's complaint against Iviliia filed in the U.S. District Court for the Northern District of California, and supported by evidence accompanying Ducky's motion for default judgment, Iviliia, through its principals (the same principals behind Next Level), fraudulently registered copyrights with the USCO covering artwork in the Melon Sandbox game, and used those fraudulently obtained copyright registrations to extort settlement payments and licensing fees from third parties, requested removal of the authentic Melon Sandbox game from the Apple App Store and Google Play

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

Store, and sought to fraudulently obtain a trademark registration with the USPTO. In other words, Iviliia employed the same tactic that Next Level is using here: to fraudulently file trademark and copyright applications for another company's intellectual property and then wield the resulting registrations against the rightful owner. In the Melon Sandbox case, Iviliia did not respond to Ducky's complaint, and defaulted. *See Ducky Ltd. v. Iviliia Millonic IT Sp z.o.o.*, No. 3:24-cv-02268-PHK (N.D. Cal.).

Plaintiff filed this case and obtained a Temporary Restraining Order ("TRO") against further infringement or attempts to disable content on the Boom Channel, and an order to show cause for a preliminary injunction ("PI"). Defendant has violated the TRO at least twice. First, despite agreeing to abide by and extend the TRO to allow its counsel to get up to speed in advance of the PI hearing, Defendant continued to operate and use the Infringing Site at skibiditoilet.com and Infringing Social Media Accounts in connection with Skibidi Toilet-related videos and/or its Skibidi Toilet application, expanded its activities to the Infringing Site at skibiditoilet.wiki, and continued to use the SKIBIDI TOILET mark in advertising or marketing Defendant's products or services. *See* Dkt. 19. Defendant reversed course only after Plaintiff repeatedly contacted it to demand compliance with the TRO. Second, after agreeing to another extension of the TRO in exchange Plaintiff agreeing to set aside Defendant's default and yet another continuance of the PI, Plaintiff learned that Defendant had filed a Ukrainian trademark application, in violation of the TRO's prohibition against filing Skibidi Toilet-related trademark applications with the USPTO "or elsewhere." In an attempt to circumvent the TRO, Defendant also assigned its purported rights to International Registration No. 1771641 for SKIBIDI TOILET VS CAMERAMAN TV WOMAN X TV MAN VS G-MAN (associated with Defendant's US trademark application, in connection with which Defendant made fraudulent statements) to a non-party, which frustrated the purpose of the TRO, if it did not outright violate Paragraph 7 prohibiting "assisting, aiding, or abetting any other person or business entity in engaging in or performing" infringing or trademark registration-related activities.

On June 16, 2025, Defendant stipulated to entry of a PI, resulting in the Court taking the PI hearing off calendar and extending Defendant's deadline to respond to Plaintiff's Complaint. (Dkt. 37.) The Parties participated in mediation on October 3, which was unsuccessful. On October 7, 2025, two business days after the mediation, Plaintiff's Boom Channel again received a DMCA Takedown Notice (the

"October 7 Notice") for another Skibidi Toilet episode, which was taken down and the subject of another "copyright strike." Defendant's involvement, direct or indirect, with sending the October 7 Notice violated Paragraph 1.a. of the stipulated PI, which prohibits "directly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters[.]" The October 7 Notice, on its face, states that it came from Defendant and listed Defendant's email address as the relevant contact information. While Defendant has denied involvement, Plaintiff has no indication that the DMCA Takedown Notice was communicated, directly or indirectly, by anyone *other than* Defendant. Accordingly, Plaintiff filed a motion for a finding of contempt and an award of sanctions, including terminating sanctions, against Defendant. Dkt. 54.

Plaintiff is still investigating the facts and circumstances underlying this case, and may identify further infringements and associated unlawful activities by Defendant as they come to light. Plaintiff emphatically denies that Defendant, or anyone associated with Defendant, created or owns Skibidi Toilet or any associated characters. Plaintiff contends that any such claims made by Defendants are fraudulent. Plaintiff further contends that all of its claims, takedown notices, counternotices, and other statements and actions to defend Plaintiff's ownership of Skibidi Toilet are true, accurate, and legitimate. Plaintiff reserves the right to respond to any additional allegations made by Defendant in its forthcoming amended counterclaims or otherwise.

### B.    Defendant's Position

In early 2020, Mr. Serhii Osadchyi, who was a co-founder and director of Next Level, conceived a unique storyline, universe and character backstories and design features for a video game concept that involved a post-apocalyptic world where humanoids with cameras, speakers and televisions for heads (Cameramen) battle toilets with heads coming out of the bowls.  He shared this idea with his close friends, one of whom suggested posting his idea publicly on specialized forums that covered various technology and gaming topics.  To gauge whether the gaming community would be interested in such a concept, Mr. Osadchyi posted his idea on a few such public forums, including participating in a discussion in Russian on a forum hosted at https://www.kharkovforum.com (the "Kharkov Forum") under the username

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

"Serg_Skibidi".

On or around February 4, 2020, Mr. Osadchyi posted on the Kharkov Forum stating that he had conceived an idea for a game and needed sponsors. His public post detailed the storyline and concept of a game involving half-people, half-toilet mutants who would battle a second race, which resulted from experiments on humans and robots. As also seen in the Counterclaims, Mr. Osadchyi posted preliminary sketches of the characters that would be featured in his game. Later on in the same online thread, the name "Skibidi Toilet v. Cameraman" was also conceived by Mr. Osadchyi.

To further materialize his ideas for the Skibidi Toilet universe, Mr. Osadchyi presented his initial character concepts and the technical aspects of developing the game for a mobile platform to a commercial design group on or around July 18, 2020. After several phone and in-person meetings, Mr. Osadchyi entered into a formal contract with this third-party design vendor on or around July 20, 2020 for the creation of formal character sketches, object sketches, background images, and consultations regarding the implementation of a mobile application. On or around August 12, 2020, Mr. Osadchyi received preliminary sketches from the vendor expanding on the Skibidi Toilet universe designs, including characters, in Adobe file format.

Mr. Osadchyi's initial efforts to obtain United States copyright registrations were delayed due to financial constraints. Fortunately, Mr. Osadchyi was able to secure investors in his Next Level company in 2023, thereby providing the resources necessary to build a team and move forward with full-scale development of his mobile game. Mr. Osadchyi, through Next Level, applied for and received several U.S. Copyright Registrations. Next Level also applied for several trademark registrations globally, including with the United States Patent and Trademark Office ("USPTO"), to protect the Skibidi Toilet characters and Skibidi Toilet name. By April 2024, Next Level secured the web domain skibiditoilet.com, where it hosted detailed information about the game universe, characters, and events. By late April 2024, Next Level was using the website skibiditoilet.com to promote its forthcoming "Coming Soon" pages in the Apple App Store and on Google Play since to open pre-orders for the mobile application, a working build had to be submitted and pass platform review first (only after this would the store allow pre-orders and notify users at launch); by the summer of 2024, Next Level was using its social media accounts on TikTok, Instagram, Facebook, and X to promote the game as well.

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

It is not disputed that Invisible Narratives, including Mr. Alexey Gerasimov ("Gerasimov"), have created popular YouTube content related to the Skibidi Toilet characters and universe. Next Level alleges, however, that Invisible Narratives' simply coopted Mr. Osadchyi's original Skibidi Toilet concepts in so doing. Next Level asserts that Mr. Gerasimov is intensely familiar with the gaming industry, as demonstrated by his extensive use of the world famous "Half Life," "Grand Theft Auto," and "Counter-Strike" games in his YouTube videos. Next Level asserts it is highly likely he would utilize gaming forums like the Kharkov Forum, providing access to Mr. Osadchyi's unique concepts

In addition to copyright infringement, using its own fraudulently obtained United States Copyright Registrations, on or about November 4, 2024, Invisible Narratives began a relentless campaign of harassing wrongful takedowns by sending a false Takedown Notice under the Digital Millennium Copyright Act ("DMCA") to Apple, Inc., falsely claiming Next Level was committing both trademark and copyright infringement. Next Level responded to Invisible Narratives' false Takedown Notice, asserting its own copyright and trademark registrations, but Invisible Narratives did not care. Instead, it continued its wrongful take down campaign by attacking the launch of Next Level's game on the Google Play Platform and Apple App Store. Due to Invisible Narratives' wrongful actions, Next Level was forced to remove its mobile application game from multiple platforms. Invisible Narratives' improper harassment continued though complaints submitted against Next Level's YouTube channel on or around November 9, 2024, which was subsequently taken down by YouTube. Although Next Level was initially able to get its YouTube channel reinstated, Invisible Narratives' harassment did not stop. Invisible Narratives continued to submit additional false complaints, requiring Next Level to continuously appeal Invisible Narratives' bad-faith Takedown Notices. Although certain of Next Level's videos were reinstated, its YouTube channel was ultimately terminated. Invisible Narratives and others on behalf of Gerasimov have also made public statements that has turned the gaming community, including fans who watch Skibidi Toilet on YouTube, against Next Level. It will therefore take extensive time and monetary investment to do sufficient "damage control" once this dispute is resolved as Invisible Narratives' knowingly false statements have greatly tarnished Next Level's brand and reputation.

Next Level (represented by prior counsel) was subject to an initial temporary restraining order (TRO) and later entered into the current preliminary injunction in order to provide current counsel with

an opportunity to investigate this matter. Prior to current counsel's appearance in the case, Next Level was represented by a foreign, non-US attorney, who did not appreciate, nor fully comprehend, the nuances of U.S. law. Between that and the apparent language barrier, there were issues that arose between Next Level and Invisible Narratives relating to the TRO. However, since appearing in the case, current counsel has informed Next Level of its obligations and has worked to ensure Next Level's compliance with the Stipulated Preliminary Injunction.

On the evening of November 7, 2025, counsel for Invisible Narratives informed Next Level's counsel that Plaintiff's Boom Channel received a DMCA Takedown Notice (the "October 7 Notice") for another Skibidi Toilet episode. Next Level immediately began its investigation into the October 7 Notice. In fact, the very next morning, counsel for Next Level was able to confirm with their client that the takedown request that led to the October 7 Notice was not submitted by Next Level. Next Level searched their online accounts and emails and found no additional take down requests since winter 2025. Next Level also confirmed that it understands its obligations under Stipulation Preliminary Injunction and stated that it would not have taken any action without first consulting their counsel.

Counsel for Next Level also explained that YouTube **does not** require one to log into their account to submit a takedown request. In fact, ***anyone*** can simply send an email to copyright@youtube.com and submit a takedown request. *See* https://support.google.com/youtube/answer/2807622?sjid=8656050812806773835-NA. As the parties are aware, this is a high-profile case, with many people watching the docket. Based on Next Level's investigation to date, it is apparent someone submitted this take down request to harm **Next Level**, knowing that Next Level would be accused of being in violation of the Stipulated Preliminary Injunction. In fact, the information submitted in the October 7 Notice request, aside from the video itself, is **identical** to that which is publicly available on the docket.

As explained to counsel for Invisible Narratives, Next Level has taken several steps to show this action did not originate from Next Level. First, it has issued a subpoena to YouTube / Google, requesting information relating to the entity who submitted the takedown request that led to the October 7 Notice. Next Level is currently awaiting those documents from Google. Second, Next Level confirmed that there were only three individuals that had access to the email listed in the October 7 Notice. All three individuals have confirmed that they did not submit the takedown request that led to the to the October 7

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

Notice, nor did they direct anyone to submit the takedown request.  This information was provided to Invisible Narratives' counsel.  Third, Next Level sent retraction emails from at least five different email accounts (including the one listed as the "contact" email in the October 7 Notice) and its YouTube Studio account, requesting that the video at issue be reinstated.  Next Level made sure that every possible domain it used as an email address was covered in these retraction requests.  Each time, YouTube responded that "[t]he email address you've provided doesn't match the email address that submitted the copyright removal request. To proceed with the retraction, you must be the claimant who submitted the copyright removal request."  This information was relayed to counsel for Invisible Narratives as well.  Finally, Next Level offered to provide this all in a sworn declaration to Invisible Narratives, once Next Level's investigation was complete.

Invisible Narratives, however, did not want to wait until Next Level's investigation was complete, and instead filed its Motion for Contempt.  Next Level intends to oppose Invisible Narratives' Motion for Contempt.  Given that the Court will not hear the motion until January 28, 2026, Next Level asked that Invisible Narratives stipulate to an alternative briefing schedule, to allow for the Google documents to be produced, which are crucial to the Court's determination here.  Invisible Narratives agreed to the alternative briefing schedule, and the Parties will file a joint stipulation accordingly.

Next Level is still investigating the facts and circumstances underlying this case and may identify further unlawful activities by Invisible Narratives during discovery.  Next Level maintains that Mr. Osadchyi is the original creator of the content used by Invisible Narratives to popularize YouTube videos known as "Skibidi Toilet."  Next Level confidently asserts that Invisible Narratives' Mr. Alexey Gerasimov **did not** create Skibidi Toilet independently.  Rather, Next Level asserts that Mr. Gerasimov is known to create derivative works based on other's ideas, not on his own original creations, and usurped Mr. Osadchyi's creations here.  Next Level intends to seek compensation for Invisible Narratives' wrongful actions.

## III.    Legal Issues

Additional legal issues may be identified by the Parties as discovery continues. Thus far, the principal legal issues of this case are as follows:

//

- Whether Plaintiff or Defendant own any copyrightable characters or other content associated with Skibidi Toilet (*see, e.g.*, 17 U.S.C. § 101 *et seq.*; *Feist Publn's, Inc. v. Rur. Tel. Serv. Co.*, 499 U.S. 340 (1991); *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015));

- Whether Plaintiff's or Defendant's registration of any copyrightable characters or other content associated with Skibidi Toilet has been properly made with the USCO (*see, e.g.*, 17 U.S.C. § 411; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010));

- Whether Plaintiff, Gerasimov,[1] or Defendant have infringed the copyright rights in any copyrightable characters or other content associated with Skibidi Toilet (*see, e.g.*, 17 U.S.C. § 101 *et seq.*; *Feist Publn's, Inc. v. Rur. Tel. Serv. Co.*, 499 U.S. 340 (1991));

- Whether Plaintiff or Defendant have submitted knowingly false DMCA Takedown Notices to third-party platforms, including the Apple App Store, the Google Play Store, and/or YouTube (*see, e.g.*, 17 U.S.C. § 512(f)(1));

- Whether Plaintiff or Defendant have submitted knowingly false DMCA Counter-Notices to third-party platforms, including the Apple App Store, the Google Play Store, and/or YouTube (*see, e.g.*, 17 U.S.C. § 512(f)(2));

- Whether Plaintiff owns trademark rights in the Skibidi Toilet Trademark (*see, e.g.*, 15 U.S.C. § 1125; *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2012));

- Whether Defendant has infringed Plaintiff's trademark rights in the Skibidi Toilet Trademark (*see, e.g.*, 15 U.S.C. § 1125; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979));

- Whether Defendant has engaged in cybersquatting (*see, e.g.*, 15 U.S.C. § 1125(d); *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213 (9th Cir. 2010));

- Whether Defendant has committed acts of unfair competition or false advertising under state or federal law (*see, e.g.*, 15 U.S.C. § 1125; Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*);

---

[1] **Plaintiff's Position:** Plaintiff disagrees that Mr. Gerasimov's alleged infringement is at issue in the case at this time. As of this filing, Mr. Gerasimov is not a named party in the case and will likely not have appeared before the November 18 Initial Case Management Conference.

CASE NO. 5:25-cv-01644-NW

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

Whether Plaintiff and Gerasimov have engaged in libel and the harm suffered by Defendant due to said actions (*see, e.g.*, California Civil Code § 45);[2]

- Whether Plaintiff has engaged Negligent Interference with Prospective Economic Relations (*see, e.g.*, CACI No. 2204; *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 997 (2018), *as modified on denial of reh'g* (Mar. 16, 2018), and *disapproved of by Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020));[3]

- Whether Plaintiff has engaged in Intentional interference with Contractual Relations (*see, e.g.*, CACI No. 2202; *H & M Assocs. v. City of El Centro*, 109 Cal. App. 3d 399 (Cal. Ct. App. 1980));[4]

- Whether Plaintiff's trademark for the SKIBIDI TOILET name should be cancelled (*see, e.g.*, 15 U.S.C. § 1064 and § 1119);

- Whether and to what extent Plaintiff or Defendant has suffered damages from the allegedly wrongful acts (*see, e.g.*, 17 U.S.C. § 504(a)(1), (b); 15 U.S.C. § 1117(a));

- Plaintiff's or Defendant's profits attributable to the allegedly wrongful acts (*see, e.g.*, 17 U.S.C. § 504(a)(1), (b); 15 U.S.C. § 1117(a));

- The amount of statutory damages, if any, for which Defendant is liable to Plaintiff for cybersquatting (*see, e.g.*, 15 U.S.C. § 1117(d));

- Whether the skibiditoilet.com and/or skibiditoilet.wiki domain names should be forfeited, cancelled, or transferred to Plaintiff  (*see, e.g.*, 15 U.S.C. § 1125(d)(1)(C));

- Whether and to what extent Plaintiff or Defendant is entitled to injunctive relief;

- Whether Defendant has violated the TRO or PI, and, if so, appropriate remedies therefore.

**IV.    Motions**

---

[2] **Plaintiff's Position:** Plaintiff disagrees that this is a legal issue in the case at this time. As of this filing, Mr. Gerasimov is not a named party in the case and will likely not have appeared before the November 18 Initial Case Management Conference, and there are no libel claims in the operative pleadings as of this filing.
[3] **Plaintiff's Position:** Plaintiff disagrees that this is a legal issue in the case at this time. There are no claims for Negligent Interference with Prospective Economic Relations in the operative pleadings as of this filing.
[4] **Plaintiff's Position:** Plaintiff disagrees that this is a legal issue in the case at this time. There are no claims for Intentional Interference with Contractual Relations in the operative pleadings as of this filing.

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

On February 18, 2025, Plaintiff applied for a TRO, Order to Show Cause for Preliminary Injunction, and Order Permitting Alternative Service. (Dkt. 9.) The application was granted on February 19, 2025. (Dkt. 11.) The TRO was extended on March 4, 2025 (Dkt. 22) and May 6, 2025 (Dkt. 30). On June 17, 2025, the Parties stipulated to a preliminary injunction, which the Court so-ordered. (Dkt. 37.)

On October 29, 2025, Plaintiff filed a motion for an order finding Defendant in contempt of the stipulated preliminary injunction. Defendant's response is due on November 12, and Plaintiff's reply is due on November 19. The motion is scheduled to be heard on January 28, 2026.

As discussed above, given that the Court will not hear the motion until January 28, 2026, Next Level asked that Invisible Narratives stipulate to an alternative briefing schedule, to allow for the Google documents to be produced, which Defendant asserts are crucial to the Court's determination here. Invisible Narratives agreed to the alternative briefing schedule, and the Parties will soon file a joint stipulation whereby Next Level's response will be due on November 26, and Invisible Narratives' reply will be due on December 19.

If Defendant amends its counterclaims as previewed below, Plaintiff expects to challenge one or more of the amended counterclaims.

The Parties reserve the right to file additional motions, including motions for summary judgment and *Daubert* motions, to the extent the Parties' investigation and discovery warrant them.

## V.    <u>Amendment of Pleadings</u>

On October 20, 2025, the Court granted the Parties' stipulation to allow Defendant to file amended counterclaims and join Alexey Gerasimov as a Counterclaim Defendant. Defendants' amended counterclaims are to be filed on or before November 10, 2025, and Plaintiff's response thereto is due on December 10, 2025. (Dkt. 53.).

**Additional Statement from Next Level:** However, since this the filing of this stipulation, the U.S. Federal Government has remained shut down, which was also mentioned and contemplated in the Parties' stipulation. Although Next Level has filed its new Copyright Registration Applications, the shutdown has prevented Next Level from obtaining the new Copyright Registrations it needs to assert in its Amended Counterclaims and abandon those it is no longer asserting. Next Level will therefore need additional time to file its Amended Counterclaims to allow for the delay in receipt of registrations caused

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

by the government shutdown. Next Level will file its Amended Counterclaims as soon as the U.S. Federal Government reopens and Next Level receives its copyright registrations. Plaintiff's response can be filed 30-days thereafter.

**Response from Plaintiff:** Plaintiff disagrees that Next Level needs or is entitled to a further extension of its deadline to file amended counterclaims. In approving the Parties' Stipulation to Allow Defendant to File Amended Counterclaims, Join a Counterclaim Defendant, and to Extend Plaintiff's Time to File Responsive Pleading, the Court *deleted* the portion of the stipulation stating that "if the ongoing government shutdown extends into November and such shutdown impacts the Parties' ability to meet the deadlines, the Parties may request additional time to amend the Counterclaims and answer the Counterclaims," and further noted that "[t]he government shutdown has no bearing on the parties' deadlines." (Dkt. 53 at 5, 6.) Plaintiff expects Defendant to file its counterclaims on or before November 10 with the information it has available to it at that time, regardless of whether it has received additional copyright registrations. Plaintiff further notes that Defendant does not need the Copyright Office or any other government agency to act before it abandons counterclaims it is no longer asserting; it can and should abandon those counterclaims immediately.

As set forth in the proposed schedule below, the Parties propose January 30, 2026 as the deadline to amend pleadings.

## VI.    **Evidence Preservation**

Each party has taken appropriate steps to maintain and preserve all hard copies and electronic files believed to be relevant to the issues in this action. The Parties have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The Parties' discussions are ongoing.

## VII.    **Disclosures**

The parties anticipate exchanging initial disclosures on or before November 14, 2025 pursuant to Fed. R. Civ. P. 26(a)(1).

//

//

## VIII.  Discovery

### A.  Discovery Taken to Date

On October 9, 2025, Defendant issued a subpoena to Google LLC ("Subpoena"), seeking deposition testimony and the production of documents generally regarding, *inter alia*, information about the identity and source of the October 7 Notice, communications with the sender of the October 7 Notice, and Google's practices for authenticating the sender of DMCA Takedown Notices and communications with the senders of such notices. The Subpoena was served before the Parties' Rule 26(f) conference of counsel occurred, and thus is premature under Fed. R. Civ. P. 26(d)(1).

Although Plaintiff does not object to Defendant prematurely seeking documents and testimony regarding the identity and source of the October 7 Notice, which bears on Plaintiff's Motion for Contempt, that subpoena improperly seeks documents and information relating to revenue generated from the video taken down by the October 7 Notice and revenue generated from the Boom Channel generally. Plaintiff objects to these revenue-related requests as premature under Rule 26(d)(1), not relevant to Plaintiff's anticipated Motion for Contempt (which will be directed only to whether Defendant submitted the October 7 Notice in violation of the stipulated PI, and not the revenue lost from such an action), directed to Plaintiff's confidential and proprietary information before an appropriate protective order can be entered, and duplicative of information that Defendant could get directly from Plaintiff.

Accordingly, Next Level narrowed its requests in the Subpoena to seek documents and communications pertaining to the takedown request that led to the October 7 Notice only.

Other than the Subpoena, no discovery has taken place but the parties anticipate serving written discovery shortly..

### B.  Scope of Anticipated Discovery

Without waiving their right to take all other appropriate discovery permitted by Rule 26, the Parties anticipate that discovery will involve at least the following topics:

- The creation of Skibidi Toilet and related content, including characters, by either Party or the Parties' affiliates or third parties known to the Parties;

- The ownership of Skibidi Toilet and related content, including characters;

- The Parties' various uses of Skibidi Toilet-related content, characters, and other material;

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

- The Parties' DMCA Notices and Counter-Notifications;

- The validity of the Skibidi Toilet Trademark;

- The prosecution history of the Skibidi Toilet Trademark;

- Defendant's use of "Skibidi Toilet" or similar words or phrases in its allegedly infringing products, services, content, websites, domain names, social media accounts and posts, and/or activities;

- Likely and/or actual confusion relating to the Skibidi Toilet Trademark and Defendant's use of "Skibidi Toilet" or similar words or phrases;

- The current and/or past ownership of Defendant, including the current and/or past relationships between Defendant and Serhii Osadchyi, Vladislav Ciapchis, Eduard Ciapchis, and/or Stanislav Chuprykov;

- The current and/or past ownership of Iviliia Millionic IT Sp z o.o. ("Iviliia"), including the current and/or past relationships between Defendant and Serhii Osadchyi, Vladislav Ciapchis, Eduard Ciapchis, and/or Stanislav Chuprykov, and/or the overlap in ownership between Iviliia and Defendant or other relationships, connections, or affiliations between Iviliia and Defendant;

- Defendant's and/or Defendant's principals' or affiliates' (including Iviliia's) activities and conduct in registering and/or attempting to register other copyrights and/or trademarks, submitting DMCA Takedown Notices, contacting third parties claiming that the third parties' conduct infringed their copyright, trademark, or other property interests, and/or obtaining or attempting to obtain licensing fees or other remuneration, or attempting to persuade the third parties to take or not take any course of action as a result of any alleged infringement;

- Any alleged claims by third parties ("Third Parties"), including Ducky Ltd. ("Ducky"), that Defendant and/or Defendant's principals or affiliates (including Iviliia) have made false claims that they created or own(ed) copyright or trademark rights actually belonging to those Third Parties, and/or that Defendant and/or Defendant's principals or affiliates (including Iviliia) are infringing the copyright or trademark rights of any Third Parties;

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

- Any other facts and circumstances bearing on the knowledge, willfulness, intent, and/or good or bad faith of Defendant or its principals;

- Any other facts and circumstances bearing on the knowledge, willfulness, intent, and/or good or bad faith of Invisible Narratives, Invisible Narratives' principals, and/or Alexey Gerasimov;

- Allegedly harmful and false statements made by Invisible Narratives, Invisible Narratives' principals, and/or Alexey Gerasimov;

- Alleged interference by Invisible Narratives, Invisible Narratives' principals, and/or Alexey Gerasimov with Next Level's business;

- The basis for any claim of damage sought by either Party, including actual damages that any Party claims to have suffered and the basis of their prayers for injunctive and/or monetary relief;

- The Parties' profits related to the activities alleged to be infringing; and/or

- The basis for any claims or allegations that Defendant may make in its anticipated amended counterclaims or Plaintiff's response thereto.

## C.    Electronically Stored Information

The parties intend to cooperate with respect to ESI and may consider entering into an ESI protocol.

## D.    Potential Privilege Issues

The Parties may assert the attorney-client privilege, attorney work product doctrine, and/or other privileges, as applicable. The Parties intend to include a claw-back provision in the anticipated Protective Order such that inadvertent disclosure of privileged documents will not automatically constitute a waiver of privilege, and the receiving party will return or destroy their copies.

## E.    Limitations or Modifications to Discovery

The Parties understand that evidence relevant to the claims and defenses in this case may be taken from the Parties or non-parties in a language other than English. To that end, the Parties agree that depositions taken pursuant to Fed. R. Civ. P. 30(b)(1) or 30(b)(6) "are limited to one day of seven hours, but depositions requiring an interpreter count as half time. Accordingly, a deposition with an interpreter may last up to 14 hours over two days. If a Party wishes to schedule a two-day deposition due to the use of an interpreter, advance notice to the opposing party is required." *Apple Inc. v. Samsung Elecs. Co., Ltd.*,

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

No. 5:12-cv-630-LHK, Dkt. 324 (N.D. Cal. Dec. 11, 2012); *see also, e.g., Procaps S.A. v. Patheon Inc.*, 20155 WL 2090401, at *6 (S.D. Fla. May 5, 2015) ("To the extent that interpreters are used for either the 30(b) (6) deposition or the fact witness depositions, the time will be adjusted, based on the rule that the use of an interpreter doubles the deposition time. To provide an example, if Patheon retakes the deposition of Mr. Minski for two hours with an interpreter, then Patheon will have used one hour of the seven hours allotted in this order."); Fed. R. Civ. P. 30(d), 2000 Advisory Committee Note (Parties considering extending the time for a deposition—and courts asked to order an extension—might consider a variety of factors. For example, if the witness needs an interpreter, that may prolong the deposition.").

Other than as stated above, the Parties propose no limitations on or modifications to the Federal Rules of Civil Procedure, the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, or the Court's Standing Order, as they govern discovery.

### F.    Other Orders

The Parties intend to enter into a Stipulated Protective Order to govern the disclosure of confidential information.

## IX.    Class Actions

The Parties have not alleged any facts supporting class treatment.

## X.    Related Cases

There are no known related cases or proceedings pending before another judge of this court, or before another court or administrative body.

## XI.    Relief

### A.    Plaintiff's Position

Plaintiff seeks declaratory, injunctive, and monetary relief as follows:

Plaintiff seeks a judgment declaring that Defendant has (i) submitted false notifications under the DMCA, 17 U.S.C. § 512(f)(1); (i) submitted false counter-notifications under the DMCA, 17 U.S.C. § 512(f)(2); (iii) infringed Plaintiff's copyright rights in the Skibidi Toilet Copyrighted Works; (iv) infringed and cybersquatted on Plaintiff's trademark rights in the Skibidi Toilet Trademark, and (v) has committed acts of unfair competition and false advertising under California law. Plaintiff also seeks a judgment declaring that Plaintiff has not infringed or otherwise violated any copyright rights in any works

purportedly owned by Defendant.

Plaintiff further seeks a permanent injunction prohibiting Defendant from infringing Plaintiff's copyrights and trademarks, and taking action to remove material from the Boom Channel claiming that any such material infringes any copyrights to Skibidi Toilet works or characters. Plaintiff further seeks an order requiring Defendant to deliver for destruction goods or content that infringe Plaintiff's trademarks or copyrights, and to transfer or assign the Infringing Domain Names, Infringing Sites, and Fraudulently Obtained Copyright Registrations to Plaintiff.

Plaintiff further seeks an accounting and disgorgement of Defendant's profits stemming from Defendant's infringement of Plaintiff's copyrights and trademarks. Plaintiff also seeks an award of actual damages: (i) harm to the value of Plaintiff's copyrighted works and Plaintiff's reputation, resulting in lost business opportunities; (ii) the value of a reasonable license fee for use of Plaintiff's copyrights; (iii) actual damages stemming from Defendant's false DMCA Notifications, in the form of lost advertising revenue while Skibidi Toilet Season 25 was off line; (iv) and actual damages stemming from Defendant's cybersquatting activities, or, if Plaintiff so elects, statutory damages in the amount of $1,000 and $100,000 per domain name, *see* 15 U.S.C. § 1117(d).

Plaintiff further seeks an award of punitive damages due to Defendant's infringement of Plaintiff's trademark rights under California state law.

Plaintiff further seeks an award of its costs and attorney's fees. *See, e.g.*, Fed. R. Civ. P. 54(d)(1); 15 U.S.C. 1117(a); 17 U.S.C. § 505.

Plaintiff denies that Defendant is entitled to any relief whatsoever on its existing counterclaims. Plaintiff has not yet had to file any response to Defendant's forthcoming amended counterclaims, and reserves the right to respond as appropriate once they are filed. In particular, Plaintiff understands from drafts of this Case Management Statement that Defendant may bring counterclaims for libel and/or tortious (negligent and/or intentional) interference with either contractual or prospective business relations. To the extent Defendant does so, Plaintiff denies that Defendant is entitled to any relief based thereon. Plaintiff reserves the right to supplement its request for relief at the appropriate time.

//

//

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

### B.    Defendant's Position

Next Level seeks a judgment declaring that (i) Invisible Narratives has submitted false notifications under the DMCA, 17 U.S.C. § 512(f)(1); (ii) Invisible Narratives has submitted false counter-notifications under the DMCA, 17 U.S.C. § 512(f)(2); (iii) Invisible Narratives has infringed Next Level's copyright rights in the Skibidi Toilet materials; and (iv) Invisible Narratives has committed acts of libel and tortious interference under California law.  Next Level also seeks a judgment declaring that Next Level has not infringed or otherwise violated any copyright rights in any works purportedly owned by Invisible Narratives, and Next Level is able to release, distribute, and make its mobile application and video game available for download on Apple's App Store, Google Play, and/or any other medium for distribution of mobile applications or video games..

Next Level further seeks a permanent injunction prohibiting Invisible Narratives from infringing Next Level's copyrights and directly or indirectly taking any actions to remove or disable access to any material posted by Next Level, including by submitting DMCA Takedown Notices to YouTube, Apple, and/or Google, claiming that any such material infringes any copyrights to the Skibidi Toilet Characters, or removing or disabling access to such material based on receipt of such DMCA Takedown Notices— and, to the extent that any actions to remove or disable access have already been taken, such actions shall be retracted and canceled.  Next Level further seeks an accounting and disgorgement of Invisible Narratives' profits stemming from Invisible Narratives' infringement of Next Level's copyrights.  Next Level also seeks an award of actual damages for: (i) the  harm to the value of Next Level's copyrighted works and Next Level's reputation, resulting in lost business opportunities; (ii) the value of a reasonable license fee for use of Next Level's copyrights; (iii) actual damages stemming from Invisible Narratives' false DMCA Notifications, in the form of lost revenue from Next Level not being able to launch its mobile gaming application; (iv) and actual damages stemming from Invisible Narratives' tortious interference and defamatory actions.

Next Level also seeks an Order pursuant to 15 U.S.C. § 1119 to rectify the Principal Register of the United States Patent and Trademark Office canceling Invisible Narratives' Trademark for SKIBIDI TOILET, and such order shall be certified to the Director, who shall make appropriate entry upon the records of said Office.

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

Next Level further seeks an award of its costs and attorney's fees to 17 U.S.C. § 505, 17 U.S.C. § 512(f), and other applicable law.Next Level denies that Invisible Narratives is entitled to any relief whatsoever on its existing complaint.

## XII.   Settlement and ADR

The parties have discussed alternative dispute resolution ("ADR") options and filed the required certifications under ADR L.R. 3-5. (*See* Dkt. 45, 48.) On October 3, 2025, the parties engaged in an initial private mediation before Judge Jeremy Fogel (ret.). Unfortunately, the mediation was unsuccessful. The parties will continue to confer about resolving their disputes through ADR, including through the mediation process they have initiated.

## XIII.   Other References

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV.   Narrowing of Issues

At present, the Parties otherwise have no further suggestions to expedite the presentation of evidence at trial at this time but will continue to meet and confer to seek ways to expedite the efficient presentation or resolution of uncontested facts and issues as this case progresses.

## XV.   Scheduling

The Parties' proposed briefing schedule on Plaintiff's anticipated Motion for Contempt is provided in Section IV above.

The Parties propose the following schedule, which conforms to the target deadlines set forth at Page 3 of Judge Wise's Civil Standing Order:

| Event | Date |
| --- | --- |
| Deadline to amend pleadings[5] | January 30, 2026 |

---

[5] **Defendant's Position**: Next Level notes that as discussed above, it needs extra time to file its Amended Counterclaims.  Although Next Level has filed its new Copyright Registration Applications with the U.S. Copyright Office, the shutdown has prevented Next Level from obtaining the new Copyright Registrations it needs to assert in its Amended Counterclaims and abandon those it is no longer asserting.  Next Level will therefore need additional time to file its Amended Counterclaims to allow for the delay in receipt of registrations caused by the government shutdown.  Therefore, this deadline may need to change if the Federal Government shutdown continues past this proposed date.

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

| Deadline for non-expert fact discovery | August 28, 2026 |
| Deadline for affirmative expert reports | September 25, 2026 |
| Deadline for rebuttal expert reports | October 23, 2026 |
| Expert discovery cutoff | November 13, 2026 |
| Deadline to file summary judgment | December 4, 2026 |
| Last Day to Hear Dispositive Motions | January 27, 2027 |
| Joint Pretrial Conference Statement | March 17, 2027 |
| Pretrial Conference | March 31, 2027 |
| Trial | April 12, 2027 |

## XVI.    Trial

The Parties each demand a jury trial.

## XVII.    Disclosure of Non-Party Interested Entities or Persons

Plaintiff has filed a Corporate Disclosure Statement and Civil Local Rule 3-15 Certification of Conflicts and Interested Entities or Persons (Dkt. 3) and restates the contents below:

### DISCLOSURE STATEMENT

*Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff Invisible Narratives LLC is a limited liability company organized under the laws of the State of Delaware. Invisible Narratives LLC is wholly owned by Dichotomy Creative Group Inc., a California corporation. No publicly traded company owns 10% or more of its stock.*

### CERTIFICATION OF CONFLICTS AND INTERESTED ENTITIES OR PERSONS

*Pursuant to Civil L.R. 3-15, the undersigned counsel of record for Plaintiff Invisible Narratives LLC, certifies that the following persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:*

- *Invisible Narratives LLC is wholly owned by Dichotomy Creative Group Inc., a California corporation.*

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

Defendant has filed Defendant's Disclosure Statement and Certification of Conflicts and Interested Entities or Persons (Dkt. 41) and restates the contents below:

*Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned certifies that Next Level Apps Technology–FZCO does not have a parent corporation and no publicly held corporation owns 10% or more of the stock in Next Level Apps Technology–FZCO.*

*Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, there is no conflict or interest (other than the named parties) to report.*

**XVIII.** **Professional Conduct**

The Parties have reviewed the Guidelines for Professional Conduct from the Northern District of California.

**XIX.**    **Other**

The Parties are not currently aware of other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED: November 4, 2025

By:    /s/ Justin A. MacLean
       Ian C. Ballon
       Jie (Lisa) Li
       Amy L. Kramer (*pro hac vice*)
       Justin A. MacLean (*pro hac vice*)
       GREENBERG TRAURIG, LLP

       Attorneys for Plaintiff Invisible Narratives, LLC

DATED: November 4, 2025            FOX ROTHSCHILD, LLP

By:    /s/ Cali Spota
       James M. Smedley
       Cali Spota
       Attorneys for Defendant
       Next Level Apps Technology—FZCO

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

1

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3):**

2        I, Justin A. MacLean, counsel for Plaintiff, attest that all Signatories have concurred in the filing

3   of the document.

4

5   DATED: November 4, 2025              GREENBERG TRAURIG, LLP

6

7                                    By:*/s/ Justin A. MacLean*

8                                       Justin A. MacLean
                                        Attorney for Plaintiff
9                                       Invisible Narratives, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**

1

**[PROPOSED] CASE MANAGEMENT ORDER**

2     The above Case Management Statement & Proposed Order is approved as the Case Management

3     Order for this case and all parties shall comply with its provisions.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**