James M. Smedley (Admitted Pro Hac Vice)
Jonathan Lagarenne (Admitted Pro Hac Vice)
Cali Spota (Admitted Pro Hac Vice)
Jonathan Madara (Admitted Pro Hac Vice)
FOX ROTHSCHILD LLP
212 Carnegie Center, Suite 400
Princeton, NJ 08540
Telephone: 609.896.3600
Facsimile: 609.896.1469
Email: jsmedley@foxrothschild.com
Email: cspota@foxrothschild.com

Jack Praetzellis (SBN 267765)
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104
Telephone: 415.651.1424
Facsimile: 415.391.4436
Email: jpraetzellis@foxrothschild.com

Attorneys for Defendant
Next Level Apps Technology—FZCO

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| INVISIBLE NARRATIVES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NEXT LEVEL APPS TECHNOLOGY – FZCO,<br><br>Defendant.<br><br>NEXT LEVEL APPS TECHNOLOGY – FZCO,<br><br>Third- Party Plaintiff and Counterclaim Plaintiff,<br><br>v.<br><br>INVISIBLE NARRATIVES LLC and ALEXEY GERASIMOV<br><br>Counterclaim Defendant and Third-Party Defendant | CASE NO. 5:25-cv-01644-NW<br><br>**NEXT LEVEL APPS TECHNOLOGY—FZCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS**<br><br>Hearing Date: January 28, 2026<br>Time: 9:00 a.m.<br>Courtroom: 3 – 5th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND.................................................. 2

    A.    The Initial Temporary Restraining Order ...................... 2

    B.    The Stipulated Preliminary Injunction and Current Dispute ........................ 4

III.  LEGAL STANDARD AND ARGUMENT ............................. 9

    A.    Legal Standard ................................................................. 9

    B.    Next Level Should not be Held in Contempt .................... 9

    C.    Next Level Should not be Subject to Severe Terminating Sanctions ........... 12

    D.    Next Level Should not be Subject to Monetary Sanctions .......................... 16

IV.   CONCLUSION.................................................................. 17

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF
STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995) .......................................................................... 12

*In re Apple Inc. Device Performance Litig.*,
  No. 5:18-MD-02827-EJD, 2019 WL 2491937 (N.D. Cal. June 14, 2019) ................. 13

*Champion-Cain v. MacDonald*,
  No. 14-CV-2540 GPC (BLM), 2015 WL 5095949 (S.D. Cal. Aug. 27,
  2015) ................................................................................................... 16

*Computer Task Group, Inc. v. Brotby*,
  364 F.3d 1112 (9th Cir. 2004) ......................................................................... 3

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) .......................................................... 12, 13, 14

*Cramer v. Target Corp.*,
  No. 1:08-CV-01693, 2010 WL 2898996 (E.D. Cal. July 22, 2010) ........................ 12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) ....................................................................... 9, 16

*Ferdik v. Bonzelet*,
  963 F.2d 1261 (9th Cir. 1992) ....................................................................... 14

*Gen. Signal Corp. v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ....................................................................... 16

*Gregorian v. Izvestia*,
  871 F.2d 1515 (9th Cir. 1989) ....................................................................... 15

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ........................................................................ 12

*Just Goods, Inc. v. Just, Inc.*,
  No. 3:18-CV-02198-WHO, 2020 WL 5500376 (N.D. Cal. Sept. 11, 2020),
  *aff'd sub nom. Just Goods, Inc. v. Eat Just, Inc.*, No. 20-15809, 2022 WL
  614053 (9th Cir. Mar. 2, 2022) .................................................................... 9, 16

*Lew v. Kona Hosp.*,
  754 F.2d 1420 (9th Cir. 1985) ....................................................................... 14

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ........................................................................ 12

*O'Connor v. Uber Techs., Inc.*,
  Case No. 13-cv-03826-EMC, 2017 WL 3782101 (N.D. Cal. Aug. 31,
  2017), *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept.
  27, 2017) ............................................................................................... 12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ................................................................. 15

*Rubin v. Belo Broadcasting Corp. (In re Rubin)*,
   769 F.2d 611 (9th Cir. 1985) ................................................................... 14

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,
   No. 22-CV-04986-JSC, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) ....................... 9

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
   689 F.2d 885 (9th Cir.1982) ....................................................................... 9

*U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*,
   857 F.2d 600 (9th Cir. 1988) ..................................................................... 12

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ..................................................................... 12

**Statutes**

Digital Millennium Copyright Act, Pub. L. 105-304, 112 Stat. 2860 (Oct. 28,
   1998) ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26(f) .................................................................................. 6, 5

## I.     INTRODUCTION

Plaintiff Invisible Narratives LLC's ("Invisible Narratives") Memorandum of Points and Authorities in support of its Motion for Contempt and Sanctions (Dkt. No. 54) (the "Motion") engages in unnecessary, unprofessional, and unfounded name calling and handwaving instead of focusing on the issues at hand and the evidence before it relating to the true issues presented in this litigation.   Invisible Narratives instead continues its campaign of painting Next Level Apps Technology – FZCO ("Next Level") as "serial impersonators and fraudsters," which is simply not true.   Fully aware of the high-profile nature of this proceeding, this Motion is just another attempt by Invisible Narratives to spread its false narrative and continue turning the YouTube and gaming community against Next Level.

Next Level avers that this Motion is a waste of both the Court's and the Parties' time and resources and made that well known to Invisible Narratives prior to the filing of this Motion.   Next Level advised Invisible Narratives it had not submitted a takedown notice in October or at any time since the Court entered the Stipulated Preliminary Injunction on June 17, 2025 (Dkt. 37) ("Stipulated Preliminary Injunction") that Invisible Narratives relies on as basis for its contempt motion.   Indeed, as the record submitted herewith shows, Next Level has submitted no take down notices to Google/YouTube since this litigation was commenced by Invisible Narratives.   Next Level also advised Invisible Narratives it would provide sworn declarations confirming the foregoing facts once it had gathered all available evidence, including from Google itself.   Contrary to the misleading picture provided by Invisible Narratives, Next Level has been transparent with Invisible Narratives from the very beginning of this dispute.   While Invisible Narratives made no effort to subpoena Google/You Tube to determine the source/cause of the letter sent to Invisible Narratives in October by Google, Next Level was, and has been, diligently working to figure out who was responsible for the letter and take down of Invisible Narratives' site that precipitated this motion.   This required time and discovery from third parties, which Next Level explained to Invisible Narratives.   Invisible Narratives chose neither to conduct its own

1

enquiry nor wait until Next Level's investigation was complete before bringing the instant Motion.

As detailed below, Next Level **did not** submit any takedown notice on or about October 7, 2025 under the Digital Millennium Copyright Act ("DMCA") to YouTube regarding a video on the Boom Channel entitled "skibidi toilet 77 (full episode)" (the "October 7 Notice") nor at any other time during the pendency of this case, and in particular since the entry of the Stipulated Preliminary Injunction in this case in June. Rather, based on the discovery from Google to date, it appears the October 7 Notice was either (1) sent belatedly by YouTube, nearly nine months *after* Next Level submitted a takedown notice on February 4, 2025, prior to even the start of this litigation, let alone the entry of the Stipulated Preliminary Injunction, or (2) submitted by another person or entity that Google has not yet been able to identify. Whatever caused the issuance of the October 7 Notice, it was not due to any violation by Next Level of the Stipulated Preliminary Injunction. Accordingly, Next Level cannot be held in contempt.

Further, despite Invisible Narratives' continued complaints of both monetary and irreparable harm resulting from the takedown of its video, and despite Next Level's repeated inquiries and prompting, Invisible Narratives did not even submit a simple Counternotice to YouTube to attempt to restore the video that was taken down on October 7 until on or around October 31, 2025. If Invisible Narratives continues to suffer substantial and irreparable harm from the takedown, why did it fail to timely undertake even the most basic steps to mitigate its alleged damages by seeking to have the video reinstated? Regardless, the Court should deny Invisible Narratives' Motion in its entirety and allow this case to proceed with all claims and counterclaims intact.

## II.    FACTUAL BACKGROUND

### A.    The Initial Temporary Restraining Order

Invisible Narratives filed this action on February 14, 2025, and sought a temporary restraining order ("TRO") and order to show cause for a preliminary injunction on February 18, 2025. *See* Dkts. 1 and 9. The TRO was entered by the Court on February 19, 2025.

2

Dkt. 11.  At this time, Next Level was not represented by United States counsel, nor did the Court have any submissions from Next Level before entering the TRO.  Declaration of James Smedley in Support of Opposition to Motion ("Smedley Decl.") at ¶ 3.

As explained in the current Amended Counterclaims (Dkt. 62), Next Level asserts that it is the rightful owner of the Skibidi Toilet universe.  In early 2020, Mr. Serhii Osadchyi, a co-founder and principal of Next Level, conceived a video game concept that involved a post-apocalyptic world where humans with cameras for heads (Cameramen) battle toilets with heads.  Dkt. 62 at ¶ 15.  Mr. Osadchyi posted his initial idea online on a public gaming forum and subsequently entered into a formal contract on or around July 20, 2020 for design services for the creation of formal character sketches, object sketches, background images, and consultations regarding the implementation of a mobile application.  Dkt. 62 at ¶¶ 16-25.  Next Level has filed for and received U.S. Copyright Registrations for these characters independently created by Mr. Osadchyi and is still awaiting additional copyrights that are currently pending before the Copyright Office.  Smedley Decl. at ¶ 5.

To promote its forthcoming mobile application game, Next Level secured the domain skibiditoilet.com, where it hosted detailed information about the game universe, characters, and events.  Dkt. 62 at ¶¶ 35-37.  Next Level also launched social media accounts on TikTok, Instagram, Facebook, and X during the summer of 2024 to promote the soon-to-be launched mobile gaming application and create hype in the gaming community.  Dkt. 62 at ¶ 41.  Next Level developed "Skibidipedia," an online encyclopedia detailing characters' abilities and lore on or around November 2024, at least three months before this litigation was filed.  Declaration of Efim Filipenko in Support of Opposition to Motion ("Filipenko Decl.") at ¶ 6.  Next Level additionally posted video clips on its official YouTube channel to promote its Skibidi Toilet mobile application and game. Dkt. 62 at ¶ 40.

Prior to current counsel for Next Level making their appearance, the Court did not have any of this background information before it.  Smedley Decl. at ¶ 3.  Further, Next Level was represented by foreign counsel, Taras Rudyy, an individual who was (1) not a

native English speaker; (2) was not admitted in any court in the United States, nor familiar with United States law; and (3) only previously helped Next Level with the filing of certain intellectual property applications. Filipenko Decl. at ¶ 8. Because of this language barrier and the lack of understanding of United States law, the obligations imposed under the TRO were not properly understood by Next Level. Filipenko Decl. at ¶ 9. Once Next Level understood those obligations, it disabled its social media accounts, its www.skibiditoilet.com domain, and its skibiditoilet.wiki website. Filipenko Decl. at ¶ 10. Understanding that there was a clear disconnect between foreign counsel's directives and the expectations set in U.S. Federal Court, Next Level sought to engage U.S. counsel. Filipenko Decl. at ¶ 11. Current counsel for Next Level was engaged on May 1, 2025. Smedley Decl. at ¶ 3.

## B. The Stipulated Preliminary Injunction and Current Dispute

Understanding the status of the pleadings and to prevent further delays in the case while new counsel for Next Level was getting up to speed, Next Level agreed to stipulate to the Preliminary Injunction in June 2025. Dkt. 37; Smedley Decl. at ¶ 4. On the evening of October 7, 2025, counsel for Next Level received a call from counsel for Invisible Narratives, alerting counsel that Invisible Narratives had received a notification from YouTube that a takedown request under the DMCA had been submitted against one of the videos posted on the DaFuq!?Boom! YouTube Channel. Smedley Decl. at ¶ 6. On this call, counsel for Next Level represented that they would immediately reach out to Next Level, but with the understanding that due to the time difference between counsel and where the representatives of Next Level sit, counsel would not likely hear from Next Level until the next morning. Smedley Decl. at ¶ 7. The very next morning, counsel for Next Level confirmed in writing that (1) counsel reached out to Next Level immediately; (2) spoke with Next Level the very next morning; and (3) Next Level confirmed that no one at Next Level had submitted a takedown notice in October or at any time since the Court entered the Stipulated Preliminary Injunction. Smedley Decl. at ¶ 8. In fact, as stated in that correspondence, Next Level confirmed that it searched its online accounts and emails and

found no takedown requests since before the filing of this suit in February 2025. Smedley Decl. at ¶ 8. Counsel for Next Level also represented that it was continuing to investigate this issue and would report back once they had more information. Smedley Decl. at ¶ 8.

On October 9, 2025, counsel for Invisible Narratives responded to counsel for Next Level stating that despite counsel for Next Level's representations and ongoing investigation, Invisible Narratives "has no choice but to seek relief from the Court" because Invisible Narratives "does not believe that Next Level did not submit the takedown to YouTube." Smedley Decl. at ¶ 9. In that email, counsel for Invisible Narratives requested a time to meet and confer on a hearing date for the forthcoming motion for contempt and sanctions. Smedley Decl. at ¶ 9. That afternoon, counsel for Next Level sent a detailed message to counsel for Invisible Narratives, explaining why Invisible Narrative's position was misguided. Smedley Decl. at ¶ 10. As detailed in that email, counsel for Next Level explained that "YouTube **does not** require one to log into their account to submit a takedown request. In fact, ***anyone*** can simply send an email to copyright@youtube.com and submit a takedown request. *See* https://support.google.com/youtube/answer/2807622?sjid=865605081280677 3835-NA." Smedley Decl. at ¶ 10. Counsel for Next Level also explained that, as the parties have acknowledged, this is a high-profile case with many people watching the docket. Smedley Decl. at ¶ 12. And in fact, aside from the video itself, the new DMCA takedown submission sent to YouTube was identical to one which is publicly available on the docket. Smedley Decl. at ¶ 12. Counsel for Next Level again represented that (1) it received screenshots from Next Level showing that no take down requests were submitted on its YouTube Studio account since before the filing of this case in February 2025; (2) it received screenshots of the IP_Support@nxtlvlcomp.org inbox showing that no emails were sent to YouTube since the Court entered the Stipulated Preliminary Injunction; and (3) that Next Level already advised YouTube that this was not Next Level's request and asked YouTube to immediately repost the video. Smedley Decl. at ¶ 12. In this correspondence, counsel for Next Level also stressed that prior to any motion practice, the parties needed discovery from Google,

5

which Google stated could only be ascertained via a third-party subpoena. Smedley Decl. at ¶ 12.

Despite counsel for Next Level's representations and assertion that motion practice would be premature, counsel for Invisible Narratives insisted on a meet and confer, which took place on October 10, 2025. Smedley Decl. at ¶ 13. On this call, counsel for Next Level again represented that retraction emails had been sent from all possible domain names and that a subpoena to Google would be going out that day. Smedley Decl. at ¶ 13. Counsel for Next Level also asked whether Invisible Narratives submitted a Counternotice, which counsel for Invisible Narratives said was likely in the works. Smedley Decl. at ¶ 13. Nevertheless, the parties agreed to offer November 19, 2025 for the hearing date on the Motion. Smedley Decl. at ¶ 13. Given the quick turnaround in the motion briefing schedule, and the forthcoming discovery the parties expected from Google, Next Level agreed to submit declarations under penalty of perjury from each person with access to Next Level's YouTube studio and email account, swearing that those persons did not submit the takedown request that led to the October 7 Notice, did not direct a third party to submit the takedown request that led to the October 7 Notice, and have no knowledge about who did if Invisible Narratives would agree not to file its motion during the three-day period following receipt of the Court's confirmation of the reserved hearing date. Smedley Decl. at ¶ 14.

On October 16, 2025, the Court responded to Invisible Narratives' email requesting a hearing date, indicating that the Court would be available on January 28, 2026 for the hearing and asking for counsel to confirm their availability, and on October 17, counsel for the parties met and conferred and agreed to ask the Court for an extended briefing schedule in light of the time between this request and the actual hearing date. Smedley Decl. at ¶ 15. That evening, Invisible Narratives' counsel confirmed to the Court that counsel were available for a hearing on January 28 and requested the extended briefing schedule. Smedley Decl. at ¶ 15. On October 28, the parties held their Rule 26(f) conference of counsel. Prior to the Rule 26(f) conference, Invisible Narratives' counsel stated in an email

that it was "looking forward to receiving your client's declarations by Wednesday, October 29, as agreed." Smedley Decl. at ¶ 16.

At the Rule 26(f) conference, Next Level's counsel stated that there was a miscommunication and/or misunderstanding among counsel. Smedley Decl. at ¶ 17. Next Level's counsel explained that given the hearing for the Motion was months away, Next Level wanted to provide the declarations after its investigation was complete, which included after receiving Google's response, instead of providing declarations in piecemeal. Smedley Decl. at ¶ 17. Next Level's counsel made it clear that Next Level had no problem providing the sworn declarations requested but just wanted to provide one fulsome declaration from each declarant with all relevant information since now there was no immediate time crunch. Smedley Decl. at ¶ 17. Invisible Narratives objected. Smedley Decl. at ¶ 17. Counsel for Next Level again asked whether Invisible Narratives submitted a Counternotice, which counsel for Invisible Narratives represented would be happening soon. Smedley Decl. at ¶ 18. The parties' memorialized their positions in an email exchange after the Rule 26(f) conference. *See* Smedley Decl. at ¶ 19. As seen in Next Level's counsel's email, counsel again stated that it believed it would be "a waste of both parties' and the Court's time and resources to prematurely file the motion." Smedley Decl. at ¶ 19.

On October 10, 2025, Next Level served a subpoena on Google. Smedley Decl. at ¶ 20. After repeated meet and confer efforts, Google produced its documents on November 20, 2025 ("Initial Google Production"). Smedley Decl. at ¶ 20. While the documents in the Initial Google Production did not appear to relate to the submission that led to the October 7 Notice and takedown, these documents showed that there was no submission from Next Level's YouTube Studio account since February 4, 2025. Smedley Decl. at ¶ 20. As seen from the Initial Google Production, Next Level did not logon to its YouTube Studio Account on October 7, 2025. Smedley Decl. at ¶ 21. Next Level only logged in on October 8, 2025, the day after Invisible Narratives advised of the takedown notice it received from Google, to investigate the claims being made by Invisible Narratives.

Filipenko Decl. at ¶ 17.  Further, as seen by the Initial Google Production, the last communication YouTube had with Next Level from Next Level's YouTube Studio account is dated February 6, 2025, days before the filing of this case.  Smedley Decl. at ¶ 21. Therefore, the Initial Google Production confirms that Next Level did not submit any request in October 2025 that led to the takedown.  Smedley Decl. at ¶ 21.  After further investigation and discussions with outside counsel for Google, it appears that the most logical explanation for the October 7 Notice is that it is related to a takedown request submitted on **February 4, 2025**, not to a new takedown request.  Smedley Decl. at ¶ 22. Although not formally confirmed yet in writing, as Google is still investigating the issue to confirm that no other party submitted a takedown request that led to the October 7 Notice, based on discussions with outside counsel for Google, it is likely that Google belatedly took action on this request almost nine months after it was submitted prior to this case commencing, as there is no set timeline for action to occur.  Smedley Decl. at ¶ 22.

As seen above, Next Level did not submit any takedown request since the commencement of this case, and in particular since the Court entered the Stipulated Preliminary Injunction.  Thus, Next Level is not in violation of the Stipulated Preliminary Injunction and cannot be held in contempt.   Rather, based on discovery from Google and discussions with outside counsel for Google, the most likely scenario is that the October 7 Notice was belatedly issued by YouTube on its own initiative nine months after the original request was submitted to it.  Further, to Next Level's knowledge, it took Invisible Narratives nearly a month to submit a Counternotice despite its assertion of harm and only after repeated inquiries from counsel for Next Level.  The Court should deny the Motion in its entirety as Next Level did not submit any takedown notices since the beginning of this case, nor after entry of the Stipulated Preliminary Injunction and, further, Invisible Narratives inexcusably delayed in taking even basic steps to have the takedown reversed, which they could do simply by filing a Counternotice.

### III.   LEGAL STANDARD AND ARGUMENT

#### A.   Legal Standard

"Civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Just Goods, Inc. v. Just, Inc.*, No. 3:18-CV-02198-WHO, 2020 WL 5500376, at *1 (N.D. Cal. Sept. 11, 2020), *aff'd sub nom. Just Goods, Inc. v. Eat Just, Inc.*, No. 20-15809, 2022 WL 614053 (9th Cir. Mar. 2, 2022) (citations omitted).   The party moving for civil contempt and sanctions bears the burden of proving the accused party's violation of a court order by clear and convincing evidence, "not merely a preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "Substantial compliance [] is a defense to civil contempt where every reasonable effort has been made to comply." *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-CV-04986-JSC, 2023 WL 6882749, at *2 (N.D. Cal. Oct. 18, 2023) (citation omitted).   Further, a party's substantial compliance "is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply."   *In re Dual-Deck*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir.1982)).

#### B.   Next Level Should not be Held in Contempt

Next Level has not violated the terms of the Stipulated Preliminary Injunction and should not be held in contempt.   Next Level acknowledges that the Stipulated Preliminary Injunction prohibits Next Level from "directly or indirectly taking any actions to remove or disable access to any material hosted on the Boom Channel, including by submitting DMCA Takedown Notices or other takedown notices to YouTube claiming that any such material hosted on the Boom Channel infringes on any copyrights for Skibidi Toilet content or characters[.]" Dkt. 37 ¶ 1(a).  Next Level has not taken any actions contravening this order. Only three individuals at Next Level had access to the email account listed on the face of the October 7 Notice.   Filipenko Decl. at ¶ 13.   All three individuals have submitted declarations in support of Next Level's Opposition to the Motion swearing (under penalty of perjury) that (1) they did not submit any takedown requests since the Court entered the

9

Stipulated Preliminary Injunction; and (2) they did not direct anyone else to submit a takedown request since the Stipulated Preliminary Injunction. Filipenko Decl. at ¶¶ 14-15; Declaration of Stanislav Chuprykov in Support of Opposition to Motion ("Chuprykov Decl.") at ¶¶ 4-5; Declaration of Taras Rudyy in Support of Opposition to Motion ("Rudyy Decl.") at ¶¶ 4-5. And to be clear, Next Level always agreed to provide these declarations; it just wanted to provide the declarations once its investigation was complete to avoid piecemeal and/or duplicative declarations. Smedley Decl. at ¶ 17.

Indeed, discovery from Google proved illuminating. While the documents in the Initial Google Production did not appear to specifically relate to the submission that led to the October 7 Notice, these documents confirm that Next Level did not submit any takedown requests since this case has been pending and, in particular, after the entry of the Stipulated Preliminary Injunction from its YouTube Studio account. Smedley Decl. at ¶ 21. The Initial Google Production also confirms Next Level did not log on to its YouTube Studio Account on October 7, 2025. Smedley Decl. at ¶ 21. Next Level only logged in on October 8, 2025, the day after the take down request was submitted, to investigate the claims being made by Invisible Narratives. Filipenko Decl. at ¶ 17. Further, the Initial Google Production shows the last communication YouTube had with Next Level from its YouTube Studio account was dated February 6, 2025. Smedley Decl. at ¶ 21. Therefore, the Initial Google production confirms that Next Level did not submit any request from its YouTube Studio account since the entry of the Stipulated Preliminary Injunction. Smedley Decl. at ¶ 21. While Google has not yet been able to confirm whether a separate third-party is responsible for the October 7 Notice, based on conversations with outside counsel for Google, it appears that the most likely scenario is that the October 7 Notice from YouTube was an artifact of the much earlier notice sent in February of 2025, prior to the start of this litigation, let alone the entering of the Stipulated Preliminary Injunction. Smedley Decl. at ¶ 22. Regardless, the uncontroverted evidence is that no such request has been submitted by Next Level since the Stipulated Preliminary Injunction.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS

Next Level also worked diligently to try to have Invisible Narratives' video restored, despite having submitted no request since the entry of the Stipulated Preliminary Injunction. Filipenko Decl. at ¶ 18. In fact, Next Level submitted a retraction notice to YouTube, to which Google responded that only the party who submitted the takedown request could submit the retraction request. Filipenko Decl. at ¶ 18. As seen from Google's polices, "[retraction emails] must be sent from the **same email address or corporate domain** that was used to submit the original removal request." (emphasis in original). Smedley Decl. at ¶ 11. Next Level therefore went even further and submitted retraction notices from every possible corporate email domain ending to cover all possible corporate email domains owned by Next Level. Filipenko Decl. at ¶ 18. However, as seen by the exhibits in Mr. Filipenko's Declaration, YouTube rejected each one of these submissions, again stating the email used for the original takedown request did not match the email submitting the retraction request. Filipenko Decl. at ¶ 18.

Accordingly, there is simply no evidence—let alone clear and convincing evidence—that Next Level violated the Stipulated Preliminary Injunction by submitting a takedown request to Google/YouTube. Since Next Level did not take any actions to remove or disable access to material hosted on the Boom Channel since the entry of the Stipulated Preliminary Injunction, there is no need to address whether Next Level's alleged non-compliance was more than technical or *de minimis* or if there was any good faith misunderstanding, as these prongs are simply inapplicable. As stated in the attached declarations, Next Level has made no take down requests since the Stipulated Preliminary Injunction, and the Initial Google Production confirmed this as well. In short there has been no violation of the injunction. Next Level has at all times abided by, and continues to abide by, the terms of the Stipulated Preliminary Injunction. Invisible Narratives has not shown, and frankly cannot show, otherwise by clear and convincing evidence. The Court should deny Invisible Narrative' Motion in its entirety and should not hold Next Level in contempt.

### C.    Next Level Should not be Subject to Severe Terminating Sanctions

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Accordingly, default judgment is not warranted if less drastic sanctions are sufficient. In fact, a "district court abuses its discretion" if it grants default judgment "without first considering the impact of the sanction and the adequacy of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) (citation omitted); *see also U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988) (the district court must consider "less severe alternatives" than outright dismissal). "[D]ue process limits the imposition of the severe sanctions of dismissal or default judgment to 'extreme circumstances' and such sanctions are not to be imposed merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Cramer v. Target Corp.*, No. 1:08-CV-01693, 2010 WL 2898996, at *2 (E.D. Cal. July 22, 2010) (citing *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)). Further, a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (citation omitted). "[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal quotation marks omitted).

When considering whether to impose terminating sanctions, courts weigh five factors identified by the Ninth Circuit: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096. "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth. What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery

violations threaten to interfere with the rightful decision of the case." *Id.* at 1097 (internal quotation marks and citation omitted); *see also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (where a court order is violated, the propriety of terminating sanctions will often turn on the third and fifth factors).

As detailed above, Next Level did not violate the Stipulated Preliminary Injunction and, therefore, should not be subject to ***any*** sanctions.  However, should the Court hold otherwise, dismissal of Next Level's Amended Counterclaims is far too severe.  As explained in Mr. Filipenko's declaration, the three individuals at Next Level who had access to the email address listed on the October 7 Notice have provided sworn declarations and have attested under penalty of perjury that they (1) did not submit any takedown requests since the entry of the Stipulated Preliminary Injunction; and (2) did not instruct anyone else to submit any takedown request since the entry of the Stipulated Preliminary Injunction. Filipenko Decl. at ¶¶ 13-15 ; Chuprykov Decl. at ¶¶ 4-5; Rudyy Decl. at ¶¶ 4-5. Further, based on the Initial Google Production and discussions with outside counsel for Google, it seems that the most likely explanation for the October 7 Notice from YouTube was that it was caused by an artifact of the much earlier notice sent in February of 2025.  Smedley Decl. at 22.  Thus, there was no intentional or willful behavior by Next Level.[1]

Since Next Level's actions were not willful, dismissal of its Amended Counterclaims is inappropriate.  *See O'Connor v. Uber Techs., Inc.*, Case No. 13-cv-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017), *appeal dismissed*, No. 17-16859, 2017 WL

---

[1] Any prior alleged violations of the previously entered TRO are not the subject of this current Motion and not properly before the Court here.  Regardless, any alleged violations of the TRO were not willful and instead resulted from a misunderstanding and appreciation of the terms of the TRO because of an apparent language barrier and misunderstanding and appreciation for U.S. law.  Filipenko Decl. at ¶ 9.  Next Level's actions here were fundamentally not willful.  *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 2491937, at *3 (N.D. Cal. June 14, 2019) (finding a party's actions were not willful but rather resulted from a "fundamental lack of understanding" of the agreement at issue).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS

6398066 (9th Cir. Sept. 27, 2017) (*citing Lew v. Kona Hosp*., 754 F.2d 1420, 1426–27 (9th Cir. 1985))(acknowledging that willfulness is required for the sanction of dismissal). Further, the other factors used by the Ninth Circuit also weigh against dismissal of the Amended Counterclaims.  First, while expeditious resolution of litigation is in the public interest, this litigation is in its infancy.  The parties just held an initial case management scheduling conference with the Court, and trial has been tentatively set for November 2026. Thus, dismissal of the Amended Counterclaims will not so dramatically impact the case schedule as to warrant dismissal.  The same holds true for the Court's need to manage its docket.  This case has **not** "consumed large amounts of [the district] court's valuable time that it could have devoted to other major and serious criminal and civil cases on its docket," disfavoring dismissal. *See Ferdik v. Bonzelet*, 963 F.2d 1261 (9th Cir. 1992).

Further, the risk of prejudice to Invisible Narratives is very low, to the extent it exists at all.  As detailed above, Next Level has not submitted any takedown requests since the entry of the Stipulated Preliminary Injunction.  Next Level's actions therefore have not and do not impair the ability of Invisible Narratives to go to trial or interfere with a rightful decision of this case.  *See Rubin v. Belo Broadcasting Corp. (In re Rubin)*, 769 F.2d 611, 618 (9th Cir. 1985).  Specifically, the court must consider whether the alleged disobedient party's discovery violations "make it impossible for a court to be confident that the parties will ever have access to the true facts." *Conn. Gen. Life Ins. Co*., 482 F.3d at 1097 (internal quotation marks omitted).  That is certainly not applicable here.  Next Level **wants** the truth to be heard.  It is confident that it will be the prevailing party and is highly motivated for the parties and the Court to have access to the true facts.  Filipenko Decl. at ¶ 20.  Next Level maintains that this Motion is a sideshow to distract the Court and parties from the main issues and to prevent Next Level from uncovering the true facts.  The fact that Invisible Narratives cries harm but apparently took almost a month to submit a DMCA Counternotice (and even in the Motion, Invisible Narratives claimed to still be "in the process of submitting a DMCA Counternotice" and the video remains unavailable) speaks volumes to this point. *See* Motion at 23.  Therefore, this factor too cuts against harsh sanctions.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS

The public policy favoring disposition of cases on their merits strongly counsels against case-dispositive sanctions. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006); *see also Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir. 1989) ("[D]efault judgments are generally disfavored, and whenever it is reasonably possible, cases should be decided upon their merits.") (citation omitted). This factor thus cuts against dismissal of the Amended Counterclaims. And finally, while Next Level asserts it should not be subject to any sanctions, should the Court disagree, there are certainly less drastic sanctions available, such as monetary sanctions.

Next Level has also proven that it (1) did not submit any takedown requests since the entry of the Stipulated Preliminary Injunction that led to the October 7 Notice and (2) worked diligently to have Invisible Narratives' video restored. *See* Filipenko Decl. at ¶¶ 14-15, 18. Next Level further **did not** fail to provide declarations relating to this Motion. As seen in the email correspondence between counsel, Next Level affirmatively said it would provide the requested declarations, but it wanted to provide fulsome declarations from each declarant instead of providing declarations in piecemeal. *See* Smedley Decl. at ¶ 17. And those declarations are now attached here. *See* Filipenko Decl.; Chuprykov Decl.; Rudyy Decl. Had Invisible Narratives waited, it would have had all the information it needed to see Next Level did not violate the Stipulated Preliminary Injunction. It was Invisible Narratives' impatience and continued refusal to believe anything that Next Level (or its counsel) says that led to this unnecessary Motion, not any actions by Next Level. Therefore, for all the above reasons, terminating sanctions would be highly inappropriate here[2].

---

[2] Invisible Narratives spends a paragraph alleging that Next Level is somehow connected to an irrelevant Polish company named Iviliia Millionic IT Sp z o.o. ("Iviliia"). *See* Motion at 21-22. This is another red herring meant to distract from the facts before the Court. As stated in Next Level's Answer to the Complaint, Next Level's principals are not principals of, or in any way affiliated with, Iviliia. Dkt. 39 ¶ 81. Unlike whatever situation occurred in an unrelated litigation, Next Level has provided verified evidence to Invisible Narratives proving Next Level's 2020 date of creation of its characters here. Smedley Decl. at ¶ 23.

### D.     Next Level Should not be Subject to Monetary Sanctions

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Just Goods, Inc*., 2020 WL 5500376, at *2 (quoting *Gen. Signal Corp. v. Donallco, Inc*., 787 F.2d 1376, 1380 (9th Cir. 1986) (internal quotations omitted).  As detailed above, Next Level did not submit any DMCA takedown requests since the entry of the Preliminary Injunction.  Since current counsel for Next Level has entered their appearance, Next Level has fully understood its obligations under the Stipulated Preliminary Injunction and has abided by those terms.  *See* Filipenko Decl. at ¶¶ 10, 19.  There is therefore no need for sanctions to coerce Next Level into compliance as Next Level **has been** compliant.  *See Champion-Cain v. MacDonald*, No. 14-CV-2540 GPC (BLM), 2015 WL 5095949 (S.D. Cal. Aug. 27, 2015) (denying sanctions motion and fee request where movant failed to establish that nonmovant violated Court order).  Further, Next Level should not be forced to compensate Invisible Narratives for any losses it did not cause.  *In re Dual-Deck*, 10 F.3d at 696 (stating that party seeking sanctions "only claimed injuries [that] were self-inflicted, by their own spare-no-expense punitive expedition").  And certainly, Next Level should not have to pay Invisible Narratives' attorneys' fees and cost for bringing this motion and submitting a DMCA Counternotice as Next Level repeatedly informed Invisible Narratives that this Motion was premature and would be a waste of the parties' and the Court's resources.  *Id.; see also* Smedley Decl. at ¶ 19.  Despite having a clear picture of the facts before it, Invisible Narratives nevertheless elected to prematurely file this Motion to its own detriment.  That is no fault of Next Level, and if anything, Next Level should be entitled to compensation for having to defend against a knowingly meritless motion.  Regardless, monetary sanctions are not appropriate here, and the Court should deny Invisible Narratives' request.

---

Invisible Narratives' allegations relating to Iviliia are irrelevant hearsay and should be disregarded.

1

## IV.    CONCLUSION

For all the above states reasons, the Court should deny the Motion in its entirety.

DATED: November 26, 2025                    FOX ROTHSCHILD, LLP


By:    /s/ *Cali R. Spota*
       Jack Praetzellis
       James M. Smedley
       Cali R. Spota

       Attorneys for Defendant
       Next Level Apps Technology—FZCO

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER FINDING DEFENDANT IN CIVIL CONTEMPT OF STIPULATED PRELIMINARY INJUNCTION AND FOR SANCTIONS